# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD J. TRUMP,<br><br>                              Plaintiff,<br><br>v.<br><br>COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES; LETITIA JAMES, in her official capacity as Attorney General of New York State; and MICHAEL R. SCHMIDT, in his official capacity as Commissioner of the New York State Department of Taxation and Finance,<br><br>                              Defendants. | Civil Action No. 1:19-cv-2173-TNM |

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S EMERGENCY APPLICATION FOR RELIEF UNDER THE ALL WRITS ACT**

## TABLE OF CONTENTS

Table of Authorities ................................................................................................................... ii

Background ............................................................................................................................... 1

Argument .................................................................................................................................. 4

Conclusion ................................................................................................................................ 6

## TABLE OF AUTHORITIES

**Cases**

*Astrazeneca Pharmaceuticals LP v. Burwell*,
  197 F. Supp. 3d 53 (D.D.C. 2016) ...................................................................................1, 4, 5

*Burlington Northern R. Co. v. Surface Transp. Bd.*,
  75 F.3d 685 (D.C. Cir. 1996) .................................................................................................. 5

*Clark Cty. v. FAA*,
  522 F.3d 437 (D.C. Cir. 2008) ................................................................................................ 5

*Eastland v. U.S. Servicemen's Fund*,
  421 U.S. 491 (1975) ................................................................................................................ 5

*In re U.S. ex rel. an Order Authorizing Disclosure of Location Info of a Specified Wireless Tel.*,
  849 F. Supp. 2d 526 (D. Md. 2011) ........................................................................................ 4

*Jackson v. Dist. of Columbia*,
  254 F.3d 262 (D.C. Cir. 2001) ................................................................................................ 4

*Matal v. Tam*,
  137 S. Ct. 1744 (2017) ............................................................................................................ 5

*Penn. Bur. of Corr. v. U.S. Marshals Serv.*,
  474 U.S. 34 (1985) .................................................................................................................. 4

*Sheehan v. Purolator Courier Corp.*,
  676 F.2d 877 (2d Cir. 1981) ................................................................................................... 4

*Trump v. Comm. on Oversight & Reform of U.S. House of Representatives*,
  380 F. Supp. 3d 76 (D.D.C. 2019) .......................................................................................... 6

*U.S. Servicemen's Fund v. Eastland*,
  488 F.2d 1252 (D.C. Cir. 1973) .............................................................................................. 6

*United States v. AT&T Co.*,
  567 F.2d 121 (D.C. Cir. 1977) ................................................................................................ 5

*Wagner v. Taylor*,
  836 F.2d 566 (D.C. Cir. 1987) ................................................................................................ 4

**Statutes**

2019 Sess. Law News of N.Y. Ch. 91 (July 8, 2019) ................................................................... 1

2019 Sess. Law News of N.Y. Ch. 92 (July 8, 2019) ................................................................... 1

28 U.S.C. §1651 ............................................................................................................................ 4

Plaintiff Donald J. Trump asks this Court to enjoin the Defendant Committee on Ways and Means' Chairman from requesting or receiving Plaintiff's state tax returns from New York until Plaintiff obtains an opportunity for judicial review. The President is in an intolerable situation: If he seeks relief after the Chairman requests his state tax returns, the returns might be disclosed before he can be heard in court. At the same time, immediate judicial review could force the Court to prematurely decide constitutional issues that might otherwise be avoided. The All Writs Act affords the Court discretion to fashion equitable relief "necessary to preserve the availability of meaningful judicial review." *Astrazeneca Pharmaceuticals LP v. Burwell*, 197 F. Supp. 3d 53, 56 (D.D.C. 2016). The Court should exercise that discretion.

## BACKGROUND

New York recently passed the TRUST Act, a law that allows the Committee to access President Trump's state tax returns. 2019 Sess. Law News of N.Y. Chs. 91, 92 (July 8, 2019). To receive the President's state returns, Representative Neal, the chair of the Committee, need only submit a "written request" to the New York State Tax Commissioner. *Id.*, Ch. 92. That written request must "certif[y]" that three conditions are met: (1) "such reports or returns have been requested related to, and in furtherance of, a legitimate task of the Congress," (2) "the requesting committee has made a written request to the United States secretary of the treasury for related federal returns or return information, pursuant to 26 U.S.C. Section 6103(f)", and (3) any inspection or submission to another Committee or the full House or Senate will be done "in a manner consistent with federal law." *Id.* The TRUST Act "[took] effect immediately." *Id.*, Ch. 91, §19. Thus, the Committee could request and receive the President's state returns at any time without affording him any notice.

