# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD J. TRUMP,<br><br>          Plaintiff,<br><br>v.<br><br>COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES; LETITIA JAMES, in her official capacity as Attorney General of New York State; and MICHAEL R. SCHMIDT, in his official capacity as Commissioner of the New York State Department of Taxation and Finance,<br><br>          Defendants. | Civil Action No. 1:19-cv-2173-TNM |

## PLAINTIFF'S BRIEF IN SUPPORT OF RELATED-CASE DESIGNATION

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................. ii

Introduction.............................................................................................................................. 1

Argument ................................................................................................................................. 1

Conclusion ............................................................................................................................... 5

## TABLE OF AUTHORITIES

**Cases**

*Assiniboine & Sioux Tribe of Fort Peck Indian Reservation v. Norton*,
  211 F. Supp. 2d 157 (D.D.C. 2002) ................................................................................2, 5

*Autumn Journey Hospice, Inc. v. Sebelius*,
  753 F. Supp. 2d 135 (D.D.C. 2010) ................................................................................2, 4

*Collins v. Pension Ben. Guar. Corp.*,
  126 F.R.D. 3 (D.D.C. 1989) ................................................................................................ 1

*Eastland v. U.S. Servicemen's Fund*,
  421 U.S. 491 (1975) ........................................................................................................... 3

*Singh v. McConville*,
  187 F. Supp. 3d 152 (D.D.C. 2016) ....................................................................... 1, 2, 3, 4

*Tripp v. Exec. Office of the President*,
  194 F.R.D. 340 (D.D.C. 2000) ........................................................................................... 4

*U.S. Servicemen's Fund v. Eastland*,
  488 F.2d 1252 (D.C. Cir. 1973) ......................................................................................... 3

*United States v. Smith*,
  1990 WL 91611 (D.D.C. June 19, 1990) .......................................................................1, 5

*Watkins v. United States*,
  354 U.S. 178 (1957) ........................................................................................................... 3

**Other Authorities**

Bill Pascrell, Jr. (@BillPascrell), Twitter (Jul. 23, 2019), bit.ly/32S65Ea................................... 5

LCvR 40.5(a)(3) ................................................................................................................. 1, 3, 4

Rep. Don Beyer (@RepDonBeyer), Twitter (Jul. 23, 2019), bit.ly/2JQTfyz............................... 5

## INTRODUCTION

This litigation over the President's state tax returns is related to the pending litigation over the President's federal tax returns (No. 19-cv-1974). The plaintiff here is a defendant there, and a defendant here is the plaintiff there. Counsel are the same. The President's claims in this case (that disclosure of the President's tax returns would lack a legitimate legislative purpose under Article I and would constitute illegal retaliation under the First Amendment) are his defenses in the other case. Because the Committee's arguments for why it has a legitimate purpose for requesting the President's state returns will prove that it *lacks* a legitimate purpose for requesting the President's federal returns (and vice versa), the same judge needs to preside over both cases. Moreover, both cases will require the Court to determine interconnected questions of legislative purpose, since the TRUST Act grew out of, and was specifically designed to further, the Committee's request for the President's federal tax returns. In short, relatedness is not a close call here; these presidential tax-return cases are two sides of the same coin.

## ARGUMENT

Pending civil cases are "related" if they, as relevant here, "involve common issues of fact" or "grow out of the same event or transaction." LCvR 40.5(a)(3). When either condition is met, "'the interests of judicial economy … outweigh the fundamental interests served by the random assignment rule.'" *Singh v. McConville*, 187 F. Supp. 3d 152, 155 (D.D.C. 2016). Notably, the related-case rule states that the "cases" must be related, not that every "party" or "claim" must be related to every other party or claim. LCvR 40.5(a)(3).

