**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DONALD J. TRUMP, | |
| Plaintiff, | |
| v. | Civil Action No. 1:19-cv-2173-CJN |
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES; LETITIA JAMES, in her official capacity as Attorney General of New York State; and MICHAEL R. SCHMIDT, in his official capacity as Commissioner of the New York State Department of Taxation and Finance, | |
| Defendants. | |

**REPLY IN SUPPORT OF PLAINTIFF'S EMERGENCY
APPLICATION FOR RELIEF UNDER THE ALL WRITS ACT**

**TABLE OF CONTENTS**

Table of Authorities.................................................................................................................................ii

I.      The Committee's jurisdictional argument is not a basis for denying relief under the
        All Writs Act. ...........................................................................................................................1

II.     The Committee does not have immunity under the Speech or Debate Clause. .........................4

III.    The Court has several options for crafting equitable relief under the All Writs Act. ................8

## TABLE OF AUTHORITIES

**Cases**

*Astrazeneca Pharmaceuticals LP v. Burwell,*
  197 F. Supp. 3d 53 (D.D.C. 2016) ............................................................................. 1, 3

*Belbacha v. Bush,*
  520 F.3d 452 (D.C. Cir. 2008) ...................................................................................2

*Doe v. McMillan,*
  412 U.S. 306 (1973) ...................................................................................................4

*Doe v. McMillan,*
  566 F.2d 713 (D.C. Cir. 1977) ...................................................................................5

*Eastland v. U.S. Servicemen's Fund,*
  421 U.S. 491 (1975) .........................................................................................passim

*Fields v. Office of Eddie Bernice Johnson,*
  459 F.3d 1 (D.C. Cir. 2006) (en banc) ......................................................................5

*FTC v. Owens-Corning Fiberglas Corp.,*
  626 F.2d 966 (D.C. Cir. 1980) ...................................................................................5

*Gravel v. United States,*
  408 U.S. 606 (1972) ...................................................................................................4

*Hearst v. Black,*
  87 F.2d 68 (D.C. Cir. 1936).......................................................................................9

*Howard v. Office of Chief Admin. Officer of U.S. House of Representatives,*
  720 F.3d 939 (D.C. Cir. 2013) ...................................................................................5

*In re Brown,*
  692 F. App'x 89 (3d Cir. 2017).................................................................................2

*In re Diet Drugs,*
  282 F.3d 220 (3d Cir. 2002) ......................................................................................3

*In re Stone,*
  569 F.2d 156 (D.C. Cir. 1978) ...................................................................................3

*In re Tennant,*
  359 F.3d 523 (D.C. Cir. 2004) ...................................................................................3

*ITT Cmty. Dev. Corp. v. Barton,*
  569 F.2d 1351 (5th Cir. 1978).....................................................................................1

*Klay v. United Healthgroup, Inc.,*
  376 F.3d 1092 (11th Cir. 2004)............................................................................. 1, 2

*Lawrence ex rel. Lawrence v. Chater,*
  516 U.S. 163 (1996) ...................................................................................................2

*McGrain v. Daugherty,*
  273 U.S. 135 (1927) ...................................................................................................5

*Ogunwomoju v. United States*,
    512 F.3d 69 (2d Cir. 2008) ............................................................................2

*Penn. Bureau of Corr. v. U.S. Marshals Service*,
    474 U.S. 34 (1985) ........................................................................................3

*Powell v. McCormack*,
    395 U.S. 486 (1969) ..................................................................................2, 10

*Quinn v. United States*,
    349 U.S. 155 (1955) ......................................................................................7

*Shelton v. United States*,
    404 F.2d 1292 (D.C. Cir. 1968) ....................................................................7

*Soucie v. David*,
    448 F.2d 1067 (D.C. Cir. 1971) ....................................................................7

*Tenney v. Brandhove*,
    341 U.S. 367 (1951) ......................................................................................4

*Trump v. Comm. on Oversight & Reform of U.S. House of Representatives*,
    380 F. Supp. 3d 76 (D.D.C. 2019) ............................................................ 7, 9

*U.S. Servicemen's Fund v. Eastland*,
    488 F.2d 1252 (D.C. Cir. 1973) ............................................................passim

