```
 1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3     Donald J. Trump,                  ) Civil Action
                                         ) No. 19-CV-2173
 4                    Plaintiff,         )
                                         ) MOTION HEARING
 5     vs.                               )
                                         ) Washington, DC
 6     Committee on Ways and Means,      ) July 29, 2019
       et al.,                           ) Time:  4:00 p.m.
 7                                       )
                      Defendants.        )
 8     _____

 9                  TRANSCRIPT OF MOTION HEARING
                          HELD BEFORE
10             THE HONORABLE JUDGE CARL J. NICHOLS
                  UNITED STATES DISTRICT JUDGE
11     _____

12                   A P P E A R A N C E S

13     For the Plaintiff:       William S. Consovoy
                                CONSOVOY McCARTHY, PLLC
14                              1600 Wilson Blvd.
                                Suite 700
15                              Arlington, VA 22209
                                (703) 243-9423
16                              Email: Will@consovoymccarthy.com

17     For Defendant
         U.S. House of Rep.:    Douglas N. Letter
18                              Brooks McKinly Hanner
                                Josephine T. Morse
19                              Megan Barbero
                                Todd Barry Tatelman
20                              Sally Clouse
                                U.S. HOUSE OF REPRESENTATIVES
21                              Office of General Counsel
                                219 Cannon House Office Building
22                              Washington, DC 20515
                                (202) 225-9700
23                              Email: Douglas.letter@mail.house.gov
                                Email: Brooks.hanner@mail.house.gov
24                              Email: Jodie.morse@mail.house.gov
                                Email: Megan.barbero@mail.house.gov
25                              Email: Todd.tatelman@mail.house.gov
                                Email: Sarah.clouse@mail.house.gov
```

1    For Defendants
       James and Schmidt:        **Andrew Stuart Amer** (By Phone)
2                                OFFICE OF NEW YORK ATTORNEY GENERAL
                                 28 Liberty Street
3                                New York, NY 10005
                                 (212) 416-6127
4                                Email: Andrew.amer@ag.ny.gov

5    _____

6    Court Reporter:            Janice E. Dickman, RMR, CRR, CRC
                                 Official Court Reporter
7                                United States Courthouse, Room 6523
                                 333 Constitution Avenue, NW
8                                Washington, DC  20001
                                 202-354-3267
9
                                     *   *   *
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              THE COURTROOM DEPUTY:  Civil action 19-2173.  Donald

2      J. Trump versus Committee on Ways and Means, United States

3      House of Representatives, et al.

4              Counsel, please come forward and identify yourselves

5      for the record.

6              MR. CONSOVOY:  Good afternoon.  Your Honor.  Will

7      Consovoy appearing on behalf of the plaintiff.

8              THE COURT:  Mr. Consovoy, good afternoon.

9              MR. LETTER:  Good afternoon, Your Honor.  Douglas

10     Letter, general counsel of the House of Representatives.  And I

11     have with me today Deputy General Counsel Todd Tatelman,

12     Associate General Counsel Megan Barbero, Associate General

13     Counsel Josephine Morse, Assistant General Counsel Brooks

14     Hanner and Assistant General Counsel Sally Clouse.

15             THE COURT:  Good afternoon, Mr. Letter.

16             MR. LETTER:  Thank you.

17             THE COURT:  We're obviously here on Plaintiff Trump's

18     emergency application for relief under the All Writs Act.

19             MR. AMER:  Your Honor --

20             THE COURT:  Oh, yes.  Thank you.

21             MR. AMER:  Yes.  Good afternoon, Your Honor.  Andrew

22     Amer for the New York Attorney General and the Commissioner for

23     New York State Department of Taxation and Finance.

24             THE COURT:  Thank you, Mr. Amer.  Appreciate you

25     appearing by teleconference.  We received your letter and I'll

1    want to address that at some point during the hearing.  But,

2    rest assured, we got it and we reviewed it.

3             MR. AMER:  Thank you very much.

4             THE COURT:  Of course.

5             Mr. Consovoy, could we start with you, please.  Why

6    don't you -- why don't we treat this, at least at the

7    beginning, as a regular argument.  Start as if, right, you're

8    arguing a motion.  I'll obviously have questions for you and

9    Mr. Letter, some factual, some legal.  But, why don't you go

10   ahead and start and I'll interrupt you as necessary.

11            MR. CONSOVOY:  Thank you.  And thank you for taking

12   the time to see us on such an expedited basis.

13            May it please the Court, as we said in our papers,

14   the President found himself in an intolerable situation.  On

15   the one hand, he believes the underlying law and any request by

16   the Committee to take advantage of the law would violate his

17   legal rights.  At the same time, he recognizes that no request

18   has yet been made, and it could be met with a claim that any

19   litigation on the merits would be premature.

20            And we looked, as any good lawyer does, for a

21   solution for that problem, and we found it in the All Writs

22   Act.  And we think the *Astrazeneca* case from Judge Moss in this

23   court provides a useful, although not identical example, to be

24   sure, for how to conceptualize both the problem and, we

25   believe, the solution.

1          We had, as was in the letter received by Mr. Amer

2     today, he attached to the email, which shows that we endeavored

3     to work through this with the Committee.  Because we hoped that

4     we could stipulate here and not force the Court into what looks

5     like a rather important, constitutionally weighted hearing.

6          I don't understand why the parties cannot agree.  All

7     the President wants is his day in court.  He may win, he may

8     lose, he may get the relief he seeks, he may not; it may have

9     to happen quite quickly, but get his day in court.

10          THE COURT:  I appreciate that, and I appreciate the

11     potential mootness concerns you raised, and also the fact that

12     as it presently exists, this case isn't quite ripe.  I agree

13     with that completely.  The equitable relief, however, that you

14     have requested, at least as it's framed, would run only against

15     the Committee.  Why didn't you seek All Writs Act relief

16     against the state defendants?

17          MR. CONSOVOY:  In hindsight, perhaps we should have

18     and could have.  I think there were reasons why we didn't.

19     Initially, the contingent actor here is the Committee.  So,

20     New York has passed a law; if they receive the request and it

21     meets the criteria, they grant it.  The actor who has not yet

22     stated its intentions and the actor who would create a ripe

23     case for controversy is the Committee.

24          THE COURT:  But if the Committee were to make a

25     request, full stop, the case would not be moot, correct?

```
1              MR. CONSOVOY:  (Nods head.)

2              THE COURT:  And the President, I take it, under your

3      view would not suffer any harm from a request, full stop;

4      correct?

5              MR. CONSOVOY:  That is correct.

6              THE COURT:  So one thing I'm struggling with,

7      therefore, is the appropriateness of ordering a coordinate

8      branch of government not to make a request when, as you just

9      mentioned, the request would neither moot the matter nor cause

10     harm to the President.  And as it's presently framed, at least

11     in some of your papers, that's the relief that you would like

12     me to enter, which is an injunction prohibiting the Committee

13     from making the written request.  And you understand my

14     concerns about doing that.

15             MR. CONSOVOY:  I do.  And I think there are several

16     steps that we could take to help ameliorate those concerns.

17     One is -- I think that's the broadest way to frame.  And, of

18     course, when we're seeking relief, we have to protect ourselves

19     and seek all the stages of relief.  The Court could simply

20     require the Committee to notify the Court when it makes the

21     request and then enjoin New York from not -- from not granting

22     it.  So, to the extent that there is relief sought presently

23     against the Committee, notification could go a long way to

24     solving the problem.

25             But let me address your more fundamental concern,
```

1    which I understand, which is:  We could seek this against

2    New York, and as we noted in our reply, much to New York

3    counsel's dismay, I understand, we asserted an alternative

4    remedy.  Now, I would look -- I would point the Court -- and

5    let me just say, we have no objection to New York being heard,

6    we have no objection to New York briefing this, we have no

7    objection to the Court requiring us to file a new application,

8    which I think at equity we could simply do.  This is not a one

9    and done situation.

10         So, all of that can and should happen.  I think what

11   we were trying to say in the footnote, was it's not clear how

12   much more is going to be added, since I don't think New York is

13   going to stand up and make legitimate legislative purpose

14   arguments on the Committee's behalf.  But, we have no dispute

15   with that.

16         THE COURT:  Well, we actually have no idea, sitting

17   here, what arguments, if any, New York might present; whether

18   under its own statute, whether jurisdictional, we just don't

19   know.  And so, to some extent, I'm concerned that your

20   alternative suggestions in the reply brief aren't, frankly,

21   fully fleshed out through the adversarial process because, for

22   all I know, New York is going to take the position that I don't

23   have jurisdiction over the claims against it, or that there's

24   other -- some other problem with those claims.  And I sure

25   don't want to rush headlong into equitable relief, not having

1    had at least that question fleshed out.

2              But while we're on New York, I want to ask something

3    that gets to the ultimate litigation of this case, however we

4    resolve these preliminary questions, and that is whether you

5    intend to argue something I don't think is in your complaint,

6    and that is the provision of the -- of Mr. Trump's New York

7    state tax returns would be inconsistent with the New York

8    statute.

9              MR. CONSOVOY:  Correct.  So -- well, we -- it's

10   hypothetical now because --

11             THE COURT:  Yes.

12             MR. CONSOVOY:  -- the Committee has not made the

13   request.  There are conditions that New York imposes upon the

14   Committee to make that request.

15             THE COURT:  Correct.

16             MR. CONSOVOY:  I don't want to take us too far

17   afield.  There's also another case on the federal tax returns,

18   as Your Honor knows.  And this statute requires that a request

19   be made to the treasury under that statute.

