```
              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA


 DONALD J. TRUMP                    .
                                    .
         Plaintiff,                 .   CA No. 19-2173 (CJN)
                                    .
     v.                             .
                                    .
 COMMITTEE ON WAYS AND MEANS,       .   Washington, D.C.
 U.S. HOUSE OF REPRESENTATIVES,     .   Wednesday, July 31, 2019
 et al.,                            .   2:30 p.m.
                                    .
         Defendants.                .
 . . . . . . . . . . . . . . . . .  .


              TRANSCRIPT OF TELEPHONE CONFERENCE
            BEFORE THE HONORABLE CARL J. NICHOLS
                UNITED STATES DISTRICT JUDGE


 APPEARANCES:

 For the Plaintiff:          WILLIAM S. CONSOVOY, ESQ.
 (Via Telephone)             Consovoy Mccarthy PLLC
                             1600 Wilson Boulevard
                             Suite 700
                             Arlington, VA 22209
                             (703) 243-9423

 For House Defendants:       DOUGLAS N. LETTER, ESQ.
 (Via Telephone)             BROOKS MCKINLY HANNER, ESQ.
                             JOSEPHINE T. MORSE, ESQ.
                             MEGAN BARBERO, ESQ.
                             TODD B. TATELMAN, ESQ.

                             U.S. House of Representatives
                             Office of General Counsel
                             219 Cannon House Office Building
                             Washington, DC 20515
                             (202) 225-9700

 For New York Defendants:    ANDREW S. AMER, ESQ.
 (Via Telephone)             New York Attorney General's Office
                             28 Liberty Street
                             New York, NY 10005
                             (212) 416-6127
```

```
Court Reporter:              BRYAN A. WAYNE, RPR, CRR
                             U.S. Courthouse, Room 4704-A
                             333 Constitution Avenue NW
                             Washington, DC 20001
                             (202) 354-3186
```

Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S
 2            THE DEPUTY CLERK:  Civil action 19-2173, Donald J.
 3   Trump v. Committee on Ways and Means, United States House of
 4   Representatives, et al.
 5         Counsel, please identify yourselves for the record.
 6            MR. CONSOVOY:  Good afternoon, Your Honor.  This is
 7   Will Consovoy for the plaintiff.
 8            THE COURT:  Mr. Consovoy, hello.
 9            MR. LETTER:  This is Douglas Letter, General Counsel,
10   the House of Representatives, and I've got a group of people
11   here.  I'll let them identify themselves.
12            MR. TATELMAN:  Good afternoon, Your Honor.
13   Todd Tatelman for the Committee.
14            MS. MORSE:  Josephine Morse, Associate General Counsel.
15            MS. BARBERO:  Megan Barbero, Associate General Counsel.
16            MR. HANNER:  Brooks Hanner, Associate General Counsel.
17            MR. LETTER:  That's all.
18            THE COURT:  Good afternoon, everyone.
19            MR. AMER:  Good afternoon, Your Honor.  Andrew Amer
20   with the New York Attorney General's Office for the New York
21   defendants, Letitia James and Michael Schmidt.
22            THE COURT:  Good afternoon, Mr. Amer.
23         Thank you all for getting on this telephonic hearing.
24   I have, as you can imagine, reviewed the parties' respective
25   positions in the joint status report, and frankly had just a
```

1   few questions that I wanted to pose to each party, for two
2   purposes, really: one, to see really how far apart people are,
3   and two, to make sure I understand the proposals as I consider
4   what to do here.
5           So, Mr. Consovoy, if I could start with you, can you
6   articulate for me the problems that Mr. Trump has with
7   New York's proposal?
8               MR. CONSOVOY:  Your Honor, I think we had several.
9   To begin, as Your Honor noted in the initial hearing, we don't
10  think these issues are ripe for resolution for many of the same
11  reasons that the underlying case is not ripe for resolution.
12  The jurisdictional analysis under the All Writs Act, because it
13  applies to the parties and nonparties alike, is far more flexible
14  than the ordinary personal-jurisdiction analysis in the case.
