UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD J. TRUMP,<br><br>*Plaintiff,*<br><br>v.<br><br>COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, et al.,<br><br>*Defendants.* | Civil Action No. 1:19-cv-02173 (CJN) |

## ORDER

On July 8, 2019, New York's governor signed the Tax Returns Released Under Specific Terms Act (the "TRUST" Act) into law. Complaint, Dkt. 1 ("Compl.") ¶¶ 48, 58; *see also* N.Y. Tax Code § 697(f-1), (f-2) (2019) (codifying the TRUST Act). The Act amended the New York Code to require the Commissioner of the New York State Department of Taxation and Finance ("Commissioner"), "upon written request" from the chairperson of one of three congressional committees, and if certain conditions are met, to "furnish such committee with any current or prior year [tax] reports or returns specified in such request that were filed" in New York by "the president of the United States, vice-president of the United States, member of the United States Congress representing New York state," or other public official enumerated in the statute. Tax § 697(f-1).

On July 23, 2019, Plaintiff Donald J. Trump sued the Commissioner, the Attorney General of New York State (collectively, the "New York Defendants"), and the Committee on Ways and Means of the U.S. House of Representatives ("Committee"), citing concerns that the Committee's Chairman, Representative Richard Neal, would seek to employ the TRUST Act to

request and receive Mr. Trump's New York state tax returns. *See* Compl. ¶¶ 6, 62–68 (alleging media reports of pressure on Chairman Neal to request Mr. Trump's state tax returns through the TRUST Act).[1] The next day, Mr. Trump filed an Emergency Application for Relief under the All Writs Act, 28 U.S.C. § 1651 (2012), asking the Court "to preserve the status quo," Dkt. 6-1 at 5, by enjoining Chairman Neal "from requesting or receiving Plaintiff's state tax returns from New York until Plaintiff obtains an opportunity for judicial review," *id.* at 1. While Mr. Trump acknowledged that "it might be premature for [him] to press his claims challenging the legality of a request that has not yet been made," *id.* at 5, he contended that equitable relief was appropriate because "[i]f he seeks relief after the Chairman requests his state tax returns, the returns might be disclosed before he can be heard in court," *id.* at 1. In other words, Mr. Trump raised the concern that his claims could become ripe and then moot almost instantaneously and without notice to him or the Court, thereby depriving the Court of jurisdiction to decide his claims. *See id.* at 5–6; *see, e.g., Wagner v. Taylor*, 836 F.2d 566, 571 (D.C. Cir. 1987) ("If the court may eventually have jurisdiction of the substantive claim, the court's incidental equitable jurisdiction . . . gives the court authority to impose a temporary restraint in order to preserve the status quo pending ripening of the claim for judicial review.").

Following further briefing, *see* Dkt. 14; Dkt. 17; Dkt. 21, the Court held a hearing on the Emergency Application. At the close of the hearing, the Court ordered the Parties to meet and confer "to determine whether they can reach an agreement regarding how best to proceed in light of . . . three goals": (1) "ensuring that Mr. Trump's claims do not become moot before they get litigated"; (2) "treading as lightly as possible, if at all, on separation of powers and Speech or

---

[1] Mr. Trump asserts two claims: (1) by invoking the TRUST Act, the Committee would violate Article I of the U.S. Constitution and the Rules of the House of Representatives, Compl. ¶¶ 70–72; and (2) the TRUST Act violates the First Amendment, *id.* ¶¶ 74–76.

2

Debate Clause concerns"; and (3) "adjudicating . . . this dispute only when it is actually ripe and has a fuller record than presently exists." Transcript of July 29, 2019 Hearing at 53–54. The Court further ordered the Parties to file a Joint Status Report on July 30, 2019, "setting forth any agreement they have reached—or in the event they are unable to reach agreement, their respective positions—regarding how this case should proceed." Min. Order (July 29, 2019).

On July 30, 2019, the Parties filed their Joint Status Report, Dkt. 22, and the next day the Court convened a telephonic conference. Although the Report stated that the Parties had been "unable to reach agreement," *id.* at 1, during the conference Mr. Trump indicated that he had no objection to the Court's adopting the proposal made by the New York Defendants in the Joint Status Report, as clarified and modified during the conference. *See* Transcript of July 31, 2019 Telephonic Conference at 13–17.[2]

Accordingly, the Court adopts the New York Defendants' proposal, Dkt. 22 at 4–6, as clarified and modified during the July 31 conference.[3] Is it therefore **ORDERED**:

that the New York Defendants shall file their Motion to Dismiss for Lack of Personal Jurisdiction and/or Improper Venue on or before August 9, 2019;

that Mr. Trump shall file his Opposition to the New York Defendants' Motion to Dismiss on or before August 19, 2019;

that the New York Defendants shall file their Reply in support of their Motion to Dismiss on or before August 23, 2019; and

that a hearing on the Motion is set for August 29, 2019, at 2 PM in Courtroom 19;

---

[2] The Committee, for its part, stated that it took no position on the New York Defendants' proposal (which, in any event, does not bind it). *Id.* at 11.

[3] Among other things, the New York Defendants expressly preserved the personal jurisdiction and venue defenses that they have stated they intend to present in their Motion to Dismiss.

It is further **ORDERED** that, during the pendency of the New York Defendants' Motion and for a period of one week from the Court's decision on that Motion, the New York Defendants shall not deliver to the Committee any information concerning Mr. Trump that may be requested by Chairman Neal under the TRUST Act.

It is further **ORDERED** that, during the pendency of the New York Defendants' Motion and for a period of one week from the Court's decision on that Motion, should Chairman Neal make a request to the Commissioner under the TRUST Act for information concerning Mr. Trump, the New York Defendants shall promptly notify the Court and Mr. Trump of that request.

For the avoidance of any doubt, nothing in this Order limits the New York Defendants or Mr. Trump from making any arguments or filings concerning the New York Defendants' Motion to Dismiss, and nothing in this Order limits Mr. Trump's ability to seek further or additional relief following the Court's decision on the New York Defendants' Motion.

It is so **ORDERED**.

DATE: August 1, 2019

CARL J. NICHOLS
United States District Judge