# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD J. TRUMP, <br><br>                  *Plaintiff*, <br><br>   v. <br><br> COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, *et al.*, <br><br>                  *Defendants*. | Case No. 1:19-cv-02173-CJN |

## NEW YORK DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

Defendants Letitia James, sued in her official capacity as Attorney General of the State of New York, and Michael R. Schmidt, sued in his official capacity as Commissioner of the New York State Department of Taxation and Finance (collectively, the "New York Defendants"), through their undersigned counsel, move pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure to dismiss the Complaint against them because this Court lacks personal jurisdiction over the New York Defendants and this District is an improper venue, or in the alternative, to transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1406(a). The grounds supporting this motion are set forth in the accompanying memorandum of law.

Pursuant to the Court's order dated August 1, 2019 (ECF No 25), Plaintiff's opposition to this motion is due on or before August 19, 2019.  A proposed order is attached.

Dated:   New York, New York
         August 9, 2019

LETITIA JAMES
Attorney General of the State of New York

By: _____/s/ Andrew Amer___
        Andrew Amer
Special Litigation Counsel
28 Liberty Street, 17th Floor
New York, New York 10005
(212) 416-6127
Andrew.amer@ag.ny.gov

*Attorney for Defendants Letitia James, in her official capacity, and Michael R. Schmidt, in his official capacity*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DONALD J. TRUMP,<br><br>*Plaintiff*,<br><br>v.<br><br>COMMITTEE ON WAYS AND MEANS,<br>UNITED STATES HOUSE OF<br>REPRESENTATIVES, *et al.*,<br><br>*Defendants*. | Case No. 1:19-cv-02173-CJN |

## [PROPOSED] ORDER GRANTING NEW YORK DEFENDANTS' MOTION TO DISMISS

After considering the motion filed by Defendants Letitia James, sued in her official capacity as Attorney General of the State of New York, and Michael R. Schmidt, sued in his official capacity as Commissioner of the New York State Department of Taxation and Finance (collectively, the "New York Defendants") to dismiss this action against them for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, the motion is **GRANTED**. Mr. Trump has failed to meet his burden of establishing the existence of personal jurisdiction over the New York Defendants. *Reuber v. United States*, 787 F.2d 599, 599 (D.C. Cir. 1986). He has neither alleged facts in the Complaint nor pointed to any evidence in his opposition showing that the New York Defendants reside in this District for purposes of exercising general jurisdiction under D.C. Code § 13-422, or have sufficient "minimum contacts" with this District for purposes of exercising specific jurisdiction

under D.C.'s long-arm statute, D.C. Code § 12-423, or the Due Process Clause. *Lemon v. Kramer*, 270 F. Supp. 3d 125, 135-36 (D.D.C. 2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

It is hereby **ORDERED** that the Complaint is dismissed against the New York Defendants for lack of personal jurisdiction.

Dated: _____

_____
Hon. Carl J. Nichols
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2019, I caused the foregoing document to be filed via this Court's CM/ECF system, which I understand caused service on all counsel of record.

/s/ Andrew Amer
Andrew Amer

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

DONALD J. TRUMP,

*Plaintiff,*

v.

COMMITTEE ON WAYS AND MEANS,
UNITED STATES HOUSE OF
REPRESENTATIVES, *et al.*,

*Defendants.*

Case No. 1:19-cv-02173-CJN

**NEW YORK DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION AND IMPROPER VENUE**

LETITIA JAMES
  *Attorney General*
  *State of New York*
28 Liberty Street
New York, NY  10005

*Attorney for Defendants Letitia
James, in her official capacity, and
Michael R. Schmidt, in his official
capacity*

Andrew Amer
 Special Litigation Counsel

*of Counsel*

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT .......................................................................................................................... 3

    I.    THE COURT LACKS PERSONAL JURISDICTION OVER THE
           NONRESIDENT NEW YORK DEFENDANTS ........................................................ 3

        A.   There Is No General Jurisdiction Over The New York Defendants
              Because They Do Not Reside In The District Of Columbia ................................ 6

        B.   The Court Has No Specific Jurisdiction Over The Nonresident New
              York Defendants Because They Have No Minimum Contacts With This
              Forum ...................................................................................................... 7

        C.   Alternatively, D.C.'s Personal Jurisdiction Provisions Do Not Apply To
              State Officials Sued In Their Official Capacities ............................................. 15

    II.   THE DISTRICT OF COLUMBIA IS NOT A PROPER VENUE ........................... 16

CONCLUSION ...................................................................................................................... 20

TABLE OF AUTHORITIES

**Cases**

*2215 Fifth St. Assocs. v. U–Haul Int'l, Inc.*, 148 F. Supp. 2d 50 (D.D.C. 2001) ......................... 17

*Aldridge v. Williams*, 44 U.S. 9 (1845) .................................................................. 18

*Ali v. District of Columbia*, 278 F.3d 1 (D.C. Cir. 2002) ............................................. 13

*Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13 (D.D.C. 2014), *appeal dismissed,*
   No. 14-7056, 2014 WL 4628907 (D.C. Cir. Aug. 11, 2014) ............................................. 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 4

*Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356 (2001) ................................. 13

*Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221 (D.D.C. 2005) .......................................... 11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................. 12

*Cameron v. Thornburgh*, 983 F.2d 253 (D.C. Cir. 1993) ............................................ 15, 18

*Capel v. Capel*, 272 F. Supp. 3d 33 (D.D.C. 2017) .................................................... 10

*Coalition on Sensible Transp. Inc. v. Dole*, 631 F. Supp. 1382 (D.D.C. 1986) .................... 8, 11

