```
 1                 BEFORE THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
 2

 3    DONALD J. TRUMP,                   .
                                         .  Case Number 19-civ-2173
 4             Plaintiff,                .
                                         .
 5        vs.                            .  Washington, D.C.
                                         .  July 25, 2019
 6    COMMITTEE ON WAYS AND MEANS,       .  3:04 p.m.
      UNITED STATES HOUSE OF             .
 7    REPRESENTATIVES, et al.,           .
                                         .
 8             Defendants.               .
      - - - - - - - - - - - - - - - - -

 9
                        TRANSCRIPT OF PROCEEDINGS
10            BEFORE THE HONORABLE TREVOR N. MCFADDEN
                    UNITED STATES DISTRICT JUDGE
11
      APPEARANCES:
12
      For the Plaintiff:         WILLIAM CONSOVOY, ESQ.
13                               Consovoy McCarthy PLLC
                                 1600 Wilson Boulevard, Suite 700
14                               Arlington, Virginia 22209

15    For the Defendants:        TODD B. TATELMAN, ESQ.
                                 JOSEPHINE T. MORSE, ESQ.
16                               SALLY CLOUSE, ESQ.
                                 BROOKS HANNER, ESQ.
17                               U.S. House of Representatives
                                 Office of General Counsel
18                               219 Cannon House Office Building
                                 Washington, D.C. 20515
19
                                 ANDREW AMER, ESQ. (via telephone)
20                               Office of the Attorney General
                                 28 Liberty Street
21                               New York, New York 10005

22    Official Court Reporter:   SARA A. WICK, RPR, CRR
                                 333 Constitution Avenue Northwest
23                               U.S. Courthouse, Room 4704-B
                                 Washington, D.C. 20001
24                               202-354-3284

25    Proceedings recorded by stenotype shorthand.
      Transcript produced by computer-aided transcription.
```

P R O C E E D I N G S

1

2    (Call to order of the court.)

3        THE COURTROOM DEPUTY:  Your Honor, this is Civil Case

4    19-2173, Donald J. Trump versus Committee on Ways and Means,

5    United States House of Representatives, et al.

6    Counsel, please come forward and identify yourselves for

7    the record.

8        MR. CONSOVOY:  Good afternoon, Your Honor.  Will

9    Consovoy on behalf of the plaintiff.

10        THE COURT:  Good afternoon, Mr. Consovoy.

11        MR. TATELMAN:  Good afternoon, Your Honor.  Todd

12    Tatelman on behalf of the Committee on Ways and Means.

13        THE COURT:  Good afternoon, Mr. Tatelman.

14        MR. AMER:  Good afternoon, Your Honor.  It is Andrew

15    Amer on the phone for the State defendants.

16        THE COURT:  Good afternoon, Mr. Amer.

17    All right.  As I mentioned to the parties in our conference

18    call last night, I had some initial questions about whether this

19    is properly considered a related case under our Local Rules

20    40.5.  I appreciate the briefing from the President and the

21    State earlier today.  I would like to discuss that issue.

22    First, Mr. Consovoy, perhaps I can start with you.  Sir,

23    you mention in your brief that you believe there is going to be

24    a focus on a common purpose in both cases.  It looks to me,

25    though, I'm sure you would agree, obviously, that the purpose of

1    New York in this case is beside the point and in the other case.

2    And it also seems, at least based on the Committee's reading of

3    *Eastland*, that any investigation into motives from the Committee

4    in this case would be inappropriate, although it may well have a

5    part to play in the other case where they're plaintiffs.

6         What am I missing here?

7         MR. CONSOVOY:  All of those things are things that

8    were said by the parties.  I will take them one at a time.

9         The purpose issue, I will start there.  We are not -- and I

10   think this has been an issue of disagreement between the

11   Committee and the President in many cases, including the *Mazars*

12   case that is now before the D.C. Circuit.  We are not

13   challenging motives in either case, or at least here, we are

14   challenging whether there is a legitimate legislative purpose.

15        Of course, if you are challenging purpose, by definition,

16   you have to figure out what the purpose was.  And so we don't

17   think that there is a motive distinction between the two cases.

18        Ultimately, under the local rules, there needs to be either

19   a common issue of law or a common issue of fact, not both.  We

20   think we have both, but I think the most straightforward way to

21   think about the relationship between the two cases is, there is

22   no doubt that New York passed this statute to facilitate the

23   Committee's efforts to gain the President's tax returns.

24   Indeed, the state law itself incorporates by reference the

25   federal law that is at issue in the other case.

1          THE COURT:  Mr. Consovoy, you said common issues of

2     law or common issues of fact.

3          MR. CONSOVOY:  Yes.

4          THE COURT:  I thought it was just common issues of

5     fact under the local rule.

6          MR. CONSOVOY:  I may have that wrong.  I believe it

7     references issues in common.  But even if it is just common

8     issues of fact, we certainly have them here.  In both cases,

9     whether the Committee has a legitimate legislative purpose is

10    squarely at issue in both cases.  The defenses that we will

11    raise in the federal case -- which have, obviously, not been

12    entered yet; we are still at the complaint stage -- will look

13    exactly like the claims for relief set forth in this case,

14    vis-a-vis the Committee.

15       So when the Committee seeks the federal tax return from

16    Treasury, at least from the intervenor's point of view, the

17    arguments in response will be, one, that request lacks a

18    legitimate legislative purpose; two, the underlying reasons for

19    it violate the First Amendment.

