# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

DONALD J. TRUMP,

*Plaintiff*,

v.

COMMITTEE ON WAYS AND MEANS,
UNITED STATES HOUSE OF
REPRESENTATIVES, *et al.*,

*Defendants*.

Case No. 1:19-cv-02173-CJN

## NEW YORK DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY  10005

*Attorney for Defendants Letitia
James, in her official capacity, and
Michael R. Schmidt, in his official
capacity*

Andrew Amer
 Special Litigation Counsel

*of Counsel*

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

ARGUMENT ........................................................................................................................... 5

     I.    THE COURT LACKS PERSONAL JURISDICTION OVER THE
         NONRESIDENT NEW YORK DEFENDANTS ....................................................... 5

         A.   There Is No General Jurisdiction Over The New York Defendants ................... 9

         B.   The Court Has No Specific Jurisdiction Over The Nonresident New
              York Defendants ............................................................................................... 14

         C.   Alternatively, D.C.'s Personal Jurisdiction Provisions Do Not Apply To
              State Officials Sued In Their Official Capacities ............................................... 22

     II.   THE DISTRICT OF COLUMBIA IS NOT A PROPER VENUE ........................... 23

CONCLUSION ..................................................................................................................... 29

TABLE OF AUTHORITIES

**Cases**

*2215 Fifth St. Assocs. v. U–Haul Int'l, Inc.*, 148 F. Supp. 2d 50 (D.D.C. 2001)......................... 24

*AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64 (D.D.C. 2004) ........................ 13

*Aldridge v. Williams*, 44 U.S. 9 (1845)...................................................................................... 26

*Ali v. District of Columbia*, 278 F.3d 1 (D.C. Cir. 2002) ............................................................ 20

*Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13 (D.D.C. 2014), *appeal dismissed*,
No. 14-7056, 2014 WL 4628907 (D.C. Cir. Aug. 11, 2014)...................................... 14, 19

*Allen v. Russian Fed'n*, 522 F. Supp. 2d 167 (D.D.C. 2007)........................................................ 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 6

*Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356 (2001) ......................................... 20

*Bigelow v. Garrett*, 299 F. Supp. 3d 34 (D.D.C. 2018) ......................................................... 12, 13

*Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221 (D.D.C. 2005)...................................................... 18

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)........................................................... 8, 19

*Cameron v. Thornburgh*, 983 F.2d 253 (D.C. Cir. 1993) ...................................................... 22, 27

*Canuto v. Mattis*, No. 16-cv-2282-EGS, 2018 WL 3213318 (D.D.C. June 30, 2018)................ 11

*Capel v. Capel*, 272 F. Supp. 3d 33 (D.D.C. 2017) .................................................................... 17

*Coalition on Sensible Transp. Inc. v. Dole*, 631 F. Supp. 1382 (D.D.C. 1986)................ 15, 18, 19

*Companhia Brasileira Carbureto De Calcio—CBCC v. Applied Indus. Materials
Corp.*, 35 A.3d 1127 (D.C. 2012) ................................................................................... 17

*Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983)........................................................... 28

*Cornish v. United States*, 885 F. Supp. 2d 198 (D.D.C. 2012)............................................... 20, 22

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ................................................................... 6, 7, 11

*Dougherty v. United States*, 156 F. Supp. 3d 222 (D.D.C. 2016)................................................. 6

*Duarte v. Nolan*, 190 F. Supp. 3d 8 (D.D.C. 2016) .................................................................... 12

*E.V. v. Robinson*, 200 F. Supp. 3d 108 (D.D.C. 2016) ............................................................... 24

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975) ........................................................ 26

*Eggink v. Trump*, 257 F. Supp. 3d 27 (D.D.C. 2017) ................................................................. 12

*Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808 (D.C. 1976) (en banc) ..................................................................................................................... 17

*Ex Parte Young*, 209 U.S. 123 (1908) ....................................................................................... 20

*Exelon General Co., LLC v. Grumbles*, 380 F. Supp. 3d 1 (D.D.C. 2019) ................................ 25

*Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1 (D.D.C. 2009) ................................................................................................................................. 12

*FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087 (D.C.Cir.2008) ....................................... 6

*Fuentes-Fernandez & Co. v. Caballero & Castellanos*, 770 F. Supp. 2d 277 (D.D.C. 2011) ........................................................................................................................... 15, 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ........................... *passim*

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) .................... 6, 7

*Hanson v. Denckla*, 357 U.S. 235 (1958) ................................................................................ 8, 22

*Helicopteros Nationales v. Hall*, 466 U.S. 408 (1984) ............................................................. 8, 13

*Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264 (D.C. 2001) ........................................... 16

*Hunter v. Johanns*, 517 F. Supp. 2d 340 (D.D.C. 2007) .......................................................... 24

*In re Kelly*, 841 F.2d 908 (9th Cir. 1988) .................................................................................. 26

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ....................................................... 8

*Jenkins v. Kerry*, 928 F. Supp. 2d 122 (D.D.C. 2013) ............................................................... 15

*Klinghoffer v S.N.C. Achille Lauro*, 937 F.2d 44 (2d Cir. 1991) ................................................ 10

*Lamont v. Haig*, 50 F.2d 1124 (D.C. Cir. 1978) ....................................................................... 25

*Lazano v. Civiletti*, 89 F.R.D. 475 (D.D.C. 1980) ................................................................. 24, 25

*Lemon v. Kramer*, 270 F. Supp. 3d 125 (D.D.C. 2017) ........................................................ 6, 7, 13

*Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979) ....................................................... 28

*Lex Tex Ltd., Inc. v. Skillman*, 579 A.2d 244 (D.C. 1990) ......................................................... 17

*Marshall v. Labor & Industries, State of Washington*, 89 F. Supp. 2d 4 (D.D.C. 2000) ............. 15

*McCain v. Bank of America*, 13 F. Supp. 3d 45 (D.D.C. 2014) ..................................... 23

*Moldauer v. Constellation Brands, Inc.*, 87 F. Supp. 3d 148 (D.D.C. 2015) ............................... 12

*Moldea v. Ovitz*, No. 18-cv-00560, 2019 WL 465004 (D.D.C. February 6, 2019) ...................... 6

*Moore v. Motz*, 437 F. Supp. 2d 88 (D.D.C. 2006)......................................................... 23

*Mouzavires v. Baxter*, 434 A.2d 988 (D.C.1981) ......................................................... 16

*Murphy v. Empire of Am., FSA*, 746 F.2d 931 (2d Cir. 1984)...................................... 26

*Myers v. Holiday Inns, Inc.*, 915 F.Supp.2d 136 (D.D.C. 2013) ............................................ 23, 24

*Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983)...................................... 5, 8, 28

*National Ass'n of Life Underwriters v. Clerks*, 761 F. Supp. 1285 (W.D. Tex. 1991)................. 24

*Pease v. Burke*, 535 F. Supp. 2d 150 (D.D.C. 2008) ................................................. 6, 11

*Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558 (8th Cir. 2003) ............................................ 10

*PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179 (C.D. Cal. 2000) ...................................... 21

*Ralls Corp. v. Terna Energy USA Holding Corp.*, 920 F. Supp. 2d 27 (D.D.C. 2013) ............... 18

*Reuber v. United States*, 787 F.2d 599 (D.C. Cir. 1986) ................................................. 5

*Rogers v. Civil Air Patrol*, 129 F. Supp. 3d 1334 (M.D. Ala. 2001) ............................................ 24

*Rose v. Silver*, 394 A.2d 1368 (D.C. 1978)............................................................... 17

*Rundquist v. Vapiano SE*, No. 09-cv-1107, 2012 WL 5954706 (D.D.C. Nov. 9, 2012) .............. 14

*S.C. Edu. Ass'n v. Campbell*, 883 F.2d 1251 (4th Cir. 1989) ...................................... 26

*Savage v. Dioport, Inc*. 460 F. Supp. 2d 55 (D.D.C. 2006)........................................... 13

*Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d 521 (D.C. Cir. 2001) ............................................................................................... 5

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) ......................................... 20

*Shibeshi v. United States*, 932 F. Supp. 2d 1 (D.D.C. 2013)..................................... 6

*Stafford v. Briggs*, 444 U.S. 527 (1980) ............................................................. 24, 27

*Steel v. United States*, 813 F.2d 1545 (9th Cir. 1987) ............................................... 10

*Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) .............................. 20, 21, 22, 28

*Terry v. Dewine*, 75 F. Supp. 3d 512 (D.D.C. 2014) .................................................... 14

*The Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41 (D.D.C. 2010) .............................. 12, 13

*Thompson Hine, LLP v. Taieb*, 734 F.3d 1187 (D.C. Cir. 2013) ................................... 7

*Turner v. Abbott*, 53 F. Supp. 3d 61 (D.D.C. 2014) .................................................... 11

*United Parcel Service, Inc. v. Eclipse IP LLC*, No. 11-cv-2138-CAP, 2012 WL 13008802 (D.D.C. July 3, 2012) ........................................................................................... 8

*United States v. Ferrara*, 54 F.3d 825 (D.C. Cir.1995) ................................................ 7, 22, 23

*United States v. O'Brien,* 391 U.S. 367 (1968) ........................................................... 26

*Wilcox v. Georgetown University*, No. 18-cv-422-RMC, 2019 WL 132281 (D.D.C. Jan. 8, 2019) ............................................................................................................. 10

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) .......................................... 12

*Williams v. GEICO Corp.*, 792 F. Supp. 2d 58 (D.D.C. 2011) ..................................... 23

*Willis v. Willis*, 655 F.2d 1333 (D.C. Cir. 1981) ........................................................ 8

*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ............................. 8, 20, 21, 22

**Statutes**

28 U.S.C. § 1391(b) (2) .............................................................................................. 25

28 U.S.C. § 1391(b)(1) ............................................................................................... 25

28 U.S.C. § 1391(b)(3) ............................................................................................... 26

28 U.S.C. § 1391(e)(1) ............................................................................................... 24

28 U.S.C. § 1391(e)(1)(B) .......................................................................................... 27

28 U.S.C. § 1406(a) ................................................................................................. 2, 28

Ariz. Rev. Stat. Ann. § 42-2003(B)(5)(a)-(c) ............................................................. 21

D.C. Code §13-334(b) ................................................................................................ 11

D.C. Code § 13-421 .................................................................................................... 23

D.C. Code § 13-422 ............................................................................................. 6, 9, 11

D.C. Code § 13-423 ................................................................................ 6, 7, 8, 14

N.C. Gen. Stat. § 105-259(b)(3) ............................................................... 21

N.Y. Public Officers Law § 3(1) ................................................................ 9

N.Y. Tax Law § 697(f), (g) ....................................................................... 21

N.Y. Tax Law § 697(f-1) .......................................................................... 1, 3

**Other Authorities**

Marc Fisher, *A Tale of Two Campaign Headquarters: Clinton and Trump Offices are Miles Away and Worlds Apart*, Wash. Post, October 24, 2016 ......................................... 10

Peterson, *The Timing of Minimum Contacts After Goodyear and McIntyre*, 80 Geo. Wash. L. Rev. 202 (Nov. 2011) ........................................................................ 10

Peterson, *The Timing of Minimum Contacts*, 79 Geo. Wash. L. Rev. 101 (Nov. 2010) .............. 10

**Rules**

Fed. R. Civ. P. 12(b)(2) ............................................................................ 22

Fed. R. Civ. P. 12(b)(3) .............................................................................. 2

Fed. R. Civ. P. 4(k)(1)(A) .......................................................................... 6

**Treatises**

4 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1051 (1987) ................................ 10

**Constitutional Provisions**

N.Y. Const. Art. V, § 1 .............................................................................. 9

U.S. Const. amend. XI ............................................................................... 20

## PRELIMINARY STATEMENT

In this action, a New York tax return filer seeks to challenge the constitutionality of a New York statute governing the treatment of New York tax information, and to enjoin New York officials from taking action under that New York statute.  This lawsuit plainly belongs in a New York court.

This Court has no personal jurisdiction over the New York Attorney General ("Attorney General") or the Commissioner of the New York Department of Taxation and Finance ("Commissioner," and together with the Attorney General, the "New York Defendants").  Even after amending his complaint as of right in response to the New York Defendants' original motion to dismiss, Plaintiff remains unable to allege any facts to support this Court's exercise of general jurisdiction over the New York Defendants, officials who reside in New York as required by law and work primarily in New York.  Nor does Plaintiff's amended complaint include any allegations demonstrating that his sole claim asserted against the New York Defendants – a First Amendment challenge to New York's Tax Returns Released Under Specific Terms ("TRUST") Act[1] – arises out of any conduct by the New York Defendants occurring in the District of Columbia, as required for the exercise of specific jurisdiction under D.C.'s long-arm statute.  Rather, the basis for Plaintiff's First Amendment claim appears to be the purported motivations of members of the New York Legislature in enacting the TRUST Act in New York.  Accordingly, there is no personal jurisdiction over the nonresident New York Defendants under D.C.'s general or specific jurisdiction statutes or the minimum contacts standard under the Due Process Clause, and they should be dismissed from this case for lack of personal jurisdiction

---

[1] N.Y. Tax Law § 697(f-1) (2019).

pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Nor is venue proper in this District.  Neither of the New York Defendants resides in D.C., the amended complaint alleges no events or omissions that have taken place here that give rise to Plaintiffs' claims, and there is another venue that is proper – the Southern District of New York. Plaintiff's suit should be dismissed in its entirety for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

If the Court does not dismiss the New York Defendants for lack of personal jurisdiction or dismiss the case for improper venue, then at the very least the Court should transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1406(a) because the New York court is the appropriate forum to hear and decide Plaintiff's constitutional challenge to a New York statute.

## BACKGROUND

President Donald J. Trump originally commenced this suit in his individual capacity against the U.S. House of Representatives Committee on Ways and Means ("Committee") and the New York Defendants in their official capacities.[2]  On August 19, 2019, Mr. Trump filed an amended complaint adding as defendants Representative Richard Neal, in his official capacity as Chairman of the Committee, and Andrew Grossman, in his official capacity as Chief Tax Counsel of the Committee (together with the Committee, the "House Defendants").  Mr. Trump asserts two claims.  Count I concerns the House Defendants alone; it alleges that any attempt by Chairman Neal to invoke the TRUST Act to request Plaintiff's state tax returns would exceed the scope of the Committee's lawful authority in violation of Article I of the Constitution and the

---

[2] As Plaintiff brings this suit in his individual capacity, this brief shall refer to him as either Plaintiff or Mr. Trump.

House Rules.  Amended Complaint ("Am. Compl.") (ECF No. 30) at ¶¶ 74-76.  For relief on

Count I, Mr. Trump seeks a declaration that the Committee lacks a legitimate legislative purpose

for obtaining his state tax returns and a permanent injunction barring the Committee from

requesting or reviewing his state tax return.  *Id*. at p. 24, ¶¶ a and b.

