**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DONALD J. TRUMP,

*Plaintiff*,

v.

COMMITTEE ON WAYS AND MEANS,
UNITED STATES HOUSE OF
REPRSENTATIVES, *et al.*,

*Defendants*.

Case No. 1:19-cv-02173-CJN

## COMMITTEE DEFENDANTS' MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants

Committee on Ways and Means of the U.S. House of Representatives, Chairman Richard E.

Neal, and Andrew Grossman (collectively, Committee Defendants), through their undersigned

counsel, respectfully move the Court to dismiss the Committee Defendants from the above-

captioned action.  The grounds for this motion are set forth in the accompanying memorandum

of law in support of the motion.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter (DC Bar No. 253492)
    *General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
    *Deputy General Counsel*
Megan Barbero (MA Bar No. 668854)
    *Associate General Counsel*
Josephine Morse (DC Bar No. 1531317)
    *Associate General Counsel*
Kristin A. Shapiro (DC Bar No. 1007010)
    *Assistant General Counsel*
Brooks M. Hanner (DC Bar No. 1005346)
    *Assistant General Counsel*

Sarah E. Clouse (MA Bar No. 688187)
*Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
douglas.letter@mail.house.gov

*Counsel for the Committee Defendants*

October 21, 2019

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DONALD J. TRUMP,

                    *Plaintiff*,

      v.

COMMITTEE ON WAYS AND MEANS,
UNITED STATES HOUSE OF
REPRSENTATIVES, *et al.*,

                    *Defendants*.

Case No. 1:19-cv-02173-CJN

**MEMORANDUM OF LAW**
**IN SUPPORT OF COMMITTEE DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 3

    I.    The Committee's Legal Framework ................................................................. 3

    II.   Statutory Framework ....................................................................................... 4

    III.  This Lawsuit ..................................................................................................... 5

STANDARD OF REVIEW ............................................................................................ 7

ARGUMENT ................................................................................................................. 7

    I.    The Court Lacks Jurisdiction over Mr. Trump's Lawsuit ................................. 7

        A.   Mr. Trump's Complaint Against the Committee Defendants Must Be Dismissed for Lack of Article III Standing ................................................................................. 7

        B.   Mr. Trump's Claims Against the Committee Defendants Are Not Ripe ................. 14

        C.   The Committee Defendants Have Absolute Speech or Debate Clause Immunity from This Lawsuit ........................................................................................................ 15

    II.   Mr. Trump Is Not Entitled to Relief Under the All Writs or Declaratory Judgment Acts 23

    III.  The Complaint Should Be Dismissed for Failure to State a Claim ................................. 25

        A.   Mr. Trump Has Failed to State a Claim Under Article I and the House Rules ........ 25

        B.   Mr. Trump Has Failed to State a First Amendment Claim....................................... 28

CONCLUSION.................................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*Ali v. Rumsfeld*,
    649 F.3d 762 (D.C. Cir. 2011) .............................................................................25

*Am. Rivers v. FERC*,
    895 F.3d 32 (D.C. Cir. 2018) ...............................................................................24

*Arpaio v. Obama*,
    797 F.3d 11 (D.C. Cir. 2015) ..........................................................................12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... *passim*

*Benvenuti v. Dep't of Def.*,
    587 F. Supp. 348 (D.D.C. 1984) ...........................................................................24

*Bogan v. Scott-Harris*,
    523 U.S. 44, 54 (1998)......................................................................................16, 18

*Brown & Williamson Tobacco Corp. v. Williams*,
    62 F.3d 408 (D.C. Cir. 1995) ..........................................................................16, 23

*Chamber of Commerce v. EPA*,
    642 F.3d 192 (D.C. Cir. 2011) .............................................................................12

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..................................................................................... *passim*

*Clinton v. Goldsmith*,
    526 U.S. 529 (1999)..............................................................................................24

*Coffman v. Breeze Corp.*,
    323 U.S. 316 (1945)..............................................................................................25

*Comm. on Ways & Means v. U.S. Dep't of Treasury*,
    No. 19-1974 (D.D.C. filed July 7, 2019) .............................................................22

*Doe v. Dist. of Columbia*,
    796 F.3d 96 (D.C. Cir. 2015) ...............................................................................28

*Doe v. McMillan*,
    412 U.S. 306 (1973).............................................................................16, 17, 18, 20

*Eastland v. U.S. Servicemen's Fund*,
    421 U.S. 491 (1975)..................................................................................... *passim*

*Endeley v. U.S. Dep't of Def.*,
  268 F. Supp. 3d 166 (D.D.C. 2017) .......................................................................10

*EPIC v. U.S. Dep't of Commerce*,
  928 F.3d 95 (D.C. Cir. 2019) .........................................................................9, 12

*Fields v. Office of Eddie Bernice Johnson*,
  459 F.3d 1 (D.C. Cir. 2006) ..............................................................................19

*Gravel v. United States*,
  408 U.S. 606 (1972) ..........................................................................16, 19, 20

*Harrigan v. Yang*,
  168 F. Supp. 3d 25 (D.D.C. 2016) ......................................................................10

*Hearst v. Black*,
  87 F.2d 68 (D.C. Cir. 1936) .........................................................................14, 30

*Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*,
  720 F.3d 939 (D.C. Cir. 2013) .........................................................................17

*Jerome Stevens Pharm., Inc. v. FDA*,
  402 F.3d 1249 (D.C. Cir. 2005) ..........................................................................7

*La. Envtl. Action Network v. Browner*,
  87 F.3d 1379 (D.C. Cir. 1996) ......................................................................10, 15

*Ludvigson v. United States*,
  525 F. Supp. 2d 55 (D.D.C. 2007) .......................................................................7

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..........................................................................7, 8, 11

*McGrain v. Daugherty*,
  273 U.S. 135 (1927) ..........................................................................25, 26

*McSurely v. McClellan*,
  553 F.2d 1277 (D.C. Cir. 1976) (en banc) .............................................................17, 18

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ..........................................................................14

*Mideast Sys. & China Civil Const. Saipan Joint Venture, Inc. v. Hodel*,
  792 F.2d 1172 (D.C. Cir. 1986) .........................................................................12

*MINPECO, S.A. v. Conticommodity Servs., Inc.*,
  844 F.2d 856 (D.C. Cir. 1988) ......................................................................17, 18

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
538 U.S. 803 (2003) .................................................................................................14

*Porteous v. Baron*,
729 F. Supp. 2d 158 (D.D.C. 2010) ....................................................................18, 20

*Raines v. Byrd*,
521 U.S. 811 (1997) ..................................................................................................7

*Rangel v. Boehner*,
785 F.3d 19 (D.C. Cir. 2015) ............................................................................ *passim*

*Reed v. Town of Gilbert, Ariz.*,
135 S. Ct. 2218 (2015) .............................................................................................28

*Senate Permanent Subcomm. on Investigations v. Ferrer*,
856 F.3d 1080 (D.C. Cir. 2017) ..........................................................13, 16, 22, 23

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ...................................................................................................11

*Skelly Oil Co. v. Phillips Petroleum Co.*,
339 U.S. 667 (1950) .................................................................................................25

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ...............................................................................................8

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ...................................................................................................8

*Swanson Grp. Mfg. LLC v. Jewell*,
790 F.3d 235 (D.C. Cir. 2015) .................................................................................12

*Texas v. United States*,
523 U.S. 296 (1998) ............................................................................................14, 15

*Trump v. Mazars USA, LLP*,
— F. 3d —, No. 19-5142, 2019 WL 5089748 (D.C. Cir. Oct. 11, 2019) ...............27

*Turlock Irrigation Dist. v. FERC*,
786 F.3d 18 (D.C. Cir. 2015) ...................................................................................10

*United States v. Ausby*,
No. 72-cr-67, 2019 WL 2870232 (D.D.C. July 3, 2019) ........................................24

*United States v. Ballin*,
144 U.S. 1 (1892) .....................................................................................................27

*United States v. Brewster*,
　408 U.S. 501 (1972) ............................................................................15, 17, 18

*United States v. City of New York*,
　972 F.2d 464 (2d Cir. 1992) ...........................................................................24

*United States v. Denedo*,
　556 U.S. 904 (2009) ....................................................................................... 24

