**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DONALD J. TRUMP,

       *Plaintiff*,

    v.                                                                                    Civil Action No. 1:19-cv-02173 (CJN)

COMMITTEE ON WAYS AND MEANS,
UNITED STATES HOUSE OF
REPRESENTATIVES, et al.,

       *Defendants*.

## MEMORANDUM OPINION

On July 8, 2019, New York's governor signed the Tax Returns Released Under Specific

Terms Act ("TRUST Act") into law.  Am. Compl., Dkt. 30, ¶ 61; *see also* N.Y. Tax Law

§ 697(f-1), (f-2) (2019) (codifying the TRUST Act).  The TRUST Act amends New York's tax

laws to authorize the chairperson of one of three congressional committees, including the House

Committee on Ways and Means, to request the New York state tax returns of the President of the

United States, among other elected officials.  Tax § 697(f-1).  If that request is made in writing

and certain requirements are met, the Commissioner of the New York State Department of

Taxation and Finance ("Commissioner") is required to produce the records to the relevant

committee.  *Id.*

To date, no committee chairperson has made such a request.  On July 23, 2019, however,

citing concerns that the Chairman of the House Ways and Means Committee might soon attempt

to employ the TRUST Act to procure his New York returns, Donald J. Trump filed this action.

*See generally* Compl., Dkt. 1.  Mr. Trump alleges that any request made for his state tax returns

would violate Article I of the U.S. Constitution and the Rules of the U.S. House of

Representatives. *Id.* ¶¶ 69–72.  And he alleges that the TRUST Act violates the First

Amendment because it was enacted to discriminate and retaliate against his politics and speech.

*Id.* ¶¶ 73–76.

Mr. Trump also filed an Emergency Application for Relief Under the All Writs Act.

Dkt. 6; *see also* 28 U.S.C. § 1651 (2018) (permitting courts to "issue all writs necessary or

appropriate in aid of their respective jurisdictions").  Mr. Trump's Emergency Application seeks

to preserve the status quo by preventing the disclosure of his state tax returns while the Parties

litigate the legality of a request for them, if and when such a request is made.

Following briefing and argument on the Emergency Application, as well as submissions

from the Parties regarding how the case should proceed, the Court largely adopted the New York

Defendants' proposal that the Court "rule on [their personal jurisdiction and venue] defenses as a

threshold matter in consideration for which the Commissioner [would] voluntarily agree to defer

responding to any Committee request for a period of one week following the Court's ruling."

Joint Status Report, Dkt. 22, at 4.  The Court thus ordered that (1) the New York Defendants

could, on an expedited basis, move to dismiss the Complaint for lack of personal jurisdiction and

improper venue; (2) the New York Defendants would not transmit any of Mr. Trump's tax

information that Chairman Neal might request while that motion is pending and for a period of

one week from the day of the Court's decision on the motion; and (3) the New York Defendants

would notify the Court if Chairman Neal made such a request during that same period.  Order

(Aug. 1, 2019), Dkt. 25, at 3–4.  Thereafter, the New York Defendants moved to dismiss for lack

of personal jurisdiction and improper venue, and that motion is fully briefed.  *See generally* N.Y.

Defs.' Mot. to Dismiss Am. Compl. for Lack of Personal Jurisdiction & Improper Venue

("Mot."), Dkt. 36; Pl.'s Mem. of P. & A. in Opp'n to N.Y. Defs.' Mot. ("Opp'n"), Dkt. 37;

N.Y. Defs.' Reply Mem. of Law in Further Supp. of Their Mot. ("Reply"), Dkt. 39.

For the reasons that follow, the Court concludes that it does not presently have

jurisdiction over either New York Defendant.  Mr. Trump bears the burden of establishing

personal jurisdiction, but his allegations do not establish that the District of Columbia's long-arm

statute is satisfied here with respect to either Defendant.  Mr. Trump has also not demonstrated

that jurisdictional discovery is warranted.  Mr. Trump may renew his claims against the New

York Defendants should future events trigger one or more provisions of the D.C. long-arm

statute, and he may, of course, sue either New York Defendant in another forum (presumably in

New York).