At first, Chairman Neal said he would not use the TRUST Act. As he told reporters for Bloomberg, requesting the New York returns could "boost the Trump administration's argument

1

that Congress is going after his tax returns as part of a political vendetta." Compl. ¶61. But things are changing fast. According to an NBC news report from yesterday, Chairman Neal's hesitation about using the TRUST Act has "landed [him] in hot water." Compl. ¶62.

Progressive groups, for example, are "infuriated" that Chairman Neal has not yet requested the President's state tax returns, lambasting his inaction as showing insufficient "zeal for oversight" and "doing pretty much everything possible to make sure [House Democrats] don't get [the President's returns] before November 2020." *Id.* Chairman Neal also gained a primary challenger earlier this week, who launched his campaign by criticizing the Chairman's lack of "urgency" on this issue. *Id.* The NBC report also quoted an aide to one of the Democrats on the Committee, who said there was "widespread frustration from members of the committee at how slowly this process [of getting the President's tax information] has moved." Compl. ¶63. For example, Representative Doggett said, "we should take a look" at "New York's information." *Id.* Referencing the TRUST Act, Representative Pascrell said he supports "any tool … that might shed sunlight on Trump's tax return history" because the country needs to know what he "is hiding" and whether he "is a crook." *Id.* Representative Judy Chu declared that "[t]he new law out of New York State is a new and interesting option that I believe should be considered and examined as we move forward." *Id.*

Other House Democrats have added their voices to this growing chorus. Representative Maxine Waters, who chairs the House Financial Services Committee, said that "I'm for" "[w]hatever it takes to get" the President's tax returns. Compl. ¶64. Representative Pramila Jayapal, co-chair of the House Progressive Caucus, similarly said, "Yes, absolutely, we need to ask [for the state returns]. We need to know." *Id.* Representative Charlie Crist answered a question

about the TRUST Act by asking rhetorically, "Why not? I don't think there is any downside for us." *Id.*

Democrats are also tying the TRUST Act to the Committee's lawsuit for the President's federal returns, characterizing the state returns as a backup plan in case the federal suit is unsuccessful or takes too long. According to Representative Nadler, a New Yorker and the Chair of the House Judiciary Committee, the TRUST Act means that "we can turn to New York State" "[i]f confronted with inability to receive the federal tax return." Compl. ¶65. He called the law a "workaround to a White House that continues to obstruct and stonewall the legitimate oversight work of Congress." *Id.* Senator Hoylman likewise framed the TRUST Act as giving "Congress a constitutional escape hatch should they not want to wait for the federal court case and its appeals process to be finalized, which potentially could take months to years." *Id.* Assembly Speaker Heastie predicted that Chairman Neal would use the bill as "'in case of emergency break glass' type legislation." *Id.* So did Representative Hakeem Jeffries, the fifth highest ranking Democrat in the House: "At this moment in time Chairman Neal has taken this position, but we'll see how he decides to proceed in the face of continued obstruction from the administration." "That may cause the chairman of the Ways and Means Committee to change his mind." *Id.*

In the face of all these pressures, Chairman Neal recently change his stance toward the TRUST Act. He clarified that "House counsel … have legitimate concerns about [requesting the President's state returns], not me." Compl. ¶66. On July 12, the Chairman revealed that "[t]he House counsel" has been asked to reconsider using the TRUST Act to request the President's state tax returns and "is reviewing all of that right now." *Id.* Chairman Neal did not specify when this review will end.

3

Given these developments, the President had no choice but to sue the Committee, the New York Attorney General, and the New York State Tax Commissioner in order to protect his legal rights. The TRUST Act violates the First Amendment because it was enacted for the purpose of discriminating and retaliating against the President for his speech and politics. And any request by the Committee's Chairman for the President's state tax returns exceeds Congress's authority under Article I of the Constitution because it lacks a legitimate legislative purpose. The President seeks declaratory and injunctive relief, including under the All Writs Act, to ensure that his constitutional rights are preliminary and permanently protected.