The related-case rule is not demanding. Because it only requires cases to "grow out of" the same event, cases can be related even if they involve different events or raise nonoverlapping issues. *See, e.g.*, *Collins v. Pension Ben. Guar. Corp.*, 126 F.R.D. 3, 7 (D.D.C. 1989); *United States v. Smith*, 1990 WL 91611, at *1 (D.D.C. June 19, 1990). And because the rule only requires

1

"common issues of fact," cases can be related even if they involve different parties or challenge different misconduct. *See, e.g.*, *Medford v. Dist. of Columbia*, 691 F. Supp. 1473, 1476 (D.D.C. 1988); *Singh*, 187 F. Supp. 3d at 155. It is irrelevant if the parties and claims in each case ultimately require "'an individualized, case-by-case determination'"; the factual overlap alone warrants "treating the[] cases as related" because it "achieves great economies and preserves scarce judicial resources." *Medford*, 691 F. Supp. at 1476; *see Singh*, 187 F. Supp. 3d at 157 ("The fact that the Court will conduct an individual analysis … to determine whether each plaintiff is entitled to the relief he seeks does not obviate" the "judicial resources" that would be "'waste[d]'" if the cases were not related and "'another court address[ed] the[] same factual issues'"); *Assiniboine & Sioux Tribe of Fort Peck Indian Reservation v. Norton*, 211 F. Supp. 2d 157, 160 (D.D.C. 2002) ("[A]lthough differences may exist between the [two cases], there are clearly issues of fact that are common to both cases that are sufficient to [treat them as related].").

This dispute over the disclosure of the President's state tax returns to the Committee is plainly related to the one involving the disclosure of the President's federal tax returns to the Committee. To start, both cases "'involve similar parties'" and "'the same counsel.'" *Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 140 (D.D.C. 2010). President Trump is the plaintiff here and a defendant in the federal-returns case, while the Committee is the plaintiff there and a defendant in the state-returns case. That the cases also involve other parties or claims does not make them unrelated. *See Medford*, 691 F. Supp. at 1476. Accordingly, any suggestion by the New York defendants that their lack of involvement in the federal case makes the cases unrelated would be misplaced. Regardless, the President and the Committee should be the focus of the relatedness inquiry in cases such as this. *See United States v. AT&T Co.*, 551 F.2d 384, 385 (D.C. Cir. 1976).

The tax-return cases also involve "identical legal issues." *Medford*, 691 F. Supp. at 1475. In both cases, the President will argue that the Committee lacks a legitimate legislative purpose for requesting his tax returns. *See Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 n.14 (1975) (explaining that plaintiffs can raise the lack of a legitimate legislative purpose to pierce legislative immunity and affirmatively enjoin congressional requests to third-parties (endorsing *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1259-60 (D.C. Cir. 1973))); *Watkins v. United States*, 354 U.S. 178, 198 (1957) (explaining that plaintiffs can raise lack of a legitimate legislative purpose defensively to resist a congressional investigation). And in both cases, the President will vindicate his First Amendment right to be free from retaliation. *See Watkins*, 354 U.S. at 197 ("The First Amendment may be invoked against infringement of [its] protected freedoms by law or by [investigation]."). When cases, as here, involve nearly "'identical'" claims against the same party stemming from "the same 'Constitutional provisions,'" they should be deemed related because they will have "'substantial overlap in both the factual underpinning and the legal matters in dispute.'" *Singh*, 187 F. Supp. 3d at 155-56.

Aside from these broader commonalities, the tax-return cases are related because they "involve common issues of fact." LCvR 40.5(a)(3). The key factual issues in both cases will turn on *purpose*: the purpose behind the Committee's request for the federal tax returns, the purpose behind the TRUST Act, and the purpose behind the Committee's request for the state tax returns. These purposes are all interconnected. To determine the TRUST Act's purpose, the Court must first determine the Committee's purpose for requesting the federal returns. That is because the TRUST Act was passed in the wake of that request, specifically references it, and was intended to help the Committee fulfill it. *See* Compl. ¶¶54, 4. So if the President is correct that "'[t]he public record demonstrates that the animating purpose of [the Committee's request] was and remains

exposure of a political opponent's private tax information,'" Compl. ¶2, then that fact would be powerful evidence that the TRUST Act was passed for the same impermissible reason. *See Tripp v. Exec. Office of the President*, 194 F.R.D. 340, 343 (D.D.C. 2000) (treating cases as related because a determination in one case that the defendant had "'political purposes'" could be "'circumstantial evidence'" in the other).