*United States v. Biaggi*,
    853 F.2d 89 (2d Cir. 1988) ........................................................................ 4, 5

*United States v. Brewster*,
    408 U.S. 501 (1972) ......................................................................................4

*United States v. N.Y. Tel. Co.*,
    434 U.S. 159 (1977) ...............................................................................2, 9, 10

*Watkins v. United States*,
    354 U.S. 178 (1957) ......................................................................................5

*White v. Ward*,
    145 F.3d 1139 (10th Cir. 1998) ....................................................................2

**Statutes**

28 U.S.C. §1331 .....................................................................................................3

28 U.S.C. §1651 .....................................................................................................2

28 U.S.C. §2283 .....................................................................................................3

N.Y. Tax Law §697(f-1)(2) ....................................................................................7

**Other Authorities**

Cong. Research Serv., *Congressional Access to the President's Federal Tax Returns*
    (updated May 7, 2019) ..................................................................................7

Grewal, *The President's Tax Returns* (revised July 15, 2019) ................................7

The Committee's opposition fails to join the key issues, badly misreads the cases underlying its "jurisdictional" defense, and otherwise fails to respond to—let alone rebut—the President's arguments for why equitable intervention is appropriate here. For the reasons in the President's Application, this Court should fashion relief under the All Writs Act in order to preserve its jurisdiction over the President's claims.

## I.   The Committee's jurisdictional argument is not a basis for denying relief under the All Writs Act.

The President seeks relief under the All Writs Act "'to preserve the availability of meaningful judicial review.'" App. 1 (quoting *Astrazeneca Pharmaceuticals LP v. Burwell*, 197 F. Supp. 3d 53, 56 (D.D.C. 2016)). The Committee offers *no* equitable basis for denying that relief. In particular, it does not dispute that, absent judicial intervention, the President's right to be heard in court before his state tax returns are disclosed is in jeopardy. The Committee makes a different argument altogether. The All Writs Act, in its view, simply "does not authorize relief where, as here, the Court has no jurisdiction to protect." Opp. 1. By that, the Committee means it has a meritorious claim of "absolute immunity" under the Speech or Debate Clause and, therefore, the Court should "dismiss the Ways and Means Committee from this case." Opp. 1-2. But the Committee misapprehends the nature of the President's application and the legal principles governing it.

The President is not seeking a temporary restraining order or a preliminary injunction. The purpose of the All Writs Act, enacted by the First Congress in 1789, is to enjoin "conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to a natural conclusion." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978). "Thus, while a party must 'state a claim' to obtain a 'traditional' injunction, there is no such requirement to obtain an All Writs Act injunction—it must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004); *accord Lawrence ex rel. Lawrence v.*

1

*Chater*, 516 U.S. 163, 168 (1996) (highlighting the "flexibility to this Court's longstanding approach to … remedies granted without determining the merits of the case under the All Writs Act"). "The requirements for a traditional injunction do not apply to injunctions under the All Writs Act," in other words, "because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns." *Klay*, 376 F.3d at 1100 (citing *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977)). Those concerns are present here. Absent an injunction, this case could be mooted by the Committee's unilateral acts before the Court can hear the President's claims. *See* App. 4-6.

That the Committee's defense is jurisdictional does not alter the decisional framework. Immunity is just one of many defenses that can be raised as a basis for dismissal under the Federal Rules. But, as explained, any inquiry into the merits of the parties' dispute is premature at this juncture. And, contrary to the Committee's hubristic plea, there is no authority for immediately adjudicating the immunity issue to defeat this emergency request. The Supreme Court has explained that "the Speech or Debate Clause has never been read so broadly that legislators are 'absolved of the responsibility of filing a motion to dismiss.'" *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 511 n.17 (1975) (quoting *Powell v. McCormack*, 395 U.S. 486, 505 n.25 (1969)). Accordingly, even if the Court believes that the Committee's (not-yet-filed) motion to dismiss on immunity grounds warrants expedited resolution, it should *still* fashion interim relief under the All Writs Act. "If a case presents a 'substantial' jurisdictional question, then under the All Writs Act, 28 U.S.C. §1651, a district court may act to preserve its jurisdiction while it determines whether it has jurisdiction." *Belbacha v. Bush*, 520 F.3d 452, 455-56 (D.C. Cir. 2008).