20             THE COURT:  Which, as I understand it, that has

21   happened.

22             MR. CONSOVOY:  That has happened.

23             THE COURT:  Correct.  The request, as I understand

24   it, the New York state statute requires -- I'll put it -- the

25   procedural step of there having been a request to the treasury

1   department for the federal tax returns, that has happened.

2          MR. CONSOVOY:  Yes.

3          THE COURT:  Correct.  There then must be a request by

4   a qualifying person -- here, presumably the Committee

5   chairman -- to New York for the state tax returns.  And there

6   are certain criteria that the New York law imposes -- or,

7   requirements that the New York law imposes on that request

8   before, presumably, it can be responded to.

9          And my question is:  I didn't see in your

10  complaint -- put it this way -- a count alleging, even in a

11  presumptive or preliminary way, that the provision of the

12  information requested would be inconsistent with the New York

13  statute.  You have a First Amendment argument, but you don't

14  have a New York law-based argument.

15         MR. CONSOVOY:  Correct, with one small exception,

16  which we couldn't have put in our complaint.  If, in that other

17  case, the request of the treasury is invalidated, it raises an

18  interesting questions that we haven't pursued yet, whether that

19  would defeat one of the conditions, conditions to -- under the

20  New York law.

21         THE COURT:  As a matter of New York law.

22         MR. CONSOVOY:  It might.  It might.

23         THE COURT:  It might.  No, no, I understand the

24  point.

25         MR. CONSOVOY:  So it couldn't have made that argument

1    yet --

2              THE COURT:  I understand.

3              MR. CONSOVOY:  -- because it hasn't happened yet.

4              THE COURT:  The one argument you do make, or at least

5    you press to some extent, is that the Committee could not have

6    any legitimate legislative purpose in seeking Mr. Trump's state

7    tax information.  The reason I'm struggling with that argument,

8    at least -- and I understand that this is very preliminary --

9    is because we don't know what the request will seek, nor do we

10   know yet what the reasons that the Committee might articulate

11   for the request are.

12             And so, I understand that there's a ripeness problem

13   here, but you seem to be arguing -- and I'm skeptical of the

14   argument -- that there is no situation in which a request could

15   be made that would be permissible.  Or, at least it sure seems

16   to me that I need to know more before I could agree with you

17   that a request by the Committee would exceed its Article I

18   power.

19             MR. CONSOVOY:  So, we took the chairman at his word

20   when the chairman said publicly that the request was not being

21   made because they lacked jurisdiction over state tax issue.  So

22   we understand there's no judicial estoppel, but we took that

23   and we pressed that issue in our complaint.

24             We don't disagree with Your Honor that it is early,

25   quite early to try to sort out if reasons that have not yet

1    been offered are sufficient to sustain a legitimate legislative

2    purpose.  Just as in *Astrazeneca*, no one knew what the reasons

3    that the FDA was going to give, or even grant the generic, the

4    new drug application.  They didn't know -- they didn't have the

5    abbreviated label, they didn't have the basis.  The FDA hadn't

6    even acted on the citizen petition yet.  Nobody knew anything.

7    But the concern about mootness drove Judge Moss to issue the

8    kind of order we're seeking here.

9             So I appreciate the Court's skepticism and

10   uncertainty about the nature of our claims against the

11   Committee and whether they would be meritorious at the end of

12   the day.  But that is, as Your Honor noted, premature to where

13   we are today and what we seek.

14             THE COURT:  I guess I should say, I don't want anyone

15   to read this as skepticism either way about the ultimate

16   litigation of a request.  It just seems to me that you've made

17   some arguments that would require almost facial challenge-like

18   conclusions, if I were to reach them, about whether there are

19   any circumstances in which the Committee could pose a

20   legitimate request.  I'm just not prepared to go there,

21   precisely, as you said -- and I will ask Mr. Letter -- we don't

22   have the facts yet relating to why the requests are being asked

23   for, frankly, which tax returns are being sought, the stated

24   purposes and the mechanism under which the requests are being

25   made.  So for all those reasons I do think there's a

1    significant ripeness concern.  But I also tend to agree with

2    you that there's a mootness problem.

3           I have one last question for you and then I'll turn

4    to Mr. Letter.  Would you, would plaintiff have any objection

5    to this case essentially having the parties realign themselves

6    in the way that they did in the case in front of Judge Mehta?

7    That is to say, given the speech or debate clause, absolute

8    immunity arguments that I'm sure Mr. Letter will press very

9    shortly, allowing them to be dismissed or withdraw as a

10   defendant, but still intervene as an intervenor-defendant to

11   press whatever claims they would like to press alongside

12   New York.

13          MR. CONSOVOY:  Conceptually, I do not think I would

14   object.  I would like to consider it a moment.  But we had some

15   very specific language that we agreed to in that litigation

16   about the ability to secure ultimate relief in that case.  If

17   we could get to agreement on the availability of relief -- in

18   other words, assuming that the intervenor would honor an

19   injunction or a declaration from this Court, as an intervenor-

20   defendant, I can't -- you know, I don't believe I would have

21   any objection to that at all.  The issue is relief.  We

22   don't -- we're not really hung up on the alignment of the

23   parties.

24          THE COURT:  I understand.  Thanks, Mr. Consovoy.

25          Mr. Letter.

```
 1              MR. LETTER:  Thank you, Judge Nichols.  Do you want
 2       me to start with your question --
 3              THE COURT:  Actually, I have some fairly specific
 4       questions for you, some of which relate to just the state of
 5       play.
 6              MR. LETTER:  Certainly.
 7              THE COURT:  Maybe we could start there, and that will
 8       probably cause you to pivot to your arguments.
 9              MR. LETTER:  Sure.
10              THE COURT:  First, I understand that as of the date
11       of the complaint, and certainly the application for the writ,
12       that no written request had been made by the Committee chairman
13       to the New York defendants.  Is that still the case?
14              MR. LETTER:  Yes, Your Honor.
15              THE COURT:  Is it your position that such a written
16       request could be made even while the House is in recess?  Which
17       I understand lasts until September 9th.
18              MR. LETTER:  Your Honor, I would like to consult my
19       colleague for just a moment, please.
20              THE COURT:  Of course.
21              (Pause.)
22              MR. LETTER:  Your Honor, that's a question of Ways
23       and Means Committee rules.  Mr. -- Deputy Mr. Tatelman and I
24       believe that the chairman could act, even though the House is
25       in recess.  We're not aware of anything in the Committee rules
```

1      that would prevent him from acting on behalf of the Committee.

2                THE COURT:  So I take it that the implication of that

3      response is that the chairman could make a written request to

4      New York without a Committee vote?

5                MR. LETTER:  That's correct, Your Honor.

6                THE COURT:  And is it also your position that the

7      chairman would not have to give any notice, either to the

8      plaintiff or to the Court, before making such a request?

9                MR. LETTER:  That's correct, Your Honor.  Certainly

10     the plaintiff would only be if the statute -- maybe New York

11     would have to make it.  But we don't read anything in the

12     statute that requires either the Ways -- the chairman of the

13     Ways and Means Committee or New York to give notice to

14     Mr. Trump.

15               THE COURT:  Is it your position that -- I'll ask it

16     two ways, because I understand you represent just the

17     Committee.  Is it your position that -- I'll start with

18     New York -- that New York could produce the records immediately

19     after receiving the written request?

20               MR. LETTER:  My understanding of New York law is --

21     and -- but when I say my understanding, I've read the law,

22     that's really it.  My understanding is yes.  And I don't want

23     to put him on the spot, but I suggest you ask Mr. Amer if he

24     could answer that.  But we're not aware of any reason why there

25     would be any delay.

1          THE COURT:  Let me ask the question, as I suggested I

2     would, from the Committee perspective is there any reason that

3     you know of that the Committee couldn't request that the

4     records be produced immediately upon receipt of the request?

5          MR. LETTER:  There's no reason at all why we could

6     not ask that, no.  That would certainly be --

7          THE COURT:  Is there any reason -- again, focusing on

8     the committee for a second --

9          MR. LETTER:  Certainly.

10          THE COURT:  -- that the Committee couldn't at least

11     ask, in the written request, that New York not provide

12     Mr. Trump or, frankly, the Court, with notice before producing

13     records responsive to the request?

14          MR. LETTER:  I'm not aware of any reason why we

15     couldn't ask that.  It would be an odd thing.  I'm not aware

16     that -- as we know, this wouldn't be a subpoena from the

17     Committee.  It's not the thing we would normally do in that

18     context.  So I'm not aware of any reason that we couldn't do

19     it.  I don't know of any reason.

20          THE COURT:  So now -- so I appreciate those answers.

21     Do you agree -- this goes more to a fundamental question that's

22     in front of me:  Do you agree with the plaintiff that if the

23     records, whatever they are, the requested records are produced

24     by New York to the Committee, then this case becomes moot?

25          MR. LETTER:  I believe so, Your Honor.  There may

1    be -- taking that I've answered you, I believe so.  I could

2    envision maybe an argument by Mr. Trump, if the Committee has

3    him maybe coming in and -- he couldn't do it in light of the

4    Speech or Debate Clause, but if you got around that, seeking

5    some sort of order that the Committee couldn't use them

6    anymore, or dispose of them, or something like that.  For

7    example, I lost --

8            THE COURT:  I'm thinking of the complaint as it's

9    currently framed, which seeks declaratory and injunctive relief

10   relating to the request for the information and the provision

11   of the information.