15          Second, how this request is made, the reasons it's made,
16  New York's involvement in this process at the time it is made,
17  could well affect the jurisdictional analysis.  Third --
18              THE COURT:  Mr. Consovoy, let me pause you there.
19  I understand your position on the All Writs Act being more
20  flexible, but that doesn't really get to the question of why
21  the New York proposal doesn't protect the President's interests
22  in not having this case become moot.
23          And on the question of New York's forthcoming personal-
24  jurisdiction motion, if you think that I can't decide that
25  motion because how the request is made and what New York

1  contends to do with it would be relevant, why can't you just
2  brief that to me if and when New York makes those arguments?
3          MR. CONSOVOY:  We can, and we'd be pleased to,
4  Your Honor.  I think we were thinking more about waste of party
5  and judicial resources in that event and the cascading issues
6  that may arise, including requests for jurisdictional discovery,
7  and I understood the Court to want to minimize the Court's
8  interaction in this dispute unless and until a request is made.
9  And there may be -- I don't know what arguments they'll make.
10 If you were to dismiss them over what we think are our well-
11 taken position on this, it could lead to an appeal in the D.C.
12 Circuit.
13    So we thought a prudent course would simply be to grant the
14 All Writs Act relief now, hold the case in abeyance, which would
15 neither prejudice New York's rights nor require the Court to
16 invest what might end up being substantial resources in a rather
17 abstract dispute.
18         THE COURT:  I understand what you're saying, but the
19 problem I have is that the reason you want me to act here is you
20 want to prevent the case from becoming moot in the event there's
21 a request and a production of documents before the issue can be
22 litigated.
23    But now you're essentially asking me to enjoin New York
24 from presenting a set of litigation arguments that may or may
25 not be well founded but that it could have, and that could

1  result in its dismissal even on a set of factual assumptions
2  that might run in your favor.
3        So what I just don't understand is, what is it about
4  New York's proposal that doesn't give the President the relief
5  that he wants in the application here, which is to ensure that
6  the case does not become moot before there's an adjudication
7  of the lawfulness of the request and the turning over of the
8  records?
9            MR. CONSOVOY:  Your Honor, so again I think we'd
10 be fine -- you know, if the Court would like briefing and allow
11 that motion to proceed, we'd be, obviously, happy to do it.
12 We don't disagree with Your Honor that while that's ongoing
13 we do have relief.  I guess the question that arises for us is
14 -- and I'm just sort of working it out in my head -- if we win
15 the motion, we're fine.
16       If we lose the motion, we'll be back in front of Your
17 Honor, seeking relief against the Committee or against New York
18 as a nonparty under the All Writs Act, and we will still need
19 protection up and until the request is made, not up and until
20 New York has its day in court on a personal-jurisdiction
21 argument.
22       So I think our concern was, again, when you stated your
23 three principles in court, one of them was that you not have
24 to invest in this case unless and until a request is made, and
25 we were trying to come up with remedies that met those concerns.

1    THE COURT: Well, so, to be very clear, I didn't quite
2 put it that way.
3    MR. CONSOVOY: I apologize.
4    THE COURT: Well, I mean -- I think it may have been
5 ambiguous. But to be very clear, I don't think it's appropriate
6 at all for me to be adjudicating the question of whether the
7 Committee's request and New York's potential production of
8 records, whether those things are lawful, unless and until
9 there's a request made.
10    I didn't say I was unwilling to address other issues,
11 for example, whether there's personal jurisdiction over New York
12 here. That question may very well be ripe, and it is not
13 something that is, at least to me, as clearly unripe as the
14 question of the lawfulness of a potential and not-yet-submitted
15 request or the lawfulness of a potential but not-yet-executed
16 production of documents by New York.
17    MR. CONSOVOY: Thank you, Your Honor. And if
18 I misunderstood what you were suggesting, then that's -- I
19 apologize. We certainly agree that it is -- I could say "more
20 ripe" without conceding that it is completely ripe. I agree
21 with your assessment of that.
22    Of course, if the Court were to grant relief against the
23 Committee, no matter what New York does or does not say about
24 personal jurisdiction, it would answer the ultimate All Writs
25 Act question presented here about whether the President will

1    have protection unless and until a request is made.
2           THE COURT:  So I interrupted you, and you said you
3    had several concerns with the New York proposals.  Do you have
4    others that you would like to articulate?