*Companhia Brasileira Carbureto De Calcio—CBCC v. Applied Indus. Materials
   Corp.*, 35 A.3d 1127 (D.C. 2012) ................................................................. 10

*Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983) ............................................. 19

*Cornish v. United States*, 885 F. Supp. 2d 198 (D.D.C. 2012) .................................... 13, 15

*Dougherty v. United States*, 156 F. Supp. 3d 222 (D.D.C. 2016) ....................................... 4

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975) ............................................. 17

*Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808 (D.C.
   1976) (en banc) ................................................................................. 10

*Ex Parte Young*, 209 U.S. 123 (1908) ................................................................. 13

*FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087 (D.C. Cir. 2008) ................................. 4

*Fuentes-Fernandez & Co. v. Caballero & Castellanos*, 770 F. Supp. 2d 277 (D.D.C.
   2011) .......................................................................................... 8, 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ................................. 4

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) .................... 4, 5

*Hanson v. Denckla*, 357 U.S. 235 (1958) ............................................................... 6, 15

*Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264 (D.C. 2001) ................................. 9

*Hunter v. Johanns*, 517 F. Supp. 2d 340 (D.D.C. 2007) ............................................ 17

*In re Kelly*, 841 F.2d 908 (9th Cir. 1988) ............................................................... 18

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................ 5

*Jenkins v. Kerry*, 928 F. Supp. 2d 122 (D.D.C. 2013) .............................................. 8

*Lemon v. Kramer*, 270 F. Supp. 3d 125 (D.D.C. 2017) ........................................ 4, 5, 7

*Lex Tex Ltd., Inc. v. Skillman*, 579 A.2d 244 (D.C. 1990) ......................................... 10

*Marshall v. Labor & Industries, State of Washington*, 89 F. Supp. 2d 4 (D.D.C. 2000) .............. 8

*McCain v. Bank of America*, 13 F. Supp. 3d 45 (D.D.C. 2014) ................................... 16

*Moore v. Motz*, 437 F. Supp. 2d 88 (D.D.C. 2006) ................................................. 16

*Mouzavires v. Baxter*, 434 A.2d 988 (D.C.1981) .................................................... 9

*Murphy v. Empire of Am., FSA*, 746 F.2d 931 (2d Cir. 1984) ................................... 18

*Myers v. Holiday Inns, Inc.*, 915 F.Supp.2d 136 (D.D.C. 2013) ........................... 16, 17

*Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983) ....................... 4, 6, 19

*Pease v. Burke*, 535 F. Supp. 2d 150 (D.D.C. 2008) ................................................ 4

*PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179 (C.D. Cal. 2000) ...................... 14

*Ralls Corp. v. Terna Energy USA Holding Corp.*, 920 F. Supp. 2d 27 (D.D.C. 2013) ............... 11

*Reuber v. United States*, 787 F.2d 599 (D.C. Cir. 1986) ......................................... 3

*Rose v. Silver*, 394 A.2d 1368 (D.C. 1978) ........................................................... 10

*S.C. Edu. Ass'n v. Campbell*, 883 F.2d 1251 (4th Cir. 1989) ................................... 18

*Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d 521 (D.C. Cir. 2001) ........................................................................................................... 3

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) ........................................ 13

*Shibeshi v. United States*, 932 F. Supp. 2d 1 (D.C. Cir. 2013) .................................. 4

*Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) ..................................... 13, 14, 19

*Thompson Hine, LLP v. Taieb*, 734 F.3d 1187 (D.C. Cir. 2013) .................................... 5

*Turner v. Abbott*, 53 F. Supp. 3d 61 (D.D.C. 2014) ...................................................... 12

*United States v. Ferrara*, 54 F.3d 825 (D.C. Cir.1995) ..................................... 5, 15, 16

*United States v. O'Brien,* 391 U.S. 367 (1968) ...................................................... 17, 18

*West v. Holder*, 60 F. Supp. 3d 190 (D.D.C. 2014), *aff'd sub nom on other grounds, West v. Lynch*, 845 F.3d 1228 (D.C. Cir. 2017) ........................................... 7, 9, 15, 16

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) .................................. 13, 15

*Williams v. GEICO Corp*., 792 F. Supp. 2d 58 (D.D.C. 2011)................................... 16

*Willis v. Willis*, 655 F.2d 1333 (D.C. Cir. 1981)............................................................ 6

*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) .................. 6, 13, 15

**Statutes**

28 U.S.C. § 1391(b) (2) ............................................................................................... 17

28 U.S.C. § 1391(b)(1) ................................................................................................ 17

28 U.S.C. § 1391(b)(3) ................................................................................................ 18

28 U.S.C. § 1406(a) ................................................................................................ 2, 19

Ariz. Rev. Stat. Ann. § 42-2003(B)(5)(a)-(c) ............................................................ 14

D.C. Code § 13-421 .................................................................................................... 16

D.C. Code § 13–422.................................................................................................... 4

D.C. Code § 13–422 (2001) ........................................................................................ 4

D.C. Code § 13–423 (2001)............................................................................... 4, 5, 6, 7

N.C. Gen. Stat. § 105-259(b)(3) ................................................................................ 14

N.Y. Public Officers Law § 3(1)................................................................................. 6

N.Y. Tax Law § 697(f), (g)........................................................................................ 14

N.Y. Tax Law § 697(f-1) (2019) ....................................................................... 1, 3, 18

**Rules**

Fed. R. Civ. P. 12(b)(2) ............................................................................................. 15

Fed. R. Civ. P. 12(b)(3) ............................................................................................... 2

Fed. R. Civ. P. 4(k)(1)(A) ............................................................................................ 4

**Constitutional Provisions**

N.Y. Const. Art. V, § 1 ................................................................................................. 6

U.S. Const. amend. XI ................................................................................................ 13

## PRELIMINARY STATEMENT

In this action, a New York tax return filer seeks to challenge the constitutionality of a New York statute governing the treatment of New York tax information, and to enjoin New York officials from taking action under that New York statute.  This lawsuit plainly belongs in a New York court.