20          THE COURT:  And we don't need to get too far into the

21    merits, particularly of the other case.  But aren't I right in

22    thinking that the Speech or Debate Clause is going to operate

23    very differently where the Committee is a plaintiff versus where

24    they are a defendant here?

25          MR. CONSOVOY:  There may be some differences, but it

1    is a gateway issue only.  So we don't think there is a proper

2    Speech or Debate issue at all in this case.  We are only

3    challenging legitimate legislative purpose, just like in the

4    *Mazars* case.

5        They have arguments that they have a legitimate legislative

6    purpose.  If they win those arguments, they win.  If they lose

7    those arguments, they have exceeded their Article One authority,

8    and we will get relief.

9        The Committee intervened in the *Mazars* case, and it

10   conceded in its intervention papers that it was a proper party.

11   It is quite unusual for the Committee -- in that case we sued

12   the chairman of Oversight.  The Committee asked for substitution

13   so that it could substitute in as a proper party for the

14   chairman.

15       And now in a case that looks quite similar, the Committee

16   is asserting what we think are not meritorious Speech or Debate.

17   I don't think they can end run the common issues by asserting a

18   legal defense that we think will ultimately fail.  It will not

19   drive the entire case.  It will only be an initial issue.

20           THE COURT:  So as you said, the circuit is currently

21   considering this, this point.  But I mean, *Eastland* has some

22   pretty unhelpful language for you, I would say, on this idea

23   that bad motives or bad intent or that type of thing is

24   something that I could look at, at least in this case.

25           MR. CONSOVOY:  So can I grab my copy of *Eastland*?

1          THE COURT:  Sure.

2          MR. CONSOVOY:  Sorry.  I would point the Court to a

3     couple of places that, I think, help clear this up.  Your Honor,

4     I think we would ask that given that it has only been raised for

5     the first time and we think it goes to the merits, not the All

6     Writs Act issue, if the Court would like briefing on this, we

7     would be happy to submit it.

8          But I think we could start sort of backwards.  Footnote 17

9     in *Eastland* says the Committee, if it wants to assert these

10    Speech or Debate issues, has to file a motion to dismiss.  We

11    have not reached that stage of the case yet.  So in terms of the

12    All Writs Act issue, we are not even there.  As you pointed out

13    on the call last night, we are not even there yet.  We have a

14    right to defend against that motion.

15         If you look at footnote 14, which is just a few pages

16    earlier, footnote 14 says we get to bring this case.  The issue

17    in this case is whether the Committee's request or impending

18    request for the President's state tax records has a legitimate

19    legislative purpose, just like in *Mazars* when the Committee's

20    request for the President's accounting information had a

21    legitimate legislative purpose.

22         No one in the *Mazars* case, not the Committee, not the

23    District Court, not the Court of Appeals, not the amicus, has

24    ever asserted there is a jurisdictional problem with that case.

25    We may have a merits dispute about whether there is a legitimate

1   legislative purpose and how you probe that and how far deeply

2   into the Committee's statements and hearings and where that line

3   between purpose and motive ultimately lies.  But there is --

4   nobody thinks there is a jurisdictional defect.  This case is no

5   different.

6       And so we don't actually think -- we think *Eastland* is

7   actually very good for us.  The Court in *Eastland*, what happened

8   is they held that there was a legitimate legislative purpose,

9   and therefore, any arguments beyond that were foreclosed by the

10  Speech or Debate Clause.

11      But before you can figure out whether you have an immunity,

12  you have to figure out whether you are acting within your

13  legitimate legislative sphere, i.e., do you have -- are you

14  exercising an Article One power.

15      That is what we are testing in Count 1 of this complaint.

16  That is what we will be testing in our defenses in the federal

17  case.  It is the same underlying events in both.

18          THE COURT:  Well, but it is a very different action,

19  at least from a statutory perspective.  In the other case, the

20  chairman would be -- or, I suppose, has issued a subpoena

21  pursuant to a federal statute.  Here, there is the suggestion

22  that he might issue a request pursuant to a state law.

23      That feels kind of important -- an important distinction

24  there; right?

25          MR. CONSOVOY:  I think it is a distinction.  I would

1    respectfully disagree that it is important because -- for

2    several reasons.  One, under the New York state law, the

3    Committee chairman isn't eligible to make the request until he

4    has made the request to Treasury.  So the state law says go to

5    Treasury first, which is what they did, which led to the federal

6    case.  Once you have, then you can come to us, and if you

7    certify to us that the request has a legitimate legislative

8    purpose, which would have to be the same one that they made in

9    the federal case, and you meet two other conditions, you may

10   then seek the President's state tax returns.

11       These two issues are both statutorily and constitutionally

12   inextricably intertwined.  If one falls, the other falls; if one

13   rises, the other rises.  They are wrapped together.

14            THE COURT:  Is that right?  I would think this case,

15   the State isn't going to care.  They just care that it happened;

16   right?  They're not going to ask whether it was legal, whether

17   it was appropriate for the subpoena to go out, or anything like

18   that.

19       Hasn't that condition precedent clearly occurred in this

20   current case?

21            MR. CONSOVOY:  New York will not care.  We will.  So

22   we will challenge whether that purpose that they asserted to New

23   York, which New York accepts, was valid or not.  Just like

24   *Mazars* doesn't care whether the Congress's reasons for issuing a

25   subpoena are good or bad.  They're going to comply.  We step in

1    and assert no, these are illegitimate legislative purposes.