Count II is asserted against all Defendants, although none of the allegations supporting

this claim involves conduct of any of the House Defendants.  It alleges that the New York

Legislature's enactment of the TRUST Act violated the First Amendment.  The TRUST Act

authorizes the Commissioner to provide the state tax returns of certain enumerated officials to the

chairpersons of three Congressional committees when a chairperson requests such state tax

returns in writing and certifies that the request is "related to, and in furtherance of, a legitimate

task" of Congress; the officials whose state tax returns are covered by the TRUST Act are the

president, vice president, members of Congress representing New York, members of the

president's executive staff, officials in a position subject to Senate confirmation, and various

New York State officials.  *See* N.Y. Tax Law § 697 (f-1) (1)-(2).  Mr. Trump alleges that the

TRUST Act on its face violates his First Amendment rights because the statute was purportedly

enacted to discriminate and retaliate against him for his politics and speech (even though the

statute covers a much broader range of public officials).  Am. Compl. at ¶¶ 78-81.  For relief on

Count II, Mr. Trump seeks a declaration that the TRUST Act violates the First Amendment and

permanent injunctions barring the Attorney General from enforcing the statute and the

Commissioner from complying with *any* request made under the statute (whether or not related

to Mr. Trump's returns) or taking any other action to disclose his state tax returns.  *Id*. at p. 24,

¶¶ c-e.  Mr. Trump also seeks an order under the All Writs Act requiring: (i) the House

Defendants to notify him and the Court before making a request under the TRUST Act for his

state tax information and restraining Chairman Neal from making such a request pending an opportunity to be heard by this Court; and (ii) the New York Defendants to notify him and the Court if they receive a request under the TRUST Act for his state tax information and restraining them from complying with such a request pending an opportunity to be heard by this Court. *Id*. at p. 24, ¶¶ g-h.

By Order dated August 1, 2019, the Court adopted the New York Defendants' proposal to allow them to file a threshold motion to dismiss based on lack of personal jurisdiction and improper venue on an expedited briefing schedule in exchange for the Commissioner's agreement to defer acting on any future request for Mr. Trump's state tax information made by the Committee under the TRUST Act pending the Court's decision on their threshold motion (ECF No. 25). After the New York Defendants filed their motion on August 9, 2019 (ECF No. 26), Plaintiff chose to amend his complaint as of right rather than oppose the motion based on his initial set of allegations. As a result, Plaintiff and the New York Defendants agreed to a revised briefing schedule for this new threshold motion to dismiss the amended complaint, which the Court adopted by Order dated August 14, 2019 (ECF No. 29).

In his amended complaint, Mr. Trump adds no new allegations calling into question what is self-evident: that the Attorney General and Commissioner both currently live and work in New York. Instead, Mr. Trump newly alleges that the Commissioner lived and worked in D.C. in 2011-12 and worked at some unspecified location as an advisor to Hillary Clinton's 2016 presidential campaign (which was actually headquartered in Brooklyn, New York (*see, infra*, at 10)). Am. Compl. at ¶ 17. As for contacts between the New York Defendants and the District of Columbia, Plaintiff adds none for the Commissioner and newly alleges that the Attorney General participates as a litigant in cases venued in D.C., routinely appears in D.C. for "events,

conferences, seminars, interviews, and other meetings," has made "substantial campaign expenditures" in D.C., and "solicited and received campaign contributions from donors" in D.C., *id.* at ¶ 16, none of which bears any relationship to his sole First Amendment claim against the New York Defendants.

As to venue, Mr. Trump adds Chairman Neal and Mr. Grossman as named defendants sued in their official capacities (*id.* at ¶¶ 14-15), and further alleges that the TRUST Act is "aimed" at D.C., and that his injury and "virtually all of the relevant conduct will occur" in D.C. (*id.* at ¶ 11), even though the enactment of the TRUST Act in New York by New York legislators is the "[b]ut for" reason he will allegedly suffer potential injury (*id.* at ¶ 63).

In short, Plaintiff's newly-amended complaint does nothing to cure the fatal absence of any allegations that would support the Court's exercise of personal jurisdiction over the New York Defendants or a determination that this Court is a proper venue to hear a challenge to a New York statute permitting disclosure of New York state tax information.

## ARGUMENT

### I.   THE COURT LACKS PERSONAL JURISDICTION OVER THE NONRESIDENT NEW YORK DEFENDANTS

The New York Defendant should be dismissed due to lack of personal jurisdiction. Plaintiff bears the burden of establishing personal jurisdiction. *Reuber v. United States*, 787 F.2d 599, 599 (D.C. Cir. 1986). He must make a *prima facie* showing that personal jurisdiction exists to defeat dismissal. *See Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787-88 (D.C. Cir. 1983)). Although the facts alleged in the complaint must be construed in a light most favorable to the plaintiff, a court need not accept the plaintiff's "conclusory statements" or "bare allegations" regarding the defendant's actions in a selected forum. *GTE New Media Servs. Inc. v.*

*BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Shibeshi v. United States*, 932 F. Supp. 2d 1, 2 (D.C. Cir. 2013). A court may "dismiss a complaint for lack of personal jurisdiction without permitting the plaintiff to take discovery or holding an evidentiary hearing, on the grounds that the plaintiff failed to allege specific facts that connect the defendant with" the District of Columbia. *Dougherty v. United States*, 156 F. Supp. 3d 222, 230 (D.D.C. 2016) (citing *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008)).

A federal court has personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Accordingly, personal jurisdiction in this District may be established over the New York Defendants under either of the two personal jurisdiction provisions of the District of Columbia Code applicable to natural persons: (1) D.C.'s general jurisdiction provision, D.C. Code § 13–422 (2001); and (2) D.C.'s specific jurisdiction provision, or long-arm statute, D.C. Code § 13–423 (2001). *Lemon v. Kramer*, 270 F. Supp. 3d 125, 135-36 (D.D.C. 2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The general jurisdiction provision authorizes courts in this District to "exercise general personal jurisdiction over a person who is 'domiciled in, organized under the laws of, or maintaining [a] principal place of business in, the District of Columbia as to any claim for relief.'" *Pease v. Burke*, 535 F. Supp. 2d 150, 152 (D.D.C. 2008) (quoting D.C. Code § 13–422). "General jurisdiction applies regardless of the nature of the claim but is available only where the defendant is so 'at home' in the forum state that he can be sued there for any reason." *Moldea v. Ovitz*, No. 18-cv-00560, 2019 WL 465004, *3 (D.D.C. February 6, 2019) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "For an individual, the paradigm forum for the exercise

of general jurisdiction is the individual's domicile . . . ." *Daimler AG*, 571 U.S. at 137 (quoting

*Goodyear*, 564 U.S. at 924).

Where there is no general jurisdiction – *i.e*., where the defendants are non-residents – a

court must "examine whether jurisdiction is applicable under the state's long-arm statute and

then determine whether a finding of jurisdiction satisfies the constitutional requirements of due

process." *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (quoting *GTE*

*New Media*, 199 F.3d at 1347).  Under D.C.'s long-arm statute, courts in this District are

authorized to exercise personal jurisdiction over any person as to a claim for relief arising from,

*inter alia*, the person's "transacting any business in the District of Columbia." *Lemon*, 270 F.

Supp. 3d at 136 (quoting D.C. Code § 13-423(a)(1)).[3]

D.C. courts have interpreted D.C.'s long-arm statute "to provide jurisdiction to the full

extent allowed by the Due Process Clause." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C.

Cir.1995).  Accordingly, "the statutory and constitutional jurisdictional questions, which are

usually distinct, merge into a single inquiry": whether exercising personal jurisdiction accords

with the demands of due process.  *Id*. at 828.  A court's jurisdiction over a defendant satisfies due

---

[3] D.C.'s long-arm statute provides, in relevant part:
(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
(1) transacting any business in the District of Columbia;
(2) contracting to supply services in the District of Columbia;
(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . . .
(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.
D.C. Code § 13-423.

process when there are "minimum contacts," *International Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945), between the defendant and the forum "such that he should reasonably anticipate

being haled into court there," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

(1980).  Such minimum contacts must show that "the defendant purposefully avail[ed] [him]self

of the privilege of conducting activities within the forum State, thus invoking the benefits and

protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Where such minimum

contacts are alleged under the long-arm statute's "transacting any business" prong, the statute

requires that the asserted contacts form the basis of the legal claim at issue.  D.C. Code § 13-

423(b) (where jurisdiction is based solely on "transacting any business" prong, "only a claim for

relief arising from" acts purportedly constituting the transaction of business "may be asserted

against him"); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)) (holding a court

may exercise specific jurisdiction over a defendant only "if the defendant has 'purposefully

directed' his activities at residents of the forum, and the litigation results from alleged injuries

that 'arise out of or relate to' those activities.") (internal citations omitted) (citing *Helicopteros*

*Nationales v. Hall*, 466 U.S. 408, 414 (1984)); *Naartex*, 722 F.2d at 787 (plaintiff must show that

defendant's "contacts with the District form at least part of the basis for its claims"); *Willis v.*

*Willis*, 655 F.2d 1333, 1336 (D.C. Cir. 1981) ("The District of Columbia courts have interpreted

section 13-423(b) as a bar to claims unrelated to the acts forming the basis for personal

jurisdiction.").  This is the critical distinction between the exercise of general jurisdiction and

specific jurisdiction under a forum's long-arm statute.  *United Parcel Service, Inc. v. Eclipse IP*

*LLC*, No. 11-cv-2138-CAP, 2012 WL 13008802, at *4 (D.D.C. July 3, 2012) (noting that unlike

general jurisdiction, specific jurisdiction depends on an "affiliation between the forum and the

underlying controversy") (citing *International Shoe*, 326 U.S. at 317).