*United States v. Helstoski*,
　442 U.S. 477 (1979) ..................................................................................17, 22

*United States v. Johnson*,
　383 U.S. 169 (1966) .........................................................................................18

*United States v. Verrusio*,
　758 F. App'x 2 (D.C. Cir. 2019) .....................................................................24

*United Transp. Union v. ICC*,
　891 F.2d 908 (D.C. Cir. 1989) .........................................................................8

*Veazie Bank v. Fenno*,
　75 U.S. 533 (1869) ...........................................................................................13

*Warth v. Seldin*,
　422 U.S. 490 (1975) .........................................................................................11

*Watkins v. United States*,
　354 U.S. 178 (1957) .........................................................................................27

*Whitmore v. Arkansas*,
　495 U.S. 149 (1990) ...........................................................................................8

*Wyo. Outdoor Council v. U.S. Forest Serv.*,
　165 F.3d 43 (D.C. Cir. 1999) ...........................................................................14

**U.S. Constitution and Statutes**

U.S. Const., Art. I, § 1 ..........................................................................................3

U.S. Const., Art. I, § 2 .......................................................................................3, 20

U.S. Const., Art. I, § 5 .................................................................................3, 20, 27

U.S. Const., Art. I, § 6 .....................................................................................2, 15

26 U.S.C. § 6103 ...............................................................................................5, 6

28 U.S.C. § 1651 .................................................................................................23

**State Statute**

Tax Returns Released Under Specific Terms Act (TRUST Act),
    NY Tax Law § 697 (2019) .................................................................................... *passim*

**Federal Rules of Civil Procedure**

Rule 12 ......................................................................................................................7, 25

**Rules of the U.S. House of Representatives, 116th Cong.**

House Rule X.1 ...............................................................................................3, 19, 27

House Rule X.2 .....................................................................................................4

House Rule XI.1 ..............................................................................................4, 19, 27

**Other Authorities**

Laura Davison, *House Democrats Consider Getting Trump's New York Tax Returns*,
    Bloomberg (July 11, 2019) ................................................................................9

Laura Davison, *House Democrats Hire Counsel for Fight to Get Trump's Tax Returns*,
    Bloomberg (Dec. 7, 2018) ...............................................................................13

Laura Davison, *New York Offers Up Trump's State Tax Returns—But One Lawmaker
    Stands in the Way*, Bloomberg (June 5, 2019) ..........................................................11

*Pelosi Remarks Announcing Impeachment Inquiry* (Sept. 24, 2019) ...........................................4

## INTRODUCTION

President Donald J. Trump brings this suit in his personal capacity seeking the extraordinary relief of a declaration and an injunction preventing the Committee on Ways and Means of the U.S. House of Representatives (Committee) from requesting his state tax return information from the state of New York.  In July, New York enacted a statute permitting the Chairs of Congress's three tax committees to request the return information of various elected and appointed officials, including the President, who file tax returns in New York.

At present, Mr. Trump does not and cannot allege that he is suffering harm:  Ways and Means Committee Chairman Richard E. Neal has not made a request to New York under the statute, and the Committee has not decided whether or not to do so.  By Mr. Trump's own admission, any *future* Committee request by itself also would not injure him.  Despite all this, Mr. Trump insists that this Court must intervene *now* to stop the Committee, Chairman Neal, and one Committee staff member (Committee Defendants) from committing various alleged constitutional violations.  There is simply no precedent in our system of divided government for the Judicial Branch to intrude upon a Congressional committee's deliberative affairs in this manner.  For the many reasons explained below—each of which alone is a sufficient basis to dismiss the Committee Defendants from this suit—this Court should not be the first to issue such a plainly inappropriate order.

Mr. Trump's claims fail as to the Committee Defendants on multiple threshold grounds.

To begin, Mr. Trump has not established Article III standing.  He is not now being harmed in any way by the Committee Defendants, and his theory of possible future injury is based on several levels of speculation about a harm that may—or may not—materialize *if* a request is ever made and an independent actor (New York) releases his state tax information.  Mr. Trump's claimed injury thus is neither "certainly impending," *Clapper v. Amnesty Int'l USA,*

568 U.S. 398, 401 (2013), nor fairly traceable to the Committee Defendants' conduct, let alone judicially redressable, because our constitutional separation of powers bars the relief Mr. Trump seeks.  For related reasons, Mr. Trump's claims are not ripe, because they rest on multiple uncertain and contingent events and would require judicial resolution of significant legal issues based on facts that do not exist.

The Committee Defendants are also constitutionally absolutely immune from this suit. The Committee's decisionmaking about whether to gather information for its work is plainly covered by the Constitution's Speech or Debate Clause, U.S. Const., Art. I, § 6, cl. 1, which shields from judicial scrutiny legislative acts, including committee information requests as well as preparations for and deliberative processes about requests.  Once it is determined that an act is legislative in nature, "the Speech or Debate Clause is an *absolute* bar to interference," and there is no inquiry into underlying motive or purpose of the type Mr. Trump would have this Court undertake.  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975) (emphasis added). This Congressional immunity established by the Framers of the Constitution after full deliberation applies regardless of whether a putative plaintiff can demonstrate injury absent an injunction.  We cannot over-emphasize the importance of this point.

Nor can Mr. Trump resort to the All Writs Act or the Declaratory Judgment Act to cure these jurisdictional defects because neither statute supplies the subject-matter jurisdiction that is otherwise lacking in this case.

Finally, even assuming Mr. Trump's claims were justiciable, his complaint fails to state a claim on the merits with regard to any conduct by the Committee Defendants.  He has failed to plausibly plead that the hypothetical future request on which his complaint is premised violates Article I of the U.S. Constitution or the Rules of the U.S. House of Representatives (House

Rules).  And although Mr. Trump claims that New York's statute was passed in violation of the First Amendment, he has failed to allege any facts connecting the Committee Defendants to the New York legislature's enactment of this law.  The Committee Defendants therefore must be dismissed.

## BACKGROUND

### I.      The Committee's Legal Framework

The Constitution grants Congress specified powers.  Article I, section 1 provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States."  U.S. Const., Art. I, § 1.  Article I, section 2 provides that "[t]he House of Representatives … shall have the sole Power of Impeachment."  U.S. Const., Art. I, § 2, cl. 5.  Additionally, the Constitution assigns each house of Congress the authority to "determine the Rules of its Proceedings."  U.S. Const., Art. I, § 5, cl. 2.

Pursuant to the Rulemaking Clause, the 116th Congress adopted the House Rules, which govern the House during the two-year term.[1]  These Rules vest the Committee—a standing committee of the House since 1789—with broad jurisdiction over, among other things, "[r]evenue measures generally" and the "[d]eposit of public monies."  House Rule X.1(t)(3), (6). The House has also delegated to the Committee the authority to "conduct at any time such investigations and studies as it considers necessary or appropriate" of the matters within its jurisdiction, to hold hearings, and to "require, by subpoena, or otherwise, the attendance and testimony of such witnesses and the production of such books, records, correspondence, memoranda, papers, and documents as it considers necessary" to fulfill its assigned functions.

---

[1] The House Rules were adopted by House Resolution on January 9, 2019.  H. Res. 6, 116th Cong. (2019), https://perma.cc/DYV4-78Z4.

House Rule XI.1(b)(1), XI.2(m)(1)(A), (B); *see also* House Rule X.2(a), (b) (discussing Committee's "general oversight responsibilities" as a "standing committee" of the House).

In addition, the House is conducting an impeachment inquiry, in which the Committee is participating.[2]

## II.    Statutory Framework

On July 8, 2019, New York State amended its tax laws to permit any of the Chairs of Congress's three tax committees—the House Committee on Ways and Means, the Senate Committee on Finance, and the Joint Committee on Taxation—to make a request in writing to the Commissioner of the New York State Department of Taxation and Finance (Commissioner) for current or prior year reports or returns of various elected and appointed officials who have filed tax returns in New York.  *See* NY Tax Law § 697(f-1) (2019).  These officials include the President, the Vice President, any Member of Congress representing New York, certain federal Executive Branch employees and officers, and certain New York state and local officials and judges.  *See id.* § 697(f-1)(1).