## I.        Background

New York law generally requires that state tax returns be held confidentially and permits

their disclosure in only certain enumerated exceptions.  *See, e.g.*, Tax § 697(e) (secrecy

requirement); *id.* § 697(f) (permitting disclosure to cooperate with certain U.S. and state

proceedings).  The TRUST Act adds another exception.  It authorizes the chairpersons of the

Committee on Ways and Means of the U.S. House of Representatives ("Committee"), the

Committee on Finance of the U.S. Senate, and the Joint Committee on Taxation to request from

the Commissioner "any current or prior year [state tax] reports or returns" of "the president of

the United States, vice-president of the United States, member of the United States Congress

representing New York state" or other public official enumerated in the statute.  *Id.* § 697(f-1).

Such a request must "certif[y] in writing":  (1) that the requested tax "reports or returns have

been requested related to, and in furtherance of, a legitimate task of the Congress"; (2) that the

requesting committee has "made a written request to the United States secretary of the treasury

for related federal returns or return information, pursuant to 25 U.S.C. [§] 6103(f)"; and (3) that

any inspection or submission to another committee or to the full U.S. House of Representatives

or Senate be done "in a manner consistent with federal law." *Id.* § 697(f-2).  Assuming the

request includes those certifications, the Commissioner must produce the requested returns with

redactions for "any copy of a federal return (or portion thereof) attached to, or any information

on a federal return that is reflected on, such report or return." *Id.* § 697(f-1).

On July 23, 2019, following media reports of increasing pressure on Chairman Neal to

request Mr. Trump's state tax returns, *see* Compl. ¶¶ 6, 62–68, Mr. Trump filed this action

against New York Attorney General Letitia James, Commissioner Michael R. Schmidt

(collectively, "New York Defendants"), and the Committee.  *See generally id.*  Mr. Trump

asserts two claims.  In Count I, he claims that a request under the TRUST Act would violate

Article I of the U.S. Constitution and the Rules of the House because the request for his New

York state tax returns would lack a legitimate legislative purpose.  Am. Compl. ¶¶ 73–76.  In

Count II, Mr. Trump claims that the TRUST Act itself violates the First Amendment and that the

Committee and New York Defendants would violate his First Amendment rights by employing it

to produce his state tax returns to the Committee.  *Id.* ¶¶ 77–81.  Count II is the only claim

asserted against the New York Defendants.  *Id.*

Mr. Trump also filed an Emergency Application for Relief Under the All Writs Act,

asking the Court "to preserve the status quo" to prevent his claims from becoming ripe and then

moot almost instantaneously without notice to him or the Court, thereby depriving the Court of

jurisdiction.  Mem. of P. & A. in Supp. of Pl.'s Emergency Appl. for Relief Under the All Writs

Act, Dkt. 6-1, at 5–6.  Following briefing and oral argument on the Emergency Application, the

Court ordered the Parties to meet and confer in light of the Court's stated goals of (1) "ensuring

that Mr. Trump's claims do not become moot before they can be litigated"; (2) "treading as lightly as possible, if at all, on separation of powers and Speech or Debate Clause concerns"; and (3) "adjudicating . . . this dispute only when it is actually ripe and has a fuller record than presently exists." July 29, 2019 Hr'g Tr., Dkt. 23, at 53–54; *see* Min. Order (July 29, 2019).

The Parties were unable to reach agreement and instead filed alternative proposals for how the case should proceed. The New York Defendants, for their part, proposed that the Commissioner would not respond to any request for Mr. Trump's tax returns while the Court considered and ruled on their forthcoming motion to dismiss for lack of personal jurisdiction and improper venue. Joint Status Report, Dkt. 22, at 4. The Court largely adopted this proposal and, on August 1, 2019, ordered that (1) the New York Defendants could move to dismiss the Complaint for lack of personal jurisdiction over them and for improper venue on an expedited basis; (2) "during the pendency of the New York Defendants' Motion and for a period of one week from the Court's decision . . . , the New York Defendants shall not deliver to the Committee any information concerning Mr. Trump that may be requested by Chairman Neal under the TRUST Act"; and (3) the New York Defendants shall notify the Court if Chairman Neal made a request during that same one-week time period. Order (Aug. 1, 2019), Dkt. 25, at 3–4.