## ARGUMENT

The All Writs Act empowers federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a). The statute "fill[s] the interstices of federal judicial power when those gaps threaten[] to thwart the otherwise proper exercise of federal courts' jurisdiction." *Penn. Bur. of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 41 (1985); *see also In re U.S. ex rel. an Order Authorizing Disclosure of Location Info of a Specified Wireless Tel.*, 849 F. Supp. 2d 526, 580 (D. Md. 2011) (recognizing the All Writs Act as a "gap filling measure to issue orders necessary to achieve the rational ends of law"). In particular, it "gives the court authority to impose a temporary restraint in order to preserve the status quo pending ripening of the claim for judicial review." *Wagner v. Taylor*, 836 F.2d 566, 571 (D.C. Cir. 1987) (citing *Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 884 (2d Cir. 1981)); *see also Jackson v. Dist. of Columbia*, 254 F.3d 262, 268 (D.C. Cir. 2001). This Court therefore can fashion equitable relief "necessary to preserve the availability of meaningful judicial review." *Astrazeneca*, 197 F. Supp. 3d at 56.

Equitable relief is needed here to ensure that the President has a meaningful opportunity for judicial review. New York has authorized the release of the President's state tax returns upon

4

a request from the Committee's Chairman. For its part, the Committee has not made a binding commitment to refrain from using this mechanism to obtain the President's state returns, and all available evidence suggests it will request them before the 2020 election. This creates an intolerable situation. On the one hand, it might be premature for the President to press his claims challenging the legality of a request that has not yet been made. Although the President believes that no legitimate legislative purpose could possibly exist for requesting his state tax returns, the Court might want to review the Committee's actual stated purpose before making that determination. Moreover, if the Committee decides not to request the President's state tax returns, then adjudicating the merits now would force the Court to opine on a serious issue—the constitutionality of the TRUST Act—that otherwise could be avoided. The Supreme Court has "often stressed that it is important to avoid the premature adjudication of constitutional questions, and that [courts] ought not to pass on questions of constitutionality unless such adjudication is unavoidable." *Matal v. Tam*, 137 S. Ct. 1744, 1755 (2017) (cleaned up).

On the other hand, judicial review could be thwarted altogether if this Court does not intervene to preserve the status quo. The Committee's Chairman could request the President's return from New York and secure them before the President is even aware—let alone has the opportunity to litigate the legality of the request and the underlying statute. This is a classic "now-is-too-early, later-is-too-late" circumstance warranting judicial intervention. *Clark Cty. v. FAA*, 522 F.3d 437, 441 (D.C. Cir. 2008) (Kavanaugh, J.); *see, e.g.*, *Burlington Northern R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 691-92 (D.C. Cir. 1996). Absent immediate intervention by this Court, in other words, it is unlikely there will be "a window" for the President to assert his constitutional rights before the Commissioner releases his state tax records to the Committee. *Astrazeneca*, 197 F. Supp. 3d at 58. The All Writs Act exists to ensure that this does not occur.

The irreparable harm that the President will suffer from this disclosure of his tax records underscores the propriety of equitable intervention to preserve judicial review. It is settled law that "the fortuity that documents sought by a congressional subpoena are not in the hands of a party claiming injury from the subpoena should not immunize that subpoena from challenge by that party." *United States v. AT&T Co.*, 567 F.2d 121, 129 (D.C. Cir. 1977). Yet release of confidential records "by the third person"—here, release of the President's state tax returns by New York— "could frustrate any judicial inquiry" into "whether a legitimate legislative purpose is present." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 n.14 (1975). That this case could "be mooted" before a challenge can be heard by this Court means that equitable relief is needed to ensure "irreparable harm will [not] be suffered" by the President. *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1256-57 (D.C. Cir. 1973), *subsequent merits decision rev'd on other grounds*, 421 U.S. 491. And there can be no dispute that disclosure of the President's tax records before he has an opportunity for judicial review would irreparably harm him. *See Trump v. Comm. on Oversight & Reform of U.S. House of Representatives*, 380 F. Supp. 3d 76, 104-05 (D.D.C. 2019).

## CONCLUSION

For all these reasons, the Court should fashion equitable relief to preserve a window for judicial review. Specifically, the Committee should be required to notify the Court if its Chairman intends to request the President's state tax returns from New York. The Court can then convene a status conference and determine the appropriate process for briefing the legality of the Chairman's request. The Committee's Chairman, accordingly, should be enjoined from requesting or receiving the President's state tax returns from New York until the President can obtain judicial review of the claims in his complaint.

Dated: July 24, 2019

Respectfully submitted,

*s/ William S. Consovoy*

William S. Consovoy (D.C. Bar #493423)
Thomas R. McCarthy (D.C. Bar #489651)
Cameron T. Norris
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
will@consovoymccarthy.com
tom@consovoymccarthy.com
cam@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

*Counsel for President Donald J. Trump*