Nor could the Court assess the Committee's purpose for requesting the President's state returns without also determining the Committee's purpose for requesting his federal returns. If the Court finds that the Committee had an illegitimate purpose for requesting the federal returns, then that finding would strongly suggest that the request for the state returns is illegitimate too. And if the Committee requests the state returns, it will remove all doubt that its rationale for requesting the federal returns (*i.e.*, studying how the IRS audits presidents) is pretextual. As Chairman Neal admitted, the Committee must be careful that its rationales for requesting the state and federal returns do not contradict, else it will "'boost the Trump administration's argument that Congress is going after his tax returns as part of a political vendetta and fishing expedition.'" Compl. ¶61. That is precisely why these cases should be deemed related and "these matters resolved by the same judge." *Autumn Journey*, 753 F. Supp. 2d at 140; *see Singh*, 187 F. Supp. 3d at 156-57 (treating cases as related because "the Court will be required to make similar factual determinations in both cases related to … the defendants' justifications for their [actions], and the defendants' discriminatory conduct and/or intent, if any").

For similar reasons, the tax-return cases "grow out of the same event or transaction." LCvR 40.5(a)(3). The key issues in both cases grow out of the Committee's request for the President's federal tax returns. That request is what the Committee is trying to vindicate in the federal-returns case. The executive branch's resistance to that request is what inspired New York to draft and

4

enact the TRUST Act at issue in this case. *See* Compl. ¶¶48, 54. And the Committee's inability to fulfill that request will be why it decides to "'turn to New York'" and request the President's state tax returns. Compl. ¶65. The tax-return cases are thus highly related given that "some of the evidence … will be the same" and both cases "concern similar conduct and overlapping time periods." *Smith*, 1990 WL 91611, at *1. "It would waste judicial resources and be nonsensical to have another court address these same factual issues" and "develop[]" the necesssary "understanding of the events and circumstances surrounding [this case]." *Assiniboine & Sioux Tribe*, 211 F. Supp. 2d at 159; *Smith*, 1990 WL 91611, at *2.

Indeed, to the Committee, the state returns and federal returns are just a "single but very extensive … investigation." *Smith*, 1990 WL 91611, at *1. Statements made by members of the Committee in the last few days provide confirmation. Representative Pascrell clearly sees these cases as related. In his view, "Congress had to sue to do oversight of Trump's corruption" in the federal case, and "now Trump is suing to block our oversight" in this case. Bill Pascrell, Jr. (@BillPascrell), Twitter (Jul. 23, 2019), bit.ly/32S65Ea. Representative Beyer agrees: "Trump's lawsuit against our committee to avoid the release of his [state] tax returns, which he promised the American people, again goes against a [federal] law which clearly states that those returns SHALL be furnished upon request." Rep. Don Beyer (@RepDonBeyer), Twitter (Jul. 23, 2019), bit.ly/2JQTfyz. The Committee's decision to accept these cases as related was correct.

## CONCLUSION

This case and Case No. 19-cv-1974 are related. Plaintiff respectfully requests that the Court overrule any objections to the contrary.

5

Dated: July 25, 2019                     Respectfully submitted,

                                                      *s/ William S. Consovoy*

William S. Consovoy (D.C. Bar #493423)
Thomas R. McCarthy (D.C. Bar #489651)
Cameron T. Norris
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
tom@consovoymccarthy.com
cam@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

*Counsel for President Donald J. Trump*