The Committee's cases are not to the contrary. Three of them involve applications under the All Writs Act to enjoin state-court proceedings. *See* Opp. 9-10 (citing *In re Brown*, 692 F. App'x 89 (3d Cir. 2017); *Ogunwomoju v. United States*, 512 F.3d 69 (2d Cir. 2008); *White v. Ward*, 145 F.3d 1139 (10th Cir. 1998)). But the reason why those applications failed was not because the state or local officials

2

claimed immunity. It was because "[t]he power granted by the All Writs Act" is "limited by the Anti-Injunction Act, 28 U.S.C. §2283, which prohibits, with certain specified exceptions, injunctions by federal courts that have the effect of staying a state court proceeding." *In re Diet Drugs*, 282 F.3d 220, 233 (3d Cir. 2002). Since the "All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute," "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Penn. Bureau of Corr. v. U.S. Marshals Service*, 474 U.S. 34, 43 (1985). That reasoning has no bearing on this dispute.

The Committee's other two cases confronted jurisdictional problems of a different kind. *See* Opp. 10 (citing *In re Stone*, 569 F.2d 156 (D.C. Cir. 1978); *In re Tennant*, 359 F.3d 523 (D.C. Cir. 2004)). Relief was unavailable under the All Writs Act in *Stone* because the movant conceded that appellate jurisdiction belonged "to the Eighth Circuit and not" the D.C. Circuit. 569 F.2d at 157. Similarly, relief was unavailable in *Tennant* because the appellant had never instituted "a proceeding of *some* kind ... before an agency or court that might lead to an appeal" in the D.C. Circuit. 359 F.3d at 529. Hence, the D.C. Circuit could not intervene to protect its "future appellate jurisdiction" via the All Writs Act or any other source of equitable authority. *Id.* at 531.

In neither case, then, was invocation of the All Writs Act inappropriate because the defendant raised a jurisdictional defense that might ultimately defeat the applicant's claim. It was inappropriate because there was no "prospective or potential" jurisdiction for the D.C. Circuit to protect. *Id.* at 529. Here, in contrast, the President has done more than "take at least the first preliminary step that might lead to ... jurisdiction in this court in the future." *Id.* He has initiated an action that clearly raises a federal question under 28 U.S.C. §1331, filed it in a proper venue, and sought appropriate relief to ensure that there is a "window for judicial review." *Astrazeneca*, 197 F. Supp. 3d at 58. Put simply, the Court is not being asked to "construe the All Writs Act to evade the Committee's Speech or Debate Clause immunity." Opp. 10. The President, quite appropriately, seeks equitable relief so the disputed

3

issues (including immunity) can be litigated to their natural conclusion instead of arbitrarily mooted by one side. The Committee's unsupported request for the Court to prematurely decide whether it has a meritorious affirmative defense should be rejected.

## II.    The Committee does not have immunity under the Speech or Debate Clause.

The Committee's jurisdictional argument is meritless anyway. The Speech or Debate Clause does not protect the Committee's request for the President's state tax returns because that request could not serve a legitimate legislative purpose.

"[T]he Speech or Debate Clause has finite limits." *Doe v. McMillan*, 412 U.S. 306, 317 (1973). "[E]verything a Member of Congress may regularly do is not … within the protection of the Speech or Debate Clause," even if done "in their official capacity." *Id.* at 313; *Gravel v. United States*, 408 U.S. 606, 625 (1972). The Clause does not "make Members of Congress super-citizens." *United States v. Brewster*, 408 U.S. 501, 516 (1972). It applies only to "purely legislative" acts. *Id.* at 512. "[T]he Clause has not been extended beyond the legislative sphere," and "[l]egislative acts are not all-encompassing." *Gravel*, 408 U.S. at 624-25. It does not protect congressional conduct that is merely "related to the legislative process"; the conduct must be "clearly a part of the legislative process—the *due functioning* of the process." *Brewster*, 408 U.S. at 516 (emphasis added). It is therefore the duty of the courts to draw the line between protected legislative acts and unprotected non-legislative acts: "'Legislatures may not of course acquire power by an unwarranted extension of privilege…. This Court has not hesitated to sustain the rights of private individuals when it found Congress was acting outside its legislative role.'" *Gravel*, 408 U.S. at 624 n.15 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376-77 (1951)).