12           MR. LETTER:  Right.  That's what this case seeks.

13   Yes.

14           THE COURT:  And you agree that if New York were to

15   produce the information to the Committee, the complaint and the

16   case as its currently framed would be moot?

17           MR. LETTER:  Yes, Your Honor.

18           THE COURT:  So now let's get to the meat of your

19   argument.  Am I right in reading your papers that your only

20   argument in opposing the requested relief is that the Committee

21   has absolute immunity from the suit under the Speech or Debate

22   Clause?  That is to say, you're not otherwise arguing that the

23   Court lacks Article III jurisdiction or subject matter

24   jurisdiction, or any other argument; the only argument that you

25   have presented today for why the relief would be inappropriate

1    is because the Committee has absolute immunity from suit here?

2            MR. LETTER:  Yes, Your Honor.  If for some reason the

3    case moved forward, maybe we would be making other arguments

4    later.  But otherwise, you're absolutely correct.

5            THE COURT:  And I think the corollary to that is you

6    agree -- let's reserve on the question of Speech or Debate

7    Clause, absolute immunity.  You agree that but for that

8    immunity, the President has satisfied the traditional

9    requirements under All Writs Acts jurisprudence to be able to

10   enter injunctive relief in aid of its own jurisdiction, or at

11   least to not lose jurisdiction through some event that would

12   moot the case?

13           MR. LETTER:  That's correct, Your Honor.

14           THE COURT:  So now I think I've teed us up.  You have

15   your absolute argument, immunity argument.  Why don't you go

16   ahead and start, and I have a number of questions about it.

17           MR. LETTER:  Great.  And I know you will, please

18   interrupt me whenever you feel like it.

19           THE COURT:  I will.

20           MR. LETTER:  We've now had a golf analogy and

21   basketball analogy, I'm not sure --

22           THE COURT:  Pick the former.

23           MR. LETTER:  Okay.  The Speech or Debate Clause is

24   constitutionally jurisdictional.  We provided you with a brief

25   that explains how the Supreme Court and the D.C. Circuit have

1   made this point very clear.  The *Eastland* decision from the

2   Supreme Court in particular, I believe it's footnote 17, makes

3   clear that it's -- maybe a later footnote -- the Supreme Court

4   seemed quite disturbed by the fact that the lower courts had

5   stepped in and delayed Congress from doing its business.  And,

6   therefore, it said that there should be very speedy resolution

7   of the Speech or Debate Clause immunity issue.

8          THE COURT:  But, Mr. Letter, on the procedural

9   question, in *Eastland*, as I understand it, the District Court

10  declined to enter a TRO.  That was a challenge to, as I recall,

11  a subpoena that had issued and the plaintiff sought to enjoin,

12  essentially, enforcement of the subpoena by the Committee and

13  Committee members, and went in and asked the District Court to

14  enjoin, on a temporary basis, the enforcement of the subpoena.

15  District Court declined to grant that TRO and the D.C. Circuit

16  held that that was wrong, that the District Court in fact

17  should have stayed the litigation -- sorry, sorry, the District

18  Court should have stayed -- I'll use that word -- enforcement

19  of the subpoenas to allow the full and appropriate litigation

20  of the underlying matter.

21          So -- and then the Supreme Court, in footnote 14 of

22  *Eastland* essentially says:  The lower courts did it right here.

23  They exercised jurisdiction at the beginning, even though

24  ultimately we, the Supreme Court, are concluding there wasn't

25  jurisdiction under absolute immunity purposes.  Which suggests

1    to me that the Supreme Court in *Eastland* endorsed a

2    take-it-slow approach, don't do anything to moot the case, even

3    though there may very well be a meritorious absolute immunity

4    argument at the end of the rainbow.  Why isn't that this case?

5              MR. LETTER:  It's -- couple of answers, Your Honor.

6    First is you now have in front of you the decision in *Eastland*,

7    the D.C. Circuit's decision in *McSurely*, the D.C. Circuit's

8    decision in *Rangel*, all of which we cited in our brief.

9              These cases make absolutely clear that this -- there

10   is a congressional authority to engage in investigation, to

11   send out requests for information, and that that is within the

12   Speech or Debate Clause.  *Eastland* and *McSurely* make that point

13   exactly.

14             So, the difference is you have case law, two

15   binding -- two courts that are binding on you that are

16   absolutely clear on the points here.

17             THE COURT:  But I think, I must say, with respect, I

18   think you overstate the absolute immunity; at least the scope.

19   I agree completely that the courts have been very clear that

20   where the Speech or Debate Clause applies, the immunity is

21   absolute.  The question is, where it applies.

22             MR. LETTER:  Right.

23             THE COURT:  And it seems to me that the courts have

24   said there are two related inquiries that have to occur.  The

25   first is, has the entity on congressperson or committee engaged

1    in a legislative act, something called the Legislative Act.

2    And the second is, are those acts within the legitimate

3    legislative sphere?  That sounds a lot to me, that second prong

4    in particular, like what's going on right now in the D.C.

5    Circuit in the House Oversight Committee litigation, and the

6    question of whether -- particularly what requests for

7    information are within the legitimate legislative sphere

8    because -- and I don't want to prejudge either that case or

9    this one, because there has to be something about the request

10   that allows a court -- and by the way, there's no doubt that

11   the courts are permitted to police this question, I think,

12   under the cases -- but that allows a court to conclude what's

13   sought at least has some connection to a legitimate legislative

14   purpose.

15        The problem here, as I see it, is we don't know what

16   the purpose of the request would be.  No one, to my knowledge,

17   has articulated why a request for President Trump's New York

18   state tax returns would be propounded, the reason why and the

19   legitimate legislative purpose for doing so.  So how can I

20   conclude, without knowing that, that the Committee has absolute

21   immunity?

22        MR. LETTER:  Your Honor, thank you so much for

23   summing it up and giving us a window into your current

24   consideration.  This is absolutely the heart of this matter.

25   And I believe that Mr. Consovoy is mixing up two distinct

1    concepts.

2          The concept, as we read *Eastland* and *Rangel*, is the

3    question you have to answer is, is this in the nature of a

4    legislative act?  And that, again, there can be no doubt

5    because *Eastland* and *McSurely* already answer that question.

6    They say sending out requests for information --

7          THE COURT:  Does it depend on how -- so, two

8    questions:  Does it depend on how the request is made?  What if

9    the Committee Chairman sent an email to New York state, would

10   that be sufficient?  Does that make it a legislative act?

11         MR. LETTER:  Absolutely, Your Honor.  If it's

12   requesting -- I think it was *McSurely*, I believe, there were

13   conversations with a federal prosecutor and investigators,

14   conversations by the member with them.  And the court said that

15   was covered.  So, no -- and, maybe, yes.

16         Any inquiry by legislative body -- and, clearly, it's

17   carrying out -- it's doing this in its legislative capacity.  I

18   mean, Chairman Neal isn't saying, I'm personally very curious

19   about this, I've always wondered or something, that's not

20   what's going on here.  And the suit is, after all, against

21   Committee.  And so it is -- again, I don't think you can read

22   *Eastland* or *McSurely* any way except that this is, therefore,

23   within the legislative activity.

24         THE COURT:  And so your view is, so long as it is

25   something that looks like a legislative act, that ends the

1   inquiry, and a court cannot or need not inquire into whether

2   there's a legitimate legislative purpose associated with the

3   request?

4            MR. LETTER:  That's correct, Your Honor, because --

5            THE COURT:  I'm talking about just for Speech or

6   Debate Clause immunity.  I recognize other cases may not raise

7   that question.

8            MR. LETTER:  You're exactly right.  For instance, in

9   both *Eastland* and, I think, *Rangel* says very clearly the

10  question may even be unconstitutional.  It may be illegal, it

11  might be criminal.  That's how far the courts have gone, and

12  said that doesn't matter, it's not for the courts at that point

13  to say this is a legitimate or a correct thing to do.

14  Remember, it could be unconstitutional for that inquiry to be

15  made, it's still covered by Speech or Debate.

16            THE COURT:  So let me imagine, hypothetically, that

17  the Committee issued a subpoena to President Trump's elementary

18  school.  Okay?  One could not conceive of any reason that the

19  Ways and Means Committee would need information from President

20  Trump's elementary school, but it's a subpoena.  And stipulate

21  for me that the Committee doesn't and can't articulate any

22  legislative purpose for that subpoena.  In your view, the

23  President could not sue the Committee?  He could only sue the

24  elementary school to enjoin its compliance with the subpoena?

25            MR. LETTER:  Very difficult hypothetical.  I believe

1     the answer is yes.  But, this case is easier.

2             THE COURT:  How can this case be easier?  There is no

3     stated legislative purpose.  I don't know why the Committee

4     would or would not ask for the information.

5             MR. LETTER:  I misunderstood your question.  I

6     thought you said there couldn't conceivably be any legislative

7     purpose.  Here there easily are conceivable legislative

8     purposes, which I'll give you in a moment.  I just, here,

9     wanted to make the second half of the point.

10            The test that Mr. Consovoy wants you to engage in is

11    the test for determining if subpoenas are valid and, therefore,

12    should be enforced, or if somebody's been criminally convicted

13    for not complying with it, should they -- should the conviction

14    be upheld.  That is absolutely clear in the Supreme Court case

15    law, that that is the proper inquiry when Congress itself has

16    gone to court.