5           MR. CONSOVOY:  No.  I think I rattled them off there
6    as I was trying to make my case.  Yes.  I think I hit them all.
7           THE COURT:  All right.  I'd like to turn to Mr. Letter.
8       Mr. Letter, am I right that so long as -- I'm really
9    referring to the last paragraph of your statement in the joint
10   status report.  If I were to adopt -- or frankly, if the parties
11   were to agree on New York's proposal, you would have no objection
12   to that?
13          MR. LETTER:  Your Honor, the New York proposal,
14   which I'm reading as on the top of page 6 of the joint filing,
15   the House takes no position on whether the Court should grant
16   that proposed course of action.
17          THE COURT:  Okay.  Mr. Amer, I really had two
18   questions about your proposal, which I think I understand, but
19   with these two questions:  One is, you used the word "voluntary"
20   or "voluntarily" a few times in your proposal.
21      Is it your view that your proposal would be embodied in
22   an order of the Court not just permitting the briefing of your
23   personal jurisdiction and venue arguments, but the Court would
24   order that New York would not turn over records if requested
25   until seven days after a decision on the personal jurisdiction

1  and venue motion?
2          MR. AMER:  I think it's our intention that the Court
3  not issue any order enjoining the New York defendants, because
4  we wouldn't want to be perceived as waiving our objection to
5  personal jurisdiction and venue.  So the way I had framed it was
6  we would make this voluntary stipulation.  And then the Court,
7  accepting the representation of the Commissioner, would then
8  adopt our proposal and enter a briefing schedule.
9          THE COURT:  So I think the case law is pretty clear
10 that it would not be a waiver of a personal-jurisdiction
11 argument if you were to make plain that you were preserving that
12 argument, that in entering into an agreement or an agreed-upon
13 order that you were specifically preserving that argument.
14    Have you looked at whether if you did so -- and I believe
15 you've already made quite clear on the record that you intend
16 to preserve that argument, but that if we did that, either in an
17 order, or if it turned out to be a stipulation if you did that,
18 that that would be sufficient to ensure that you would not have
19 been deemed to waive your personal-jurisdiction argument.
20    I certainly would so hold, and would be prepared to so
21 find in an order if you thought it was necessary, to have such
22 a finding or such a preservation for your nonwaiver concern.
23         MR. AMER:  Your Honor, I haven't done the research,
24 but I don't think that's necessary.  I think if the Court is
25 more comfortable putting it in the form of an order on consent

1  of my clients, as long as that indicates expressly that it's
2  with the understanding that it's being done to allow the Court
3  to consider the defenses and obviously wouldn't result in itself
4  in any waiver, I'm comfortable with that.
5           THE COURT:  I appreciate that.
6      Now, I think this is my last question, which I think is
7  first for you, Mr. Amer, because your proposal is the one that
8  I'm certainly focused on here, but I may want to pose the
9  question also to Mr. Letter.  And that is I think it was
10 noteworthy that while -- and I should say I very much appreciate
11 your having made that proposal, which I do think in many ways
12 forwards the three goals that I articulated on Monday.
13     But would you be willing to commit that, while the process
14 that you've proposed runs -- that is to say the briefing on the
15 personal jurisdiction and venue motion and the like -- and
16 during that period that New York would not respond to a request,
17 and would not respond to such a request until seven days after a
18 decision on the personal-jurisdiction motion, would you also be
19 willing to commit that if New York were to receive a request
20 from the House that it would so notify the Court?
21           MR. AMER:  Your Honor, I'm fine to agree to that
22 because, as a practical matter, I would expect that the first
23 question the Court's going to ask when we show up for argument
24 is have you received a request yet.  So as a practical matter,
25 I'm fine to agree to notify the Court if there's a request.

1       THE COURT:  I appreciate that.
2    Mr. Letter, this may be gilding the lily, but in the
3  event that I adopt something like the New York proposal, would
4  you also be willing to notify the Court if the House -- or the
5  Chairman, I guess -- makes a written request to New York?
6       MR. LETTER:  Your Honor, I just want to make sure you
7  know, we have consulted with our clients on this.  We would not
8  agree to any kind of notice requirement placed on us.  And as I
9  say, we take no position on if New York is voluntarily willing
10 to agree to that.  As I say, we take no position as to that.