This Court has no personal jurisdiction over the New York Attorney General ("Attorney General") or the Commissioner of the New York Department of Taxation and Finance ("Commissioner," and together with the Attorney General, the "New York Defendants"). Plaintiff alleges no facts to support this Court's exercise of personal jurisdiction over the New York Defendants, officials who reside in New York as required by law and work primarily in New York.  Nor does Plaintiff allege any facts to demonstrate that his sole claim asserted against the New York Defendants – a First Amendment challenge to New York's Tax Returns Released Under Specific Terms ("TRUST") Act[1] – arises out of any conduct by the New York Defendants occurring in the District of Columbia.  Rather, the basis for this claim appears to be the purported motivations of members of the New York Legislature in enacting the TRUST Act in New York. Accordingly, there is no personal jurisdiction over the nonresident New York Defendants under D.C.'s long-arm statute or the minimum contacts standard under the Due Process Clause, and they should be dismissed from this case for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Nor is venue proper in this District.  Neither of the New York Defendants resides in D.C., the complaint alleges no events or omissions by the New York Defendants taking place here, the

---

[1] N.Y. Tax Law § 697(f-1) (2019).

only other defendant is absolutely immune from suit under the Speech or Debate Clause for the reasons articulated by its counsel (ECF No. 14), and there is another venue that is proper – the Southern District of New York.  Plaintiff's suit should be dismissed in its entirety for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

If the Court does not dismiss the New York Defendants for lack of personal jurisdiction or dismiss the case for improper venue, then at the very least the Court should transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1406(a).

## BACKGROUND

President Donald J. Trump commenced this suit in his individual capacity against the U.S. House of Representatives Committee on Ways and Means ("Committee") and the New York Defendants in their official capacities.[2]  Mr. Trump asserts two claims—one against the Committee, and one against the New York Defendants.  Count I concerns the Committee alone; it alleges that any attempt by the Committee Chairperson to invoke the TRUST Act to request Plaintiff's state tax returns would exceed the scope of the Committee's lawful authority in violation of Article I of the Constitution and the House Rules.  Complaint ("Compl.") (ECF No. 1) at ¶¶ 70-72.  For relief on Count I, Mr. Trump seeks a declaration that the Committee lacks a legitimate legislative purpose for obtaining his state tax returns and a permanent injunction barring the Committee from requesting or reviewing his state tax return.  *Id*. at p. 24, ¶¶ a and b.

Count II alleges that the New York Legislature's enactment of the TRUST Act violated the First Amendment.  The TRUST Act authorizes the Commissioner to provide the state tax returns of certain enumerated officials to the chairpersons of three Congressional committees

---

[2] As Plaintiff brings this suit in his individual capacity, this brief shall refer to him as either Plaintiff or Mr. Trump.

when a chairperson requests such state tax returns in writing and certifies that the request is

"related to, and in furtherance of, a legitimate task" of Congress; the officials whose state tax

returns would be covered by the TRUST Act are the president, vice president, members of

Congress representing New York, members of the president's executive staff, officials in a

position subject to Senate confirmation, and various New York State officials.  *See* N.Y. Tax

Law § 697 (f-1) (1)-(2).  Mr. Trump alleges that the TRUST Act facially violates his First

Amendment rights because the statute was purportedly enacted to discriminate and retaliate

against him for his politics and speech (even though the statute covers a much broader range of

public officials).  Compl. at ¶¶ 74-76.  For relief on Count II, Mr. Trump seeks a declaration that

the TRUST Act violates the First Amendment and permanent injunctions barring the Attorney

General from enforcing the statute and the Commissioner from complying with *any* request made

under the statute (whether or not related to Mr. Trump's returns) or taking any other action to

disclose his state tax returns.  *Id*. at p. 24, ¶¶ c-e.

By Order dated August 1, 2019, the Court adopted the New York Defendants' proposal to

allow them to file this threshold motion raising personal jurisdiction and venue defenses (ECF

No. 25).

## ARGUMENT

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER THE NONRESIDENT NEW YORK DEFENDANTS

The New York Defendant should be dismissed due to lack of personal jurisdiction.

Plaintiff bears the burden of establishing personal jurisdiction.  *Reuber v. United States*, 787 F.2d

599, 599 (D.C. Cir. 1986).  He must make a *prima facie* showing that personal jurisdiction exists

to defeat dismissal.  *See Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d

521, 524 (D.C. Cir. 2001) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787-88 (D.C.

Cir. 1983)).  Although the facts alleged in the complaint must be construed in a light most favorable to the plaintiff, a court need not accept the plaintiff's "conclusory statements" or "bare allegations" regarding the defendant's actions in a selected forum.  *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Shibeshi v. United States*, 932 F. Supp. 2d 1, 2 (D.C. Cir. 2013).  A court may "dismiss a complaint for lack of personal jurisdiction without permitting the plaintiff to take discovery or holding an evidentiary hearing, on the grounds that the plaintiff failed to allege specific facts that connect the defendant with" the District of Columbia.  *Dougherty v. United States*, 156 F. Supp. 3d 222, 230 (D.D.C. 2016) (citing *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008)).