2         And that is why we are here today, Your Honor, on the All

3    Writs Act claim.  We assert that we have the right to enjoin the

4    Committee from making here a statutory request.  In other cases

5    it is a subpoena.  I don't think anything turns on that,

6    although the parties can raise arguments like that at the right

7    stage, if they so choose.  But the same underlying legal

8    question and factual question exists, which is, does the request

9    have a legitimate legislative purpose.

10             THE COURT:  And you believe that matters under the New

11   York statute, whether the Committee's request to the State --

12   I'm sorry, whether the Committee's request to the Treasury,

13   whether there was a legitimate legislative purpose there, that

14   is relevant in this case for the kind of unopening of the state

15   statute?

16             MR. CONSOVOY:  It matters to the U.S. Constitution,

17   not to the state statute.  So there are two ends of the stick

18   here.  There's whether New York can give the President's

19   returns.  There's a separate question about whether the

20   Committee can lawfully ask for them.

21             THE COURT:  Right.

22             MR. CONSOVOY:  There are two different issues there.

23   So New York, our position is, they can't give them because the

24   statute that gave rise to that ability violates the First

25   Amendment.  That's just one half of the case.

1    The other half of the case is whether the Committee's
2    request itself violates the U.S. Constitution.  We say it does,
3    because it exceeds their Article One authority.
4        THE COURT:  Right.  But it is the request to the State
5    in this case.
6        MR. CONSOVOY:  Uh-huh.  That's what footnote 14 deals
7    with.  That's what footnote 14 says.  We get to step in and
8    object to the request and assert that argument, just like in
9    *Mazars* and just like in the Treasury case.
10       THE COURT:  But in the Treasury case, it is the
11   request to the Treasury.  I don't see how the request to the
12   Treasury is -- whether that purpose there is relevant in this
13   case.
14       MR. CONSOVOY:  We think it is the same legislative --
15   illegitimate legislative purpose in both cases by the Committee.
16   The two other players are different.  We don't disagree -- we
17   don't dispute that.  There's no overlap between Treasury and New
18   York.  The rules do not require perfect symmetry for related
19   case.  The standard is not that rigid.
20       We have two of the three same parties in both cases.  We
21   are asserting defenses to their request in Treasury that are
22   exactly the same -- with respect to the Committee that are
23   exactly the same as our claims for relief here.
24       THE COURT:  Putting aside *Mazars* for a moment, is
25   there any case where this purpose argument has worked, when you

1    are looking at the Congress and the Speech or Debate Clause?

2          MR. CONSOVOY:  *Kilbourn*; the Supreme Court's decision

3    in *Kilbourn*.  The Supreme Court struck down the Congress's

4    subpoena as not having legitimate legislative purpose.

5          THE COURT:  Okay.  And what happened there?

6          MR. CONSOVOY:  Congress was engaged in a review of a

7    bankruptcy, and the Supreme Court held that Congress does not

8    have a legitimate legislative purpose in either engaging in law

9    enforcement, which would violate, exceed, or interfere with the

10   Executive's Article Two power, or cannot try cases, which is --

11   interferes with the Court's Article Three power.  It was an

12   Article Three question there.  And so Congress's investigation

13   in that case exceeded its Article One authority because it had

14   an illegitimate legislative purpose.

15         THE COURT:  I see.  I know this is not in the rule,

16   per se, but the case law in this district has looked to concerns

17   about ensuring greater public confidence in the integrity of the

18   judicial process, guaranteeing fair and equal distribution of

19   cases to all judges, avoiding public perception or appearance of

20   favoritism in assignments, and reducing the opportunities for

21   judge shopping.

22         Shouldn't I be concerned about that, those bases here?

23         MR. CONSOVOY:  I think, yes, it should always be a

24   concern.  I mean, I think both the rule itself and the concerned

25   underlying rule are completely legitimate and valid, and the

1    Court is right to consider it.

2         But I don't think there are concerns about that here.  I

3    think this is actually a really quite strong case for them to be

4    in front of one judge.  The idea that in the federal case we

5    may -- we are going to assert an argument that they exceeded

6    their Article One authority and then in the State case a

7    different judge in this court may say they didn't, you would

8    have the same parties clashing over the same issues relating to

9    the same person's taxes reaching different judgments.

10        That doesn't solve anything.  It doesn't increase

11   efficiency.  It doesn't increase public trust in the system.  It

12   leads to inconsistent judgments on the same set of operative

13   facts, on the same issues of law, with respect to the same

14   person's taxes.

15             THE COURT:  Yeah, I mean, my instinct is, of course,

16   different tax returns, different laws that you are looking at.

17   And really, this case, much of the focus is on whether there is

18   retaliation by New York State versus in the other case where we

19   are really looking at more of a federal statute that allows the

20   Committee chairs to request the tax returns.  It feels like a

21   very different situation.

22             MR. CONSOVOY:  I think part of the problem is both

23   cases are so early that -- having worked on them, I'm seeing how

24   they are going to develop in ways that aren't yet apparent upon

25   the limited filings existing in both cases.

1    But the focus, the Committee is not just relying on its

2    statutory authority in the federal case.  They are also relying

3    on their subpoena authority, the same kinds of authorities that

4    they would rely on to defend the request made to the New York

5    legislature here.