Plaintiff has failed to establish that the Court has general or specific jurisdiction over the New York Defendants here.

### A.  There Is No General Jurisdiction Over The New York Defendants

Mr. Trump fails to allege any facts to support the Court's exercise of general jurisdiction over the New York Defendants.  The New York Defendants are the Attorney General of New York State and the Commissioner of the New York State Department of Taxation and Finance.  Am. Compl. at ¶¶ 16-17.  Plaintiff does not allege that either of these New York State officials currently lives or maintains a principal place of business in the District of Columbia, nor can he.  The Attorney General and the Commissioner are *required* to reside in New York to qualify for the positions they hold.  N.Y. Const. Art. V, § 1 (requiring Attorney General to meet the same New York residency requirement as the Governor); N.Y. Public Officers Law § 3(1) (requiring all persons holding a civil office to be state residents).  And there is no dispute that New York is the principal place of business for each of the New York Defendants, as is evident from their roles as New York officials.  Am. Compl. at ¶¶ 16-17.

Rather, Mr. Trump's only allegations as to residency and principal place of business are that Michael Schmidt (before he became Commissioner) "lived and worked in the District in 2011-12" and "served as economic policy advisor to Hillary Clinton on her most recent presidential campaign" in some unidentified location.  *Id*. at ¶ 17.  Neither of these allegations are the least bit relevant to the Court's general jurisdiction analysis under D.C. Code § 13–422.  Although courts differ on whether residency and principal place of business should be considered at the time the claims arise, when the action is filed, or when the motion to dismiss is decided, *no court* has ever held that a defendant's residency or principal place of business in the forum *years before* the claims arose can establish general jurisdiction.  *See Klinghoffer v*

*S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir. 1991) (holding "personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed") (citing 4 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1051, at 160-62 (1987)); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) ("[M]inimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit."); *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987) ("[T]he determination of amenability to suit takes place at the time of the relevant contacts . . . .").[4]

Here, Plaintiff's claims arose no earlier than 2019, when the TRUST Act was first introduced as a bill in the New York Legislature (Am. Compl. at ¶ 53), seven years *after* Plaintiff alleges Mr. Schmidt lived and worked in D.C.  Plaintiff's allegation concerning Mr. Schmidt's role as advisor to the Clinton 2016 presidential campaign is even more inconsequential as Plaintiff fails to allege any connection between that role and D.C., an omission that is entirely understandable given that it was well known Secretary Clinton's campaign headquarters were in Brooklyn, New York.[5]  *See, e.g.,* Marc Fisher, *A Tale of Two Campaign Headquarters: Clinton and Trump Offices are Miles Away and Worlds Apart*, Wash. Post, October 24, 2016, *available at* https://www.washingtonpost.com/politics/a-tale-of-two-campaign-headquarters-clinton-and-trump-offices-are-miles-away-and-worlds-

---

[4] For a general discussion, *see* Peterson, *The Timing of Minimum Contacts*, 79 Geo. Wash. L. Rev. 101, 142-150 (Nov. 2010), and Peterson, *The Timing of Minimum Contacts After Goodyear and McIntyre*, 80 Geo. Wash. L. Rev. 202, 236-37 (Nov. 2011).

[5] The Court may take judicial notice that Secretary Clinton's 2016 campaign headquarters were in Brooklyn, New York, not the District of Columbia.  *Wilcox v. Georgetown University*, No. 18-cv-422-RMC, 2019 WL 132281, *4 n.5 (D.D.C. Jan. 8, 2019) (citing cases taking judicial notice of facts generally known because of newspaper articles).

apart/2016/10/24/e39d8400-963a-11e6-bc79-af1cd3d2984b_story.html?noredirect=on.

Because the New York Defendants neither reside nor have their principal place of business in this District, they are not subject to this Court's general jurisdiction under D.C. Code § 13–422.  *Turner v. Abbott*, 53 F. Supp. 3d 61, 67 (D.D.C. 2014) (holding court had no general jurisdiction over defendant Texas Attorney General where plaintiff failed to allege that defendant was domiciled in the District of Columbia or had "a principal place of business in the District of Columbia, much less a 'principal' place of business in the District."); *Pease*, 535 F. Supp. 2d at 152 n.2 (holding D.C. court had no general jurisdiction where all defendants, including state attorneys, were individuals domiciled in Texas or entities with their principal place of business in Texas).

Plaintiff's other allegations newly added to his Amended Complaint concerning the Attorney General's activities in D.C. do not alter the analysis or outcome.  As a threshold matter, activities-based general jurisdiction applies only to foreign corporations, not individuals; for individuals, all that matters under D.C.'s general jurisdiction provision is their residency and principal place of business.  *See* D.C. Code § 13-422 (general jurisdiction provision lists as the only relevant factors for individuals their domicile and principal place of business); *see also Daimler AG*, 571 U.S. at 760 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . .") (quoting *Goodyear*, 564 U.S. at 924).[6]

---

[6] In contrast to D.C.'s general jurisdiction provision applicable to individuals, D.C.'s "other general jurisdiction statute, D.C. Code §13-334, permits the exercise of personal jurisdiction over 'a foreign corporation doing business in the District.'"  *Canuto v. Mattis*, No. 16-cv-2282-EGS, 2018 WL 3213318, at *5 (D.D.C. June 30, 2018); *see also* D.C. Code §13-334(b) ("When a foreign corporation transacts business in the District without having a place of business or resident agent therein, service upon any officer or agent or employee of the corporation in the District is effectual as to actions growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the District.")

11

But even if a plaintiff could rely on activities in the District to establish general jurisdiction over an individual (contrary to precedent and the language of D.C. Code § 13-422), that approach cannot succeed as a matter of law where the individual defendant is a state official sued in her official capacity.  To establish activities-based general jurisdiction, a plaintiff must show "continuous and systematic" contacts with the forum in order for a defendant to be forced to defend a suit arising out of any subject matter unrelated to the defendant's activities within the District.  *Bigelow v. Garrett*, 299 F. Supp. 3d 34, 43 (D.D.C. 2018) (quoting *Eggink v. Trump*, 257 F. Supp. 3d 27, 29 (D.D.C. 2017)).  The defendants' contacts with the forum must be so pervasive "as to render them *essentially at home* in the forum State."  *Goodyear*, 564 U.S. at 919 (emphasis added); *Duarte v. Nolan*, 190 F. Supp. 3d 8, 12 (D.D.C. 2016) (same) (citing *Moldauer v. Constellation Brands, Inc.*, 87 F. Supp. 3d 148, 154 (D.D.C. 2015)).  This requirement is a "high bar."  *The Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 46 (D.D.C. 2010) (quoting *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 12 (D.D.C. 2009)).  Where the defendant is a state official sued in her official capacity, which "is no different from a suit against the State itself" (*Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)), it goes without saying that the defendant (*i.e.*, the State) can never be "essentially at home" in another forum (*Goodyear*, 564 U.S. at 919).  Here, the Court's exercise of activities-based general jurisdiction over the New York Defendants would effectively require the Court to find that the State of New York is "essentially at home" in the District of Columbia – which is absurd on its face.