New York's amendment, known as the Tax Returns Released Under Specific Terms Act (TRUST Act), specifies that "[n]o reports or returns shall be furnished" unless certain preconditions are met:  The requesting Committee Chair must "certif[y] in writing" that (1) "such reports or returns have been requested related to, and in furtherance of, a legitimate task of the Congress"; (2) the "requesting committee has made a written request to the United States secretary of the treasury for related federal returns or return information, pursuant to 26

---

[2] *Pelosi Remarks Announcing Impeachment Inquiry* (Sept. 24, 2019), https://perma.cc/6EQM-34PT ("directing . . . six Committees," including Ways and Means, "to proceed with their investigations under that umbrella of impeachment inquiry").

U.S.C. § 6103(f)"[3]; and (3) if the requested materials are "inspected by and/or submitted to" another Congressional committee, the full House, or the full United States Senate, "then such inspection and/or submission shall occur in a manner consistent with federal law as informed by the requirements and procedures established in 26 U.S.C. Section 6103(f)." *See* NY Tax Law § 697(f-1)(2).  Before releasing any report or return materials pursuant to the TRUST Act, the Commissioner must redact any "copy of a federal return (or portion thereof) attached to, or any information on a federal return that is reflected on" such materials, as well as "any social security numbers, account numbers and residential address information." *Id.* § 697(f-1)(1).  The TRUST Act does not require that a New York taxpayer whose records are subject to a Congressional request be notified of that request.  *See id.* § 697(f-1).

### III.    This Lawsuit

On July 23, 2019, Mr. Trump filed this action against the Committee, the Commissioner, and New York's Attorney General.  Compl. ¶¶ 13-15.  He later amended his complaint to add as defendants Chairman Neal and the Committee's Chief Tax Counsel Andrew Grossman.  Am. Compl. ¶¶ 13-17.  The amended complaint asserts two claims against the Committee Defendants. Count I charges a violation of Article I of the U.S. Constitution and the House Rules, alleging that "[n]o legitimate legislative purpose exists to request the President's tax state returns," and that the Committee "lacks statutory jurisdiction" to make any such request.  *Id.* ¶¶ 74-76.  Count II charges the Committee Defendants with violating the First Amendment on the theory that the TRUST Act "was enacted to retaliate against the President because of his policy positions, his

---

[3] Section 6103(f) of the U.S. Internal Revenue Code provides that "[u]pon written request" from any of the Chairs of Congress's three tax committees, the Secretary of the Treasury "shall furnish such committee with any [federal] return or return information specified in such request," in accordance with certain procedures.  26 U.S.C. § 6103(f)(1).

political beliefs, and his protected speech, including the positions he took during the 2016 campaign," and "singles out President Trump because he is a Republican and a political opponent." *Id.* ¶¶ 77-80.

Among other relief, Mr. Trump seeks a declaratory judgment that "the Committee lacks a legitimate legislative purpose for obtaining the President's state tax information," an injunction prohibiting the Committee "from making a written request under the TRUST Act, or taking any other action to request, inspect, review, use, maintain, or disclose the President's state tax information," and an array of other "equitable relief" under the All Writs Act. *Id.*, Prayer for Relief ¶¶ a, b, j.

Mr. Trump alleges that following a Section 6103(f) request by the Committee to the Treasury Department for his federal tax return information, and Treasury's refusal to comply with that request, the Committee filed a lawsuit in federal district court seeking this information, in which Mr. Trump intervened. *Id.* ¶¶ 1-2. In the instant suit, Mr. Trump claims that "New York Democrats designed the TRUST Act to be a complement to the Committee's litigation over the President's federal tax returns." *Id.* ¶ 4. According to Mr. Trump, the TRUST Act "grew out of a larger campaign in New York to uncover and expose the President's private financial information," and the "New York Legislature enacted it to discriminate and retaliate against President Trump for his speech and politics." *Id.* ¶¶ 4, 9. Mr. Trump alleges that, although no Congressional request for his state tax returns has been made to date, "House counsel" is in the process of "reviewing" the Act. *Id.* ¶ 6. Mr. Trump further alleges that this internal "review could end," Chairman Neal "could decide to request the President's state returns—at any time, with no notice to the President," and "New York could respond to the request nearly instantaneously." *Id.* ¶ 7. Finally, he alleges that, once the Committee obtains any information

from New York, the Committee "will hold hearings (including testimony from New York officials) about the returns" and "will use the returns to draft and consider legislation." *Id.* ¶ 11.

## STANDARD OF REVIEW

To survive this motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), Mr. Trump must establish that this Court has jurisdiction to hear his claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Under Rule 12(b)(6), he must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court must give Mr. Trump's allegations "closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim." *Ludvigson v. United States*, 525 F. Supp. 2d 55, 56-57 (D.D.C. 2007). Accordingly, in the context of Rule 12(b)(1), this Court may consider evidence outside of the pleadings. *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ARGUMENT

**I.     The Court Lacks Jurisdiction over Mr. Trump's Lawsuit**

**A.     Mr. Trump's Complaint Against the Committee Defendants Must Be Dismissed for Lack of Article III Standing**

**1.** "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper*, 568 U.S. at 408 (quotation marks omitted). Article III standing, "which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.* Accordingly, the "standing inquiry has been especially rigorous when reaching the merits of the dispute would force [the Judicial Branch] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

To have the right to proceed here, Mr. Trump must establish the three elements that comprise the "irreducible constitutional minimum" of Article III standing: that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016) (quoting *Lujan*, 504 U.S. at 560). An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotation marks omitted). A putative plaintiff like Mr. Trump "alleging only future injuries confronts a significantly more rigorous burden to establish standing." *United Transp. Union v. ICC*, 891 F.2d 908, 913 (D.C. Cir. 1989).

Of considerable relevance here, the D.C. Circuit has warned that, when "considering any chain of allegations for standing purposes, [courts] may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) and those which predict a future injury that will result from present or ongoing actions." *Id.* at 912; *see Clapper*, 568 U.S. at 414 (rejecting standing theory based on "speculative chain of possibilities"). A claim of "future injury may suffice [only] if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper*, 568 U.S. at 414 & n.5). "Allegations of possible future injury do not satisfy the requirements of Art[icle] III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (quotation marks omitted).

**2.** Mr. Trump has stated no cognizable injury in fact with regard to the Committee Defendants. At the outset, Mr. Trump admits that he will suffer no harm from a *request* by the Committee for his state tax return information, but will instead be injured only by a subsequent *release* of his information by the New York Commissioner following a Congressional request.

8

*See* Tr. of Mot. Hr'g at 6 (July 29, 2019) (July Hr'g Tr.) ("[The Court]: And the President, I take it, under your view would not suffer any harm from a request, full stop; correct?  [Counsel for Mr. Trump]: That is correct."); *id.* at 28 (The Court:  "[Counsel for Mr. Trump] has acknowledged that a request by the Committee wouldn't harm Mr. Trump[.]"); Tr. of Mot. Hr'g at 45 (Sept. 18, 2019) (Sept. Hr'g Tr.) ("[Counsel for Mr. Trump]:  And I do want to be very clear about the point that the injury and the harm is a *disclosure* of the state tax records which would otherwise be private to these committees of Congress, not what they decide to do with them after the fact.  That's true for Article III injury[.]" (emphasis added)).

Accordingly, even aside from the fact that Chairman Neal has made no request to New York officials, the conceded lack of injury to Mr. Trump from *any* request under the TRUST Act is fatal to his complaint here against the Committee Defendants.  *See EPIC v. U.S. Dep't of Commerce*, 928 F.3d 95, 100 (D.C. Cir. 2019) (standing must be shown "as to each claim, and each form of requested relief"); Am. Compl. ¶¶ 74-76, 81; *id.*, Prayer for Relief ¶¶ a, b.