After the New York Defendants filed their initial Motion to Dismiss, Mr. Trump filed an Amended Complaint that asserts the same two substantive claims as his original Complaint, but adds as defendants Chairman Neal and Andrew Grossman, the Committee's Chief Tax Counsel, and adds factual allegations related to the New York Defendants' connections to this forum. *See generally* Am. Compl. The New York Defendants renewed their Motion to Dismiss on August 29, 2019.

## II.    Legal Standard

A federal court has jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  Fed. R. Civ. P. 4(k)(1)(A).  Thus, if a District of Columbia court could exercise jurisdiction over the New York Defendants, then so can this Court.  *E.g.*, *West v. Holder*, 60 F. Supp. 3d 190, 193 (D.D.C. 2014).

There are two types of personal jurisdiction:  "[1] general or all-purpose jurisdiction[] and [2] specific or case-linked jurisdiction."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  Specific jurisdiction, on the other hand, "aris[es] out of or relate[s] to the defendant's contacts with the forum."  *Id.* at 127 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

With respect to specific jurisdiction, the Court "must engage in a two-part inquiry:  . . . first examine whether jurisdiction is applicable under the [D.C.] long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process."  *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (citation omitted).  The D.C. long-arm statute authorizes specific jurisdiction "over a person, who acts directly or by an agent, as to a claim for relief arising from" certain contacts that person may have with the forum.  D.C. Code § 13-423(a) (2019).  As relevant here, a defendant's contacts with the District of Columbia can establish specific jurisdiction if the claim arises from

the defendant's:

(1) transacting any business in the District of Columbia;

. . .

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he [i] regularly does or solicits business, [ii] engages in any other persistent course of conduct, or [iii] derives substantial revenue from goods used or consume, or services rendered, in the District of Columbia.

§ 13-423(a).  "When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in [subsection 13-423(a)] may be asserted against him." § 13-423(b).

Even if a plaintiff satisfies the D.C. long-arm statute, jurisdiction over a defendant must still fall "within the permissible bounds of the Due Process Clause." *GTE New Media*, 199 F.3d at 1347.  "In other words, a plaintiff must show 'minimum contacts' between the defendant and the forum establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A plaintiff bears the burden of establishing personal jurisdictional over each defendant. *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988); *Pinkett v. Dr. Leonard's Healthcare Corp.*, No. 18-1656, 2019 WL 1992904, at *2 (D.D.C. May 6, 2019) ("[T]he requirements for personal jurisdiction 'must be met as to each defendant.'" (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).  "In determining whether such a basis exists, factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990) (citation omitted).  However, "a court

need not accept the plaintiff's 'conclusory statements' or 'bare allegations' regarding the

defendant's actions in a selected forum." *Shaheen v. Smith*, 994 F. Supp. 2d 77, 81 (D.D.C.

2013) (citing *GTE New Media*, 199 F.3d at 1349).

### III.   Analysis

Mr. Trump concedes that the allegations in the Amended Complaint do not establish

general jurisdiction for the New York Defendants.  *See* Sept. 18, 2019 Hr'g Tr., Dkt. 40, at 64.

Mr. Trump must therefore establish that specific jurisdiction exists for each Defendant.

It is an open question in this Circuit whether, for jurisdictional purposes, a suit like this

one against state officers sued in their official capacities for prospective relief, *see Ex parte

Young*, 209 U.S. 123, 155–56 (1908), should be considered a suit against state officers in their

individual capacities or instead as a suit against the state itself.  *See West*, 60 F. Supp. 3d at 196

(noting the open question).  But the D.C. Circuit has held that the District of Columbia's

long-arm statute does not apply to states themselves.  *United States v. Ferrara*, 54 F.3d 825,

831–32 (D.C. Cir. 1995).[1]  Accordingly, Mr. Trump's only avenue to satisfy the long-arm statute

is to demonstrate that, if treated as individuals, each New York Defendant is subject to personal

jurisdiction in the District of Columbia.