In arguing otherwise, the Committee misleadingly quotes a Second Circuit decision for the proposition that "'the Speech or Debate Clause forbids … inquiry into acts that are purportedly legislative, "even to determine if they are legislative in fact."'" Opp. 8 (quoting *United States v. Biaggi*, 853 F.2d 89, 103 (2d Cir. 1988)). The Second Circuit was discussing the Clause's "evidentiary privilege"

4

(which limits certain kinds of discovery), not the Clause's "jurisdictional bar" (which the Committee argues requires dismissal of the suit). *See generally Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 13-14 (D.C. Cir. 2006) (en banc) (plurality op.). To determine whether the Clause requires dismissal of a lawsuit, including this one, courts *are* required to evaluate whether the challenged conduct is "in fact" legislative. *Id.* at 16; *accord Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 948 (D.C. Cir. 2013). Indeed, the Second Circuit did just that in *Biaggi*; the court analyzed the Congressman's conduct and concluded that it was not "legislative activity" protected by the Clause. 853 F.2d at 104.

For congressional investigations, courts draw the line between immune legislative activity and nonimmune nonlegislative activity by asking whether the request has a "legitimate legislative purpose." *Eastland*, 421 U.S. at 501 n.14; *accord FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966, 970 & n.8 (D.C. Cir. 1980) (explaining that Congress "receives no constitutional protection" when its request "serves no legitimate legislative purpose"). The power to inquire about private individuals is not among the "legislative powers" enumerated in Article I; it is an implied power "justified solely as an adjunct to the legislative process." *Watkins v. United States*, 354 U.S. 178, 197 (1957). Because "neither house is invested with 'general' power to inquire into private affairs," "the question" for courts is "whether it sufficiently appears that the purpose for which the [request] was [made] was to obtain information in aid of the legislative function"; if not, courts can provide "relief." *McGrain v. Daugherty*, 273 U.S. 135, 173, 176 (1927). And, again, it falls to courts to evaluate whether a legitimate legislative purpose exists. *See Doe v. McMillan*, 566 F.2d 713, 717 (D.C. Cir. 1977) (courts must "determine" whether Congress's action "as a matter of fact and law served a 'legitimate legislative need,' and was therefore within the privilege"); *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1270 (D.C. Cir. 1973) (faulting the district court for "not distinguishing between the actions within the 'legislative sphere' which are immune and those beyond, which are not" because "the line of demarcation … between "legislative" protected

acts and non-legislative non-protected conduct … may properly be inquired into by the courts"), *rev'd in other part*, 421 U.S. 491.

The Committee's primary authority, *Eastland*, is a perfect illustration. The plaintiffs in those consolidated cases challenged congressional subpoenas to their banks for their banking records. 421 U.S. at 511-12 & n.18. They sought injunctive and declaratory relief from the banks, members of Congress, congressional committees, and committee staff. *Id.* at 511 n.18, 496. In the lead case, the congressional defendants argued that the court lacked "jurisdiction" because the congressional defendants had "absolute legislative immunity so long as [their] actions … occurred during the course of valid legislative investigatory proceeding[s]." 488 F.2d at 1258. The D.C. Circuit acknowledged that courts typically "stay[] their hand when equitable relief [i]s sought by plaintiffs who allege[] that pending or threatened actions by committees of Congress would result in a violation of their constitutional rights." *Id.* at 1259. But it concluded that it had "the power, either by injunction or declaratory judgment, to stay the issuance … [on] a third party of a subpoena authorized by a congressional committee." *Id.* Because the subpoena was directed at the plaintiff's bank, not the plaintiff itself, the plaintiff could not challenge the subpoena "by simply refusing to honor [it]," nor could the plaintiff "force the bank's uninvolved officials to run the risk of contempt." *Id.* at 1260. Equitable relief was needed because "the plaintiffs [had] no alternative means to vindicate their rights" and the court's "refusal to intervene" would "amount to a denial of the plaintiffs' rights." *Id.* at 1260 (emphasis omitted). The Supreme Court agreed. The lower courts "properly entertained this action initially," it explained. 421 U.S. at 501 n.14 (endorsing 488 F.2d at 1259-60). Without preemptive equitable relief, "compliance by the third person could frustrate any judicial inquiry" into "whether a legitimate legislative purpose is present"—the one claim that plaintiffs can raise in this context because it defeats legislative immunity. *Id.*