17            So when Congress has said we're trying to enforce a

18    subpoena, we've come to you to ask you to do it, then the

19    Speech or Debate Clause does not apply and part of the inquiry

20    then that you would go through in you determining whether the

21    subpoena is going to be enforced is --

22            THE COURT:  I'm glad you mentioned that because it

23    seems to me that the cases make pretty clear that one of the

24    reasons for having absolute immunity from -- I'll call it a

25    suit -- an immunity that the Committee or others can employ in

1    a defensive measure is to -- I think the language is to ensure

2    that private civil actions -- this is from *Eastland* -- do not

3    create a distraction and force members to divert their time,

4    energy, and attention from their legislative tasks to defend

5    the litigation.

6           That purpose seems to be, at its nadir here, where

7    the very same committee that's the defendant here, is a

8    plaintiff in Judge McFadden's court, and has invited that civil

9    litigation itself before this litigation even started.  And it

10   may be that as a very inferior court, there's nothing I can do

11   about it.  But it does strike me that there's a real problem

12   when Congress can, on the one hand, invoke litigation, and on

13   the other invoke the Speech or Debate Clause as a shield.

14          I get that the case law as a general matter approves

15   of that.  But whereas here you have two cases that involve the

16   same Committee -- related tax returns, because the request to

17   treasury is a predicate for the request being able to go to

18   New York -- seems like a number of the purposes of the absolute

19   immunity either are incredibly weak or nonexistent.

20          MR. LETTER:  Again, I'm glad you bring this up so

21   that I can address it.  As we know, the subpoena -- the request

22   under Section 6103 and the subpoena, those are made pursuant to

23   purely federal law.  We believe that, as we outlined in our

24   complaint there, and as we argued to Judge McFadden, although

25   he didn't reach the merits of it, that the federal law, we

1    think, 6103, the language is clear, that gives us authority.

2    We don't think there's any question that 6103 is

3    constitutional.  We can issue subpoenas.  We know we can issue

4    subpoenas.  And so, we did so pursuant to federal subpoena law.

5    So we -- the House chose, House leadership authorized that suit

6    to go forward to resolve those issues, and the standing of the

7    House.

8            The issues here are -- yes, they involve tax returns

9    from a different entity with no 6103, no federal subpoena,

10   there's been no -- nothing -- the chairman has issued nothing.

11   And so the questions that this Court would address, as opposed

12   to if we get to the merits in the other case, are totally

13   different.  And in fact, even if we had -- let's just assume

14   for a moment, because my friend Mr. Consovoy mentioned the

15   statement by Chairman Neal, at one point he said we don't have

16   jurisdiction over state taxes, that should be a big clue.

17   Obviously, Ways and Means Committee has full jurisdiction over

18   federal tax law and the audit program.  What we have said is

19   the main reason we want the President's returns, federal

20   returns, is to determine whether to legislate with regard to

21   the federal IRS audit program.

22           THE COURT:  I understand all that.  I guess my point

23   is as simple as this:  You have invoked the Article III

24   jurisdiction to litigate against the Treasury Department on

25   behalf of the Committee seeking to enforce your subpoena.  You

1    have already embroiled the federal courts in an interbranch

2    dispute on the one hand.

3         On the other, you are taking the position here that

4    when you flip the V, the burden -- or at least the -- one of

5    the reasons for absolute immunity, which is the burden on

6    Congress of having to litigate, is so much that the case needs

7    to be dismissed at the outset.  Not only that, but it can't

8    simply be paused unless and until a request is made.  And it is

9    that seeming incongruity that I am, at a minimum, reflecting

10   on, though I acknowledge there's not much I can do about it

11   because the case law is clear that Speech or Debate Clause is

12   relevant in a defensive action.

13         MR. LETTER:  Right.  And so this is a decision that

14   the framers made.  The framers said we don't want Congress

15   bothered.  Another aspect of it was that they said they didn't

16   want the Congress to worry about an executive or a judiciary

17   overruling them.  And again, we -- we didn't bring this suit,

18   we're not -- we have not made any request for the New York

19   returns.  For whatever reasons the chairman and the Committee

20   has or may have on a strategic decision on whether or not to

21   ask for these returns, that's wholly for a decision within the

22   Ways and Means Committee.

23         If we're dragged into court here, apparently Your

24   Honor is going to rule on whether that was a legitimate or

25   illegitimate request.  Suppose we don't want a court decision

1    on that?  Just suppose that.  This would be -- Mr. Consovoy is

2    saying, Ah-ha, I'm forcing you to get a decision by federal

3    District Court in D.C.  We may get there, we may decide we want

4    a decision, but we have not asked for a decision on whether we

5    should or shouldn't get anything under New York state law.

6              It's a very different question, totally different,

7    about whether we could -- because, again, I'll say it one more

8    time, the case we brought, there is absolutely no question that

9    that's within the Ways and Means Committee's jurisdiction.

10   Mr. Consovoy has an argument that's no legitimate legislative

11   purpose.  Whether we do or don't have jurisdiction over

12   New York state tax law, maybe we don't want to go to court on

13   that.

14             THE COURT:  So why should --

15             MR. LETTER:  Seems to me the framers have made

16   absolutely clear, it's when the House itself goes to court that

17   it subjects itself to court rulings.

18             THE COURT:  So I want to ask two related questions

19   about this scope of the absolute immunity.  And the first is,

20   so let's assume for the sake of argument, just for this

21   question, that the only relevant inquiry is, is the action

22   being challenged something that is a legislative act?  Do you

23   have any historic examples of states passing laws that permit

24   the provision of information about a private party to Congress

25   upon a mere request?

1        MR. LETTER:  Your Honor, I'm trying to remember

2   whether *McSurely* may have dealt with this.  *McSurely* was, as I

3   recall, state of Kentucky seized certain material and then it

4   was shared with --

5        THE COURT:  Certainly wasn't a state statute that --

6        MR. LETTER:  That provided --

7        THE COURT:  -- was backed by --

8        MR. LETTER:  I don't think --

9        THE COURT:  -- legislature --

10        MR. Letter:  Your Honor, I'm not aware of any off the

11   top of my head.

12        THE COURT:  This statute says New York law, in

13   general, is very protective of private citizens' tax returns.

14   But, as of July, we're going to create the special procedure

15   that says such information can be provided to Congress upon

16   written request.  And I get that there are some other

17   requirements.

18        MR. LETTER:  The President and Vice President,

19   various federal legislators from New York.

20        THE COURT:  Right.  Right.  My question is:  Are you

21   aware of any historic analog for that kind of state statute, or

22   a congressional request made pursuant thereto?

23        MR. LETTER:  I'm not, Your Honor.  I'm sorry, I want

24   to make sure.  Are you asking, am I aware of any state

25   statutes?

1          THE COURT:  Yes.

2          MR. LETTER:  Well, I'm sure -- there have to be

3   numerous state statues that provide for things like if there's

4   a health emergency, drinking water is contaminated.  In fact, I

5   have a vague memory of the Michigan matter, at a certain point.

6   Now that you ask the question, there was provision under state

7   law under certain circumstances that information could be

8   shared with federal health officials.  So I believe there are

9   numerous -- another -- sorry --

10         THE COURT:  That's private, the private information

11   of individuals.  Let's --

12         MR. LETTER:  I -- it might very well have been that

13   it was -- and, for example, another thought comes to me.  As

14   you know, there's all sorts of controversy about states and

15   localities sharing information about aliens with the federal

16   government, and that would clearly be about private persons.

17   And my understanding is there are any number of states and

18   local jurisdictions that have state or local laws that provide

19   for sharing with federal government.

20         THE COURT:  Fair enough.  So I want to get back to

21   what I think is the more fundamental point --

22         MR. LETTER:  Yes.

23         THE COURT:  -- which is whether the ultimate inquiry

24   here is as limited as you suggest on absolute immunity, or if

25   it actually has two parts.  And one is whether the act that's

1    being undertaken is of a legislative nature and/or whether

2    there's a second requirement, and that the act be taken

3    within -- with a legitimate legislative purpose or what the

4    courts seem to say is a legitimate -- is within the legitimate

5    legislative sphere.

6            The reason I ask is because, for example, in the

7    *Brown and Williamson* case, the 1995 Court of Appeals decision,

8    at the end of the opinion, when discussing whether congressmen

9    would have to respond to a subpoena, the court essentially

10   says -- I'm just going to quote it for you:  Documents that

11   come into the hands of congressmen may be reached either in a

12   direct suit or subpoena only if the circumstances by which they

13   come can be thought to fall outside, and then the court quotes,

14   legislative acts, or -- goes on to say or -- the legitimate

15   legislative sphere.  And *Eastland* is replete with references to

16   the legitimate legislative sphere.

17           MR. LETTER:  Yes, it is, Your Honor.

18           THE COURT:  Your view, I take it, is when *Eastland*

19   uses those terms, it's referring to whether the act taken is of

20   a legislative nature, not the purpose for which the information

21   is sought.

22           MR. LETTER:  Yes, Your Honor.  And I think that's

23   quite clear.  I think that's also clear -- *Rangel*, which is

24   just several years ago from the D.C. Circuit, the -- sorry.

25   I'm going to quote just very briefly.  This is 785 F.3d -- gosh

1    I'm looking for the page number.  I think it is 25 -- 24.

2           The clause is a very large, albeit essential, grant

3    of privilege.  It had enabled reckless men to slander and even

4    destroys others with impunity.  Instead of looking into the

5    defendant's motive or intent, the standard for determining

6    whether an act is legislative turns on the nature of the act

7    itself.