11      THE COURT:  And just to be very clear, Mr. Letter,
12 I am not contemplating that I would necessarily order the
13 Committee to provide that notice.  I'm just asking you whether,
14 as an officer of the court, given that a question here is the
15 ripeness of the dispute and the mootness, whether you would
16 commit that you would notify me of a salient event relevant to
17 my jurisdiction and my ability to adjudicate the issues here.
18      MR. LETTER:  Your Honor, with your permission,
19 I'd like to mute for a moment so that I can consult with my
20 colleagues?  Is that okay?
21      THE COURT:  Of course.  Take your time.
22    (Counsel conferring.)
23      MR. LETTER:  Your Honor, I apologize for the delay.
24 You're there, correct?
25      THE COURT:  Yes.  Hi, Mr. Letter.

1         MR. LETTER:  Thank you.  After consulting, as both
2    an officer of the court but also as the House of Representatives,
3    we will, of course, abide by any order that you issue.  But
4    having consulted with my client, I do not have authorization
5    to state that we consent or we we'll voluntarily agree to any
6    notice requirement on our own.  I will say again, we will, of
7    course, abide by any order of the Court.
8         THE COURT:  I appreciate that.  But just to be clear,
9    what that means is that unless the Court orders the House to
10   provide notice that it has transmitted a request, then even
11   while this litigation is pending, the House is not committing
12   that it will notify the Court even if a request has been
13   transmitted.  I understand that, and I understand your point.
14   I just think it's an important thing to note.
15        MR. LETTER:  Yes, Your Honor.  And if New York --
16   especially if New York agrees as it has proposed, I'm not
17   aware that there may be reason for us to also provide notice.
18   But you have stated it correctly, Your Honor.  I do not have
19   any authority to say that we will consent to giving notice.
20        THE COURT:  Okay.  Thank you.  I appreciate your
21   candor.  I think I understand the parties' respective positions,
22   frankly, on each other's proposals and the New York proposal.
23      One thing we haven't talked about, which is a -- I would
24   call it a condition or component of the New York proposal -- is
25   the desire to have, if we go that way, New York's motion to

1  dismiss for lack of personal jurisdiction or venue litigated on
2  a -- I think the word that New York uses is "expedited" basis.
3       Mr. Amer, what did you have in mind by way of a schedule
4  for that motion, if that's the way we go?
5           MR. AMER:  We'd be prepared to file our brief, I would
6  say, within a week.  I would assume, then, that opposing briefs
7  also within a week, and then maybe if you give me two to three
8  days for a reply, and then we can schedule the argument shortly
9  thereafter with hopefully a decision being issued quickly.  So
10 the point would be to have this all wrapped up in a manner of a
11 few weeks.
12          THE COURT:  Mr. Consovoy -- again, this is all
13 assuming this is the path I'm prepared to take.  And I know it
14 may not make sense to agree upon specific dates today, but I'd
15 just like to get the general contours.  Would that schedule, at
16 least generally speaking, be acceptable to you?
17          MR. CONSOVOY:  Your Honor, thank you.  We will, of
18 course, abide by whatever schedule the Court deems appropriate.
19 I think if you asked us what our preference would be, it would
20 be for New York to file its motion whenever it sees fit and we
21 follow the ordinary federals rules.
22      Beyond that, I guess I don't see the urgency so much since
23 nothing has happened yet, no request has been made.  If a request
24 were made, then I could see a reason to have what sounds more
25 like an emergency schedule than even an expedited schedule.

1    But, of course, whatever the Court deems is appropriate we'll
2    brief on and argue on on that schedule.
3            THE COURT:  Well, your point about the schedule and
4    the notice is one of the reasons why I think it's important that
5    the Court be notified if a request is made, because that's what
6    would ripen this dispute in at least significant respects, and
7    would be very important in thinking about the schedule.
8       Mr. Consovoy, let me pose perhaps the last question to you,
9    which is to say, in light of this discussion today and in light
10   of Mr. Amer's representations about what New York would do with
11   respect to the notice, what New York would be willing to have an
12   order say with respect to their commitment not to produce the
13   records until seven days after the decision on the personal
14   jurisdiction/venue motion, is that proposal, as I would say
15   "modified" in open court here, acceptable to you?