A federal court has personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  Fed. R. Civ. P. 4(k)(1)(A).  Accordingly, personal jurisdiction in this District may be established under either of the two personal jurisdiction provisions of the District of Columbia Code: (1) D.C.'s general jurisdiction provision, D.C. Code § 13–422 (2001); and (2) D.C.'s specific jurisdiction provision, or long-arm statute, D.C. Code § 13–423 (2001).  *Lemon v. Kramer*, 270 F. Supp. 3d 125, 135-36 (D.D.C. 2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The general jurisdiction provision authorizes courts in this District to "exercise general personal jurisdiction over a person who is 'domiciled in, organized under the laws of, or maintaining [a] principle place of business in, the District of Columbia as to any claim for relief.'"  *Pease v. Burke*, 535 F. Supp. 2d 150, 152 (D.D.C. 2008) (quoting D.C. Code § 13–422).  Where there is no general jurisdiction – *i.e.*, where the defendants are non-residents – a court

4

must "examine whether jurisdiction is applicable under the state's longarm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (quoting *GTE New Media Services*, 199 F.3d at 1347).  Under D.C.'s long-arm statute, courts in this District are authorized to exercise personal jurisdiction over any person as to a claim for relief arising from, *inter alia*, the person's "transacting any business in the District of Columbia." *Lemon*, 270 F. Supp. 3d at 136 (quoting D.C. Code § 13-423(a)(1)).[3]

D.C. courts have interpreted D.C.'s long-arm statute "to provide jurisdiction to the full extent allowed by the Due Process Clause." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir.1995).  Accordingly, "the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry": whether exercising personal jurisdiction accords with the demands of due process.  *Id*. at 828.  A court's jurisdiction over a defendant satisfies due process when there are "minimum contacts," *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), between the defendant and the forum "such that he should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

---

[3] D.C.'s long-arm statute provides, in relevant part:
(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
(1) transacting any business in the District of Columbia;
(2) contracting to supply services in the District of Columbia;
(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . . .
(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.
D.C. Code § 13-423.

(1980).  Such minimum contacts must show that "the defendant purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Where such minimum contacts are alleged under the long-arm statute's "transacting any business" prong, the statute requires that the asserted contacts form the basis of the legal claim at issue.  D.C. Code § 13-423(b) (where jurisdiction is based solely on "transacting any business" prong, "only a claim for relief arising from acts" purportedly constituting the transaction of business "may be asserted against him"); *see Naartex*, 722 F.2d at 787 (plaintiff must show that defendant's "contacts with the District form at least part of the basis for its claims"); *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C. Cir. 1981).  Plaintiff has failed to establish that the Court has personal jurisdiction over the New York Defendants here.

### A. There Is No General Jurisdiction Over The New York Defendants Because They Do Not Reside In The District Of Columbia

Mr. Trump fails to allege any facts to support the Court's exercise of general jurisdiction over the New York Defendants.  The New York Defendants are the Attorney General of New York State and the Commissioner of the New York State Department of Taxation and Finance.  Compl. at ¶¶ 14-15.  Plaintiff does not allege that either of these New York State officials lives or maintains their principal place of business in the District of Columbia, nor can he.  The Attorney General and the Commissioner are *required* to reside in New York to qualify for the positions they hold.  N.Y. Const. Art. V, § 1 (requiring Attorney General to meet the same New York residency requirement as the Governor); N.Y. Public Officers Law § 3(1) (requiring all persons holding a civil office to be state residents).  And there is no dispute that each of the New York Defendants works primarily in New York, as is evident from their roles as New York officials.  Compl. at ¶¶ 14-15.  Accordingly, they are nonresidents outside the reach of

this Court's general jurisdiction.  *See Lemon*, 270 F. Supp. 3d at 137 (relying in part on

Maryland's residency requirement applicable to the Maryland Attorney General and other

Maryland officials in holding that they are not subject to personal jurisdiction in this District);

*West v. Holder*, 60 F. Supp. 3d 190, 193-94 (D.D.C. 2014) (finding no general jurisdiction over

the governor of Washington because he is not domiciled in D.C.), *aff'd sub nom on other*

*grounds*, *West v. Lynch*, 845 F.3d 1228 (D.C. Cir. 2017).

### B.  The Court Has No Specific Jurisdiction Over The Nonresident New York Defendants Because They Have No Minimum Contacts With This Forum

Mr. Trump has also failed to allege any facts to support the Court's exercise of specific

jurisdiction over the New York Defendants under D.C.'s long-arm statute.  The only provision

of the long-arm statute that could potentially be relevant is the "transacting any business"

provision.  *See* D.C. Code § 13-423(a)(1).  But Mr. Trump failed to assert any facts

demonstrating that the nonresident New York Defendants had any contact with this forum that

would constitute "transacting any business" here, or that any such contact forms the basis of his

sole claim against the New York Defendants – a facial First Amendment challenge to a New

York statute enacted by the New York Legislature to govern the treatment of New York tax

information.  *See Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 22 (D.D.C. 2014),

*appeal dismissed*, No. 14-7056, 2014 WL 4628907 (D.C. Cir. Aug. 11, 2014).

The allegations underlying Mr. Trump's First Amendment challenge to the TRUST Act

demonstrate that this Court lacks personal jurisdiction over the New York Defendants.  Mr.