6    And I guess the way I would think about it is, you have the

7    same party, the Committee.  The Committee has made a request to

8    Treasury for the President's federal tax returns.  It may make a

9    request to New York for his state tax returns.  We are

10   challenging the Committee in both cases on the same exact

11   grounds, and we are using the same background facts, the same

12   underlying facts to marshal that challenge, things they have

13   said, actions they've taken that are in the docket in the

14   federal case already.  They're the same letters, the same

15   comments.  We are going to be relying on them in this case, too.

16   It is no dispute that from the other end of the direction,

17   from the other end of the stick, you have two different

18   recipient of requests by the Committee.  But where you have the

19   same Committee asking for somebody's federal and state tax

20   returns and the same taxpayer challenging both requests on the

21   same legal and factual grounds, I'm just not sure why that

22   wouldn't be a very strong case for them to be related.

23        THE COURT:  Do you agree that in the other case it is

24   going to be an APA analysis?

25        MR. CONSOVOY:  Not necessarily.  They have asserted

1   statutory, APA, and inherent authority under the subpoena power.

2   So all three issues will be on the table.  At least two of the

3   three are at issue in this case as well.

4       Again, the New York law says there has to be a valid

5   request to the Treasury first.  So how that Treasury case turns

6   out may implicate whether this request to New York, when it is

7   made, is even valid.  Because in theory -- and of course, we

8   haven't briefed any of this yet.  But in theory, if the Court

9   were to invalidate in the federal case the request to Treasury

10  on Article One grounds, that may implicate a lack of statutory

11  authority on the ability of New York to fulfill the request,

12  because one of the three conditions is you've made a request.  I

13  haven't researched it yet, but I suspect there is good law that

14  suggests that a legally invalid request is no request at all.

15      So they really are the same.

16          THE COURT:  All right.  Thank you, Mr. Consovoy.  I

17  will let you have the last word.

18      Mr. Tatelman, am I correct, the House is not taking a

19  position on this issue?

20          MR. TATELMAN:  You are correct, Your Honor, that the

21  Committee has no position on the related case question.

22          THE COURT:  Okay.  Can I ask you your view on this

23  question about the Speech or Debate Clause?

24          MR. TATELMAN:  Certainly.

25          THE COURT:  Am I correct in thinking that it acts

1    differently where the Committee is a plaintiff versus where the

2    Committee is a defendant?

3            MR. TATELMAN:   You are absolutely correct, Your Honor.

4    In fact, the clause has no application where the Committee is a

5    plaintiff, because the Committee is, by taking that action and

6    agreeing to avail itself of the jurisdiction of the court, the

7    Committee is opting not to assert the immunity that it would

8    otherwise have, which is not the circumstance here and wasn't

9    the circumstance in *Eastland* and is not the circumstance in any

10   of the other cases.

11       If I can explain the difference between what my friend was

12   talking about in the *Mazars* situation.   He is correct that

13   initially the suit in Mazars named Chairman Cummings, the

14   chairman of the Oversight Committee, the Committee that had

15   issued the subpoena.   We negotiated with the counsel for

16   dismissal of Mr. Cummings on the promise that the Committee

17   would seek intervention, but intervention is exactly the same --

18   from a conceptual point of view, we are, again -- the Committee

19   again there is formally not asserting its privilege and

20   exceeding, actually asking the Court to allow it to enter into

21   the case for the purpose of defending its rights and interests

22   in the subpoena that was issued.

23       Just like when we are a plaintiff and we, again, come

24   forward to the Court and say we, Court, are asking you to do

25   something, enforce our subpoena or, you know, enforce our rights

1    under the Constitution, as we have been before you to ask

2    previously, there is no Speech or Debate implication there.

3        However, when a private party or the executive branch or

4    the President, in his personal capacity, come forward and drag

5    the Committee or a member or the House into court against its

6    will, there is what the Speech or Debate Clause was intended to

7    protect and, in fact, does absolutely immunize us from.

8        As the Court said, in *Eastland*, as this circuit has held

9    repeatedly, the fundamental purpose of the Speech or Debate

10   Clause is to allow the legislative branch to operate

11   independently.  If there were no Speech or Debate Clause, we

12   could get dragged into court against our will for all sorts of

13   activities, legitimate or illegitimate, and we would spend all

14   of our time, instead of legislating and appropriating and doing

15   the things the Constitution requires of us, we would spend a

16   tremendous amount of time defending suits in litigation.

17       It was a conscious choice by the framers, as *Eastland*

18   recognizes, as *Gravel* recognizes, there is an entire body of

19   case law, the Supreme Court and this circuit and other circuits

20   as well, that all recognize that this is a fundamental,

21   conscious choice of the framers to protect the independence of

22   the legislature from private parties, from the executive branch,

23   and from the oversight, to a certain extent, Your Honor, of the

24   federal judiciary.  We are entitled to exercise independent

25   constitutional authority.

1      THE COURT:  So part of that difference, then, am I

2  right in thinking that the Speech or Debate Clause would act --

3  your view is it would act as a shield over arguably

4  impermissible motives here that wouldn't necessarily be the case

5  in the other case?  Is that correct?