But even if the necessary finding required by *Goodyear* to exercise activities-based general jurisdiction over the Attorney General were not completely implausible, any such effort would still fail.  Mr. Trump's pleading now includes allegations that the Attorney General: (i)

"routinely uses the courts in this District to pursue litigation;" (ii) "regularly appeared in the

District for events, conferences, seminars, interviews, and other meetings;" and (iii) spent

campaign funds and "solicited and received campaign contributions from donors" in the

District.  Am. Compl. at ¶ 16.  None of these activities rises to a level of "continuous and

systematic" conduct, *Bigelow*, 299 F. Supp. 3d at 43, that would render the Attorney General

"*essentially at home"* in the District of Columbia, *Goodyear*, 564 U.S. at 919 (emphasis added).

*See Turner*, 53 F. Supp. 3d at 67-68 (rejecting claim that participation by Texas Attorney

General in unrelated litigation in D.C. subjects him to personal jurisdiction in D.C.); *The Urban

Inst*., 681 F. Supp. 2d at 46 (finding three trips to D.C. to solicit business "not sufficient to

support the exercise of general jurisdiction"); *Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 196-

98 (D.D.C. 2007) (finding no general jurisdiction based on "sporadic contacts" and "brief

presence" in forum) (citing *Helicopteros*, 466 U.S. at 417-18)); *Savage v. Dioport, Inc*. 460 F.

Supp. 2d 55, 58-59 (D.D.C. 2006) (holding defendant corporation's contacts with D.C. not

sufficiently continuous and systematic to satisfy the due process requirements of general

jurisdiction where defendant has sales contracts with the U.S. Department of Health and Human

Services and Department of Defense ("DoD"), provided funding to George Washington

University medical Center, participated in a marketing meeting with D.C. officials, advertised

in D.C. newspapers, shipped product to DoD facilities in D.C., and hired legal counsel in D.C.);

*AGS Int'l Servs. S.A. v. Newmont USA Ltd*., 346 F. Supp. 2d 64, 76-77 (D.D.C. 2004) (holding

no "continuous and systematic" contacts based on 14 trips to D.C. to attend meetings over a

two-year period).

    Accordingly, the New York Defendants are nonresidents outside the reach of this

Court's general jurisdiction.  *See Lemon*, 270 F. Supp. 3d at 137 (relying in part on Maryland's

residency requirement applicable to the Maryland Attorney General and other Maryland officials in holding that they are not subject to personal jurisdiction in this District); *West v. Holder*, 60 F. Supp. 3d 190, 193-94 (D.D.C. 2014) (finding no general jurisdiction over the governor of Washington because he is not domiciled in D.C.), *aff'd sub nom on other grounds*, *West v. Lynch*, 845 F.3d 1228 (D.C. Cir. 2017); *Terry v. Dewine*, 75 F. Supp. 3d 512, 521 (D.D.C. 2014) (holding officers of Franklin County, Ohio, were not subject to general jurisdiction under D.C. Code § 13-422 because they were not residents of D.C. and conducted no business in D.C.).

### B.  The Court Has No Specific Jurisdiction Over The Nonresident New York Defendants

Mr. Trump has also failed to allege facts that would support the Court's exercise of specific jurisdiction over the New York Defendants under D.C.'s long-arm statute.  The only provision of the long-arm statute that could potentially be relevant is the "transacting any business" provision.  *See* D.C. Code § 13-423(a)(1).  But Mr. Trump fails to allege that the nonresident New York Defendants transacted any business here that has any "discernable relationship" to his sole claim against the New York Defendants – a facial First Amendment challenge to a New York statute enacted by the New York Legislature to govern the treatment of New York tax information.  *See Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 27 (D.D.C. 2014) (holding under a specific jurisdiction analysis "the claim raised must 'have a discernible relationship' to the defendant's business transacted in the district") (quoting *Rundquist v. Vapiano SE*, No. 09-cv-1107, 2012 WL 5954706, at *8 (D.D.C. Nov. 9, 2012)), *appeal dismissed*, No. 14-7056, 2014 WL 4628907 (D.C. Cir. Aug. 11, 2014).

Mr. Trump asserts that the TRUST Act violates the First Amendment because New York legislators enacted the law purportedly to discriminate and retaliate against him for his politics

and speech.  Am. Compl. at ¶¶ 74-76.  These allegations do not involve conduct by either of the

New York Defendants, much less contacts between them and the District of Columbia.  The

New York Defendants "cannot reasonably be expected to assume that one of the consequences"

of the New York Legislature's enactment of this New York statute would be to allow Mr.

Trump to hale them into federal district court in the *District of Columbia* rather than *New York*

to defend the constitutionality of New York's statute.  *Marshall v. Labor & Industries, State of*

*Washington*, 89 F. Supp. 2d 4, 10 (D.D.C. 2000) (D.C. court lacked personal jurisdiction over

Washington officials sued for administration of Washington's worker's compensation system);

*see also Jenkins v. Kerry*, 928 F. Supp. 2d 122, 132-33 (D.D.C. 2013) (D.C. court lacked

personal jurisdiction over Florida officials sued for participation in Florida court proceedings);

*Fuentes-Fernandez & Co. v. Caballero & Castellanos*, 770 F. Supp. 2d 277, 281 (D.D.C. 2011)

(D.C. court lacked personal jurisdiction over Louisiana agency sued for work performed in

Louisiana); *Coalition on Sensible Transp. Inc. v. Dole,* 631 F. Supp. 1382, 1384-85 (D.D.C.

1986) (D.C. court lacked personal jurisdiction over Maryland official sued for purported

improprieties in Maryland agency's administrative process).

As to the contacts Mr. Trump does allege between the New York Defendants and this

District, none supports the Court's exercise of specific jurisdiction over either the Commissioner

or the Attorney General.

As the amended complaint acknowledges, the Commissioner is simply the state official

whom the Legislature tasked with administering the TRUST Act's state-law provisions about

state tax information.  The amended complaint alleges who the Commissioner is (Am. Compl. at

¶ 17) and what he is required to do under the TRUST Act, which is to receive a written request

from one of the three House committee chairs enumerated in the statute and redact any federal

return information before providing responsive material (*id*. at ¶¶ 55-56, 67).  None of this alleged conduct has even occurred yet since Chairman Neal has not yet submitted any written request to the Commissioner.  In any event, all of the activities that the statute authorizes the Commissioner to undertake if Chairman Neal sends a written request in the future will occur *in New York* pursuant to the Commissioner's state-law authority over state tax information.  Moreover, such activity will bear no discernable relationship to Plaintiff's First Amendment claim, which arises out of the *Legislature's* already completed enactment of the TRUST Act, purportedly in retaliation for Mr. Trump's political views and speech.  *Id*. at ¶ 80.  That claim does not arise out of any of the *Commissioner's* hypothetical, future contacts with the House Defendants, even if Chairman Neal were to send a request.

Finally, such information sharing and communications are insufficient to establish personal jurisdiction under the "transacting any business" prong of D.C.'s long-arm statute for two additional reasons.  First, the "transacting any business" provision applies only where a defendant has "purposefully engaged in some type of *commercial or business-related* activity directed" at residents of D.C.  *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270-71 (D.C. 2001) (emphasis added); *see, e.g., West*, 60 F. Supp. 3d at 195 (finding communications between Governor of Washington and the federal government could not give rise to long-arm jurisdiction because "contacts falling under the 'transacting any business provision' usually must be *commercial*.") (emphasis added); *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C.1981) ("It is now well-settled that the 'transacting any business' provision embraces those *contractual activities* of a nonresident defendant which cause a consequence here.") (emphasis added).  But the Commissioner's conduct under the TRUST Act in responding to a written request for state tax return information will not be commercial or business-related activity at all.  To the

contrary, the Commissioner's administration of the TRUST Act will be part of his official duties to implement the State's policy choices about the sharing of state tax information with other government officials.  Such noncommercial activity cannot form the basis of personal jurisdiction under the "transacting any business" provision.  *See, e.g.*, *Capel v. Capel*, 272 F. Supp. 3d 33, 39 (D.D.C. 2017) (holding family-law contract did not constitute commercial activity and thus did not provide personal jurisdiction under "transacting any business" provision).