Mr. Trump's efforts to base standing on anticipated future harm fare no better. Specifically, Mr. Trump asserts that, although Chairman Neal "[a]t first … said he would not use the TRUST Act," Am. Compl. ¶ 65, he later stated that "House counsel [i]s 'reviewing' [the TRUST Act] now," *id.* ¶ 6.  Mr. Trump appears to have based the latter allegation on a public comment by Chairman Neal that appeared in a July 11, 2019 *Bloomberg* article:  "'The House counsel is reviewing all of that right now,' House Ways and Means Chairman Richard Neal said Thursday. 'They still have some legitimate concerns about it.  That comes from House counsel, not me.'"[4]  Mr. Neal's statement, viewed in full, demonstrates that the Committee's internal

---

[4] Laura Davison, *House Democrats Consider Getting Trump's New York Tax Returns*, Bloomberg (July 11, 2019), https://perma.cc/TJY8-7K2Y.

review of the TRUST Act was ongoing as of that date, and no decision to use it had been made either way.  Mr. Trump then speculates that this "review *could* end"; "Chairman Neal *could* decide to request the President's state returns"; and "New York *could* respond to the request nearly instantaneously."  *Id.* ¶ 7 (emphases added).

This multistep chain of speculation alleges only a "possible future injury" that could, or could not, come to pass—not one that is "certainly impending" as required for Article III standing.  *Clapper*, 568 U.S. at 409 (emphasis and quotation marks omitted); *see, e.g.*, *La. Envtl. Action Network v. Browner*, 87 F.3d 1379, 1383 (D.C. Cir. 1996) ("This multi-tiered speculation must defeat [the plaintiff's] claim of injury."); *Endeley v. U.S. Dep't of Def.*, 268 F. Supp. 3d 166, 175 (D.D.C. 2017) ("Such speculation upon speculation does not suffice to support Article III standing." (quotation marks omitted)).  Courts have consistently rejected similar attempts to base standing on allegations of future injury that are contingent on conjecture, particularly where—as here—the allegations are premised on predictions about the decisions of other actors over which the Committee has no control.  *See, e.g.*, *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24-25 (D.C. Cir. 2015) ("[Appellant's] prediction that separate licensing proceedings will result in the lack of a coordinated fish passage hypothesizes as to the outcome of future legal proceedings, and is thus too speculative to invoke the jurisdiction of an Art[icle] III Court." (quotation marks omitted)); *Harrigan v. Yang*, 168 F. Supp. 3d 25, 34 (D.D.C. 2016) ("Plaintiff cannot … establish standing based on the mere supposition that HUD will rule against her on remand.  HUD might rule against her on remand or it might not—that determination cannot be made at this time." (citation omitted)).

Mr. Trump's additional allegations only underscore the improperly speculative nature of his posited future injury.  He claims that a request could be nigh because "Chairman Neal is

facing intense pressure from his fellow Democrats to invoke the TRUST Act." Am. Compl. ¶ 6. As an example, Mr. Trump cites a statement made four months ago by Congressman Hakeem Jeffries, who is not a member of the Committee, that "continued obstruction from the administration … *may cause* the chairman of the Ways and Means Committee to *change his mind*." *Id.* ¶ 69 (emphases added).[5]  Mr. Trump similarly alleges that New York "Assembly Speaker Heastie *predicted* that Chairman Neal *would* use the [TRUST Act] as in case of emergency break glass type legislation." *Id.* (emphases added; quotation marks omitted).  As with Mr. Trump's other standing allegations, this type of "unadorned speculation" does not suffice for Article III injury.  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976).

**3.**  Even if Mr. Trump could establish an injury in fact, any future harm to him would not be fairly traceable to conduct by the Committee Defendants.  As just discussed, Mr. Trump admits that the only "harm is a disclosure of the state tax records" by the New York Commissioner, Sept. Hr'g Tr. at 45, not any predicate request by Chairman Neal.  Where another independent actor is the direct cause of the asserted injury, the plaintiff "bears the burden of … adduc[ing] facts showing that those [actor's] choices have been or will be made in such manner as to produce causation and permit redressability of injury."  *Lujan*, 504 U.S. at 562 (citing *Warth v. Seldin*, 422 U.S. 490, 505 (1975)).  Mr. Trump has simply not carried his burden on causation.

---

[5] Congressman Jeffries's full public statement, which was quoted in a June 5, 2019 *Bloomberg* article, contains even more prognostication: "'*At this moment* in time Chairman Neal has taken this position, *but we'll see how he decides to proceed* in the face of continued obstruction from the administration,'" said Rep. Hakeem Jeffries (D-NY). "'That *may cause* the chairman of the Ways and Means Committee *to change his mind*.'"  Laura Davison, *New York Offers Up Trump's State Tax Returns—But One Lawmaker Stands in the Way*, Bloomberg (June 5, 2019), https://perma.cc/XE5A-FQV9 (emphases added).

Mr. Trump speculates that if Chairman Neal were to make a request at a future date, "New York *could respond* to the request nearly instantaneously."  Am. Compl. ¶ 7 (emphasis added).  But where, like here, injury "hinge[s] on the actions of third parties," statements that a challenged law "'*could*' or '*may*' cause injury [are] 'insufficient to establish standing.'" *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 242 (D.C. Cir. 2015) (quoting *Chamber of Commerce v. EPA*, 642 F.3d 192, 201-02 (D.C. Cir. 2011)).

Further, Mr. Trump's assumptions about the New York Commissioner's response fail to account for the TRUST Act's multiple preconditions to the release of requested tax information, including the certifications required of the Congressional committee, and any review process of those certifications interposed by the Commissioner prior to release.  *See* NY Tax Law § 697(f-1)(2); July Hr'g Tr. (Counsel for New York: "There is this certification requirement and it needs to be part of the process.").  New York's actions upon receipt of any request are an "independent variable" between Mr. Trump's alleged harm and the Committee Defendants' conduct, making causation too attenuated to establish standing.  *Mideast Sys. & China Civil Const. Saipan Joint Venture, Inc. v. Hodel*, 792 F.2d 1172, 1178 (D.C. Cir. 1986) ("[T]he mere possibility that causation is present is not enough[.]"); *accord Arpaio v. Obama*, 797 F.3d 11, 20 (D.C. Cir. 2015).

**4.**  While Mr. Trump has no standing to maintain claims against *any* of the Committee Defendants, his theories of injury and causation fail in particular with respect to Mr. Grossman. *See EPIC*, 928 F.3d at 100 (standing must be demonstrated "as to each claim, and each form of requested relief").  Mr. Trump's sole conclusory assertion regarding Mr. Grossman—that he "is responsible for drafting, approving, sending, and reviewing any request for the President's state

tax returns," Am. Compl. ¶ 15—is both baseless, in light of Mr. Grossman's responsibilities,[6] and belied by the face of the TRUST Act, which permits the "chairperson" of each of the three Congressional tax committees to submit a request to the Commissioner and makes no mention of subordinate staff, let alone particular Committee staff, *see* NY Tax Law § 697(f-1)(1); Am. Compl. ¶ 55. In assessing standing, courts are to draw "*reasonable* inferences from [plaintiff's] allegations in [his] favor," but not "accept inferences that are unsupported by the facts." *Arpaio*, 797 F.3d at 19 (emphasis added) (quotation marks omitted); *see Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions[] devoid of further factual enhancement." (quotation marks omitted)). Mr. Trump provides no basis for this Court to accept his unsupported allegation about Mr. Grossman; for this reason, among all the other reasons discussed in this brief, Mr. Grossman has no place whatsoever in this case.

**5.** Finally, Mr. Trump's claimed harm is not judicially redressable by an order against the Committee Defendants. Under longstanding separation-of-powers precedent, courts lack the authority to order Congress to take, or refrain from taking, specific actions in its legislative proceedings, such as the Committee's ongoing deliberations whether to request information from New York. *See, e.g.*, *Veazie Bank v. Fenno*, 75 U.S. 533, 548 (1869) ("[T]he judicial cannot prescribe to the legislative departments of the government limitations upon the exercise of its acknowledged powers."); *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1086 (D.C. Cir. 2017) ("[T]he separation of powers, including the Speech or Debate

---

[6] As the Committee's Chief Tax Counsel, Mr. Grossman is not responsible for the hypothetical actions Mr. Trump attributes to him. Mr. Trump appears to have drawn his allegation from a December 7, 2018 *Bloomberg* article published months before the TRUST Act was signed into law, and that does not even reference Mr. Trump's state tax returns. Laura Davison, *House Democrats Hire Counsel for Fight to Get Trump's Tax Returns*, Bloomberg (Dec. 7, 2018), https://perma.cc/4BS3-CAEF.