### A.   Subsection (a)(1)

Mr. Trump contends that subsection (a)(1) of the long-arm statute—which permits a D.C.

court to exercise personal jurisdiction over a claim arising out of a person's "transacting any

business in the District of Columbia," D.C. Code § 13-423(a)(1)—is satisfied here with respect

to both the Commissioner and the Attorney General.  To invoke this provision, a plaintiff must

---

[1] If treated as the state for jurisdictional purposes, the New York Defendants might "retain their
sovereign immunity from private suits brought in [D.C. courts]." *Franchise Tax Bd. of Cal. v.
Hyatt*, 139 S. Ct. 1485, 1492 (2019).

show that a defendant has intentionally engaged in a "*commercial or business-related activity*" that was directed at D.C. residents. *Capel v. Capel*, 272 F. Supp. 3d 33, 39 (D.D.C. 2017) (quoting *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270–71 (D.C. 2001)).[2] Mr. Trump has not alleged such activities.

Mr. Trump's First Amendment claim focuses primarily on the passage of the TRUST Act. *See* Am. Compl. ¶¶ 77–81 (asserting that the TRUST Act "was enacted to retaliate against [Mr. Trump] because of his policy positions, his political beliefs, and his protected speech"). But Mr. Trump does not argue that the *Commissioner* or *Attorney General* transacted business in the District of Columbia through the New York legislature's enactment of the TRUST Act. Nor could he. Mr. Trump does not allege that either New York Defendant had any involvement whatsoever in the legislative process that led to the TRUST Act. And even if Mr. Trump alleged that either New York Defendant was involved in the legislative process, he cites no authority for the proposition that enacting or helping to enact a state statute in another state would constitute "transacting business" in the District of Columbia under subsection (a)(1).

Mr. Trump instead argues that the Commissioner would transact business in the District of Columbia by "[c]orresponding with Congress and sending tax returns to a committee." *See* Opp'n at 19. The Commissioner has not taken any such actions—at least not yet. But more importantly, the acts of corresponding with the Committee and transmitting Mr. Trump's state tax returns would not constitute transacting business under section (a)(1). In *Holder v.*

---

[2] "[F]or cases that fit within its description," subsection (a)(1) "has been held 'to be coextensive . . . with the Constitution's due process limit." *Forras v. Rauf*, 812 F.3d 1102, 1106 (D.C. Cir. 2016) (quoting *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987)). In other words, if a defendant "has purposefully engaged in some type of *commercial or business-related activity* directed at District residents," *Holder*, 779 A.2d at 270–71 (citation omitted), then a D.C. court may exercise jurisdiction over that defendant to the full extent of what the Due Process Clause permits.

*Haarmann & Reimer Corp.*, the D.C. Court of Appeals made clear that to satisfy section (a)(1) "the plaintiff must show that the defendant has purposefully engaged in some type of *commercial or business-related activity* directed at District residents."  779 A.2d at 270–71 (citing *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 330–31 (D.C. 2000) (en banc)).  The D.C. Circuit echoed this requirement in *Forras v. Rauf*, 812 F.3d at 1106, and D.C. and federal courts have consistently interpreted section (a)(1) to require a commercial or business activity.  For example, subsection (a)(1) applies to negotiating or performing contracts, *e.g.*, *Helmer v. Doletskaya*, 393 F.3d 201, 206–07 (D.C. Cir. 2004) (compiling cases), contractual activities that occur outside the district if they cause some consequence here, *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981), and advertising inside the District, *Shoppers Food Warehouse*, 746 A.2d at 330–32.  *See also IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 111 (D.D.C. 2018) (surveying acts that fall inside and outside the scope of subsection (a)(1)).  Mr. Trump has not pointed to any decision holding that corresponding with a congressional committee and sending it information (or any similar act) would constitute a commercial or business activity.[3]

---

[3] The D.C. Court of Appeals, whose decisions on the long-arm statute bind this Court, has recognized a "government contacts" exception to the long-arm statute.  *See Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (en banc) ("To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum." (footnote omitted)); *see also Capel*, 272 F. Supp. 3d at 40 (precluding "the assertion of personal jurisdiction over a non-resident whose only contact with the District of Columbia is with Congress or a federal agency" (quoting *Dooley v. United Techs. Corp.*, 786 F. Supp. 65, 75 (D.D.C. 1992), *abrogated on other grounds by FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087 (D.C. Cir. 2008))).  Even if corresponding with Congress and sending tax returns to a congressional committee constituted "transacting business," the government contacts exception would likely apply.  But because Mr. Trump does not meet his burden of establishing that subsection (a)(1) is satisfied here, the Court need not reach the government-contacts question.