True, legislative immunity is not defeated simply because the plaintiff alleges that Congress violated the Constitution. Opp. 6. But the lack of a legitimate legislative purpose is different; plaintiffs can raise this allegation in a suit for affirmative equitable relief because the claim, if proven, defeats legislative immunity. *See Eastland*, 421 U.S. at 501 n.14. Nor does a challenge to the Committee's legitimate legislative purpose require the court to evaluate the Committee's hidden "motives." Opp. 6. Purpose and motive are not the same. The Committee's purpose "must be examined to ascertain whether it is within the broad investigative authority of Congress," *Shelton v. United States*, 404 F.2d 1292, 1297 (D.C. Cir. 1968), and "courts can consider what Congress has said publicly" to make that determination, *Trump v. Comm. on Oversight & Reform of U.S. House of Representatives*, 380 F. Supp. 3d 76, 92 (D.D.C. 2019).

Lack of a legitimate legislative purpose is the one claim that the President raises against the Committee here. Specifically, before the Committee can submit a written request under the TRUST Act for the President's state tax returns, it must have a legitimate legislative purpose. Compl. ¶¶69-72; *see Quinn v. United States*, 349 U.S. 155, 161 (1955) ("[T]he power to investigate … cannot be used to inquire into private affairs unrelated to a valid legislative purpose."); *Soucie v. David*, 448 F.2d 1067, 1075 n.27 (D.C. Cir. 1971) ("The chief limitation on congressional inquiry is that it must be exercised for valid legislative purposes"); Grewal, *The President's Tax Returns* 18 (revised July 15, 2019), bit.ly/2SHsYG1 ("[C]ongressional requests for tax return information must fulfill a legitimate legislative purpose."). Both Congress and New York agree. *See* Cong. Research Serv., *Congressional Access to the President's Federal Tax Returns* 2-3 (updated May 7, 2019) (explaining that "a request by a tax committee … to provide tax return information of the President" "must further a 'legislative purpose'"); N.Y. Tax Law §697(f-1)(2) (requiring the Committee to certify that the "reports or returns have been requested related to, and in furtherance of, a legitimate task of the Congress"). The Committee could not possibly have a legitimate legislative purpose. As Chairman Neal once conceded:

"We don't have jurisdiction over New York taxes." Compl. ¶61. Thus, the Committee's request is not protected by legislative immunity, and this Court will have jurisdiction over every aspect of this case.

**III.     The Court has several options for crafting equitable relief under the All Writs Act.**

To be sure, granting equitable relief against a committee of Congress is a serious matter. (So is allowing a coordinate branch to obtain a sitting President's private tax information without giving him any opportunity for judicial review.) But the President is entitled to that relief, for the reasons just given. And this Court has many options for crafting equitable relief that accommodates the concerns of all involved.

To begin, the President seeks only *temporary* relief against the Committee. The Court's order would not prevent the Committee from requesting the President's state tax returns; it would simply require the Committee to notify the Court first and give the President a chance to raise his claims in a (likely expedited) judicial proceeding. (The Committee's resistance to this minimal requirement— and its insistence that no court could stop it from requesting records that its Chairman once admitted it had no "jurisdiction" over, *see* Opp. 8—only proves the urgency of the President's application.) This temporary, interim relief is appropriate. In *Eastland*, for example, the D.C. Circuit twice granted preliminary relief against members of Congress. *See* 488 F.2d at 1256-57. It stayed enforcement of a committee's subpoena, explaining that "[t]his court affords deference to committees of Congress" but "the issues involved … are of such significance that they require at least the kind of consideration and deliberation that would be provided by the procedure of a hearing on an application for [a preliminary] injunction." *Id.* at 1256. So too here.[1]