8           So -- and that's -- so, when Congress is gathering

9    information, that's the nature of the act.

10          THE COURT:  But the purpose there was to think about

11   whether they were going to censure the congressman.  That was

12   either a concededly or a plainly legitimate legislative

13   purpose.

14          I mean, what about the following hypothetical:  Would

15   it be appropriate, in your view, or at least would the

16   President be unable to sue the House if the Committee chairman

17   sent a request to New York state that said, Please send me,

18   tomorrow, all of Mr. Trump's tax returns so that I can publish

19   them publicly in order to harm his reelection campaign?

20          MR. LETTER:  If there were some sort of statement

21   like that, it's possible under circumstances --

22          THE COURT:  Wait, wait.  That is an act seeking to

23   gather information which you said is the end of the inquiry

24   because that's a legislative act.

25          MR. LETTER:  And actually, I take it back, I think

1    that would be covered by Speech or Debate.  What my colleagues

2    and I were wondering about, I think, is somewhat related, but

3    somewhat different hypothetical.  I'm not normally asking

4    myself hypotheticals, but I'm going do it.  If Chairman Neal

5    said, We want this because we, the House, are going to

6    criminally prosecute the President -- now everybody knows the

7    House cannot criminally prosecute anybody.  So, by saying that,

8    probably Mr. Neal is taking it outside.  But here --

9            THE COURT:  Even though, even though in your

10   hypothetical that you just gave yourself, the act of asking for

11   the information was legislative?

12           MR. LETTER:  And it may be that Chairman Neal himself

13   has explained why it's not legislative, because he's saying the

14   act for criminal prosecution.  But now --

15           THE COURT:  Now you're going into the inquiry of

16   purpose prong.

17           MR. LETTER:  Fortunately, we don't have that.  But I

18   do want to --

19           THE COURT:  But, Mr. Letter, we don't know yet.

20   Because there hasn't been a request propounded, we don't know

21   yet what the request will seek, nor do we know what Chairman

22   Neal will or will not say about why he's requesting the

23   information.  And you've just conceded that there are at least

24   some difficult circumstances where the statement that attaches

25   the request could remove absolute immunity because it reflects

1    that the act is not legislative.

2              MR. LETTER:  But, again, remember in my hypothetical

3    I'm saying, basically, Chairman Neal is saying I have no

4    possible legislative purpose.  This is not a legislative act,

5    I'm going to criminally prosecute this guy.  That would be

6    different.

7              May I -- I've been wanting to say something earlier,

8    I think, on the other way, there seems to be an assumption that

9    there could not be any possible --

10             THE COURT:  No.  Again, I want to make very clear to

11   everyone here that I have not begun to consider whether or not

12   there could be, assuming it's part of the inquiry, a legitimate

13   legislative purpose to this request for information.  I'm

14   neither -- I'm not assuming one way or the other.  I am just

15   testing the limits of whether, in the absence of a statement of

16   purpose, and that connection, I can conclude that for all time

17   the Committee has absolute immunity from the civil suit.

18             MR. LETTER:  Right.  And under the circumstances here

19   and the claims here, if the complaint said this weird

20   hypothetical -- that, by the way, would never happen -- if it

21   said that, maybe this would be different.  But, on this

22   complaint there is no way you can possibly say this is under

23   *Eastland* and *Rangel* and *McSurely*, that this is not a

24   legislative act because -- and again, I understand what you're

25   saying, but I just wanted --

1          THE COURT:  What am I to do then with the *Brown and*

2    *Williamson* formulation, that the inquiry -- and this is at

3    *Brown and Williamson*, 62 F.3d at 421.

4          MR. LETTER:  Your Honor, can I follow you, please?

5          THE COURT:  Of course.  And I acknowledge that none

6    of those cases is exactly in the same procedural posture as

7    this case.  That's a subpoena to a few congressmen --

8          MR. LETTER:  Right.

9          THE COURT:  -- to compel the production of documents

10   that were allegedly stolen and provided to the congressman.

11         MR. LETTER:  I'm sorry, Your Honor.  You were reading

12   from?

13         THE COURT:  421, I believe.

14         MR. LETTER:  Got it.  Yes.

15         THE COURT:  And what I noted is that the court draws

16   a distinction -- this is the D.C. Circuit, which, again, I'm

17   bound by -- draws a distinction between something it quotes:

18   Legislative acts on the one hand -- then it has an "or" -- or

19   the legitimate legislative sphere.  Which suggests to me that

20   those cannot be the same inquiry.

21         MR. LETTER:  I believe that they are.  And, again,

22   the *Rangel* decision comes after that.  And if we need --

23         THE COURT:  But there we know the purpose.  The

24   purpose was within the legitimate legislative sphere because it

25   was to consider whether to censure him.  That was the purpose.

```
 1                    MR. LETTER:  Right.

 2                    THE COURT:  Here we don't know what the purpose of

 3          the request would be.

 4                    MR. LETTER:  Right.  And so, first of all, you have a

 5          presumption of regularity.  So we have to presume that if

 6          Congress did this --

 7                    THE COURT:  You're asking me not to grant the writ

 8          because I do not have jurisdiction.

 9                    MR. LETTER:  Correct.

10                    THE COURT:  And I can't make that conclusion until I

11          know what the legitimate legislative sphere argument is about

12          the request.

13                    MR. LETTER:  I think that that is inconsistent.

14          Remember -- inconsistent with the law.  The Supreme Court has

15          said this is to be given a -- the Speech or Debate Clause is to

16          be given a very broad reading.  It makes absolutely clear you

17          are not to look into the purpose, it says that.  So to the

18          extent -- if Judge Silberman was saying anything inconsistent

19          with that, that cannot be right.  We know *Eastland*, etcetera,

20          say you cannot inquiry into the purpose.

21                    THE COURT:  So I take it then, your view is if the

22          Senate Finance Committee chairman sent a written request to

23          New York and asked for all of Senator Gillibrand's tax returns

24          going back to age 18, for the stated and sole purpose of

25          disclosing that information publicly to harm her presidential
```

1      campaign.  In your view, Senator Gillibrand could not sue -- or

2      any other candidate, frankly, could not sue the chairman of the

3      senate finance committee to enjoin that request or to try to

4      prevent the receipt of that information?

5              MR. LETTER:  Absolutely.  This is totally

6      nonpartisan, Your Honor.  This is not a partisan issue.

7              THE COURT:  I'm just trying to test the

8      proposition --

9              MR. LETTER:  Absolutely.

10             THE COURT:  -- which is that, in your view, with some

11     maybe, maybe very outlier examples, so long as a congressman

12     makes a request for information, the congressman has absolute

13     immunity from a civil suit trying to preclude the collection of

14     that information?

15             MR. LETTER:  Exactly.  And if the -- again, let's

16     look at --

17             THE COURT:  Even though, even though that same

18     committee member or committee is permitted to go to court to

19     seek that information in compliance with a subpoena, or to

20     otherwise litigate as a regular old private party?

21             MR. LETTER:  That's right.  Because, as I said

22     before -- and this is a decision made by the framers.  This is

23     not something open for the Court to say, well, maybe this isn't

24     such a great idea.  That's because there Congress itself would

25     have made the decision, we are going to subject ourselves to

1   the jurisdiction of the court, whether that's a wise idea or

2   not.  They decide that, they say okay, here we are, and we're

3   going to let the court then decide, in pursuing this subpoena,

4   do we have a legitimate legislative purpose?  But, instead, if

5   you are hauling Congress before the judiciary, a possible

6   hostile judiciary -- the word "hostile" has come up, and

7   obviously no reflection on you, it means just in general.  The

8   Congress is supposed to -- the purpose of Speech or Debate

9   Clause is Congress does not have to have that fear.  It's so

10  essential that Congress can operate not fearing that a hostile

11  executive or a hostile judiciary is going to come in and issue

12  a decision that they don't want, that they have not sought,

13  that they have not put themselves in jeopardy of getting, then

14  this is exactly what the framers had in mind.

15          THE COURT:  If I could --

16          MR. LETTER:  May I add one more thing?  I'm sorry.

17          THE COURT:  Of course, Mr. Letter.

18          MR. LETTER:  On that, also, remember the other

19  situation is they could sue New York and win.  So remember,

20  that there is another possibility.

21          THE COURT:  That's a timely pivot, which is -- what I

22  would like is your position on whether I could grant relief

23  under the All Writs Act against the New York defendants in the

24  present posture of the litigation.  Mr. Consovoy has

25  acknowledged that a request by the Committee wouldn't harm

1    Mr. Trump, nor would it moot this case.  And that what would

2    harm Mr. Trump or what would moot this case is the production

3    of the information from New York to the Committee.

4         So under the All Writs Act could I enter relief that

5    would preclude New York from, in your view -- this is all in

6    your view.  I'm going to ask New York the same question --

7    could I enter that relief on the present record?

8         MR. LETTER:  And here's the problem, Your Honor, with

9    me giving you an answer to that:  I don't know if Your Honor

10   has -- you mentioned this, Your Honor, and it's something we

11   thought of, I don't know if you have any jurisdiction over

12   New York.

13        THE COURT:  The only argument you've made is with

14   respect to the relief running against the Committee and based

15   on the Speech or Debate Clause and absolute immunity.