16           MR. CONSOVOY:  Your Honor, as you know, it was in
17   our proposal, so we would still like the Court to consider
18   our proposals; but I would not object to that proposal being
19   implemented by the Court, with just two notes which I don't
20   think will be, hopefully, controversial or anything like that.
21      In the event that the Court were to find the jurisdictional
22   motions meritorious, we don't understand the Court to preclude
23   us from coming back for relief against parties who remain in
24   the case if the relief that was against New York was no longer
25   applicable to them because they were dismissed or something like

1  that.  And second, I think I just, out of candor, need to
2  inform the Court as it thinks about this process that once
3  we see New York's motion, we may amend.
4         THE COURT:  I understand.  And my view is that the
5  regular rules relating to 12(b)(1) and 12(b)(6) motions to
6  dismiss, if this is the way we go, would apply, and that you
7  would have the right to amend the complaint -- you would have
8  an absolute right, I think, to amend once, or you could argue,
9  in opposing the motion to dismiss, that an amendment would be
10 appropriate.
11    So I think all of those opportunities would still exist,
12 and I also agree with you that nothing in this proposal, if we
13 were to adopt it, or to do something like it, would foreclose
14 you from seeking whatever further relief you deem necessary in
15 the event that, for example, New York was dismissed, including
16 if you decided to go down that path -- and again, I am not
17 prejudging in any respect whether or not personal jurisdiction
18 exists over New York, but if for whatever reason I were to hold
19 that New York is not a proper party here, nothing in this
20 arrangement nor in that opinion I think would foreclose your
21 ability to sue New York in an appropriate forum.
22        MR. CONSOVOY:  Thank you, Your Honor.  Yes.
23        THE COURT:  And so to be very clear, what I'm
24 contemplating is frankly a pretty modest -- and that's the word
25 I used Monday -- order that would allow New York to argue to me

1    that it should not be a defendant here, to do that on a
2    reasonably expedited basis, to ensure that while that happens
3    Mr. Trump can suffer no harm through the production of materials
4    by New York, because New York is committing it will not do so
5    until seven days after I decide the questions presented by
6    New York, that if in the middle of that briefing or at any time
7    before that decision Congress makes the request that we have
8    been talking about here, that we would receive notice of that
9    and we could adjust either the schedule or the substance of the
10   motions as appropriate.
11        And then, if as in when there's a decision on the personal
12   jurisdiction questions, you and all the other parties frankly
13   are free to seek whatever further relief, either to preserve
14   the jurisdiction here or to preserve jurisdiction in some other
15   court, free as this agreement did, of course, just what it
16   is designed to do, which is to preserve the status quo.
17        At least that is my current thinking.  I need to digest
18   what was said here today to make sure I'm comfortable with it.
19   But the parties should know, and I suppose the press should
20   know, that that is where I am leaning at the moment.
21            MR. CONSOVOY:  Thank you, Your Honor.
22            THE COURT:  So any other business, either from the
23   plaintiff or the House or New York?
24            MR. LETTER:  No, Your Honor.
25            MR. AMER:  Nothing from New York, Your Honor.

1  I appreciate you adopting our proposal, or at least being
2  inclined to do so.
3           THE COURT:  Thank you.
4           MR. LETTER:  Nothing from the House, Your Honor.
5           THE COURT:  Okay.  Thank you, Mr. Amer and Mr. Letter
6  and Mr. Consovoy.  So as I've indicated, I'm leaning toward
7  adopting the New York proposal, which with the caveats
8  articulated by Mr. Consovoy, it sounded like the plaintiff has
9  no objection to.  I need to consider that a little bit further
10 this evening.  I continue to expect that while I have this
11 matter under advisement, actions won't be taken to moot the case
12 out.  But having said that, I have no intention of having this
13 drag out, and I intend to get an order out as soon as possible.
14      So with that, thank you again to everyone for meeting and
15 conferring, for submitting the joint status report, and for
16 participating in this conference.
17          MR. CONSOVOY:  Thank you, Your Honor.
18          MR. AMER:  Thank you, Your Honor.
19          MR. LETTER:  Thank you, Your Honor.
20      (Proceedings adjourned at 2:59 p.m.)
21
22
23
24
25

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

*Bryan A. Wayne*
BRYAN A. WAYNE