Trump's sole claim against the New York Defendants challenges the constitutionality of the

TRUST Act, a New York law enacted by the New York Legislature to amend New York's

statutory policies governing New York officials' treatment of New York tax information.  He

asserts that the TRUST Act violated the First Amendment because New York legislators enacted

7

the law purportedly to discriminate and retaliate against him for his politics and speech.  Compl.

at ¶¶ 74-76.  But the New York Defendants "cannot reasonably be expected to assume that one

of the consequences" of the New York Legislature's enactment of this New York statute would

be to allow Mr. Trump to hale them into federal district court in the *District of Columbia* rather

than *New York* to defend the constitutionality of New York's statute.  *Marshall v. Labor &*

*Industries, State of Washington*, 89 F. Supp. 2d 4, 10 (D.D.C. 2000) (D.C. court lacked personal

jurisdiction over Washington officials sued for administration of Washington's worker's

compensation system); *see also Jenkins v. Kerry*, 928 F. Supp. 2d 122, 132-33 (D.D.C. 2013)

(D.C. court lacked personal jurisdiction over Florida officials sued for participation in Florida

court proceedings); *Fuentes-Fernandez & Co. v. Caballero & Castellanos*, 770 F. Supp. 2d

277, 281 (D.D.C. 2011) (D.C. court lacked personal jurisdiction over Louisiana agency sued for

work performed in Louisiana); *Coalition on Sensible Transp. Inc. v. Dole,* 631 F. Supp. 1382,

1384-85 (D.D.C. 1986) (D.C. court lacked personal jurisdiction over Maryland official sued for

purported improprieties in Maryland agency's administrative process).

     Nor has Mr. Trump alleged any specific actions by the New York Defendants that would

subject them to jurisdiction in D.C.  As the complaint acknowledges, the Commissioner is

simply the state official whom the Legislature tasked with administering the TRUST Act's state-

law provisions about state tax information.  The complaint alleges no more than who the

Commissioner is (Compl. at ¶ 15) and what he is required to do under the TRUST Act, which is

to receive a written request from one of the three committees enumerated in the statute and

redact any federal return information before providing responsive material (*id*. at ¶¶ 52-53, 67).

None of this alleged conduct has even occurred yet since the Committee has not yet submitted

any written request to the Commissioner.  The Court plainly lacks personal jurisdiction over the

Commissioner where the Commissioner has not yet had *any* contact with the Committee, and

Mr. Trump thus asserts solely a facial challenge to a New York statue that has not yet been

enforced.  In any event, all of the activities that the statute authorizes the Commissioner to

undertake if the Committee sends a written request will occur in New York pursuant to the

Commissioner's state-law authority over state tax information.  Such activity thus does not

provide any basis for this Court to assert personal jurisdiction over the Commissioner.

Moreover, the Commissioner's statutory authority under the TRUST Act to provide state

tax return information to committees located in D.C. does not constitute the minimum contacts

necessary to provide this Court with personal jurisdiction over the Commissioner.  The statute

does not require the Commissioner to deliver any requested materials in person or otherwise

enter this District.  At most, the Commissioner will cause information to be delivered to D.C. or

have communications with federal government officials.  But such information sharing and

communications are insufficient to establish personal jurisdiction under the "transacting any

business" prong of D.C.'s long-arm statute for three reasons.

First, the "transacting any business" provision applies only where a defendant has

"purposefully engaged in some type of *commercial or business-related* activity directed" at

residents of D.C.  *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270-71 (D.C. 2001)

(emphasis added); *see, e.g., West*, 60 F. Supp. 3d at 195 (finding communications between

Governor of Washington and the federal government could not give rise to long-arm

jurisdiction because "contacts falling under the 'transacting any business provision' usually

must be *commercial*.") (emphasis added); *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C.1981)

("It is now well settled that the 'transacting any business' provision embraces those *contractual*

*activities* of a nonresident defendant which cause a consequence here.") (emphasis added).  But

the Commissioner's conduct under the TRUST Act in responding to a written request for state

tax return information will not be commercial or business-related activity at all.  To the

contrary, the Commissioner's administration of the TRUST Act will be part of his official

duties to implement the State's policy choices about the sharing of state tax information with

other government officials.  Such noncommercial activity cannot form the basis of personal

jurisdiction under the "transacting any business" provision.  *See, e.g.*, *Capel v. Capel*, 272 F.

Supp. 3d 33, 39 (D.D.C. 2017) (holding family-law contract did not constitute commercial

activity and thus did not provide personal jurisdiction under "transacting any business"

provision).

Second, under the "government contacts" doctrine, a claim of personal jurisdiction in

the District of Columbia cannot be premised solely on a defendant's contacts with the federal

government.  *Companhia Brasileira Carbureto De Calcio—CBCC v. Applied Indus. Materials

Corp.,* 35 A.3d 1127, 1131 (D.C. 2012) (quoting *Envtl. Research Int'l, Inc. v. Lockwood Greene

Eng'rs, Inc.,* 355 A.2d 808, 813 (D.C. 1976) (en banc)).  As explained by the District of

Columbia Court of Appeals, the "government contacts" doctrine reflects "the unique character

of the District as the seat of national government" and preserves "the correlative need for

unfettered access to federal departments and agencies for the entire national citizenry."  *Envtl.

Research Int'l*, 355 A.2d at 813.[4]  Allowing courts in D.C. "to assert personal jurisdiction over

nonresidents whose sole contact with the District consists of dealing with a federal

instrumentality" would threaten the public's ability to participate in government freely, and

"threaten to convert the District of Columbia into a national judicial forum."  *Id.*  Under the

---

[4] For a complete discussion of the history of the "government contacts" doctrine, *see Lex Tex
Ltd., Inc. v. Skillman,* 579 A.2d 244, 246–47 (D.C. 1990), *Naartex,* 722 F.2d at 786-87, and *Rose
v. Silver,* 394 A.2d 1368, 1373 (D.C. 1978).