6      MR. TATELMAN:  Well, let me say it this way:  In both

7  cases, the Court has held that the motives are not for judicial

8  review but for different reasons.  So the body of case law that

9  governs in the Speech or Debate area has made abundantly clear

10  that the motives behind whether or not something is a legitimate

11  legislative act -- which is a different thing than my friend

12  pointed out about illegitimate legislative purpose.  Those are

13  two separate inquiries.  The speech or debate inquiry is

14  concerned about whether or not something is a part of the due

15  functioning of the legislative process, which is the test that

16  the Court laid out in *Gravel* and affirms in *Eastland* and in

17  other cases.

18      So a legislative act is different from whether or not

19  something has a legislative purpose.  A legislative act is a

20  much broader concept.  It governs all sorts of things that

21  members do in the course of the legislative process, voting on

22  bills, voting in committee, floor speeches, information

23  gathering such as what would be taking place here.  Assuming

24  that the Committee were to take the steps under the New York

25  law, we would be information gathering, fact gathering, which

1    this court and other court -- this court in *Jewish War Veterans*

2    has claimed is protected by the Speech or Debate Clause, as this

3    circuit has claimed in *Rangel v. Boehner* and other cases,

4    *McSurely v. McClellan*, is protected by the Speech or Debate

5    Clause.  That analysis also prohibits you to engage in inquiry

6    into motives.

7         The legislative purpose analysis, which would be at issue

8    and is -- I think will be an issue in the federal case, also has

9    a body of law around it that says that when looking to the

10   question of whether or not the Committee has exercised its power

11   appropriately, you are not to inquire into the motivations

12   behind the issuance of a subpoena, the calling of a witness, or

13   the purpose behind a legislative -- a action by the Committee

14   that has a legislative purpose.

15        So the inquiry is the same, but the subject matters are

16   very, very different.  And so in either circumstance --

17             THE COURT:  I'm not sure I followed you there.

18             MR. TATELMAN:  So Speech or Debate protects

19   legislative acts.  The question that would be at issue on

20   legislative purpose only applies in circumstances where you are

21   talking about the use of Congress's subpoena powers or other

22   things.

23        Those are also legislative acts, but the law that is

24   developed there has developed differently and Speech or Debate

25   is not an issue when we are talking about Committee -- when we

1    are talking about affirmative uses by the House of its subpoena

2    powers or affirmative uses of the House coming to court to

3    enforce its subpoenas.

4         But in both circumstances, whether you are talking about a

5    Speech or Debate defense that the Committee is asserting or

6    whether you are talking about the Committee coming forward and

7    asking you to enforce its powers under a subpoena or some other

8    action that it has taken that requires judicial enforcement,

9    both sets of analyses prohibit this Court from engaging in an

10   inquiry into motives.

11        So there is overlap there, but they are still talking about

12   two different things, and they are two different tests.

13             THE COURT:  Okay.  Thank you, Mr. Tatelman.

14        Mr. Amer, are you there?

15             MR. AMER:  Yes, I am, Your Honor.

16             THE COURT:  So your brief noted that the President

17   isn't named in the first case.

18             MR. AMER:  I do realize that I didn't see the

19   intervention decision granting him intervention status.  I

20   apologize for that.

21             THE COURT:  Okay.  So you would agree that that isn't

22   a meaningful distinction here?

23             MR. AMER:  Well, I don't think it is meaningful

24   because I don't think whether -- you don't need all the parties

25   to be the same, or the fact that he is also a defendant in that

1    case isn't meaningful in terms of the analysis, I think, because

2    it doesn't create common facts, as far as I am concerned.  So it

3    is true that he has intervenor status, but I don't think that

4    gives rise to any common fact that would put this case in the

5    category of one that should be designated related to this case.

6         I did want to mention just in terms of what I heard

7    Mr. Consovoy discuss about the New York statute, I think there

8    are two ways in which he mischaracterized what that statute

9    says, and they are, I think, very important to the argument he

10   is making.

11        If you look at the New York statute, which we attached as

12   an exhibit to our submission, the language about what needs to

13   be certified for purposes of the Committee chair to make the

14   request, it is pretty clear, and it doesn't speak to the need to

15   certify a legitimate legislative purpose.  What it says, if you

16   look -- and you can see this on page 2 of the statute at line

17   25 -- he has to certify that the returns are related to and in

18   furtherance of a legitimate task of the Congress.

19        So that's a very different inquiry than whether it is for a

20   legitimate legislative purpose.  Legitimate task of the Congress

21   is much broader, and it can certainly include a task in the

22   realm of investigation.

23        So I think the notion that the inquiry under the New York

24   statute is this same legitimate legislative purpose inquiry

25   that's in the Treasury action is incorrect.  That's not what the

New York statute language provides, nor does it require
certification that a valid request was made to the Treasury
Department.  The word "valid" nowhere appears in the New York
statute.  It simply says that he has to certify that he has made
a request to Treasury.

So there is no need under the New York statute to inquire
whether the request to Treasury was valid or not and certainly
no need to determine whether it was valid under the IRS code or
under the Committee's subpoena power.

So I just don't think that there is any issue that arises
under the specific language of the New York statute that gives
rise to common facts.  You are, of course, correct that common
issues of law, that's not the standard.  That's not what you
look at under the test.

Just to continue on Count 1, because that's, I think, what
these points go to, so the analysis under Count 1 of this
complaint is whether the Committee can properly make a request
under the TRUST Act.  That requires you to look at the
certification language under the TRUST Act.