Second, under the "government contacts" doctrine, a claim of personal jurisdiction in the District of Columbia cannot be premised solely on a defendant's contacts with the federal government.  *Companhia Brasileira Carbureto De Calcio—CBCC v. Applied Indus. Materials Corp.,* 35 A.3d 1127, 1131 (D.C. 2012) (quoting *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,* 355 A.2d 808, 813 (D.C. 1976) (en banc)).  As explained by the District of Columbia Court of Appeals, the "government contacts" doctrine reflects "the unique character of the District as the seat of national government" and preserves "the correlative need for unfettered access to federal departments and agencies for the entire national citizenry." *Envtl. Research Int'l*, 355 A.2d at 813.[7]  Allowing courts in D.C. "to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality" would threaten the public's ability to participate in government freely, and "threaten to convert the District of Columbia into a national judicial forum." *Id.*  Under the "government contacts" doctrine, none of the information sharing and communications the Commissioner would allegedly undertake under the TRUST Act if the Committee were to

---

[7] For a complete discussion of the history of the "government contacts" doctrine, *see Lex Tex Ltd., Inc. v. Skillman,* 579 A.2d 244, 246–47 (D.C. 1990), *Naartex,* 722 F.2d at 786-87, and *Rose v. Silver,* 394 A.2d 1368, 1373 (D.C. 1978).

submit a written request could possibly form a basis for the assertion of personal jurisdiction.
*See, e.g.*, *Ralls Corp. v. Terna Energy USA Holding Corp.,* 920 F. Supp. 2d 27, 31 (D.D.C.
2013) ("[S]ubmitting documents to and meeting with government officials in the District does
not establish personal jurisdiction."); *Fuentes-Fernandez*, 770 F. Supp. 2d at 281-82 (holding
that under the "government contacts" doctrine contact between federal officials and a Louisiana
state entity did not give rise to personal jurisdiction); *Coalition on Sensible Transp.*, 631 F.
Supp. at 1384-85 (applying government contacts doctrine to an alleged meeting between federal
and Maryland state officials in the District).

      Nor does Plaintiff's new allegation that the Commissioner lived and worked in D.C. from
2011-12 as a policy analyst for the U.S. Department of Treasury, several years *before* the
TRUST Act was introduced in the New York Legislature, bear any remotely discernable
relationship to the First Amendment claim raised in this action.  And Mr. Trump's other new
allegation that the Commissioner served as an advisor to Secretary Clinton's 2016 presidential
campaign does not involve any alleged contact with D.C., much less have any discernable
relationship to Plaintiff's claim against the New York Defendants.

      The Court plainly lacks specific jurisdiction over the Commissioner where he has not yet
had *any* alleged contact with the House Defendants relating to the TRUST Act, and what contact
the Commissioner did allegedly have with D.C. was completely unrelated to, and occurred many
years before the passage of, the TRUST Act.  *See, e.g., Coalition on Sensible Tranp.*, 631 F.
Supp. at 1385 (holding the D.C. long-arm statute requires "that a claim must arise" from the
contacts alleged to constitute transacting business in this forum – a statutory requirement
"closely enforced by the courts."); *Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 228-29
(D.D.C. 2005) (holding defendant's purported contacts with District did not give rise to legal

claim against him and thus did not provide personal jurisdiction).

The amended complaint is similarly threadbare with respect to the Attorney General, who does not administer or enforce the TRUST Act.  Plaintiff identifies who the Attorney General is (Am. Compl. at ¶ 16) and quotes from a few of her statements and tweets that mention him (*id.* at ¶ 38).  Plaintiff does not allege any of this conduct occurred in D.C., and none of it bears any discernable relationship to his sole legal claim challenging the constitutionality of the TRUST Act; therefore, it cannot serve as a basis for the Court's exercise of specific jurisdiction.  *See Coalition on Sensible Tranp.*, 631 F. Supp. at 1385; *Brunson*, 404 F. Supp. 2d at 228-29.

Similarly, Mr. Trump cannot use the "transacting any business" clause of the D.C. long-arm statute to predicate this Court's exercise of specific jurisdiction over the Attorney General based on his new allegations that the Attorney General participates with other state attorneys general as a plaintiff in litigation in this District, visits D.C. for events and meetings, and has spent, solicited and received campaign contributions from donors in D.C.  Am. Compl. at ¶ 16. None of this is *commercial or business-related* activity as required to satisfy the "transacting any business" provision of D.C.'s long-arm statute.  *See, supra*, at 16.   Nor do these alleged activities bear any "discernable relationship" to Plaintiff's First Amendment challenge to the TRUST Act.   *Alkanani,* 976 F. Supp. 2d at 27; *see also Turner*, 53 F. Supp. 3d at 67-68 (rejecting claim that participation by Texas Attorney General in unrelated litigation in D.C. subjects him to specific jurisdiction under D.C.'s long-arm statute because the Attorney General, "by pursuing litigation in the District of Columbia," would not reasonably have anticipated, "as a result, being pulled into this forum to litigate entirely unrelated claims.") (citing *Burger King*, 471 U.S. at 480).

In any event, any attempt by Plaintiff to gin up facts to establish minimum contacts

between the Attorney General and the District of Columbia would be futile because she enjoys immunity from suit under the Eleventh Amendment.[8]

Finally, considerations of federalism and state sovereignty, implicated here because the New York Defendants are sued in their official capacities, provide further bases for finding that the exercise of personal jurisdiction over the New York Defendants would be unreasonable under the Due Process Clause. "Federalism and state sovereignty are an essential part of the constraints that due process imposes upon personal jurisdiction," and they prevent a federal district court from exercising personal jurisdiction "over a nonresident state official." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 488 (5th Cir. 2008). "The sovereignty of each State . . . implie[s] a limitation on the sovereignty of all of its sister States—a limitation express or implicit in both the original scheme of the Constitution and the Fourteenth Amendment." *World–Wide Volkswagen*, 444 U.S. at 293. Accordingly, "the reasonableness of asserting

---

[8] Pursuant to the Court's orders (ECF Nos. 25 and 29), this motion is limited to the New York Defendants' personal jurisdiction and venue defenses, with all other defenses, including an immunity defense under the Eleventh Amendment, preserved. Nevertheless, in the event that Plaintiff contends in opposition to this motion that he needs to conduct jurisdictional discovery relating to the Attorney General, the Court can and should consider her Eleventh Amendment immunity defense in determining whether such discovery would be futile. The basis for the Eleventh Amendment defense is that a suit against state officials sued in their official capacities "is no different from a suit against the State itself." *Will*, 491 U.S. at 71; *Cornish v. United States*, 885 F. Supp. 2d 198, 205 (D.D.C. 2012). The State of New York is not susceptible to suit in federal court without a valid abrogation or waiver of its Eleventh Amendment immunity, *see* U.S. Const. amend. XI; *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001), and there has been neither Congressional abrogation of the states' sovereign immunity for actions such as this brought pursuant to 42 U.S.C. § 1983, *see Will*, 491 U.S. at 71; *Ali v. District of Columbia*, 278 F.3d 1, 7 (D.C. Cir. 2002), nor waiver by the State of New York of its Eleventh Amendment immunity for claims brought in federal court. Nor does Plaintiff's claim for declaratory and injunctive relief against the Attorney General fit into the "narrow exception" to sovereign immunity created by the *Ex Parte Young* doctrine because she is not specifically charged with the duty to enforce the TRUST Act and has no other connection with enforcement of the statute. *Ex Parte Young*, 209 U.S. 123, 157 (1908); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 76 (1996).

jurisdiction over [a] defendant must be assessed in the context of our federal system of government." *Id.* (citation omitted).  In that way, due process "act[s] as an instrument of interstate federalism." *Id.* at 294.  "The effect of holding that a federal district court in the [District of Columbia] had personal jurisdiction over a nonresident state official would create an avenue for challenging the validity of one state's laws in courts located in another state." *Stroman*, 513 F.3d at 488.  Such a practice – which is precisely what Mr. Trump seeks to do here – "would greatly diminish the independence of the states" and improperly offend basic principles of federalism and interstate sovereignty.  *See PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179, 1189 n.8 (C.D. Cal. 2000) (requiring one state to submit to the long-arm jurisdiction of another state "constitutes an extreme impingement on state sovereignty").