Clause, bars this court from ordering a congressional committee to return, destroy, or refrain from publishing the subpoenaed documents.").  The "universal rule" that "the legislative discretion in discharge of [the Committee's] constitutional functions … is not a subject for judicial interference" precludes the remedial order that Mr. Trump seeks in this case.  *Hearst v. Black*, 87 F.2d 68, 71 (D.C. Cir. 1936).

In sum, because Mr. Trump's purported injury depends on multiple levels of speculation about the conduct of the Committee Defendants and other actors, a tenuous causal connection, and relief that is barred by the separation of powers, he cannot establish Article III standing as to the Committee Defendants.

### B.  Mr. Trump's Claims Against the Committee Defendants Are Not Ripe

For many of the same reasons that Mr. Trump does not have standing to sue, his claims are not ripe.  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007) (recognizing that, in some cases, "standing and ripeness boil down to the same question").  "Just as the constitutional standing requirement for Article III jurisdiction bars disputes not involving injury-in-fact, the ripeness requirement excludes cases not involving present injury."  *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999).  In addition, ripeness contains a non-constitutional, prudential component that depends on "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."  *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003).  Ultimately, a "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation marks omitted).

Such is the case here.  As shown above, Mr. Trump is currently uninjured, and his alleged future harm is contingent on several factors, including decisions by the Committee to request and

by the Commissioner to release Mr. Trump's tax information.  For related reasons, Mr. Trump's

challenge to the Committee's allegedly improper purpose in requesting the returns by definition

is premature:  because no request has occurred, the reasons for and circumstances surrounding

any request that may (or may not) occur in the future cannot be now known.  *See* Am. Compl.

¶¶ 74-76.  Mr. Trump's claim is far too abstract and speculative to warrant judicial intervention

at this juncture.

Dismissing the Committee Defendants from this lawsuit would not cause Mr. Trump

hardship.  He is "not required to engage in, or to refrain from, any conduct" under the TRUST

Act, *Texas*, 523 U.S. at 301, and his only potential hardship is the possibility of future injury, *see*

*Browner*, 87 F.3d at1385 ("future injury" is "not a present hardship" (quotation marks omitted)).

Nor would Mr. Trump be unable to press his claims should a request eventually be made, since

he has acknowledged that a request by Chairman Neal would not moot his case, and the relief he

seeks can be obtained from the New York defendants (assuming that Mr. Trump sues them in a

court with jurisdiction).  *See* July Hr'g Tr. at 5-6 ("[The Court]: But if the Committee were to

make a request, full stop, the case would not be moot, correct?  [Counsel for Mr. Trump]: (Nods

head.)."); *id.* at 37-38 (The Court: "[Counsel for Mr. Trump] has acknowledged that a request by

the Committee wouldn't … moot this case.").

### C.    The Committee Defendants Have Absolute Speech or Debate Clause Immunity from This Lawsuit

**1.**  The Speech or Debate Clause provides that "for any Speech or Debate in either House,

[Members of Congress] shall not be questioned in any other Place."  U.S. Const. Art. I, § 6, cl. 1.

The Clause "insure[s] the historic independence of the Legislative Branch," which is "essential

to our separation of powers," *United States v. Brewster*, 408 U.S. 501, 525 (1972), by

"prevent[ing] intimidation of legislators by the Executive and accountability before a possibly

hostile judiciary," *Gravel v. United States*, 408 U.S. 606, 624 (1972).  As the Framers well

recognized, if Members of Congress must fear that a court may invalidate acts taken in the

course of their work, then the Clause cannot fulfill its essential role of "assur[ing] a co-equal

branch of the government wide freedom of speech, debate and deliberation."  *Doe v. McMillan*,

412 U.S. 306, 311 (1973) (quoting *Gravel*, 408 U.S. at 616).

> "Without exception," the Supreme Court has "read the Speech or Debate Clause broadly

to effectuate [these] purposes."  *Eastland*, 421 U.S. at 501-02 (collecting cases).  Although "the

Clause speaks of 'Speech or Debate,' it extends further to all 'legislative acts'" by Members of

Congress and their staffs.  *Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015) (quoting

*McMillan*, 412 U.S. at 312); *see Eastland*, 421 U.S. at 501 ("The question to be resolved is

whether the actions of the petitioners fall within the 'sphere of legitimate legislative activity.'").[7]

> For this case, it is essential to recognize that the Supreme Court has instructed that, to

determine whether the challenged act is "legislative," and thus entitled to Speech or Debate

immunity, courts must assess the "nature of the act."  *Bogan v. Scott-Harris*, 523 U.S. 44, 54

(1998).  The Supreme Court has directed that an act is legislative in nature if it is

> an integral part of the deliberative and communicative processes by
> which Members participate in committee and House proceedings
> with respect to the consideration and passage or rejection of
> proposed legislation or with respect to other matters which the
> Constitution places within the jurisdiction of either House.

*Gravel*, 408 U.S. at 625.

---

[7] *See also Ferrer*, 856 F.3d at 1085-86 (Clause "functions to immunize Members of
Congress from civil or criminal liability arising from 'actions [falling] within the legislative
sphere'" (quoting *McMillan*, 412 U.S. at 312)); *Brown & Williamson Tobacco Corp. v. Williams*,
62 F.3d 408, 416 (D.C. Cir. 1995) ("[T]he privilege . . . bars civil suits when the action
complained of falls within the legislative sphere.").

Applying these principles, courts time and again have held that Congress's efforts to gather information, such as committee investigations and hearings, are legislative acts immune from challenge under the Clause, as are Congressional subpoenas and less formal information requests.[8]  The protections of the Clause likewise extend to "preparations" for these activities. *Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 946 (D.C. Cir. 2013); *see also, e.g.*, *MINPECO*, 844 F.2d at 861 ("[P]reparation of the statement for publication in the subcommittee report was part of the legislative process[.]").  Such information gathering is legislative in nature, the Supreme Court has explained, because the "power to investigate is inherent in the power to make laws," *Eastland*, 421 U.S. at 504; indeed, to conclude other than that "the power of inquiry is … an integral part of the legislative process would be a miserly reading of the Speech or Debate Clause in derogation of the 'integrity of the legislative process,'" *id.* at 505 (quoting *Brewster*, 408 U.S. at 524).

In light of this established precedent, when a Congressional act is challenged in court, the question for the Judicial Branch is whether the act is legislative in nature.  If it is, Congress is exercising its legitimate Article I authority and the court's review is at an end.  The Clause bars any further "inquiry … into the motivation for" acts "that occur in the regular course of the legislative process."  *United States v. Helstoski*, 442 U.S. 477, 489 (1979) (quoting *Brewster*,

---

[8] *See, e.g.*, *Eastland*, 421 U.S. at 504 ("The power to investigate and to do so through compulsory process plainly falls within th[e] definition [of 'legitimate legislative sphere']."); *McMillan*, 412 U.S. at 313 (Clause protects the act "of authorizing an investigation pursuant to which . . . materials were gathered"); *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 860 (D.C. Cir. 1988) ("[T]he process by which a committee takes statements and prepares them for publication clearly qualifies as an activity within the 'legislative sphere.'"); *McSurely v. McClellan*, 553 F.2d 1277, 1287 (D.C. Cir. 1976) (en banc) ("[A]cquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the [Speech or Debate] privilege so that congressmen are able to discharge their constitutional duties properly." (quotation marks omitted)).

408 U.S. at 525); *see MINPECO*, 844 F.2d at 861 (explaining that, once the Court determined an act to be "part of the legislative process," that was "the end of the matter").  And as the Supreme Court has emphasized, a charge that legislative "conduct was improperly motivated … is precisely what the Speech or Debate Clause generally forecloses from executive and judicial inquiry."  *United States v. Johnson*, 383 U.S. 169, 180 (1966); *see also McSurely*, 553 F.2d at 1295 ("[I]f the activity is *arguably* within the 'legitimate legislative sphere, the Speech or Debate Clause bars inquiry even in the face of a claim of unworthy motive." (emphasis added) (opinion of Leventhal, J., joined by four other judges)).  Rather, the only "question" for the court is "whether, stripped of all considerations of intent and motive, [the challenged] actions [a]re legislative."  *Bogan*, 523 U.S. at 55.