Mr. Trump argues that Attorney General James's role in enforcing the TRUST Act falls within subsection (a)(1). *See* Opp'n at 19. But the Attorney General does not appear to have a role in responding to a request under the statute, which is the only act that Mr. Trump contends would constitute a commercial or business activity sufficient to satisfy subsection (a)(1). *Id.* at 18–19. Instead, the sole responsibility to respond to a request from Congress lies with the Commissioner. *See* Tax § 697(f-1).

To be sure, Mr. Trump attempts to connect Attorney General James to the TRUST Act by emphasizing that there are other provisions in "New York tax law generally, and its disclosure rules specifically," that "are enforced by the Attorney General." Opp'n at 5 (citing to various provisions of New York tax law). None of those provisions, however, requires Attorney General James to take any part in the possible transmission of Mr. Trump's state tax returns to Congress.[4]

### B.    Subsection (a)(3)

Mr. Trump also attempts to establish personal jurisdiction over the New York Defendants under subsection (a)(3), which is satisfied if a defendant "caus[es] tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C. Code § 13-423(a)(3). "Subsection (a)(3) 'is a precise and intentionally restricted tort section, . . . which stops short of the outer limits of due process, . . . and which confers jurisdiction only over a defendant who *commits an act in the District* which *causes injury in the District*, without regard to any other

---

[4] In his Amended Complaint, Mr. Trump also points to Attorney General James's litigation activity in the District, which arguably satisfies subsection (a)(1). *See, e.g.*, *Turner v. Abbott*, 53 F. Supp. 3d 61, 67 (D.D.C. 2014) ("Defendant's participation in litigation in the District of Columbia District Court arguably constitutes 'transacting business' in the District of Columbia . . . ."). But to satisfy the long-arm statute, Mr. Trump's alleged injury would have to arise out of that litigation, *see* D.C. Code § 13-423(b), a claim he does not make. *See Turner*, 53 F. Supp. 3d at 67–68 ("[T]his Court does not have specific jurisdiction over Defendant because Plaintiff's claim did not arise from [Defendant's participation in litigation] in the District.").

contacts." *Forras*, 812 F.3d at 1107 (second emphasis added) (quoting *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 221 (D.C. Cir. 1986)).

As to the Commissioner, Mr. Trump argues that if the Commissioner produces his state tax returns to the Committee, Mr. Trump would be injured in the District of Columbia.  Even assuming that Mr. Trump would suffer that injury here,[5] subsection (a)(3) also requires that the injury be caused by an "act or omission in the District of Columbia."  D.C. Code § 13-423(a)(3).  At this time, Mr. Trump does not (and cannot) allege that the Commissioner's act of transmitting information to the Committee will definitely occur in the District.  Mr. Trump correctly notes the Commissioner *might* take certain acts in the District, such as by "personally deliver[ing his] returns to the Committee or testif[ying] about them here."  Opp'n at 21.  Such acts, if taken, could be enough to satisfy subsection (a)(3).  But speculation that they *might* occur is insufficient to exercise jurisdiction over the Commissioner *now*.  *See GTE New Media*, 199 F.3d at 1349 (rejecting "conclusory statements and intimations" as the basis of meeting the requirements of the D.C. long-arm statute); *cf. Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 77 (D.D.C. 2003) ("Nor does the plaintiff indicate how its claims relate to any activities by defendants . . . in the District other than a single hopeful statement that check-processing by defendants . . . 'could very well' occur in the District [and fulfill D.C. Code subsection 13-423(b)'s requirements].  Such a speculative statement does not satisfy the requirements of the

---

[5] The New York Defendants argue that the transmission of Mr. Trump's tax records to the Committee would not injure him at all, *see* Reply at 12–13, but do not argue that if Mr. Trump suffers an injury it would occur in some other jurisdiction.

The Court does note that Mr. Trump apparently has changed his primary residence from New York to Florida.  Andrew Restuccia, *Trump Says He Is Adopting Florida as Primary Residence*, Wall St. J. (Oct. 31, 2019, 11:28 PM ET), https://www.wsj.com/articles/trump-says-he-is-adopting-florida-as-primary-residence-11572574793.  But he also lists the White House as one of his residences.  *Id.*

District's long-arm statute." (citations omitted)).  And as to Attorney General James, Mr. Trump does not allege that she will be involved in providing his tax records to the Committee, let alone that she would do so through an act taken in the District.