_____

[1] While the Supreme Court reversed the D.C. Circuit's final decision on the merits, it never reviewed or criticized the D.C. Circuit's grants of interim relief. Thus, those parts of *Eastland* continue to bind this Court. In fact, the Supreme Court *praised* the D.C. Circuit's handling of the preliminary issues, emphasizing the need to avoid the possibility that "compliance by the third person could frustrate any judicial inquiry" into "whether a legitimate legislative purpose is present." 421 U.S. at 501 n.14. The only way to avoid frustrating that inquiry here is to grant the President's application under the All Writs Act.

But if this Court still has reservations, it could fashion other forms of relief. For example, the Court could enjoin the New York defendants, instead of the Committee. The Court would order the New York defendants to notify the Court if the Committee submits a written request for the President's state tax returns and to not produce the returns until the President has an opportunity to be heard on the merits. The All Writs Act allows courts to preserve their jurisdiction by enjoining individuals who are "not parties to the original action or engaged in wrongdoing," much less codefendants who are also before the Court. *N.Y. Tel.*, 434 U.S. at 174. And enjoining the target of a congressional request is an appropriate way to avoid concerns about legislative immunity. *See Eastland*, 488 F.2d at 1256 (explaining that any concerns about "jurisdiction" were misplaced because one of the defendants was the "party to whom plaintiffs have entrusted information"); *Hearst v. Black*, 87 F.2d 68, 71 (D.C. Cir. 1936) (explaining that "if a Senate Committee were to attempt to force a telegraph company to produce telegrams not pertinent to the matters the committee was created to investigate, the company could be restrained" by the customer).[2]

Or, this Court could enter what amounts to a declaration requiring the Committee to provide the requested notice and opportunity to litigate. The Supreme Court "has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate," it has treated the Act as a "source of procedural instruments designed to achieve the

---

[2] Should the Court so require, the President will renew his application under the All Writs Act to direct it against the New York defendants. But that would be a waste of judicial and party resources. In that application, the President would press the *same* argument he is making here—namely, that the Committee's request would lack a legitimate legislative purpose. Furthermore, it is near certain that the Committee would oppose that application; and it is equally clear that, if the Committee were dismissed from this case, it would intervene to voluntarily become a defendant, since the New York defendants have no stake in defending Congress's authority under Article I of the Constitution. That is what the Oversight Committee has done in similar litigation. *See, e.g., Trump*, 380 F. Supp. 3d at 88 ("Plaintiffs consented to the Committee's intervention as a defendant in this matter and agreed to dismiss Chairman Cummings and Kenny as defendants."). Given that all of the legal and factual issues have now been briefed, and in light of the wide latitude that the All Writs Act affords the Court to issue equitable relief against parties and non-parties alike, the Court should order whatever relief it deems appropriate without requiring the President to replead.

rational ends of law," and it "has consistently applied the Act flexibly." *N.Y. Tel.*, 434 U.S. at 172-73 (cleaned up). This Court, moreover, has held that courts can grant appropriate relief "in a suit against a Member of the Congress or a Member of the Executive Department by a declaratory judgment." *Eastland*, 488 F.2d at 1270. A "'request for declaratory relief may be considered independently of whether other forms of relief are appropriate,'" and "[i]t is not doubted" that the Committee would adhere to a formal order from this Court to not take steps that would deprive the President of his day in court. *Id.* at 1270-71 (quoting *Powell*, 395 U.S. at 517).

In short, this Court has many options for preserving its jurisdiction over this case and ensuring that the President receives the meaningful judicial review to which he is entitled before his state tax returns are disclosed to a committee of Congress. The only inappropriate course is denying the President's application altogether.

Dated: July 29, 2019

Respectfully submitted,

  s/ *William S. Consovoy*

William S. Consovoy (D.C. Bar #493423)
Thomas R. McCarthy (D.C. Bar #489651)
Cameron T. Norris
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
tom@consovoymccarthy.com
cam@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

*Counsel for President Donald J. Trump*