16        MR. LETTER:  Right.

17        THE COURT:  If I either conclude that that is not at

18   this stage a reason not to grant the relief, or if I think it's

19   not an impediment to granting other relief, including relief

20   that would run against some other party, that argument is

21   either irrelevant or important ultimately, but not for the

22   purposes of, for example, granting relief against New York.

23        MR. LETTER:  And again, Your Honor, I don't -- I

24   don't know of any substantive reason why you couldn't do that,

25   I just -- I don't -- I have no idea if New York can be sued in

1    D.C.

2              And the one other thing I just wanted to mention

3    again is *Eastland* says that, you know, the -- whether we argue

4    Speech or Debate immunity, it's to be given the most

5    expeditious treatment by district court because one branch is

6    being asked to halt the functions of a coordinate branch, and

7    that language should not be forgotten.

8              THE COURT:  I understand.

9              Thank you, Mr. Letter.

10             MR. LETTER:  Thank you.

11             THE COURT:  Mr. Amer, I know you're on the phone and

12   I appreciate the fact that the possibility of relief running

13   against your clients came up for the first time, at least, in

14   the papers this morning, although it's certainly something I

15   was thinking about.  And I recognize that that may put you in

16   something of a difficult bind, but -- but maybe I'll try, which

17   is to ask you:  Do you have, based on your review of this case

18   over the last couple of days, any reason to believe or

19   objection regarding my granting equitable relief under the All

20   Writs Act against your clients where the relief would simply be

21   to prohibit your clients from producing the information to

22   Congress, or to Committee, if asked.

23             And again, we don't even know if a request will ever

24   be made, nor do we know what the request will say.  But do you

25   have any reason to believe that I either lack jurisdiction to

1    do that, or any objection to my doing so?

2         MR. AMER:  Thank you, Your Honor.  I do have an

3    objection to that, and it's premised on the motion that the All

4    Writs Act cannot expand the Court's jurisdiction.  So, it

5    raises a question of whether the Court does have jurisdiction

6    over the New York defendants.  And that's an issue that we

7    would certainly want the opportunity to weigh in on with a

8    response that I didn't think I needed to submit because I

9    didn't think that this was an issue that was being raised at

10   this point.

11        THE COURT:  And I understand that the way that this

12   request has been teed up, you didn't feel it necessary, or

13   probably appropriate to weigh in on the dispute that was

14   largely between Mr. Trump and the Committee.

15        I will say, it seems to me that suits by citizens

16   against states alleging that state statutes or state actions

17   are unconstitutional are legion.  They arise under federal law

18   for purposes of 28 U.S.C. 1331, it seems to me that the -- that

19   Mr. Trump, you know, may have a reasonable argument that the

20   provision of the information would injure him, in fact,

21   sufficient to satisfy Article III.

22        So in terms of jurisdiction, it wasn't apparent to me

23   that there wouldn't be jurisdiction over his claims against

24   New York.  But I get your point, that you haven't had time to

25   fully digest it or to otherwise think about it.

1          I do have one or two fairly specific questions, which

2     aren't so much about that ultimate issue, but just about the

3     New York law or your position, to the extent that you are able

4     to answer them.  And, again, I get that for you, you're --

5     you're here to this party a little bit on the late side.  But

6     I'm thinking through the implications of Mr. Letter's responses

7     to me at the beginning of his time, and the process that,

8     sounds like, is not due to Mr. Trump, and whether you agree

9     with it.  And in particular, whether New York, the New York

10    defendant's view is that under the statute or otherwise, you

11    would not have to give notice to Mr. Trump, or the Court

12    either, upon receiving a request from the Committee or before

13    producing records in response to that request.

14          MR. AMER:  So, that is correct, Your Honor.  The

15    statute does not require notice before acting on a request.  I

16    will, however, point out something that I want to make sure the

17    Court is focused on, and that is that there needs to be a

18    certification that the request is related to, and in

19    furtherance of, a legitimate task of Congress.

20          So I do want to just make clear -- and I think this

21    may be relevant to some of the hypotheticals -- but, it's not

22    just any old request that meets the criteria of the statute,

23    it's a request that carries the certification.  And I don't

24    think it's appropriate to assume that the Commissioner of --

25    the New York Commissioner would act on a request and provide

1       material in the absence of that certification, or if the

2       certification was clearly deficient on its face, which I think

3       Mr. Letter was trying to suggest would be the case if Chair

4       Neal were to say that the purpose of the request was to

5       undertake a criminal -- you know, endeavor that's not within

6       the purview of the Committee.

7               So I did want to point that out.  There is this

8       certification requirement and it needs to be part of the

9       process.

10              I did want to point out one other thing, and it's

11      really just to respond to Your Honor's question about whether

12      there's any other example of where New York provides this type

13      of information about personal income tax returns, if I could.

14              THE COURT:  Yes, please.  Thank you.

15              MR. AMER:  So this act, called the TRUST Act, is

16      actually an amendment to Section 697.  That was the preexisting

17      statute governing this type of provision of information.  And

18      the Court should be aware that the prior version of the

19      statute, under Section F -- so this amendment, F-1 -- but the

20      prior statute contained a Section F that was entitled

21      Cooperation with the United States and Other States, and it

22      permitted the secretary of the Treasury to request personal

23      state tax returns in connection with prosecutions under the

24      Internal Revenue Code and allowed the state returns to be

25      examined and certain portions to be provided.  And it even

1    provided that the commissioner and his employees may, if they

2    so choose, offer testimony in actions or proceedings.

3           So the notion that there's -- you know, cooperation,

4    and that prior to this amendment, you know, there was no

5    sharing of personal state tax return information is not

6    correct.  What the amendment does is it expands the entities

7    that are able to request the information beyond the treasury

8    department and includes now the three congressional committees

9    that have some function in the taxation and finance realm.

10          THE COURT:  Thank you.  That's very helpful.

11   Mr. Amer, again, I appreciate your time.  I understand you're

12   late to this.  As I think through this matter I'll consider

13   whether and to what extent to seek your views on the

14   appropriateness of equitable relief flowing against the

15   New York defendants.

16          But, Mr. Consovoy, I wanted to give you just a minute

17   or two to rebut, as appropriate, Mr. Letter's presentation.

18          MR. CONSOVOY:  Thank you, Your Honor.  I really want

19   to make, like, two quick points.  Could I start quickly with

20   *Eastland*, if I might?

21          THE COURT:  Yes.

22          MR. CONSOVOY:  I have a highlighted copy of it, if I

23   could hand it up.

24          THE COURT:  I have one, too.

25          MR. CONSOVOY:  My pages are different, but I could

 1     kind of direct you.

 2                THE COURT:  You tell me where you're looking and I

 3     think I can find it.

 4                MR. CONSOVOY:  I'm at section two of the opinion.  I

 5     think it's actually pretty straight forward.  It starts:  The

 6     question to be resolved is whether the actions of the

 7     petitioners fall within the sphere of legitimate legislative

 8     activity.  If they do, immunity kicks in.

 9                The next two pages, as Your Honor I think knows, as

10     your question pointed out, talk about one-half of that inquiry,

11     is this in fact legislative?  What my friend didn't point out,

12     though, is when you turn one more page later, page 505, 506 of

13     the opinion, the particular investigation at issue here, that

14     is a three-paragraph discussion of whether the purpose of that

15     particular inquiry was in fact legitimate.

16                I think it is decisive on the question.  But if

17     weren't, if you turn later to Section IV, where the Court gets

18     into the First Amendment issues, and this is where the Court

19     says stop, you don't get to go here in this posture.  And then

20     get to footnote 16, the Court says, again -- I can't find the

21     language I was looking for, but it does say --

22                THE COURT:  I'll read it for you:  Where we are

23     presented with an attempt to interfere with an ongoing activity

24     by Congress, and that activity is found to be within the

25     legitimate legislative sphere, balancing plays no part.  And in

1     discussing some cases, this would be at -- this is in the

2     middle of Section IV, the Court says:  Quite the contrary is

3     the case with the routine subpoena intended to gather

4     information, quote, about a subject on which legislation may be

5     had, end quote.  That inquiry, it seems to me, is irrelevant in

6     connection with the subpoena if the only question was, was

7     there a subpoena?  A subpoena is a legislative act.  We all

8     agree a subpoena is a legislative act.  If that's the only

9     thing that matters under *Eastland*, then why do I ask about

10    whether it's a subject on which legislation may be had, in any

11    event?

12          MR. CONSOVOY:  That goes back to the *Quinn* case,

13    which says it has to be on.  And as Your Honor knows, that is a

14    big issue in the *Masarus* [ph.] case about all that.

15          The last point I would make is going back one page.

16    The propriety of making USSF a subject of the investigation,

17    our inquiry is narrow.  Not nonexistent.  Narrow.  It would be

18    nothing to investigate, if it kicked in.  So that's -- with

19    respect to *Eastland* in the D.C. Circuit, as Your Honor pointed

20    out, the Supreme Court did not disagree that injunctive relief

21    was available against the Committee or members of the

22    Committee.  Supreme Court said, You got the merits wrong.  In

23    fact, even the dissent got them -- Judge MacKinnon got the

24    merits wrong because Judge MacKinnon thought it just failed on

25    First Amendment balancing.  And the Chief Justice said, you

1    actually all got the merits wrong.  But had they got the merits

2    right, I don't believe anything's there to suggest or criticize

3    the D.C. Circuit's handling of the interim equitable issues to

4    ensure the case did not go moot.