"government contacts" doctrine, none of the information sharing and communications the Commissioner would allegedly undertake under the TRUST Act if the Committee were to submit a written request could possibly form a basis for the assertion of personal jurisdiction. *See, e.g.*, *Ralls Corp. v. Terna Energy USA Holding Corp.,* 920 F. Supp. 2d 27, 31 (D.D.C. 2013) ("[S]ubmitting documents to and meeting with government officials in the District does not establish personal jurisdiction."); *Fuentes-Fernandez*, 770 F. Supp. 2d at 281-82 (holding that under the "government contacts" doctrine contact between federal officials and a Louisiana state entity did not give rise to personal jurisdiction); *Coalition on Sensible Transp.*, 631 F. Supp. at 1384-85 (applying government contacts doctrine to an alleged meeting between federal and Maryland state officials in the District).

Third, the Commissioner's potential sharing of state-tax information to the Committee cannot provide personal jurisdiction under the "transacting any business" prong because that theoretical activity – which has not happened yet – does not actually form the basis of Mr. Trump's First Amendment claim against the New York Defendants.  As explained, the long-arm statute requires "that a claim must arise" from the contacts alleged to constitute transacting business in this forum – a statutory requirement "closely enforced by the courts."  *Coalition on Sensible Tranp.*, 631 F. Supp. at 1385.  Here, Mr. Trump's First Amendment claim arises out of the *Legislature's* already completed enactment of the TRUST Act, purportedly in retaliation for Mr. Trump's political views and speech.  That claim does not arise out of any of the *Commissioner's* hypothetical contacts with the Committee, if the Committee were to send a request.  Accordingly, the Court lacks personal jurisdiction over the Commissioner.  *See, e.g.*, *Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 228-29 (D.D.C. 2005) (holding defendant's purported contacts with District did not give rise to legal claim against him and thus did not

11

provide personal jurisdiction).

The complaint is similarly threadbare with respect to the Attorney General, who does not administer or enforce the TRUST Act. Plaintiff merely identifies who the Attorney General is (Compl. at ¶ 14) and quotes from a few of her statements and tweets that mention him (*id*. at ¶ 36), none of which is alleged to have occurred in D.C. or forms the basis for his sole legal claim challenging the constitutionality of the TRUST Act. The Court thus lacks personal jurisdiction over the Attorney General as well.

Mr. Trump cannot use the "transacting any business" clause of the D.C. long-arm statute to predicate this Court's exercise of specific jurisdiction over the Attorney General based on her participation from time to time with other state attorneys general as a plaintiff in litigation in the District of Columbia because plaintiff's claims in this action bear no relationship to any such other litigation. *Turner v. Abbott*, 53 F. Supp. 3d 61, 67-68 (D.D.C. 2014) (rejecting claim that participation by Texas Attorney General in unrelated litigation in D.C. subjects him to specific jurisdiction under D.C.'s long-arm statute). Holding otherwise would violate the minimum contacts requirement under the Due Process Clause because the Attorney General, "by pursuing litigation in the District of Columbia," would not reasonably have anticipated, "as a result, being pulled into this forum to litigate entirely unrelated claims." *Id*. at 68 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985)).

In any event, any attempt by Plaintiff to gin up facts in an attempt establish minimum contacts between the Attorney General and the District of Columbia would be futile because she enjoys immunity from suit under the Eleventh Amendment.[5]

---

[5] Pursuant to the Court's order (ECF No. 25), this motion is limited to the New York Defendants' personal jurisdiction and venue defenses, with all other defenses, including an

Finally, considerations of federalism and state sovereignty, implicated here because the

New York Defendants are sued in their official capacities, provide further bases for finding that

the exercise of personal jurisdiction over the New York Defendants would be unreasonable

under the Due Process Clause.  "Federalism and state sovereignty are an essential part of the

constraints that due process imposes upon personal jurisdiction," and they prevent a federal

district court from exercising personal jurisdiction "over a nonresident state official."  *Stroman*

*Realty, Inc. v. Wercinski*, 513 F.3d 476, 488 (5th Cir. 2008).  "The sovereignty of each State . . .

implie[s] a limitation on the sovereignty of all of its sister States—a limitation express or

implicit in both the original scheme of the Constitution and the Fourteenth Amendment."

*World–Wide Volkswagen,* 444 U.S. at 293.  Accordingly, "the reasonableness of asserting

jurisdiction over [a] defendant must be assessed in the context of our federal system of

government."  *Id.* (citation omitted).  In that way, due process "act[s] as an instrument of

interstate federalism."  *Id.* at 294.  "The effect of holding that a federal district court in the

---

immunity defense under the Eleventh Amendment, preserved.  Nevertheless, in the event that
Plaintiff contends in opposition to this motion that he needs to conduct jurisdictional discovery
relating to the Attorney General, the Court can and should consider her Eleventh Amendment
immunity defense in determining whether such discovery would be futile.  The basis for the
Eleventh Amendment defense is that a suit against state officials sued in their official capacities
"is no different from a suit against the State itself."  *Will v. Michigan Dept. of State Police*, 491
U.S. 58, 71 (1989); *Cornish v. United States*, 885 F. Supp. 2d 198, 205 (D.D.C. 2012).  The State
is not susceptible to suit in federal court without a valid abrogation or waiver of its Eleventh
Amendment immunity, *see* U.S. Const. amend. XI; *Bd. of Trustees of Univ. of Alabama v.
Garrett,* 531 U.S. 356, 363 (2001), and there has been neither Congressional abrogation of the
states' sovereign immunity for actions such as this brought pursuant to 42 U.S.C. § 1983, *see
Will*, 491 U.S. at 71; *Ali v. District of Columbia*, 278 F.3d 1, 7 (D.C. Cir. 2002), nor waiver by
the State of New York of its Eleventh Amendment immunity for claims brought in federal court.
Nor does Plaintiff's claim for declaratory and injunctive relief against the Attorney General fit
into the "narrow exception" to sovereign immunity created by the *Ex Parte Young* doctrine
because she is not specifically charged with the duty to enforce the TRUST Act and has no other
connection with enforcement of the statute.  *Ex Parte Young*, 209 U.S. 123, 157 (1908);
*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 76 (1996).