And the factual and legal analysis that is involved when
considering whether information gleaned from state returns can
serve the Committee in any of its legitimate tasks is not one
that has any overlap with the inquiry that arises under the
Treasury action with respect to whether the Committee is meeting
the standards under the Internal Revenue Code or whether it is

1  meeting the standards under its own subpoena powers.

2      So I just don't see that there is any overlap in the

3  issues.  The Treasury action concerns, as you noted, federal

4  returns and the Committee's authority under a completely

5  different legal framework.  And in fact, I would point out, the

6  TRUST Act anticipates that the Committee can receive the federal

7  returns and still decide that they want to make a request for

8  the state returns.  So the two are just independent analyses.

9      In other words, as far as the state statute is concerned,

10  the Committee chair is entitled to the state returns if it makes

11  a certification, even if it, in fact, received the federal

12  returns from the Treasury pursuant to either its subpoena power

13  or a request under 6103(f).

14          THE COURT:  So Mr. Amer, I agree with you that the --

15  it seems like the analysis of the Treasury code would be very

16  different.  But your brief also suggests that the first case

17  won't involve Article One or the House rules or the First

18  Amendment.  I was a little surprised by that argument.  It seems

19  that certainly the scope of the legislative power under Article

20  One and the House rules and, quite possibly, the First Amendment

21  would be highly relevant there.

22      What am I missing?

23          MR. AMER:  Well, let me first start with the First

24  Amendment challenge, which is Count 2.

25          THE COURT:  And I am talking about in the first case,

1    not here.

2              MR. AMER:  In the Treasury action?

3              THE COURT:  Correct.

4              MR. AMER:  The Treasury action, as I read it, is

5    looking not at -- well, it is certainly not looking at whether

6    there's a First Amendment violation, a facial First Amendment

7    violation with respect to the law that's authorizing the

8    request, which is what we have here; right?

9         So here, the way in which the plaintiff is seeking to

10   invalidate the request is to say that the authorizing statute

11   that allows the request to be made is facially unconstitutional

12   under the First Amendment.  I mean, there's certainly no

13   argument remotely similar to that in the Treasury action with

14   respect to what is the source of the authority of the request,

15   which is the Internal Revenue Code and the Committee's subpoena

16   power.

17        It seems to me that that action, based on my review of the

18   complaint, goes to, you know, addressing the scope of the

19   Committee's authority under its subpoena power, the scope of the

20   Committee's authority to make the request under the Internal

21   Revenue Code, and the scope of the Court's authority to require

22   that the federal returns be disclosed pursuant to the

23   Administrative Procedure Act.  I just don't see how any of those

24   issues arise here.

25             THE COURT:  Right.  But I mean, Article One, aren't

both cases going to significantly revolve around whether the
Committee is acting within its proper scope or out of bounds?

       MR. AMER:  Well, what I will say is that with respect
to this case, I think that -- so that inquiry has to be informed
by what the New York statute requires.  So the New York statute
allows the Committee chair of three different committees to make
a request based on a certification that the information sought
relates to or furthers a legitimate task of the Congress.

    And as I said, I think that's much different and, quite
frankly, a much broader inquiry than the more circumspect
inquiry that Mr. Consovoy was discussing about whether it serves
a legitimate legislative purpose.

       THE COURT:  Sure.  But legitimate task, Congress's
legitimate task seems like it would be pointing to the House
rules and Article One; right?

       MR. AMER:  Well, I don't believe that it is
necessarily limited to those, to the extent that there is
investigatory powers -- I suppose that goes to Article One, I
appreciate that, but it seems to me that it is at least not the
same inquiry if what Mr. Consovoy is arguing is that in the
first filed case it's strictly limited to legislative purpose,
that that shouldn't be and isn't a limitation that is imposed by
the New York statute.

       THE COURT:  I understand your argument there.  So why
aren't the Committee's actions and statements facts common and

1    relevant to both of the cases here?

2            MR. AMER:  Well, they're certainly -- let me mention

3    Count 2, because I think it is clear in that context why they

4    are completely irrelevant.  Count 2 is, as I say, a facial

5    challenge to a duly enacted statute in New York that is being

6    challenged on First Amendment grounds.  The fact that it is a

7    facial challenge, by definition, means that you don't look to or

8    consider how the statute's being applied in a particular case.

9    It's facial.  So you are looking at the broad language of the

10   statute to determine whether the statute serves an important

11   government interest, which is the classic First Amendment

12   analysis for disclosure cases.

13       And here, by the way, the statute is quite broad.  It is

14   not a statute that applies just to the House Ways and Means

15   Committee.  It applies to other congressional committees.  It

16   doesn't just cover the President as a filer.  It covers a host

17   of filers, quite a long list.

18            THE COURT:  Sure.  Let's talk about the first count.

19   I mean, I think that is where the Committee's actions would be

20   relevant; right?

21            MR. AMER:  Well, they're not relevant because the

22   statute, the New York statute doesn't make them relevant.  So

23   that's what this case is about.  This case is about whether the

24   Committee is acting properly when it makes a request under the

25   New York statute.  The New York statute doesn't require the

1    commissioner of the state agency, the Department of Taxation and

2    Finance, to look at motivation.  It is not a part of the

3    certification, and it is not anything that the statute would

4    require the commissioner to look into.  So it shouldn't be a

5    part of the inquiry under Count 1.

6        The statute, from New York's standpoint, is permissive, and

7    it provides for certain entities to request information filed by

8    New York residents who hold certain elected positions, and it

9    serves New York's purpose in providing information and

10   preventing corruption and ensuring that the laws are being, you

11   know, enforced.