This Court's exercise of personal jurisdiction over the nonresident New York Defendants here would also raise the specter of state officials having to defend their own states' laws "in courts throughout the nation," rather than in the "local state or federal courts" that possess "special expertise" in such matters.  *Stroman*, 513 F.3d at 487.  For example, prior to enactment of the TRUST Act, New York's tax laws already authorized the sharing of state tax information with federal, state, and local government officials under certain circumstances *See, e.g.*, N.Y. Tax Law § 697(f), (g) (authorizing the Commissioner to share state tax information with federal, state, and city tax officials for tax purposes on written request).  And other States likewise authorize their tax officials to share state tax information with certain officials from the federal government or other States' governments under statutorily enumerated circumstances.  *See, e.g.*, Ariz. Rev. Stat. Ann. § 42-2003(B)(5)(a)-(c); N.C. Gen. Stat. § 105-259(b)(3).  If the New York Defendants must defend against Plaintiff's constitutional challenge to a New York tax-information sharing statute in a forum outside New York, then other States'

officials may soon be haled into forums outside of their States to defend against similar challenges to the enactment or enforcement of their statutes.  Such lawsuits would "greatly diminish the independence of the states."  *Stroman*, 513 F.3d at 488; *cf. Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993) ("By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere.").

Simply put, nothing under the TRUST Act creates any contact between the New York Defendants and D.C. "such that [they] should reasonably anticipate being haled into court" in this District, *World–Wide Volkswagen*, 444 U.S. at 297, or supports a finding that they "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson*, 357 U.S. at 253.  It would be unreasonable under the Due Process Clause and basic principles of comity and federalism to require the New York Defendants to defend the constitutionality of the TRUST Act in a non-New York forum.  Because there is no general or specific jurisdiction over the New York Defendants, the Court should grant their motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## C. Alternatively, D.C.'s Personal Jurisdiction Provisions Do Not Apply To State Officials Sued In Their Official Capacities

A suit against state officials sued in their official capacities "is no different from a suit against the State itself."  *Will*, 491 U.S. at 71; *Cornish v. United States*, 885 F. Supp. 2d 198, 205 (D.D.C. 2012).  It is an open question in this Circuit whether this is true for purposes of analyzing personal jurisdiction.  *Ferrara*, 54 F.3d at 832 ("We need not determine whether a State official sued in his official capacity should be treated as if he were the State for jurisdictional purposes . . . ."); *West*, 60 F. Supp. 3d at 195 (noting whether the holding in *Will* applies for purposes of a personal jurisdiction analysis "is uncertain") (citing *Ferrara*).  But if

this action is treated as a suit against New York State, then there can be no personal jurisdiction

over the New York Defendants because D.C.'s personal jurisdiction provisions do not apply.

The D.C. personal jurisdiction provisions authorize the exercise of jurisdiction only over

"persons," which is defined as including "an individual, his executor, administrator, or other

personal representative, or a corporation, partnership, association, or any other legal or

commercial entity, whether or not a citizen or domiciliary of the District of Columbia and

whether or not organized under the laws of the District of Columbia."  D.C. Code § 13-421.  The

D.C. Circuit has expressly held that a State does not qualify as a "person" under this statutory

definition.  *Ferrara*, 54 F.3d at 831-32 (holding the text of D.C. Code § 13-421 "affirmatively

implies that a State is not a 'person' for its purpose"); *West*, 60 F. Supp. 3d at 195 (holding state

officials sued in their official capacities do not fall under D.C.'s long-arm statute) (citing

*Ferrara*); *Moore v. Motz*, 437 F. Supp. 2d 88, 94 (D.D.C. 2006) ("The District of Columbia

long-arm statute does not authorize personal jurisdiction over state governments, because states

are not 'persons' within the meaning of the statute.") (citing *Ferrara*).

Accordingly, to the extent the Court deems this action to be against the State of New

York under *Will*, there is no need for any "minimum contacts" analysis to hold that the New

York Defendants should be dismissed because D.C. law provides no statutory basis for the

exercise of personal jurisdiction over them.

## II.    The District of Columbia Is Not A Proper Venue

The District of Columbia is an improper venue for this lawsuit.  The plaintiff bears the

burden of proving that venue is proper, *see Myers v. Holiday Inns, Inc.*, 915 F.Supp.2d 136, 144

(D.D.C. 2013), because "it is the plaintiff's obligation to institute the action in a permissible

forum," *McCain v. Bank of America*, 13 F. Supp. 3d 45, 51 (D.D.C. 2014) (quoting *Williams v.

GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011)).  In determining whether venue is proper,

"a court should accept the plaintiff's well-pled factual allegations as true, resolve any factual

conflicts in the plaintiff's favor, and draw all reasonable inferences in favor of the plaintiff."

*Myers*, 915 F. Supp. 2d at 144 (citing *Hunter v. Johanns*, 517 F. Supp. 2d 340, 343 (D.D.C.

2007)).  The court need not, however, accept a plaintiff's legal conclusions as true.  *See 2215*

*Fifth St. Assocs. v. U–Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 54 (D.D.C. 2001).

 Actions against federal employees sued in their official capacities and federal agencies

are governed in the first instance by 28 U.S.C. § 1391(e)(1), which provides in relevant part:

> A civil action in which a defendant is an officer or employee of the
> United States or any agency thereof acting in his official capacity
> or under color of legal authority, or an agency of the United States,
> or the United States, may, except as otherwise provided by law, be
> brought in any judicial district in which (A) a defendant in the
> action resides, or (B) a substantial part of events or omissions
> giving rise to the claim occurred, or a substantial part of property
> that is the subject of the action is situated, or (C) the plaintiff
> resides if no real property is involved in the action.  *Additional*
> *persons may be joined as parties to any such action in accordance*
> *with the Federal Rules of Civil Procedure and with such other*
> *venue requirements as would be applicable if the United States or*
> *one of its officers, employees, or agencies were not a party.*

28 U.S.C. § 1391(e)(1) (emphasis added); *Stafford v. Briggs*, 444 U.S. 527, 542 (1980) (holding

§ 1391(e) applies to actions against federal officers sued in their official capacity); *E.V. v.*

*Robinson*, 200 F. Supp. 3d 108, 113 (D.D.C. 2016) (applying § 1391(e)(1) to an action against a

military judge sued in his official capacity).

 However, where federal and non-federal defendants are joined in the same action, as is

the case here, venue determinations must be made separately as to each, with venue as to the

non-federal defendants established "under some statutory provision besides § 1391(e)."  *Lazano*

*v. Civiletti*, 89 F.R.D. 475, 479 (D.D.C. 1980); *see also Rogers v. Civil Air Patrol*, 129 F. Supp.

3d 1334, 1339 (M.D. Ala. 2001) (same); *National Ass'n of Life Underwriters v. Clerks*, 761 F.

Supp. 1285 (W.D. Tex. 1991) ("The statute itself [§ 1391(e)] appears to provide that the venue

determinations for federal and non-federal defendants are separate, even though they may be

joined in the same suit."). Because there is no special venue provision for Plaintiff's First

Amendment claim against the New York Defendants, the general venue provision under 28

U.S.C. § 1391(b) applies to determine whether venue in this District is proper as to them.