For this same reason, the Speech or Debate Clause applies even when the relevant legislative act is alleged to have caused grave injury to the plaintiff.  Thus, Members and their staffs are immune for conduct that when "performed in other than legislative contexts" would "be unconstitutional or otherwise contrary to criminal or civil statutes."  *McMillan*, 412 U.S. at 312-13; *see also Porteous v. Baron*, 729 F. Supp. 2d 158, 166 (D.D.C. 2010) (explaining the "proper focus of this Court's inquiry under the Speech or Debate Clause is … on the nature of the defendants' conduct more generally," for "[s]o long as the type of conduct he seeks to enjoin falls legitimately within the scope of legislative activity, it matters not whether the specific conduct is unlawful").  As the Supreme Court explained in *Brewster*, the immunity imposed by the Clause "has enabled reckless men to slander and even destroy others with impunity, but that was the conscious choice of the Framers."  408 U.S. at 516.  Such is the nature of Speech or Debate "absolute immunity, which is—in a word—absolute."  *Rangel*, 785 F.3d at 24.

18

**2.**   This binding Supreme Court and D.C. Circuit precedent compels the conclusion that the Committee Defendants are absolutely immune from Mr. Trump's suit.  In considering the Committee Defendants' motion to dismiss on this ground, this Court must look to the allegations in Mr. Trump's complaint.[9]  Mr. Trump alleges that the Committee is "reviewing" whether to use the TRUST Act to request his state tax information, Am Compl. ¶ 6, and, further, that if a request is made and the returns are released by the Commissioner, "the Committee will hold hearings (including testimony from New York officials) about the returns" and "will use the returns to draft and consider legislation," *id.* ¶ 11.  Thus, according to Mr. Trump's complaint, the Committee is deciding whether to request information under the TRUST Act to be used for hearings and to inform legislation.

Committee preparation for and deliberation about seeking information in aid of legislation is a core legislative act protected by the Clause.  As discussed above, the Supreme Court and the D.C. Circuit have repeatedly held that Congressional information requests and preparations for such requests are legislative activities within the purview of the Clause.  *See supra* at 16-17.  There can be no question that when—as Mr. Trump alleges here—a standing committee of the House is deliberating about whether to request information that could inform future hearings and legislation, that committee is likewise engaged in protected legislative activity.  *See* House Rules X.1(t)(3), (6), XI.1(b)(1), XI.2(m)(1)(A), (B).  Such pre-decisional conduct concerning the TRUST Act is thus "an integral part of the deliberative … processes by which [the Committee] participate[s] in … proceedings with respect to" legislation.  *Gravel*, 408 U.S. at 625.

---

[9] *See Rangel*, 785 F.3d at 23 ("We look to Rangel's complaint to determine whether he challenges legislative or nonlegislative conduct."); *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 13 (D.C. Cir. 2006) (examining pleadings to determine applicability of Clause).

Importantly, given that the House is engaged in an ongoing impeachment inquiry, *see supra* at 4, the Speech or Debate Clause also protects "deliberative … processes … with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625.  One such "other matter[,]" *id.*, is impeachment.  *See* U.S. Const., Art. I, § 2, cl. 5 (assigning the "sole Power of Impeachment" to the House).  As relevant here, the Committee could at some point decide to seek information under the TRUST Act in connection with this impeachment inquiry.  This inquiry, and any deliberation concerning any actions the Committee could potentially take in aid of it, underscores the reasons that the Clause provides absolute immunity for the Committee Defendants' decisionmaking and related acts here.  *See Porteous*, 729 F. Supp. 2d at 165 (Clause applied where plaintiff judge sought to enjoin use of statements at Senate impeachment trial, because the "trial of impeachable offenses is, of course, a matter that the Constitution places within the *sole* jurisdiction of the Senate, and the use of relevant testimony at or in preparation for that trial is, without a doubt, 'an integral part of the deliberative and communicative processes by which Members participate' in the trial proceedings" (citation omitted) (quoting *Gravel*, 408 U.S. at 625)); *see also Rangel*, 785 F.3d at 23 (same, where court asked to "review a congressional disciplinary proceeding—a 'legislative' matter that the Constitution places within the jurisdiction of [the] House" (citing U.S. Const., Art. I, § 5, cl. 2)).

**3.**  Mr. Trump's contrary arguments are wrong.  As an initial matter, there can be no claim that the Speech or Debate Clause is any less protective of Mr. Grossman, the Committee's Chief Tax Counsel, even though he is not a Member of Congress.  The Supreme Court has repeatedly held that "Congressmen *and their aides* are immune from liability for their actions within the legislative sphere."  *McMillan*, 412 U.S. at 312 (emphasis added); *see Eastland*, 421 U.S. at 501, 507 (holding that "the actions of the Senate Subcommittee, the individual Senators,

and the Chief Counsel" in issuing a subpoena were immune from suit and noting "[w]e draw no distinction between the Members and the Chief Counsel"); *Rangel*, 785 F.3d at 25 ("[T]he Supreme Court has extended the Speech or Debate Clause to aides from all walks of legislative life, including committee staffers.").  Because Mr. Trump's lone allegation against Mr. Grossman (*see* Am. Compl. ¶ 15) concerns "conduct [that] was legislative, the Speech or Debate Clause protects the Committee staffer[] in this case just as much as it does the Members." *Rangel*, 785 F.3d at 25.

In addition, the immunity afforded by the Speech or Debate Clause in no way is undercut by Mr. Trump's allegations that a future TRUST Act request by the Committee, in his view, would be unconstitutional and fall outside the Committee's jurisdiction under the House Rules. *See* Am. Compl. ¶¶ 73-76 (Count I, "Violation of Article I of the Constitution and the House Rules").  Mr. Trump fundamentally misunderstands both the limited nature of the Court's inquiry and the facts at hand.  At this juncture, the legislative activity for purposes of Speech and Debate immunity is not a request that may never happen, but the Committee's ongoing deliberations concerning whether to use the TRUST Act.  As demonstrated above, *see supra* at 19-20, these deliberations are plainly legislative in nature.

In any event, the Supreme Court and the D.C. Circuit have repeatedly held that the Clause flatly prohibits the type of searching judicial inquiry Mr. Trump advocates.  *E.g.*, *Eastland*, 421 U.S. at 509-10 (surveying cases); *see supra* at 17-18.  The D.C. Circuit's decision in *Rangel v. Boehner* bears additional emphasis on this point.  There, the court held that the former Member's claim that his censure by the House Ethics Committee violated the House Rules and the Due Process Clause was "plainly foreclosed by Supreme Court precedent" because "[a]n act does not lose its legislative character simply because a plaintiff alleges that it violated

the House Rules or even the Constitution." *Rangel*, 785 F.3d at 24 (citations omitted).  Mr.

Trump's arguments are likewise foreclosed.

> **4.**  The questions raised by the Court at the July 29, 2019 hearing—concerning unrelated

litigation in which the Committee is a plaintiff and whether application of the Speech or Debate

Clause requires a two-part inquiry—do not change the Speech or Debate analysis here.

> The fact that the Committee is a plaintiff in a separate matter pertaining to Mr. Trump's

*federal* tax return information has no bearing on the Clause's protections in this case.  *See*

*Comm. on Ways & Means v. U.S. Dep't of Treasury*, No. 19-1974 (D.D.C. filed July 7, 2019);

July Hr'g Tr. at 24-25.  The D.C. Circuit recently rejected a nearly identical argument in *Senate*

*Permanent Subcommittee on Investigations v. Ferrer*, 856 F.3d 1080 (D.C. Cir. 2017), where the

appellant argued that the Speech or Debate Clause did not bar the court "from ordering a

congressional committee to return, destroy, or refrain from publishing" documents it had

obtained from him via subpoena, because the subcommittee had "necessarily accepted an

implicit restriction on the Speech or Debate Clause by seeking to enlist the judiciary's assistance

in enforcing [the] subpoena" that had elicited those documents.  *Id.* at 1086-87.  The D.C. Circuit

held that Speech or Debate immunity applied notwithstanding the subpoena enforcement action

initiated by the Senate subcommittee.  As the court explained, the district court had "merely

aided the Senate in effectuating its inherent subpoena power," *id.* at 1087, and, moreover, even

"assuming a [Speech or Debate] waiver is possible, [it] would require '[a]n explicit and

unequivocal renunciation,'" *id.* (quoting *Helstoski*, 442 U.S. at 490-91).  There was no such

waiver in *Ferrer*, and none has been made here.