### C.      Subsection (a)(4)

Finally, Mr. Trump contends that his allegations satisfy subsection (a)(4) of the long-arm statute.  Unlike subsection (a)(3), which applies when a tortious act occurs within the District, subsection (a)(4) "permits an exercise of jurisdiction over a tortious act or omission committed *outside the District* that causes injury *within the District*."  *Forras*, 812 F.3d at 1107 (emphasis added) (citing D.C. Code § 13-423(a)(4)).  But subsection (a)(4) has a significant limitation:  it applies "if, and only if, the defendant '[i] regularly does or solicits business, [ii] engages in any other persistent course of conduct, or [iii] derives substantial revenue from . . . services rendered in the District.'"  *Id.* (emphasis added) (quoting D.C. Code § 13-432(a)(4)).

> [U]nder (a)(4), the act outside/*impact inside* the forum is the basis for drawing the case into the court, but because the harm-generating act (or omission) occurred outside, the statute calls for something more.  The 'something more' or 'plus factor' does not itself supply the basis for the assertion of jurisdiction, but it does serve to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum.

*Carr*, 814 F.2d at 763 (citations omitted).

Mr. Trump has not alleged that Attorney General James will take an act outside of the District that would cause him injury here, so subsection (a)(4) is not satisfied as to James.  With respect to the Commissioner, Mr. Trump has certainly pleaded that, by sending his state tax returns to Congress, the Commissioner would "caus[e] tortious injury in the District of Columbia by an act . . . outside the District of Columbia."  Opp'n at 22 (quoting D.C. Code § 13-423(a)(4)).  But Mr. Trump also must meet the requirements of the subsection's "plus factors."

Mr. Trump argues that the persistent-course-of-conduct "plus factor" is satisfied. *Id.*
at 22–23.  But despite subsection (a)(4)'s lenient standard, Mr. Trump does not meet his burden.
To be sure, "[u]nder (a)(4), the business done or persistent course of conduct 'plus factor' is
satisfied by connections considerably less substantial than those it takes to establish general,
all-purpose 'doing business'- or 'presence'-based jurisdiction." *Carr*, 814 F.2d at 763 (citations
omitted).  Further, "subsection (a)(4) contemplates a connection that may be *un*related to the
claim in suit." *Id.* (citation omitted).  But Mr. Trump's brief on this point is wholly conclusory;
it does not identify a single act taken *by the Commissioner* that would satisfy this plus factor.
*See* Opp'n at 22–23.

Looking past Mr. Trump's brief, the allegations in the Amended Complaint also do not
establish a persistent course of conduct by the Commissioner in the District.  Mr. Trump alleges
that the Commissioner resided and worked in the District between 2011 and 2012 when he
served as a policy analyst in the U.S. Department of Treasury and that the Commissioner served
as an economic policy advisor to the 2016 Clinton campaign.  Am. Compl. ¶ 17.  Mr. Trump
does not allege that the Commissioner had any connection whatsoever to the District of
Columbia while he served as an economic policy advisor for the 2016 Clinton campaign
headquartered in Brooklyn, New York.  And living and working in the District of Columbia for
the Department of the Treasury seven years prior to the passage of the TRUST Act and the
present lawsuit can hardly be considered a persistent course of conduct here because those acts
have long since ended.  *See Burman v. Phx. Worldwide Indus., Inc.*, 437 F. Supp. 2d 142, 153
(D.D.C. 2006) ("The minimum contacts that are required for . . . engaging in a persistent course
of conduct should 'at least be continuing in character.'" (quoting *McFarlane v. Esquire
Magazine*, No. 92-0711, 1994 WL 510088, at *4 (D.D.C. June 8, 1994)).  That the

Commissioner *may* act in 2019 or later renders his temporary residence in the District between

2011 and 2012 remote and hardly "persistent."[6]  In sum, these allegations, taken together, do not

establish a persistent course of conduct by the Commissioner in the District of Columbia

sufficient to satisfy subsection (a)(4).