5             With respect to analogous to this, we are of none

6    ourselves.  I was interested in the example my friend from

7    New York brought up.  They are very similar to the example that

8    my friend from committee brought up, which are executive

9    officials at the federal and state level sharing information in

10   order to advance a prosecutorial function, that's not like

11   this.

12            I do want to say we did not mean to sandbag the -- I

13   don't believe -- you know, I am -- I've been in that posture

14   myself, I'm sensitive to it.  We, of course, would welcome more

15   briefing on the issue.  We don't see any jurisdictional issues

16   here, but we would be happy to brief them.  I would note that

17   in *Astrazeneca* itself, the All Writs Act wasn't even brought up

18   until the rely brief.  So, I went to pull the brief to see if

19   they had anything good.  And it turned out there wasn't

20   anything because it didn't come up until the reply.

21            And I think what's inherent here is an equitable

22   proceeding.  And we take Your Honor's point that if we missed

23   boat and should have brought it against New York, that is on

24   counsel, not on the client.  I do not believe there is any

25   legal procedural impediment for us to re-plead that, and we

1    would be happy to do so.

2              THE COURT:  Thank you.

3              MR. CONSOVOY:  Thank you for your time, Your Honor.

4              THE COURT:  Mr. Letter, do you want to respond very

5    briefly?

6              MR. LETTER:  Thank you, Your Honor.  I just want to

7    redirect your attention.  I said it before, but just to make

8    sure, the most recent case in this circuit is *Rangel*, 2015,

9    Judge Henderson, Judge Tatel, and I think it was Judge Wilkins,

10   and they make quite clear that it's the type of act, it's not

11   looking into the purpose.  And I know that language is in

12   *Eastland,* but if you look at what *Eastland* did, the

13   Court there, seems to me, is much more -- the whole doctrine is

14   much more consistent with this.  And as I say, because

15   otherwise what you would be doing is what Mr. Consovoy is

16   asking here, which is, I think, totally inconsistent with what

17   the framers intended.

18             The House would be hauled into court against its will

19   and a decision, a legal decision would be made that the House

20   did not seek and does not want.  If the House wants a court

21   ruling on that, it will take steps and then it could be heard.

22             But I cannot emphasize enough the framers did not

23   intend judiciary to be able to haul Congress into court and

24   issue a decision against it that Congress does not seek or

25   want.

1          THE COURT:  Thank you, Mr. --

2          MR. LETTER:  I'm sorry.  I apologize.  The last thing

3     is, at least even in *Eastland* there was a subpoena that was

4     issued, it was then -- it wasn't actually served.  Here,

5     remember, we -- the Ways and Means Committee has done nothing.

6     Nothing.

7          THE COURT:  Thank you, Mr. Letter.

8          MR. AMER:  Your Honor, can I have just one minute to

9     share with you our view of the case, that I think is very

10    different from the other parties?

11         THE COURT:  Yes, Mr. Amer.

12         MR. AMER:  Thank you, Your Honor.  So, fundamentally,

13    the New York defendants view this case as a challenge under

14    First Amendment to the constitutionality of a New York statute.

15    And I think we can all agree that the commissioner of the

16    New York State Department of Taxation and Finance is a

17    necessary party to this case.  He is the individual who has the

18    obligation to carry out the directions under the statute and to

19    respond to the requests and provide the information.  And he is

20    the individual who will defend against the constitutional

21    challenge of the New York statute.

22         On the flip side, I just don't see how the Committee

23    is a necessary party to this case because I think, as Your

24    Honor observed, the mere making of the request, without

25    actually any compliance with the request and provision of the

1    information in response to the request, is not going to give

2    rise to any injury to the President.

3         And I know Your Honor was focusing on Article III

4    standing, but I think you need to focus on personal

5    jurisdiction and how it would ever be that the D.C. court would

6    have personal jurisdiction over the New York defendants here.

7    And also, quite frankly, whether there is venue proper in this

8    District.  And these are the issues that I would certainly want

9    to be heard on if the Court is going to consider the

10   alternative relief.

11        But even beyond that, even if the Court is not

12   prepared to dismiss the Committee, I think it's relevant to the

13   broader issue of whether this case will actually go forward in

14   this court.  And I would say that there are cases that our

15   research has found where attempts to bring a lawsuit in D.C.

16   against out-of-state elected officials, challenging the

17   constitutionality of state statutes in those other states have

18   been dismissed, for the very reason that those challenges

19   belong in the courts, the local courts of the state where that

20   statute was enacted.

21        And just to give you an example, in this particular

22   case, a request can be made by the three congressional

23   committees relating to the state tax returns for anyone who

24   files a New York tax return, whether they are in Hawaii or

25   Alaska or any other jurisdiction.  And it just seems

1   counterintuitive that those individual taxpayers can bring a

2   lawsuit in their home state, however far away from New York it

3   is, and through that action tee up the constitutionality of the

4   New York statute.

5          THE COURT:  Thank you, Mr. Amer, I certainly

6   appreciate those comments, and would like to do the following:

7   I want to take a five-minute recess.  And my intent is to come

8   back here and make some remarks, to issue orally an order, and

9   take it from there.  But I want to compare my notes with my law

10  clerk's and just make sure we haven't missed something.

11         So, if we could go in to a very short recess, we'll

12  come back on the record in just a few minutes.

13         (Recess.)

14         THE COURT:  We're back on the record.  The Court

15  would like to express its thanks to the parties, including

16  Mr. Amer, who participated by telephone conference, for their

17  arguments this afternoon.  As I think I can -- as I think you

18  can appreciate from my questions, it seems there's merit to

19  portions of both parties -- or, all parties' arguments.

20         To begin, it does seem that there is a risk that

21  without the fashioning of some relief now, this case could

22  become ripe and then moot almost instantaneously and without

23  notice to the plaintiff or the Court, thereby depriving the

24  Court of jurisdiction.  The Committee doesn't argue to the

25  contrary.  Indeed, counsel for the Committee acknowledged

1    earlier that the chairman could make a request to New York,

2    even while the House is in recess, that the chairman could make

3    such a request without a committee vote, and that the chairman

4    would not have to give any notice to Mr. Trump or, indeed, the

5    Court before making such a request.

6         So this seems to be, at least generally speaking, the

7    type of situation in which it would be appropriate to fashion

8    some relief under the All Writs Act.  At the same time, the

9    relief requested by Mr. Trump, at least as it was originally

10   framed, to, quote, enjoin the Committee from requesting or

11   receiving Mr. Trump's state tax returns until Mr. Trump obtains

12   opportunity for judicial review, end quote, seems problematic.

13        Any Court should tread lightly when asked to

14   preemptively enjoin a coordinate branch of the government,

15   especially one that has Speech or Debate Clause immunity.  And

16   here, enjoining the Committee from making the request seems

17   inappropriate because Mr. Trump will suffer, admittedly, no

18   harm from the making of the request.  And also because the

19   request, if made -- and I stress, the if -- together with the

20   Committee stated reasons for why it needs the sought-after

21   information, would help frame any further litigation.

22        That is not to say the Court agrees with the

23   Committee's argument based on the Speech or Debate Clause that

24   relief under the All Writs Act because -- sorry, that relief

25   under the All Writs Act cannot be granted because the Committee

1    is absolutely immune from this litigation.  To be sure, Speech

2    or Debate Clause immunity is absolute where it applies.

3         But in my view, in cases such as *Eastland*, *Gravel*,

4    *Brown and Williamson*, and *McSurely*, the Supreme Court and the

5    D.C. Circuit have made clear that applies only where the

6    congress person or entity has engaged in, first, a legislative

7    act that, second, is within the legitimate legislative sphere,

8    and that whether the Speech or Debate Clause immunity applies

9    is a question that courts can consider and decide.

10        The problem here, as I think my questions made clear,

11   is that no request has been made and, thus, the Court has no

12   information about how the request will be made, what

13   information it will seek, and the stated purposes for the

14   request.  In those circumstances the Court cannot conclude that

15   the Committee will definitely be entitled to absolute immunity

16   from suit here.  And that is the only argument the Committee

17   makes in opposing Mr. Trump's request for relief.

18        Moreover, the Committee is not the only defendant

19   here.  Mr. Trump has also sued the New York Attorney General

20   and the New York State Tax Commissioner.  And in his reply

21   brief Mr. Trump contends for the first time that the Court

22   could fashion equitable relief against the New York defendants

23   that would sufficiently protect his interests for now.  But

24   Mr. Trump only took that position this morning and the New York

25   defendants have, understandably, protested that they have not

1    yet had an opportunity to respond to.  At a minimum, however,

2    equitable relief against the New York defendants would

3    presumably not present Speech or Debate Clause or separation of

4    powers concerns.

5         For all these reasons, the Court is of the view that

6    it likely would be appropriate to fashion some very modest

7    relief that would serve the goals of, first, ensuring that

8    Mr. Trump's claims do not become moot before they can be

9    litigated.  Second, treading as lightly as possible, if at all,

10   on separation of powers and Speech or Debate Clause concerns.

11   And, third, adjudicating the issues in this dispute only when

12   it is actually ripe and has a fuller record than presently

13   exists.

14        I can imagine such modest relief taking different

15   forms.  The Committee could be required to provide Mr. Trump

16   and the Court with substantial advance notice before issuing a

17   request, or the request could be permitted without such advance

18   notice, but required to have a future return date that would

19   make it akin to a subpoena.  Or New York, the New York

20   defendants could be enjoined from responding to the request

21   until after a decision on the request by this Court is decided.