[District of Columbia] had personal jurisdiction over a nonresident state official would create an avenue for challenging the validity of one state's laws in courts located in another state." *Stroman*, 513 F.3d at 488.  Such a practice – which is precisely what Mr. Trump seeks to do here – "would greatly diminish the independence of the states" and improperly offend basic principles of federalism and interstate sovereignty.  *See PTI, Inc. v. Philip Morris Inc*., 100 F. Supp. 2d 1179, 1189 n.8 (C.D. Cal. 2000) (requiring one state to submit to the long-arm jurisdiction of another state "constitutes an extreme impingement on state sovereignty").

This Court's exercise of personal jurisdiction over the nonresident New York Defendants here would also raise the specter of state officials having to defend their own states' laws "in courts throughout the nation," rather than in the "local state or federal courts" that possess "special expertise" in such matters.  *Stroman*, 513 F.3d at 487.  For example, prior to enactment of the TRUST Act, New York's tax laws already authorized the sharing of state tax information with federal, state, and local government officials under certain circumstances *See, e.g.*, N.Y. Tax Law § 697(f), (g) (authorizing the Commissioner to share state tax information with federal, state, and city tax officials for tax purposes on written request).  And other States likewise authorize their tax officials to share state tax information with certain officials from the federal government or other States' governments under statutorily enumerated circumstances.  *See, e.g.*, Ariz. Rev. Stat. Ann. § 42-2003(B)(5)(a)-(c); N.C. Gen. Stat. § 105-259(b)(3).  If the New York Defendants must defend against Plaintiff's constitutional challenge to a New York tax-information sharing statute in a forum outside New York, then other States' officials may soon be haled into forums outside of their States to defend against similar challenges to the enactment or enforcement of their statutes.  Such lawsuits would "greatly diminish the independence of the states."  *Stroman*, 513 F.3d at 488; *cf. Cameron v.*

14

*Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993) ("By naming high government officials

as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere.").

Simply put, nothing under the TRUST Act creates any contact between the New York

Defendants and D.C. "such that [they] should reasonably anticipate being haled into court" in

this District, *World– Wide Volkswagen*, 444 U.S. at 297, or supports a finding that they

"purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws," *Hanson*, 357 U.S. at 253.

Moreover, it would be unreasonable under the Due Process Clause and basic principles of

comity and federalism to require the New York Defendants to defend the constitutionality of

the TRUST Act in a non-New York forum.  Because there is no general or specific personal

jurisdiction over the New York Defendants, the Court should grant their motion to dismiss for

lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## C.  Alternatively, D.C.'s Personal Jurisdiction Provisions Do Not Apply To State Officials Sued In Their Official Capacities

A suit against state officials sued in their official capacities "is no different from a suit

against the State itself."  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Cornish

v. United States*, 885 F. Supp. 2d 198, 205 (D.D.C. 2012).  It is an open question in this Circuit

whether this is true for purposes of analyzing personal jurisdiction. *Ferrara*, 54 F.3d at 832

("We need not determine whether a State official sued in his official capacity should be treated

as if he were the State for jurisdictional purposes . . . ."); *West*, 60 F. Supp. 3d at 195 (noting

whether the holding in *Will* applies for purposes of a personal jurisdiction analysis "is

uncertain") (citing *Ferrara*).  But if this action is treated as a suit against New York State, then

there can be no personal jurisdiction over the New York Defendants because D.C.'s personal

jurisdiction provisions do not apply.

15

The D.C. personal jurisdiction provisions authorize the exercise of jurisdiction only over "persons," which is defined as including "an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, whether or not a citizen or domiciliary of the District of Columbia and whether or not organized under the laws of the District of Columbia."  D.C. Code § 13-421.  The D.C. Circuit has expressly held that a State does not qualify as a "person" under this statutory definition.  *Ferrara*, 54 F.3d at 831-32 (holding the text of D.C. Code § 13-421 "affirmatively implies that a State is not a 'person' for its purpose"); *West*, 60 F. Supp. 3d at 195 (holding state officials sued in their official capacities do not fall under D.C.'s long-arm statute) (citing *Ferrara*); *Moore v. Motz*, 437 F. Supp. 2d 88, 94 (D.D.C. 2006) ("The District of Columbia long-arm statute does not authorize personal jurisdiction over state governments, because states are not 'persons' within the meaning of the statute.") (citing *Ferrara*).

Accordingly, to the extent the Court deems this action to be against the State of New York under *Will*, there is no need for any "minimum contacts" analysis to hold the New York Defendants should be dismissed because D.C. law provides no statutory basis for the exercise of personal jurisdiction over them.