12       And nowhere in this statute, the New York statute, does it

13   require any inquiry into motive or purpose, whether it be

14   political or apolitical.

15           THE COURT:  So it kind of sounds to me, sir, like you

16   are suggesting the New York statute can preempt or augment the

17   Committee's power under the Constitution.  You're not suggesting

18   that the Committee could do something that would be

19   unconstitutional just because the State of New York allows it

20   to, are you?

21           MR. AMER:  Certainly not, and I am certainly not

22   suggesting that the New York statute can preempt federal law or

23   the Constitution.  But I don't see the tension here, because the

24   statute allows the Committee to make the request.  It requires a

25   certification that it is a legitimate task of Congress.

1    If that statute -- so that is the aspect of the statute

2    that should be analyzed under the Constitution.  And if that

3    statutory language is -- passes constitutional muster, as we

4    certainly believe it does, then that's the end of the inquiry,

5    that the statute is constitutional and the Committee can invoke

6    the statute if it meets the conditions that the statute lays

7    down, and any further inquiry into motivation, you know, doesn't

8    play any role in the constitutional analysis.

9    THE COURT:  Sir, what would you say is the most

10   relevant case or precedent here on this related case issue?  I

11   didn't find any circuit precedent.  Did you?

12   MR. AMER:  No.  I think it would be unusual to see

13   this get up to the circuit because it is not appealable,

14   certainly on an interlocutory basis.

15   So I think the most relevant case, we believe, is the

16   *Dakota* case, which was issued just a few months ago, and I think

17   that -- I think it demonstrates how this court has strictly

18   applied and, quite frankly, very narrowly applied the exception

19   to the presumption that cases should be randomly assigned for

20   all reasons that you articulated in terms of, you know,

21   preventing judge shopping and ensuring that there is, you know,

22   an even caseload and that there is a perception of fairness and

23   equality.

24   THE COURT:  Okay.  Anything further, Mr. Amer?

25   MR. AMER:  I don't have anything further unless the

1    Court has any other questions.

2              THE COURT:  Okay.  No.  Thank you, sir.

3         Mr. Consovoy, I will give you the last word.

4              MR. CONSOVOY:  Thank you, Your Honor.

5         I will sort of take a step back for a second.  We started

6    your questions about whether these are related cases.  We have

7    delved really deeply into the merits of a constitutional dispute

8    to try to back out whether they are related.  My friends have

9    had to go all the way into basically arguments that say, well,

10   we're going to win, so therefore, somehow the cases aren't

11   related.

12        I think that puts too much pressure on the rules and too

13   much pressure on this Court to determine at this quite early

14   stage whether two cases that have two of the three same parties,

15   clearly have the same legal issues, and we have asserted and

16   have provided the Court with allegations from our complaint that

17   have common factual allegations.

18        So from a related case standpoint, I found no case in this

19   court that suggested the Court needed to fast forward all the

20   way through the merits and then reverse engineer back to what

21   court -- what judge should hear the case.

22        Secondly, as you know from our presentation this afternoon

23   and your questions, we are emphasizing the Count 1 as the

24   overlapping feature of the two cases.  The party who that is

25   about has not objected to this Court hearing the case.

 1      New York's objections, and I understand that they have

 2   every right to make them, though, are essentially making

 3   arguments on the Committee's behalf that the Committee has

 4   chosen not to make for itself.

 5      New York may say, well, our part of the case isn't related,

 6   and if the Court were to find that every part of the case had to

 7   be related to satisfy the test, then that would be an argument

 8   worth making.  But I don't think anybody thinks that the Court's

 9   local rules require perfect symmetry of parties or claims.

10      And so that is really not a meaningful objection.  The more

11   meaningful objection is that the allegations that we have made

12   vis-a-vis the Committee in both cases are unrelated, and that is

13   quite peculiar for New York to be trying to assert that on

14   behalf of a committee that has not sought to take the

15   opportunity to assert it for itself.

16          THE COURT:  Isn't it relevant, though -- as to the

17   Committee, it strikes me, in the other case it is all about

18   conduct they have already engaged in, where -- and I understand

19   the paper trail you are showing.  But ultimately, where we don't

20   even know -- with the Committee, it is very much what is the

21   Committee chair going to do.  And this would be, obviously, moot

22   if he doesn't do what you fear that he will do.

23          MR. CONSOVOY:  Or does it before the Court can issue

24   an order to protect us.

25          THE COURT:  That, too.

1          MR. CONSOVOY:  So we, obviously, moved early.  We

2     stated in both our All Writ application and in the complaint why

3     we felt we had to move early.  We think the precedence supports

4     the Court intervening to protect its own ability to hear the

5     case.

6          But I think Your Honor is pushing on the right point.  What

7     I heard from my friend's presentation, although we sort of were

8     talking past each other a little bit, I don't think we disagree

9     all that much.  If I heard my friend correctly, the Committee

10    does not assert a Speech or Debate defense to the exercise of

11    its subpoena power.  Those subpoenas can be challenged in court.

12    They can be challenged defensively if it is to you.  If you are

13    a third party, you can bring a case like we brought against

14    *Mazars*.

15         Our assertion is that any request made by the Committee

16    here, even though it may be labeled a request and not a

17    subpoena -- we will see what they issue; we don't know -- that

18    entire body of law applies.  So I don't think we are very far

19    off from each other about any of these issues.