*Lazano*, 89 F.R.D. at 479.

Section 1391(b) provides three bases for venue. First, venue is proper in a "judicial

district in which any defendant resides, if all defendants are residents of the State in which the

district is located." 28 U.S.C. § 1391(b)(1). This provision does not allow for venue here

because it is beyond dispute that the New York Defendants do not reside in this District as they

are required by law to reside in New York. *See, supra*, at 9.

Second, venue is proper in "a judicial district in which a substantial part of the events or

omissions giving rise to the claim occurred, or a substantial part of property that is the subject

of the action is situated." 28 U.S.C. § 1391(b)(2). To determine whether venue is proper under

this subsection, a court must undertake a "commonsense appraisal" of the "events having

operative significance in the case." *Exelon General Co., LLC v. Grumbles*, 380 F. Supp. 3d 1,

11 (D.D.C. 2019) (quoting *Lamont v. Haig*, 50 F.2d 1124, 1134 (D.C. Cir. 1978)). This

provision also does not allow for venue in this District because the amended complaint alleges

no events or omissions by the New York Defendants in this District that give rise to Mr.

Trump's First Amendment claim. *See, supra*, at 14-15. To the contrary, Mr. Trump alleges

that the purported acts of "retaliation" and "discrimination" were taken by members of the New

York Legislature in New York. Am. Compl. at ¶¶ 37-62. To the extent Plaintiff attempts to

rely for venue purposes on allegations about the conduct of, and statements by, House and

Committee members taking place in D.C. (*id*. at ¶¶ 28-36) or what purportedly will or may

transpire in this District in the future if and when Chairman Neal makes a request under the

TRUST Act (*id.* at ¶ 11), those allegations have nothing to do with the enactment of the TRUST

Act giving rise to Plaintiff's First Amendment claim – the only claim Plaintiff asserts that is

ripe for adjudication.  *See* July 29, 2019 Transcript at 11-12 (noting "a significant ripeness

concern" with respect to Count I).  And in any event, inquiries into legislative motive or

purpose have no place in deciding the merits of a First Amendment challenge.  *Eastland v. U.S.*

*Servicemen's Fund*, 421 U.S. 491, 508 (1975); *United States v. O'Brien,* 391 U.S. 367, 383

(1968) (cautioning that "[i]nquiries into congressional motives or purposes are a hazardous

matter" in a First Amendment challenge to a law prohibiting the destruction of a draft card).  "It

is a familiar principle of constitutional law that this Court will not strike down an otherwise

constitutional statute on the basis of an alleged illicit legislative motive."[9]  *O'Brien*, 391 U.S. at

383.

Third, if no other district is appropriate, venue is proper in "any judicial district in which

any defendant is subject to the court's personal jurisdiction with respect to such action."  28

U.S.C. § 1391(b)(3).  Here, there is another district where venue would be proper—the

Southern District of New York.  The New York Defendants work and reside in New York, and

the Commissioner will review returns, redact information, and respond to any requests made

---

[9] Even in other cases where legislative motive is relevant to the merits of a claim, courts have observed that "it is the motivation of the entire legislature, not the motivation of a handful of voluble members . . . that is relevant."  *S.C. Edu. Ass'n v. Campbell*, 883 F.2d 1251, 1262 (4th Cir. 1989) (citing *Aldridge v. Williams*, 44 U.S. 9, 24 (1845)); *see also Murphy v. Empire of Am., FSA*, 746 F.2d 931, 935 (2d Cir. 1984) (holding that isolated remarks in legislative debate are entitled to little or no weight); *In re Kelly*, 841 F.2d 908, 912 n.3 (9th Cir. 1988) ("Stray comments by individual legislators, not otherwise supported by statutory language or committee reports, cannot be attributed to the full body that voted on the bill.  The opposite inference is far more likely.").

under the TRUST Act in New York.  Additionally, venue would be proper in the Southern

District of New York as to the House Defendants under § 1391(e) because "a substantial part of

the events or omissions giving rise" to Plaintiff's claims occurred in New York, namely the

enactment of the TRUST Act.[10]  28 U.S.C. § 1391(e)(1)(B).  Accordingly, Plaintiff's decision

to name the House Defendants in the absence of any written request from Chairman Neal under

the TRUST Act does not present any barrier to this action being properly venued in the

Southern District of New York.  *See Cameron v. Thornburgh*, 983 F.2d 253, 256-57 (D.C. Cir.

1993) (dismissing federal officials resident in D.C. and transferring action to the Southern

District of Indiana).  As the D.C. Circuit warned in *Cameron*: "Courts in this circuit must

examine challenges to personal jurisdiction and venue carefully to guard against the danger that

a plaintiff might manufacture venue in the District of Columbia.  By naming high government

officials as defendants, a plaintiff could bring a suit here that properly should be pursued

elsewhere."  *Id.* at 256.

Based on the separate venue analysis the Court must undertake for the New York

Defendants as required by § 1391(e), which in turn requires application of § 1391(b), venue is

not proper in the District of Columbia as the "obvious locus" for the action is New York, where

the conduct that serves as the basis for Plaintiff's only ripe claim allegedly occurred.  *Leroy v.*

---

[10] As the Court held in *Stafford*, "[w]ithout doubt, under § 1391(e), venue lies in every one of the 95 federal districts" against federal defendants in official capacity suits, with minimal burden on the federal defendants because the United States Attorney in each of the districts and the Department of Justice carry the burden of defending the case and "rarely would the officer himself be obliged to travel to the district in which the case was heard."  *Stafford*, 444 U.S. at 544.  In any event, the House Defendants are absolutely immune from suit under the Speech or Debate Clause based on the holding in *Eastland*, *see* Response of the Committee on Ways & Means to Emergency Application, (ECF No. 14), and the only claim as to which the House Defendants are necessary parties – Count I – is not ripe as noted above.

*Great Western United Corp.*, 443 U.S. 173, 185-86 (1979) (holding Texas district court was an improper venue for a constitutional challenge to an Idaho statute because the actions providing the basis for the suit – "the enactment of the statute by the legislature" and implementation of the statute by the state and its officials – occurred or will occur in Idaho).

Under 28 U.S.C. § 1406(a), a district court shall dismiss an action filed in an improper venue or, if it is "in the interest of justice, transfer such case to any district . . . in which it could have been brought."  "The decision whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court."  *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983).  If the Court does not dismiss the New York Defendants for lack of personal jurisdiction or dismiss the case for improper venue, it should at a minimum transfer the case to the Southern District of New York.  *Leroy*, 443 U.S. at 186 (noting plaintiff's constitutional challenge to an Idaho statute "may well depend on a proper interpretation of the State's statute, and federal judges sitting in Idaho are better qualified to construe Idaho law, and to assess the character of Idaho's probable enforcement of that law, than are judges sitting elsewhere."); *Stroman*, 513 F.3d at 487 (noting that state officials should not have to defend attempts to enforce their own states' laws "in courts throughout the nation," rather than in the "local state or federal courts").

**CONCLUSION**

The Court should grant the New York Defendants' motion and issue an order: (i)

dismissing them from this action for lack of personal jurisdiction; (ii) dismissing the case based

on improper venue; or (iii) at the very least transferring this case to the Southern District of New

York.

Dated:   New York, New York
         August 29, 2019

LETITIA JAMES
Attorney General of the State of New York

By: _____/s/ Andrew Amer___
        Andrew Amer
Special Litigation Counsel
28 Liberty Street, 17th Floor
New York, New York 10005
(212) 416-6127
Andrew.amer@ag.ny.gov

*Attorney for Defendants Letitia James, in her*
*official capacity, and Michael R. Schmidt, in*
*his official capacity*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2019, I caused the foregoing document to be filed via

this Court's CM/ECF system, which I understand caused service on all counsel of record.


/s/ Andrew Amer
Andrew Amer