> Nor does *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995),

command a different type of inquiry than that set forth above.  *See* July Hr'g Tr. at 29-30

(inquiring whether the absolute immunity inquiry "has two parts").  *Brown & Williamson* concerned the applicability of the Clause where a law firm had issued subpoenas to two Congressmen for tobacco-related documents that had been stolen and then delivered to a House committee investigating various tobacco-related issues.  62 F.3d at 411-412.  As the D.C. Circuit subsequently explained in *Ferrer*, the question in *Brown & Williamson* was whether the "use of the documents by the committee staff in the course of official business is privileged legislative activity."  *Ferrer*, 856 F.3d at 1086 (quoting *Brown & Williamson*, 62 F.3d at 417).  Consistent with the precedents discussed at length above, the *Brown & Williamson* Court focused on the nature of the activity at issue—there, the committee's use of documents in its investigative work—and affirmed the district court's decision to quash the subpoenas to Members of Congress because "the Clause affords Congress a 'privilege to use materials in its possession without judicial interference,' even where unlawful acts facilitated their acquisition."  *Id.* (quoting *Brown & Williamson*, 62 F.3d at 416).

Thus, in *Brown & Williamson*, as in subsequent cases, the D.C. Circuit ruled that the courts had no authority to question Congress once it found the conduct at issue was "legislative in nature."  *Rangel*, 785 F.3d at 24.

## II.    Mr. Trump Is Not Entitled to Relief Under the All Writs or Declaratory Judgment Acts

Mr. Trump attempts to evade the jurisdictional defects in this case by seeking various forms of "equitable relief" under the All Writs Act.  *See* Am. Compl., Prayer for Relief ¶¶ g, h, j. That effort cannot succeed.  The All Writs Act authorizes federal courts to grant writs in extraordinary circumstances, but only "in aid of their respective jurisdictions."  28 U.S.C. § 1651.  The Supreme Court has been clear:  "As the text of the All Writs Act recognizes, a court's power to issue any form of relief—extraordinary or otherwise—is contingent on that

court's subject-matter jurisdiction over the case or controversy." *United States v. Denedo*, 556 U.S. 904, 911 (2009).  The Act thus "cannot enlarge a court's jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 535 (1999) (quotation marks omitted).  Accordingly, the lack of subject-matter jurisdiction over Mr. Trump's claims detailed above is dispositive of Mr. Trump's attempt to invoke the All Writs Act.

      *United States v. Ausby*, No. 72-cr-67, 2019 WL 2870232 (D.D.C. July 3, 2019), is instructive.  There, another judge in this District rejected a request for a writ of *coram nobis* under the All Writs Act because, "despite the parties' consensus" that a writ should issue,  the party seeking the writ had failed to establish the injury-in-fact or redressability prongs of Article III standing.  *Id.* at *7.  The court explained that Article III's case or controversy requirement "imposes on the Court an 'independent obligation to be sure of [its] jurisdiction,'" notwithstanding an All Writs Act application.  *Id.* (quoting *Am. Rivers v. FERC*, 895 F.3d 32, 40 (D.C. Cir. 2018)); *see also United States v. Verrusio*, 758 F. App'x 2, 3-4 (D.C. Cir. 2019) (affirming district court's dismissal of *coram nobis* petition for "lack of Article III standing"); *United States v. City of New York*, 972 F.2d 464, 470 (2d Cir. 1992) (All Writs Act cannot "confer on the courts the power to ignore the case or controversy requirement, which is rooted in Article III of the constitution's definition of judicial power"); *Benvenuti v. Dep't of Def.*, 587 F. Supp. 348, 352 (D.D.C. 1984) (All Writs Act does not "operate as … [a] waiver[]" of sovereign immunity).  Here, too, the Court may not resort to the All Writs Act to enlarge its otherwise non-existent subject-matter jurisdiction.

      For these same reasons, Mr. Trump cannot invoke the Declaratory Judgment Act.  *See* Am. Compl. ¶ 9.  That Act, like the All Writs Act, does not extend a court's jurisdiction because of the "well-established rule that the Declaratory Judgment Act is not an independent source of

federal jurisdiction." *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (quotation marks

omitted); *see Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("The operation

of the Declaratory Judgment Act is procedural only.  Congress enlarged the range of remedies

available in the federal courts but did not extend their jurisdiction." (quotation marks and citation

omitted)).  Nor can the All Writs Act be used for "securing an advisory opinion in a controversy

which has not arisen," as would be the case here given the lack of an Article III case or

controversy.  *Coffman v. Breeze Corp.*, 323 U.S. 316, 324 (1945).

### III.     The Complaint Should Be Dismissed for Failure to State a Claim

Even if Mr. Trump could overcome these jurisdictional defects, his amended complaint

must still be dismissed under Rule 12(b)(6) for failure to state a valid claim against the

Committee Defendants.  As noted above, to survive this motion to dismiss, Mr. Trump's

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  To be plausible, his allegations must be more

than merely "possib[le]," and more than "merely consistent with" the purported wrongdoing;

they must "allow[] the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id.* (quotation marks omitted).  Mr. Trump has not cleared this bar.

### A.     Mr. Trump Has Failed to State a Claim Under Article I and the House Rules

Mr. Trump alleges in Count I that "any" future request by Chairman Neal under the

TRUST Act would violate Article I of U.S. Constitution and the House Rules.  *See* Am. Compl.

¶¶ 74-76.  Mr. Trump does not articulate the provision of Article I under which his claim arises,

but he appears to invoke the standard applicable to judicial inquiry into the legal sufficiency of a

Congressional subpoena.  *See, e.g.*, *Eastland*, 421 U.S. at 506 (upholding subpoena where

"investigation upon which the Subcommittee had embarked concerned a subject on which

'legislation could be had'" (quoting *McGrain v. Daugherty*, 273 U.S. 135, 177 (1927))).  Even

assuming this same standard applies to an informal Congressional information request under a state statute, Mr. Trump has fallen short of his pleading burden.

As explained above, Mr. Trump alleges that the Committee's decisionmaking process regarding whether to initiate a TRUST Act request is ongoing and that the Committee is still "reviewing" whether to do so.  Am. Compl. ¶¶ 6, 70.  Given this, Mr. Trump cannot plausibly allege that the "primary purpose" of "any" as-yet-non-existent request "*would be* exposure for the sake of exposure, law enforcement, or some other wholly impermissible goal—not pursuing valid federal legislation."  *Id*. ¶ 75 (emphasis added).  Equally implausible is his bare assertion now that any request for his returns in the future will necessarily fall outside the Committee's jurisdiction.  *Id.* ¶ 76.  Mr. Trump's surmise of the purpose of, and jurisdictional basis for, a hypothetical request cannot state a claim.  *See Iqbal*, 556 U.S. at 679 (court must "draw on its judicial experience and common sense" to determine plausibility of allegations).

Mr. Trump's allegations concerning the Committee's purpose also fail on their own terms.  His allegations that "the Committee will *hold hearings* (including testimony from New York officials) about the returns" and "will use the returns to *draft and consider legislation*," Am. Compl. ¶ 11 (emphases added), are flatly inconsistent with his premise that "[n]o legitimate legislative purpose exists" for the Committee to request the returns, *id.* ¶ 74; *see McGrain*, 273 U.S. at 177 (Congress's power to investigate extends to any "subject … on which legislation *could be had*." (emphasis added)).  Mr. Trump thus has failed to allege facts that would plausibly allow this Court to reasonably infer that the Committee Defendants are liable.

Even if this Court were required to accept that the purpose and jurisdictional boundaries of a request can be known and assessed prospectively—and the Court is not—Mr. Trump's allegations concerning legislative purpose and the Committee's jurisdiction fail as a legal matter.