### D.    Conspiracy Jurisdiction

Mr. Trump also argues that he can establish personal jurisdiction under subsection (a)(3)

through a "conspiracy jurisdiction" theory.  Opp'n at 22.  Assuming this theory of jurisdiction is

available under D.C. law,[7] to satisfy it, "the plaintiff must allege '(1) the existence of a civil

conspiracy . . . , (2) the defendant's participation in the conspiracy, and (3) an overt act by a

co-conspirator within the forum, subject to the long-arm statute, and in furtherance of the

conspiracy.'"  *FC Inv. Grp.*, 529 F.3d at 1096 (quoting *Kopff v. Battaglia*, 425 F. Supp. 2d 76,

81 n.4 (D.D.C. 2006)).

Mr. Trump argues that the New York Defendants "are the Congressional Defendants'

co-conspirators" and that, as a result, "the New York Defendants will have 'caus[ed] tortious

---

[6] Mr. Trump points to the litigation activities of Attorney General James when discussing the persistent-course-of-conduct "plus factor" under subsection (a)(4).  Opp'n at 23.  However, with no act by the Attorney General that would cause Mr. Trump's alleged harm (the production of his state tax returns to the Committee), it does not matter that the Attorney General may have engaged in a persistent course of conduct in the District.

[7] The D.C. Court of Appeals has not expressly recognized the conspiracy theory of personal jurisdiction.  *See Eric T. v. Nat'l Med. Enters., Inc.*, 700 A.2d 749, 756 n.12 (D.C. 1997) ("Federal courts in the District 'have applied the conspiracy theory of the jurisdiction warily,' and there is a substantial question, which we do not attempt to resolve, as to whether the Superior Court has personal jurisdiction over certain defendants in these cases." (internal citations omitted)); *see also Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 427 n.1 (D.C. Cir. 1991) (Silberman, J., concurring in part and dissenting in part) ("We have not yet been told by the District of Columbia Court of Appeals—whose interpretations of the D.C. long-arm statute are of course binding—whether [subsection] 13-423(a)(3) encompasses the conspiracy theory . . . .").  But because Mr. Trump has not adequately pleaded such a conspiracy, the Court need not decide whether it is a viable theory under D.C. law.

injury in the District of Columbia by an act . . . in the District of Columbia.'"  Opp'n at 22

(quoting D.C. Code § 13-423(a)(3)).  But nowhere in his Amended Complaint does Mr. Trump

allege the existence of a conspiracy; in fact, the word "conspiracy" does not even appear in his

pleadings.  *See Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031

(D.C. Cir. 1997) (establishing personal jurisdiction under a conspiracy theory requires that "the

plaintiff . . . plead with particularity 'the conspiracy as well as the overt acts within the forum

taken in furtherance of the conspiracy.'" (quoting *Dooley*, 786 F. Supp. at 78)); *LG Display Co.

v. Obayashi Seikou Co.*, 919 F. Supp. 2d 17, 27 (D.D.C. 2013) ("Here, LG . . . makes no mention

of conspiracy in its complaint, and it is doubtful whether the facts alleged therein might support

the inference that a conspiracy existed.").  *See generally* Am. Compl.

In any event, the Amended Complaint's factual allegations do not establish conspiracy

jurisdiction under subsection (a)(3).  Mr. Trump argues that a conspiracy can be inferred from

his allegations that  "Chairman Neal must submit a request [to the Commissioner], Chairman

Neal must certify that certain conditions are satisfied, the Commissioner must prepare the returns

and make the necessary redactions, and the parties must work together to deliver and discuss the

returns." Opp'n at 22.  But these allegations merely establish a relationship created via statutory

authority, which, without more, does not amount to a conspiracy.  *Cf. FC Inv. Grp.*, 529 F.3d at

1098 (holding that allegations that only establish a business relationship between defendants—

without demonstrating any further evidence of a conspiracy—failed to establish personal

jurisdiction).

\*      \*      \*

For these reasons, Mr. Trump has not established that any provision of the District of

Columbia's long-arm statute is satisfied as to either New York Defendant.[8]

### E.      Jurisdictional Discovery

Mr. Trump also argues that he is entitled to jurisdictional discovery.  "[I]n order to get

jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will

enable it to show that the court has personal jurisdiction over the defendant."  *Caribbean Broad.*

*Sys. Ltd. v. Cable & Wireless, PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998).  "[A] request for

jurisdictional discovery cannot be based on mere conjecture or speculation," *FC Inv. Grp.*,

529 F.3d at 1094 (citing *Bastin v. Fed. Nat'l Mortg. Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir.

1997)), and "[a] plaintiff may not use jurisdictional discovery to 'conduct a fishing expedition in

the hopes of discovering some basis of jurisdiction,'" *Nuevos Destinos, LLC v. Peck*, No.