22        There are likely other ideas that would serve those

23   three goals.  And, indeed, each of these options seems

24   consistent with the process ultimately adopted by the D.C.

25   Circuit and approved by the Supreme Court in *Eastland* itself.

1          At this time, however, the Court is not inclined to

2     order any relief, or to pick among those various options that

3     would achieve those three goals.  Instead, much as in

4     *Astrazeneca*, the Court will order the parties to meet and

5     confer to determine whether they can reach an agreement

6     regarding how best to proceed in light of those three goals,

7     which the Court feels very strongly about.

8          The parties are, therefore, ordered to meet and

9     confer and file, by 6 p.m. tomorrow, a status report reflecting

10    any agreement they may have reached.  And, if not, their

11    respective proposals and positions.  The Court trusts that the

12    Committee will not propound a request while the Court has this

13    matter under advisement.

14         One final note, the Court is well aware that the D.C.

15    Circuit recently held argument in the *Trump versus House*

16    *Oversight Committee* litigation.  Although the issues there are

17    certainly not identical to the issues here, it seems likely the

18    Court's opinion and any further litigation there will be

19    relevant in this matter.

20         And so as we think about the right timetable to

21    adjudicate the claims here, I think it's important to keep in

22    mind that we may have, in the relatively near future, an

23    important and, obviously, binding decision from the D.C.

24    Circuit that will certainly not resolve all questions in this

25    case, but that will be highly relevant.

1          So, again, to each of the parties, thank you for your

2     time today.  If there's anything unclear about what I'm asking

3     for, please let me know.  We will try to get a minute order out

4     that will really say nothing other than, I think, for the

5     reasons stated in open court, the parties are ordered to meet

6     and confer and to file a joint status report by 6 p.m.

7     tomorrow, setting out any areas of agreement, and otherwise

8     setting out their respective positions for how the litigation

9     can proceed.

10          Mr. Amer, I hope and expect that you will participate

11     in that meet and confer.  I also, of course, hope that the

12     parties can reach an agreement, now that I've laid out at least

13     my preliminary review of things and, certainly, the three

14     things that are important to me.  But in the event that that is

15     not achievable or achieved, I would take this as your

16     opportunity to tell me why you do or do not think, or are or

17     are not willing to agree to injunctive relief that would run

18     against your clients.  That's all I have.

19          Mr. Letter?

20          MR. LETTER:  Yes, Your Honor.  Will you reduce your

21     remarks to a written order, or do we need to get the trans --

22     because we'll have trouble, I think, getting the transcript

23     fast enough.

24          THE COURT:  I was not intending to put those remarks

25     in writing.  Primarily because what I'm hoping is that the

1    parties will reach agreement on next steps.  Or, if not, that

2    my comments will help shape and inform the respective positions

3    that you take in what you file tomorrow.  And then if, as in

4    when, I have to write something after that, that would be the

5    time that I would be putting my further thoughts in an opinion.

6         Having said that, I'm looking at the court reporter

7    to see whether and to what extent we could get you a transcript

8    pretty quickly.

9         MR. AMER:  Your Honor, if I could respond.  I

10   certainly will participate in the negotiations among the

11   parties, but I have to say -- and I think you invited my candid

12   response -- I don't see that the Commissioner in particular, or

13   the Attorney General will authorize me to consent to personal

14   jurisdiction in D.C.  And since, as I mentioned, the

15   Commissioner is a necessary party to this case, and because

16   Mr. Trump can get all of the relief he is seeking from the

17   Commissioner, I just don't see how we go forward in this court

18   without the Court resolving the fundamental question of whether

19   there is personal jurisdiction over the New York defendants in

20   this District.

21        THE COURT:  So, I appreciate that, Mr. Amer.  I would

22   suggest that you think about whether there is a way that the

23   parties can fashion relief such that the Court's jurisdiction

24   is protected from being mooted by a request that is responded

25   to.  But in a way in which you preserve all of your ultimate

1    personal jurisdiction arguments.

2            The conundrum that the Court finds itself in is that

3    there is, right now, nothing to be litigated.  There's no

4    request and there's no decision by the Commissioner to produce

5    information to the Committee.

6            MR. AMER:  But with all due respect, Your Honor --

7            THE COURT:  Mr. Amer, let me finish.

8            MR. AMER:  All right.  Go ahead.

9            THE COURT:  But I have heard nothing today to give me

10   any comfort that either your client or Mr. Letter's client is

11   willing to stand down or give the Court a commitment that that

12   won't happen within 24 hours of request being propounded.  And

13   it seems to me that it's at least possible that parties can

14   agree -- perhaps even among themselves, but I leave it to you

15   to work it out -- on a mechanism that would give the Court

16   comfort that this case isn't going to become moot while

17   preserving whatever personal jurisdiction arguments you might

18   have.

19           That might not be possible, and if that's the case,

20   you can tell me tomorrow.  But, frankly, the problem I have is

21   that neither of the defendants is willing to commit that the

22   Court will have the time to litigate very difficult questions

23   about the propriety of a request once the request is made, and

24   they're not willing to give the kinds of assurances that would

25   be appropriate to ensure that I would have the time to do so.

1     I can order that, but I would prefer that the parties, using

2     their negotiating skills and creativity, come up with a

3     mechanism that ensures those three goals.

4          Mr. Amer, it may be that you need to come back and

5     tell me that you need more time, and it may be that you come

6     back and you tell me you need more time and commit that in the

7     interim there won't be a production.  The problem is, no one

8     has committed to me that there will not be a production

9     tomorrow, or Monday, or the Monday after.

10          So if you need more time, the simple answer is commit

11    that nothing of the status quo will change unless and until you

12    can come up with your answer.  And I make that statement both

13    to you and to Mr. Letter because if either of the defendants

14    were willing to make that commitment to give the Court time,

15    once the request is posed, to litigate the lawfulness of it, we

16    wouldn't have this problem.

17          I'm being asked to intervene here because, at a

18    minimum, the Committee, and maybe the New York defendants, are

19    unwilling to do anything other than preserve the ability to

20    squeeze this litigation into a very, very, very narrow

21    aperture.  And I get that that may be technically allowed, but

22    it puts me in a very awkward position.  And it is a position

23    that you can solve by simply making the commitments that I have

24    suggested, even if that's solely for the purpose of having more

25    time.

1          MR. AMER:  I appreciate that, Your Honor.  Obviously

2     I was not involved in the prior negotiation that Mr. Consovoy

3     had with Mr. Letter.  And prior to this morning I had no

4     indication that Mr. Consovoy was seeking any relief against my

5     client.  I have, quite frankly, not had a discussion with my

6     clients yet as to what they would or would not be willing to

7     do.  I only advised the Court that my reading of the statute

8     indicates that there's no notice requirement.  That's a

9     separate question from whether or not the Commissioner would be

10    prepared to enter into some sort of stipulation.

11          I do think fundamentally the issue is going to be, as

12    part of such a stipulation, will the plaintiff agree to have

13    the constitutionality of the New York statute decided by a

14    New York court?  But we can discuss -- I will discuss all of

15    that in negotiation tomorrow, and then we'll provide the Court

16    with where I am.

17          THE COURT:  Thank you.  Thank you, Mr. Amer.

18          Mr. Consovoy?

19          MR. CONSOVOY:  Thank you, Your Honor.  Just in case

20    we don't get the transcript, I just want to make sure I have

21    your instruction precise.  I apologize.

22          THE COURT:  No, I would like them to be precise, as

23    well.  And if they're not, I apologize.

24          MR. CONSOVOY:  The Court's goals are as modest a

25    relief as possible --

1          THE COURT:  Correct.

2          MR. CONSOVOY:  -- that preserves the Court's ability

3     to adjudicate this case to its natural conclusion.

4          THE COURT:  Correct.

5          MR. CONSOVOY:  And there was a third that I missed.

6          THE COURT:  I'll restate them.

7          MR. CONSOVOY:  I apologize.

8          THE COURT:  All right.  So as modest relief as

9     possible.  The way I put it was treading as lightly as

10    possible, if at all, on separation of powers and Speech or

11    Debate Clause concerns; that's one goal.  Another goal is, of

12    course, ensuring that the -- as you put it, that the claims can

13    ultimately be litigated.  The way I put it was ensuring that

14    the claims do not become moot before that litigation occurs.

15          And third, which is related, making sure that the

16    issues are litigated here only when it is actually ripe.  That

17    is to say, there has been a request and probably an intent to

18    produce something, and -- so it's both ripe and the record is

19    full with respect to the request that's been made, the asserted

20    justifications for it, if any, and the intended response.

21          MR. CONSOVOY:  Thank you, Your Honor.

22          THE COURT:  You're welcome.  Anything else?

23          Okay.  Thank you all for your time.  Very well

24    argued.  Thank you.

25          MR. AMER:  Thank you, Your Honor.
                        *   *   *

1                  CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, JANICE DICKMAN, do hereby certify that the above and

4     foregoing constitutes a true and accurate transcript of my

5     stenographic notes and is a full, true and complete transcript

6     of the proceedings to the best of my ability.

7                          Dated this 30th day of July, 2019

8

9

10                       _____

11                       Janice E. Dickman, CRR, CMR, CCR
                          Official Court Reporter
12                       Room 6523
                          333 Constitution Avenue, N.W.
13                       Washington, D.C.  20001

14

15

16

17

18

19

20

21

22

23

24

25