## II.     THE DISTRICT OF COLUMBIA IS NOT A PROPER VENUE

The District of Columbia is an improper venue for this lawsuit.  The plaintiff bears the burden of proving that venue is proper, *see Myers v. Holiday Inns, Inc.*, 915 F.Supp.2d 136, 144 (D.D.C. 2013), because "it is the plaintiff's obligation to institute the action in a permissible forum," *McCain v. Bank of America*, 13 F. Supp. 3d 45, 51 (D.D.C. 2014) (quoting *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011)).  In determining whether a venue is proper, "a court should accept the plaintiff's well-pled factual allegations as true, resolve any factual conflicts in the plaintiff's favor, and draw all reasonable inferences in favor of the

16

plaintiff." *Myers*, 915 F. Supp. 2d at 144 (citing *Hunter v. Johanns*, 517 F. Supp. 2d 340, 343 (D.D.C. 2007)).  The court need not, however, accept a plaintiff's legal conclusions as true.  *See 2215 Fifth St. Assocs. v. U–Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 54 (D.D.C. 2001).

The general venue statute, 28 U.S.C. § 1391(b), provides three bases for venue.  First, venue is proper in a "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  This provision does not provide for venue here because it is beyond dispute that the New York Defendants do not reside in this District as they are required by law to reside in New York.  *See, supra*, at 6-7.

Second, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b) (2).  This provision also does not provide for venue in this District because the complaint alleges no events or omissions by the New York Defendants that give rise to Mr. Trump's First Amendment claim and that took place in the District of Columbia.  *See, supra*, at 7-9.  To the contrary, Mr. Trump alleges that the purported acts of "retaliation" and "discrimination" were taken by members of the New York Legislature in New York.  Compl. at ¶¶ 35-59.  To the extent Plaintiff attempts to rely for venue purposes on allegations about the conduct of, and statements by, House and Committee members taking place in D.C. (Compl. at ¶¶ 26-34), those allegations have nothing to do with the enactment of the TRUST Act.  And in any event, inquiries into legislative motive or purpose have no place in deciding the merits of a First Amendment challenge.  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 508 (1975); *United States v. O'Brien,* 391 U.S. 367, 383 (1968) (cautioning that "[i]nquiries into congressional motives or purposes are a hazardous matter" in a First Amendment challenge to a law prohibiting the destruction of a draft card).  "It is a familiar

principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."[6] *O'Brien*, 391 U.S. at 383.

Third, if no other district is appropriate, venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(3).  Here, there is another district that would clearly be appropriate to hear this matter—the Southern District of New York.  The New York Defendants work and reside in New York, and the Commissioner will review returns, redact information, and respond to any requests made under the TRUST Act in New York.  The Committee, while not resident in New York, is absolutely immune from suit under the Speech or Debate Clause based on the holding in *Eastland*, *see* Response of the Committee on Ways & Means to Emergency Application, (ECF No. 14), and in any event, the only claim against the Committee in this action – Count I – is not ripe, *see* July 29, 2019 Transcript at 11-12 (noting "a significant ripeness concern").  Plaintiff's decision to name the Committee as a defendant in the absence of any written request from the Committee under the TRUST Act thus does not present any barrier to transferring this action to the Southern District of New York.  *See Cameron v. Thornburgh*, 983 F.2d 253, 256-57 (D.C. Cir. 1993) (dismissing federal officials resident in D.C. and transferring action to the Southern District of Indiana).  As the D.C. Circuit warned in *Cameron*: "Courts in this circuit

---

[6] Even in other cases where legislative motive is relevant to the merits of a claim, courts have observed that "it is the motivation of the entire legislature, not the motivation of a handful of voluble members . . . that is relevant."  *S.C. Edu. Ass'n v. Campbell*, 883 F.2d 1251, 1262 (4th Cir. 1989) (citing *Aldridge v. Williams*, 44 U.S. 9, 24 (1845)); *see also Murphy v. Empire of Am., FSA*, 746 F.2d 931, 935 (2d Cir. 1984) (holding that isolated remarks in legislative debate are entitled to little or no weight); *In re Kelly*, 841 F.2d 908, 912 n.3 (9th Cir. 1988) ("Stray comments by individual legislators, not otherwise supported by statutory language or committee reports, cannot be attributed to the full body that voted on the bill.  The opposite inference is far more likely.").

must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia.  By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere."  *Id*. at 256.

Under 28 U.S.C. § 1406(a), a district court shall dismiss an action filed in an improper venue or, if it is "in the interest of justice, transfer such case to any district ... in which it could have been brought."  "The decision whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court."  *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983).  If the Court does not dismiss the New York Defendants for lack of personal jurisdiction or dismiss the case for improper venue, it should at a minimum transfer the case to the Southern District of New York.  *Stroman*, 513 F.3d at 487 (noting that state officials should not have to defend attempts to enforce their own states' laws "in courts throughout the nation," rather than in the "local state or federal courts").

**CONCLUSION**

The Court should grant the New York Defendants' motion and issue an order: (i)

dismissing them from this action for lack of personal jurisdiction; (ii) dismissing the case based

on improper venue; or (iii) at the very least transferring this case to the Southern District of New

York.

Dated:   New York, New York
         August 9, 2019

                                        LETITIA JAMES
                                        Attorney General of the State of New York

                                        By: _____/s/ Andrew Amer__
                                             Andrew Amer
                                        Special Litigation Counsel
                                        28 Liberty Street, 17th Floor
                                        New York, New York 10005
                                        (212) 416-6127
                                        Andrew.amer@ag.ny.gov

                                        *Attorney for Defendants Letitia James, in her*
                                        *official capacity, and Michael R. Schmidt, in*
                                        *his official capacity*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2019, I caused the foregoing document to be filed via this Court's CM/ECF system, which I understand caused service on all counsel of record.

/s/ Andrew Amer
Andrew Amer