20         THE COURT:  I thought -- we can ask him, but I thought

21    it was more a matter of the posture rather than the document, in

22    other words, that here they are the defendant versus being a

23    plaintiff, and when the House is seeking the Court's aid, then

24    they can't use the Speech or Debate Clause as a shield.

25    Whereas, in this case they are the defendants, and they can.  I

1    thought that was the difference.

2        MR. CONSOVOY:  I don't think that -- I think that is a

3    difference.  I don't think it is the one that they are relying

4    on here, as I understand it.  If we had just sued New York, we

5    could have -- let's say a request went in from the Committee,

6    and we just sued New York.  We can make all these same arguments

7    that they can't honor the request because it exceeds their

8    authority, just like *Mazars*, we say.  And then the Committee

9    would come into the case to defend its request to New York.  We

10   would be in the same posture.

11       I understand, I agree this is what they are saying.  Speech

12   or Debate does not protect the exercise of subpoena power if it

13   lacks legitimate legislative purpose, because that means the

14   subpoena exceeds Article One.

15       If the Committee wants to argue in a Rule 12 motion that a

16   request like this does not fall within the ambit of the subpoena

17   case law, we will defend our position.  If the Committee wants

18   to argue that because of that they have Speech or Debate

19   protection, we will answer a 12(b)(1) motion when it is timely

20   before this Court.

21       But we are two steps before that right now.  Step 1 is

22   whether Your Honor should hear the case.  If so, step 2 is

23   whether Your Honor should issue an order to preserve its ability

24   to hear that case when and if the Committee issues a request for

25   what we think looks like a subpoena to New York.

1       Everything else is just the merits of the case.  Parties,

2   in all of these All Writs Act cases or many of them, are always

3   going to want to argue a 12(b)(1) issue, whether it's standing

4   or political question or personal jurisdiction or subject matter

5   jurisdiction.

6       They will make 12(b)(6) arguments about you can't invade

7   motive or we win or agency review is discretionary and beyond

8   the purview of the court under the APA.

9       I mean, every case is different, but ultimately, those are

10  merits questions.  We just believe that this is the Court that

11  should hear it for the reasons set forth in our papers and that

12  this Court should instruct the Committee to make sure that they

13  do not take unilateral action to deprive this Court of its

14  ability to preserve meaningful judicial review.

15          THE COURT:  Okay.  Thank you, Mr. Consovoy.

16      Let me take a short break, and I will be back with you all.

17      (Recess taken from 3:54 p.m. to 4:02 p.m.)

18          THE COURT:  All right.  Before the Court is New York

19  State's motion for this case to be referred back to the Calendar

20  Committee.

21      The general rule is that all new cases filed in this

22  courthouse are randomly assigned in order to ensure greater

23  public confidence in the integrity of the judicial process,

24  guarantee fair and equal distribution of cases to all judges,

25  avoid public perception or appearance of favoritism in

1   assignments, and reduce opportunities for judge shopping.

2   That's *Singh v. McConville*, 187 F.Supp.3rd 152, pages 154 and

3   155, out of this district in 2016.

4       Yet, in the interest of judicial economy, Local Civil Rule

5   40.5 creates an exception for related cases.  Civil cases are

6   related when the earliest is still pending on the merits in the

7   district court and they either, one, relate to common property

8   or, two, involve common issues of fact or, three, grow out of

9   the same event or transaction or, four, involve the validity or

10  infringement of the same patent.

11      The party requesting the related case designation bears the

12  burden of showing that the cases are related under Local Civil

13  Rule 40.5 under -- per *Singh*, 187 F.Supp.3rd at 155.

14      The *Dakota* case says that the burden on the party claiming

15  relation is heavy, as random assignment of cases is essential to

16  the public's confidence in an impartial judiciary.  Deviating

17  from that foundational principle is appropriate only if the

18  relationship between the two cases is certain.  The *Dakota* case

19  is 2019 Westlaw 1440134 star 1 and 2.

20      In this case, I find that the relationship has not been

21  established and that I should be reassigning -- referring this

22  case back to the Calendar Committee.  I will give my

23  justifications and further clarity and opinion shortly, but I

24  think in the other case the focus is on a federal statute that

25  allows the chair of the Ways and Means Committee to subpoena any

1   person's federal tax form from the Treasury.  Here, in my mind,

2   the focus is on the New York State statute, which allows several

3   Committee chairs to request various officials' state tax

4   returns.

5       In the other case, the subpoena has already been issued.

6   Whereas, here, there is no request that has yet been made.  I'm

7   not making any comment on the ripeness of this case.  I simply

8   think that there is a very different state of play.

9       And finally, I do think the relevance of various statutes

10  and constitutional provisions, not least the Speech or Debate

11  Clause, will function differently in the two cases.

12      For those reasons and those others that I put forth in my

13  opinion shortly, I am going to refer this case back to the

14  Calendar Case Committee.

15      Thank you, folks.

16      (Proceedings adjourned at 4:05 p.m.)

17

18

19

20

21

22

23

24

25

```
1               CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, Sara A. Wick, certify that the foregoing is a

4   correct transcript from the record of proceedings in the

5   above-entitled matter.

6

7

8

9   /s/ Sara A. Wick                 July 25, 2019

10  SIGNATURE OF COURT REPORTER      DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```