The Committee's jurisdiction under the House Rules encompasses "[r]evenue measures generally" and the "[d]eposit of public monies."  House Rule X.1(t)(3), (6); *see* House Rule XI.1(b)(1), XI.2(m)(1)(A), (B).  The Committee is also participating in the House's impeachment inquiry and, at some future point, could decide to seek the returns as part of that inquiry.  Given the House's ongoing impeachment inquiry and the Committee's otherwise broad jurisdiction and authorities, Mr. Trump cannot plausibly allege there is *no* proper request that could be made under the TRUST Act.  *See, e.g.*, *Trump v. Mazars USA, LLP*, — F. 3d —, No. 19-5142, 2019 WL 5089748, at *7 (D.C. Cir. Oct. 11, 2019) ("[O]nce a committee has been delegated '[t]he power of Congress to conduct investigations,' that constitutional authority 'is broad'" (quoting *Watkins v. United States*, 354 U.S. 178, 187 (1957))).

Mr. Trump's allegation that Chairman Neal has stated that "[w]e don't have jurisdiction over New York taxes," Am. Compl. ¶ 65, does not alter the analysis.  Although the Committee does not have legislative jurisdiction over New York taxes or tax forms, depending on the circumstances, a request under the TRUST Act could fall under the Committee's broad jurisdiction over federal tax matters or the House's impeachment inquiry.

Finally, to the extent Mr. Trump is purporting to raise a free-standing challenge to the House Rules in Count I, he cannot succeed.  The House has wide latitude to exercise its rulemaking authority.  *See* U.S. Const., Art. I, § 5, cl. 2 (vesting each House of Congress with the exclusive authority to "determine the Rules of its proceedings").  And "unless and until Congress adopts a rule that offends the Constitution, the courts get no vote in how each chamber chooses to run its internal affairs."  *Mazars*, 2019 WL 5089748, at *24; *see United States v. Ballin*, 144 U.S. 1, 5 (1892) (While Congress may not "ignore constitutional restraints or violate fundamental rights," in the absence of these limitations "all matters of method are open to the

determination of the [H]ouse[.]").  Mr. Trump has not even attempted to allege any such

constitutional infirmity in the House Rules governing the Committee's jurisdiction and powers.

### B.      Mr. Trump Has Failed to State a First Amendment Claim

Even assuming Mr. Trump could otherwise establish the elements of his First

Amendment claim, Count II should be dismissed as against the Committee Defendants because

he does not—and cannot—allege any facts connecting these defendants to the enactment of the

TRUST Act, a New York state law.

Mr. Trump alleges that the TRUST Act violates the First Amendment because it

discriminates against him and was enacted by New York to retaliate against him.  *See* Am.

Compl. ¶ 80.  Under the First Amendment, a "*government … has no power to restrict expression*

because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert,*

*Ariz.*, 135 S. Ct. 2218, 2226 (2015) (emphasis added) (quotation marks omitted).  And to

establish a claim for First Amendment retaliation, a plaintiff must allege "(1) that he engaged in

protected conduct, (2) that the *government* took some retaliatory action sufficient to deter a

person of ordinary firmness in plaintiff's position from speaking again; and (3) that there exists a

causal link between the exercise of a constitutional right and the adverse action taken against

him." *Doe v. Dist. of Columbia*, 796 F.3d 96, 106-07 (D.C. Cir. 2015) (emphasis added)

(quotations marks omitted).

As Mr. Trump appears to recognize, the relevant *government* entity for his First

Amendment claim is the State of New York, not the Committee Defendants.  *See* Am. Compl.

¶¶ 24-26 ("[A] law violates the First Amendment *if it was enacted* to discriminate or retaliate

against an individual for his protected speech" or "for his politics.").  Mr. Trump does not—and

cannot—allege a single fact that even plausibly suggests that the Committee Defendants engaged

in any acts in relation to passing the TRUST Act, much less unconstitutional discriminatory or

retaliatory conduct.  To the contrary, Mr. Trump's own allegations conclusively defeat his attempt to bring a First Amendment claim against the Committee Defendants.  Mr. Trump alleges, for example, that "the *New York Legislature* enacted [the TRUST Act] to discriminate and retaliate against President Trump for his speech and politics," *id.* ¶ 9 (emphasis added); that "*New York legislators* have admitted, on countless occasions, that the TRUST Act's purpose is to expose the private tax information of one individual—President Trump—for political gain," *id.* ¶ 79 (emphasis added); and that "*Democratic legislators in New York* passed the TRUST Act to further their own partisan goal of politically damaging the President," *id.* ¶ 58 (emphasis added); *see also id.* ¶ 4 ("*New York legislators* admitted that the TRUST Act's purpose was to help the Committee expose the President's private tax information for political gain[.]" (emphasis added)); *id.* ¶ 60 (discussing the New York "*Legislature's* illegitimate motives" (emphasis added)).  These allegations about the conduct and purported aims of New York legislators plainly do not permit any "reasonable inference that [the Committee Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Nor do Mr. Trump's other conclusory allegations—e.g., that the TRUST Act was "passed to help House Democrats," Am. Compl. ¶ 79, and that New York's Attorney General "is closely coordinating with House Democrats in a joint effort to obtain and expose the President's financial information," *id.* ¶ 39—in any way make plausible Mr. Trump's allegations of a First Amendment violation against the Committee Defendants.  His assertions do not connect the Committee Defendants in any way to the passage of the Act by New York.  *See Iqbal*, 556 U.S.

29

at 678.  Mr. Trump's First Amendment claim, like Count I, must be dismissed as against the Committee Defendants.[10]

\*        \*        \*

At bottom, the relief Mr. Trump seeks in this case is as brazen as it is extreme.  In the absence of any injury to him now, and admitting that a request by the Committee Defendants by itself will never harm him, Mr. Trump nonetheless asks this Court to invade the Committee's ongoing deliberations concerning whether and how to gather information for its work.  Long ago, the D.C. Circuit cautioned the Judicial Branch against such steps:

> The Constitution has lodged the legislative power exclusively in the Congress.  If a court could say to the Congress that it could use or could not use information in its possession, the independence of the Legislature would be destroyed and the constitutional separation of the powers of government invaded.

*Hearst v. Black*, 87 F.2d 68, 71-72 (D.C. Cir. 1936).

This Court should resist Mr. Trump's invitation to upset the constitutional scheme.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Mr. Trump's amended complaint as against the Committee Defendants.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter (DC Bar No. 253492)
  *General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
  *Deputy General Counsel*
Megan Barbero (MA Bar No. 668854)
  *Associate General Counsel*
Josephine Morse (DC Bar No. 1531317)
  *Associate General Counsel*

---

[10] As described above, Mr. Trump's allegations do not meet the pleading standard necessary to survive a motion to dismiss as to any of the Committee Defendants.  And his single, baseless allegation against Mr. Grossman, *see* Am. Compl. ¶ 15, does nothing to tie this Committee staffer to either of the substantive claims in this case.

Kristin A. Shapiro (DC Bar No. 1007010)
*Assistant General Counsel*
Brooks M. Hanner (DC Bar No. 1005346)
*Assistant General Counsel*
Sarah E. Clouse (MA Bar No. 688187)
*Assistant General Counsel*

OFFICE OF GENERAL COUNSEL[*]
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
douglas.letter@mail.house.gov

*Counsel for the Committee Defendants*

October 21, 2019

---

[*] The Office of General Counsel wishes to acknowledge the assistance of law clerks Christine Coogle and Lily Hsu, students at The George Washington University Law School, and Nate King, a student at The Catholic University of America, Columbus School of Law, in preparing this brief.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DONALD J. TRUMP,

*Plaintiff*,

v.

COMMITTEE ON WAYS AND MEANS,
UNITED STATES HOUSE OF
REPRSENTATIVES, *et al.*,

*Defendants*.

Case No. 1:19-cv-02173-CJN

**[PROPOSED] ORDER**

UPON CONSIDERATION OF the Committee Defendants' motion to dismiss, any

opposition thereto, any reply in support, and the entire record herein, it is by the Court this _____

day of _____, 2019, ORDERED that the motion is GRANTED.

IT IS FURTHER ORDERED that the Committee Defendants are DISMISSED from this

case.

IT IS SO ORDERED.

_____

Hon. CARL J. NICHOLS
United States District Judge