15-cv-1846, 2019 WL 78780, at \*13 (D.D.C. Jan. 2, 2019) (quoting *In re Papst Licensing GmbH*

---

[8] Exercising jurisdiction over New York state officials would also raise state sovereignty and federalism concerns.  Mr. Trump—who apparently considered New York his primary residence until recently, when he changed it to Florida, Restuccia, *supra*—seeks to hale New York state officials into federal court in the District of Columbia to litigate the constitutionality of a New York state tax statute.  Other courts have been cautious to permit similar suits to proceed.  *See, e.g.*, *Marshall v. Labor & Indus., Wash.*, 89 F. Supp. 2d 4, 10 (D.D.C. 2000) ("Principles of comity dictate that [determining whether a Washington State agency properly administrated Washington State's workers' compensation law] should be decided by a Washington court, not the United States District Court for the District of Columbia.").  And some courts have gone so far as to hold that haling officials from other states into federal courts outside of their home states violates the Due Process Clause.  *E.g.*, *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 489 (5th Cir. 2008) (reversing the district court's exercise of jurisdiction over a nonresident Arizona official in holding that the Due Process Clause not only "'protect[s] the defendant against the burdens of litigating in a distant or inconvenient forum'; [it] also 'ensure[s] that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.'" (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980))).  Because Mr. Trump has not demonstrated that any provision of the District's long-arm statute is satisfied here, the Court need not reach this question.

*& Co. KG Litig.*, 590 F. Supp. 2d 94, 101 (D.D.C. 2008)).  Further, "a plaintiff must make a

'detailed showing of what discovery it wishes to conduct or what results it thinks such discovery

would produce.'"  *Williams v. ROMARM*, 187 F. Supp. 3d 63, 72 (D.D.C. 2013) (quoting

*Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003)).

Mr. Trump has not established that jurisdictional discovery is warranted.  Mr. Trump's

strongest case is that subsections (a)(3) or (a)(4) of the D.C. long-arm statute would be satisfied

in the event that the Commissioner takes certain steps to comply with a request from Chairman

Neal.  *See supra* pp. 11–15.  But with respect to subsection (a)(4), Mr. Trump has not made a

sufficiently strong claim that that subsection's "plus factors" are met, such that discovery into

those plus factors would be warranted.  And with respect to subsection (a)(3), jurisdiction over

the Commissioner will turn entirely on how the Commissioner responds *in the future* to a

request.  Discovery, at this time, is unlikely to shed any light on that question.

Mr. Trump also fails to "make a 'detailed showing of what discovery [he] wishes to

conduct or what results [he] thinks such discovery would produce.'"  *Williams*, 187 F. Supp. 3d

at 72 (quoting *Atlantigas*, 290 F. Supp. 2d at 53).  Instead, he makes general statements about

wishing to conduct discovery into the New York Defendants' potential contacts with the District

and into the alleged coordination between Attorney General James and the House to disclose

Mr. Trump's financial information.  *See* Opp'n at 9–11.  "Such 'generalized' requests and

'predictions are not enough to justify jurisdictional discovery.'"  *Nuevos*, 2019 WL 78780, at *14

(quoting *Atlantigas*, 290 F. Supp. 2d at 53).

## IV.   Conclusion

Based on the current allegations, Mr. Trump has not met his burden of establishing

personal jurisdiction over either of the New York Defendants.  The Court therefore need not

reach the question of proper venue.  Accordingly, the New York Defendants' Motion to Dismiss is **GRANTED**, and Mr. Trump's Amended Complaint is **DISMISSED** without prejudice as to them.  Mr. Trump may press his claims against the New York Defendants in this Court should future events support the exercise of personal jurisdiction over them, or he may opt to pursue those claims in an appropriate forum.  An Order will be entered contemporaneously with this Memorandum Opinion.


DATE:  November 11, 2019

CARL J. NICHOLS
United States District Judge