## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DONALD J. TRUMP,

Plaintiff,

v.

COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES; RICHARD NEAL, in his official capacity as Chairman of the House Ways and Means Committee; ANDREW GROSSMAN, in his official capacity as Chief Tax Counsel of the House Ways and Means Committee; LETITIA JAMES, in her official capacity as Attorney General of New York State; and MICHAEL R. SCHMIDT, in his official capacity as Commissioner of the New York State Department of Taxation and Finance,

Defendants.

Case No. 1:19-cv-2173-CJN

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE CONGRESSIONAL DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

Table of Authorities .......................................................................................................................... ii

Introduction ...................................................................................................................................... 1

Background ........................................................................................................................................ 2

Argument ............................................................................................................................................ 4

    I.     The bulk of the motion to dismiss is premature because the President is entitled to
         relief under the All Writs Act. ................................................................................................ 5

    II.    The rest of the motion to dismiss is unpersuasive. ................................................... 11

         A.     Chairman Neal's request will cause the President's injury ..................................... 11

         B.     The Court can redress the President's injury. .......................................................... 13

         C.     The President can raise the unconstitutionality of the TRUST Act in a claim
             against the Congressional Defendants. ...................................................................... 15

         D.     Grossman is a proper defendant ................................................................................ 18

         E.     Chairman Neal's request will lack a legitimate legislative purpose ........................ 20

Conclusion ........................................................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Administracion de Compensacion por Accidentes de Automoviles v. INVESCO Real Estate Fund II, LP*,
   847 F. Supp. 2d 323 (D.P.R. 2012) ........................................................................................ 20

*Astrazeneca Pharm. LP v. Burwell*,
   197 F. Supp. 3d 53 (D.D.C. 2016) ................................................................................... 6, 10

*Autolog Corp. v. Regan*,
   731 F.2d 25 (D.C. Cir. 1984) ................................................................................................. 12

*Baz v. DHS*,
   2019 WL 5102827 (D.D.C. Oct. 11, 2019) ........................................................................... 4

*Belbacha v. Bush*,
   520 F.3d 452 (D.C. Cir. 2008) .............................................................................................. 10

*Bennett v. Spear*,
   520 U.S. 154 (1997) ............................................................................................... 11, 12, 13

*Block v. Meese*,
   793 F.2d 1303 (D.C. Cir. 1986) ............................................................................................ 11

*Brown & Williamson Tobacco Corp. v. Williams*,
   62 F.3d 408 (D.C. Cir. 1995) ................................................................................................ 14

*Brown v. Gilmore*,
   533 U.S. 1301 (2001) (Rehnquist, C.J., in chambers) ......................................................... 9

*CFTC v. Kimberlynn Creek Ranch, Inc.*,
   276 F.3d 187 (4th Cir. 2002) ................................................................................................ 20

*Clark Cty. v. FAA*,
   522 F.3d 437 (D.C. Cir. 2008) ........................................................................................ 2, 10

*Clinton v. Goldsmith*,
   526 U.S. 529 (1999) ................................................................................................................ 8

*Comm. for Full Employment v. Blumenthal*,
   606 F.2d 1062 (D.C. Cir. 1979) ............................................................................................ 12

*Comm. on Ways & Means v. U.S. Dep't of the Treasury*,
   2019 WL 4094563 (D.D.C. Aug. 29, 2019) ......................................................................... 2

*Competitive Enter. Inst. v. NHTSA*,
   901 F.2d 107 (D.C. Cir. 1990) ........................................................................................ 11, 12

*Dep't of Commerce v. New York*,
   139 S. Ct. 2551 (2019) .......................................................................................................... 12

*Dombrowski v. Eastland*,
   387 U.S. 82 (1967) ...................................................................................................... 6, 15, 19

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*,
   438 U.S. 59 (1978) ................................................................................................................ 13

*Eastland v. U.S. Servicemen's Fund,*
   421 U.S. 491 (1975) .................................................................................1, 14

*Energy Conversion Devices, Inc. v. Manbeck,*
   741 F. Supp. 965 (D.D.C. 1990) .........................................................................8

*Envtl. Def. Fund v. EPA,*
   485 F.2d 780 (D.C. Cir. 1973) ............................................................................8

*FAIR, Inc. v. Reno,*
   93 F.3d 897 (D.C. Cir. 1996) ............................................................................12

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992) .........................................................................................17

*Gibbons v. Ogden,*
   22 U.S. 1 (1824) ...............................................................................................16

*Gravel v. United States,*
   408 U.S. 606 (1972) .........................................................................................19

*Griffin v. Padilla,*
   2019 WL 4863447 (E.D. Cal. Oct. 2, 2019) ........................................................2

*Hearst v. Black,*
   87 F.2d 68 (D.C. Cir. 1936) .......................................................................13, 15

*In re Sealed Case,*
   131 F.3d 208 (D.C. Cir. 1997) ..........................................................................12

*K.P. v. LeBlanc,*
   627 F.3d 115 (5th Cir. 2010) ............................................................................17

*Kilbourn v. Thompson,*
   103 U.S. 168 (1880) ....................................................................................19, 22

*Klay v. United Healthgroup, Inc.,*
   376 F.3d 1092 (11th Cir. 2004) ...........................................................................9

*Larson v. Valente,*
   456 U.S. 228 (1982) .........................................................................................18

*Lawrence ex rel. Lawrence v. Chater,*
   516 U.S. 163 (1996) ...........................................................................................9

*Made in the USA Found. v. United States,*
   242 F.3d 1300 (11th Cir. 2001) .........................................................................19

*Martin v. Hunter's Lessee,*
   14 U.S. 304 (1816) ...........................................................................................16

*McSurely v. McClellan,*
   553 F.2d 1277 (D.C. Cir. 1976) (en banc) .........................................................14

*Mideast Sys. & China Civil Const. Saipan Joint Venture, Inc. v. Hodel,*
   792 F.2d 1172 (D.C. Cir. 1986) .........................................................................11

*Muskrat v. United States*,
219 U.S. 346 (1911) ............................................................................................................... 17

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,
458 U.S. 50 (1982) ................................................................................................................. 16

*NAACP, Jefferson Cty. Branch v. Brock*,
619 F. Supp. 846 (D.D.C. 1985) ............................................................................................. 8

*Nat'l Parks Conservation Ass'n v. Manson*,
414 F.3d 1 (D.C. Cir. 2005) .................................................................................................... 18

*Nat'l Wildlife Fed'n v. Hodel*,
839 F.2d 694 (D.C. Cir. 1988) ............................................................................................... 11

*NTEU v. King*,
961 F.2d 240 (D.C. Cir. 1992) ............................................................................................... 10

*Penn. Bur. of Corr. v. U.S. Marshals Serv.*,
474 U.S. 34 (1985) ................................................................................................................... 9

*Plaut v. Spendthrift Farm, Inc.*,
514 U.S. 211 (1995) ............................................................................................................... 16

*Powell v. McCormack*,
395 U.S. 486 (1969) .................................................................................................... 15, 19, 22

*SEC v. Colello*,
139 F.3d 674 (9th Cir. 1998) ................................................................................................. 20

*Senate Permanent Subcomm. on Investigations v. Ferrer*,
856 F.3d 1080 (D.C. Cir. 2017) ........................................................................................ 13, 14

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ................................................................................................................. 11

*Stamler v. Willis*,
415 F.2d 1365 (7th Cir. 1969) ............................................................................................... 20

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996) ............................................................................................... 19

*Tenney v. Brandhove*,
341 U.S. 367 (1951) ................................................................................................................. 6

*Trump v. Deutsche Bank AG*,
940 F.3d 146 (2d Cir. 2019) ..................................................................................................... 2

*Trump v. Mazars USA, LLP*,
940 F.3d 710 (D.C. Cir. 2019) ..................................................................................... 1, 14, 21, 22

*Trump v. Vance*,
2019 WL 5687447 (2d Cir. Nov. 4, 2019) ............................................................................... 2

*U.S. Servicemen's Fund v. Eastland*,
488 F.2d 1252, 1262 (D.C. Cir. 1973) ....................................................................... 6, 14, 15, 19

*United States v. AT&T Co.,*
   567 F.2d 121 (D.C. Cir. 1977) ................................................................................15, 22

*United States v. Hughes,*
   813 F.3d 1007 (D.C. Cir. 2016) ..................................................................................... 8

*United States v. N.Y. Tel. Co.,*
   434 U.S. 159 (1977) ..................................................................................................7, 8

*United States v. Teamsters,*
   776 F. Supp. 144 (S.D.N.Y. 1991) ................................................................................ 8

*Utah v. Evans,*
   536 U.S. 452 (2002) ..................................................................................................... 18

*Voting for Am., Inc. v. Andrade,*
   888 F. Supp. 2d 816 (S.D. Tex. 2012) ........................................................................ 17

*Wagner v. Taylor,*
   836 F.2d 566 (D.C. Cir. 1987) ...................................................................................6, 9

*Walden v. Skinner,*
   101 U.S. 577 (1879) ..................................................................................................... 20

*Watkins v. United States,*
   354 U.S. 178 (1957) ..................................................................................................... 14

## Statutes

28 U.S.C. §1651(a) ............................................................................................................ 8

28 U.S.C. §2403(b) .......................................................................................................... 16

N.Y. Tax Law §697(f) ...................................................................................................... 12

N.Y. Tax Law §697(f-1) ......................................................................................... 3, 12, 17

N.Y. Tax Law §697(g) ...................................................................................................... 12

## Other Authorities

Davison, *House Democrats Hire Counsel for Fight to Get Trump's Tax Returns,*
   Bloomberg (Dec. 7, 2018), bloom.bg/34JlN4N ......................................................... 18

S5072 Sponsor Memo.,
   bit.ly/2k50IQB .............................................................................................................. 16

**INTRODUCTION**

When Chairman Neal uses the TRUST Act to request the President's state tax returns, this case will be justiciable. The President will be injured by the imminent disclosure of his confidential records, the Chairman's request will cause that injury, and equitable relief will stop that injury from occurring. The Congressional Defendants cannot invoke legislative immunity because the President will allege that the Chairman's request has no "legitimate legislative purpose"—a claim that defeats legislative immunity. *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 (1975).

The Congressional Defendants surely agree. Their counsel just spent six months litigating *Trump v. Mazars*, where the President raised the same claim against another committee that had requested his confidential financial records. While the Congressional Defendants "cannot over-emphasize the importance of th[e] point" now, Mot. (Doc. 42) 2, the committee in *Mazars* never even *raised* legislative immunity as a defense. This was not an oversight; that committee fiercely opposed the President's suit, and it would have raised this case-ending defense if it thought it could. No, the committee declined to raise legislative immunity in *Mazars* because it knew that "[n]early a century of precedent has laid out an established test that resolves [such] dispute[s] … by determining whether" the committee has "'a valid legislative purpose.'" *Trump v. Mazars USA, LLP*, 940 F.3d 710, 737 (D.C. Cir. 2019). That same test will apply when Chairman Neal requests the President's state tax returns.

The Congressional Defendants do not actually believe this Court is powerless to resolve the legality of Chairman Neal's request. They hope to deny this Court that opportunity by placing the President in an impossible bind. While the Congressional Defendants admit they are currently considering whether to initiate a TRUST Act request, they refuse to notify the President whether or when they will make it. By concealing this information from the President, the Congressional Defendants are able to argue that he cannot sue them *before* the request is made (because the case is not ripe) or *after* the request is made (because the case will rapidly become moot).

The law frowns on this "now-is-too-early, later-is-too-late" strategy. *Clark Cty. v. FAA*, 522 F.3d 437, 441 (D.C. Cir. 2008) (Kavanaugh, J.). The All Writs Act exists to resolve this kind of dilemma and protect this Court's jurisdiction. This Court should grant the President's pending request for relief under the All Writs Act, and then hold the Congressional Defendants' motion to dismiss in abeyance until Chairman Neal notifies the Court that he has requested (or will not request) the President's state tax returns. The Congressional Defendants' arguments that this case isn't justiciable until it's moot, as well as their other arguments for dismissal, are unpersuasive.

## BACKGROUND

President Trump did not disclose his tax returns during the 2016 election, citing his need to protect his rights in ongoing IRS audits. Am. Compl. (Doc. 30) ¶28. His decision was thoroughly litigated in the 2016 campaign, which President Trump won. ¶29. But his political opponents could not leave it there. They have overhauled their laws, broken with longstanding practice, and ignored constitutional constraints to force the disclosure of the President's returns (which they think will damage him politically). ¶¶29-30. In addition to this case, the President is currently litigating four emergency-posture cases involving attempts by various elected officials to obtain his tax returns: The California legislature passed a law that requires the President to disclose his tax returns before he can appear on the Republican primary ballot. *Griffin v. Padilla*, 2019 WL 4863447 (E.D. Cal. Oct. 2, 2019). A county prosecutor in New York issued a grand-jury subpoena for the President's tax returns. *Trump v. Vance*, 2019 WL 5687447 (2d Cir. Nov. 4, 2019). The House Financial Services and Intelligence Committees tried to get the President's returns by subpoenaing his banks. *Trump v. Deutsche Bank AG*, 940 F.3d 146 (2d Cir. 2019). And the House Ways & Means Committee sued to force the Treasury Department to disclose the President's federal tax returns. *Comm. on Ways & Means v. U.S. Dep't of the Treasury*, 2019 WL 4094563, at *1 (D.D.C. Aug. 29, 2019).

New York State decided to join this effort by piggybacking off the Ways and Means Committee's request. Am. Compl. ¶¶41-61. After considering other legislative strategies for disclosing the President's returns, the New York Legislature passed the TRUST Act in July 2019. ¶61. Prior to the TRUST Act, New York law prohibited the disclosure of a President's state tax returns to Congress. ¶63. The TRUST Act changed that by requiring the New York Tax Commissioner to furnish the President's returns if the chair of the House Ways and Means Committee requests them. *See, e.g.*, N.Y. Tax Law §697(f-1). The Committee's chair, currently Richard Neal, must "certif[y] in writing" that (1) the returns are "related to, and in furtherance of, a legitimate task of the Congress," (2) the Committee has also requested "related federal returns" from the Treasury Department, and (3) Congress will inspect and share the returns "in a manner consistent with federal law." *Id.* The second condition is already satisfied for President Trump. The third condition goes without saying. And the first condition merely requires the chair to *certify* that his request is legitimate; he doesn't need to explain why, and the Commissioner can't review or disagree with his reasons.

Although Chairman Neal initially refused to invoke the TRUST Act, mounting pressure from members of his party forced him to reconsider. Am. Compl. ¶¶65-71. The Committee is now reviewing whether to use the TRUST Act to request the President's state tax returns. ¶70; *see also* Mot. 21 (acknowledging "the Committee's ongoing deliberations concerning whether to use the TRUST Act"); Mot. 13 (noting "the Committee's ongoing deliberations whether to request information from New York"); Mot. 30 (similar). When he found out about this review, the President asked the Committee if it would agree to some sort of process that allowed the parties to litigate the legality of a TRUST Act request if one was ever made. The Committee refused. It "c[ould ]not agree" to "notify [the President] before making any request under the [TRUST Act]" or "pledge not to make any request under the [TRUST Act] … for some set period." Consovoy Decl., Ex. A. The President was thus forced to file this suit.

The President's operative complaint asserts two claims against the Committee, Chairman Neal, and Chief Tax Counsel Andrew Grossman. Count I alleges that these Congressional Defendants will violate Article I because their request for the President's state returns will lack a legitimate legislative purpose (or exceed the Committee's jurisdiction under the House Rules). Am. Compl. ¶¶74-76. Count II alleges that the TRUST Act discriminates and retaliates against the President in violation of the First Amendment and, thus, cannot justify the Congressional Defendants' request. ¶¶78-81. The President's complaint also asserted a claim against the New York State Tax Commissioner and Attorney General, but these New York Defendants have been dismissed for lack of personal jurisdiction. This Court's dismissal left open, however, the possibility that the President could "press his claims against the New York Defendants … should future events support the exercise of personal jurisdiction over them." Doc. 44 at 19.

Along with his complaint, the President filed an emergency application for relief under the All Writs Act. *See* Doc. 6; Doc. 17. He requested an order that required one of the Congressional Defendants to give him 14 days' notice before requesting his returns, or an order requiring one of the New York Defendants to notify him when it receives such a request and to delay the disclosure of his returns for 14 days. *See* Doc. 22. Both sets of Defendants filed motions to dismiss. The New York Defendants agreed to give the President his requested relief while their motion to dismiss was pending, plus one week. Now that the Court has granted the New York Defendants' motion, the President needs a decision on his All Writs Act request by next Monday. The Congressional Defendants' motion to dismiss—the subject of this memorandum—will not be fully briefed until December 9.

## ARGUMENT

When evaluating a motion to dismiss, this Court "must accept all facts alleged in the Complaint as true and draw all reasonable inferences from those facts in [the President's] favor." *Baz v. DHS*,

2019 WL 5102827, at *3 (D.D.C. Oct. 11, 2019). While the Court "may consider evidence outside of the pleadings" to evaluate Article III standing, Mot. 7, the Congressional Defendants offer none.

The Congressional Defendants have not identified any basis to dismiss any part of the President's complaint. Their arguments for why this lawsuit is premature are, themselves, premature; they only prove why the President needs relief under the All Writs Act. Their remaining arguments are unpersuasive.

**I.      The bulk of the motion to dismiss is premature because the President is entitled to relief under the All Writs Act.**

Most of the Congressional Defendants' justiciability arguments boil down to the same point: Chairman Neal has not yet requested the President's state tax returns. *See* Mot. 9-11 (arguing this fact defeats standing); Mot. 14-15 (arguing this fact defeats ripeness); Mot. 15-23 (arguing this fact triggers legislative immunity). Of course he hasn't. But the Congressional Defendants are engaged in "ongoing deliberations whether to use the TRUST Act." Mot. 21; *accord* Mot. 13, 30. Their refusal to notify the President when that review ends, what decision they reach, or when they will make a request is what forced the President to move for relief under the All Writs Act. *See* Doc. 6; Doc. 17. The President's motion remains pending, and it is ripe for a decision now that this Court has granted the New York Defendants' motion to dismiss. *See* Doc. 29 at 2.

This Court should grant the President relief under the All Writs Act. As the Court correctly recognized, this case is one "in which it would be appropriate to fashion some relief under the All Writs Act." 7/29/19 Tr. 51:6-8. The Congressional Defendants have conceded that, but for their (erroneous) claim of legislative immunity, "the President has satisfied the traditional requirements" for All Writs Act relief. *Id.* at 17:8-9; *see also id.* at 52:14-17 ("[A]bsolute immunity … is the only argument the Committee makes in opposing Mr. Trump's request for relief."). Namely, the Congressional Defendants "acknowledged" that, "without the fashioning of some relief now, this case could become ripe and then moot almost instantaneously and without notice to the [President] or the

Court, thereby depriving the Court of jurisdiction." *Id.* at 50:20-25; *see id.* at 16:14-17. While the Chairman's request would not itself moot the case, Mot. 15, the case will become moot after New York *complies* with the Chairman's request—a process that will occur rapidly and that, according to Defendants, will begin and end without any notice to the President. Consovoy Decl., Ex. A; *see also* Doc. 39 at 18 (explaining that New York does not give "notice … to the individual whose information is requested, to avoid tipping [him] off"); 7/29/19 Tr. 14:9-14 (Mr. Letter: "[W]e don't read anything in the statute that requires … notice to Mr. Trump."); *id.* at 41:14-15 (Mr. Amer: "The statute does not require notice"). The President thus needs relief under the All Writs Act to "'preserve the status quo pending ripening of [his] claim'" and to "preserve the availability of meaningful judicial review." *Astrazeneca Pharm. LP v. Burwell*, 197 F. Supp. 3d 53, 56 (D.D.C. 2016) (quoting *Wagner v. Taylor*, 836 F.2d 566, 571 (D.C. Cir. 1987)).

The Court could accomplish this goal by granting modest relief against the Congressional Defendants. As the President has proposed, the Court should order Chairman Neal to give at least 14 days' notice before he makes a TRUST Act request concerning President Trump or any related entity. *See* Doc. 22 at 1. This notice requirement, as the Court recognized, would not "enjoin[] the Committee from making the request"; it would provide "very modest" relief that would preserve this Court's jurisdiction while "treading … lightly" on a "coordinate branch." 7/29/19 Tr. 51:16, 53:6, 9, 14-17.[1] This relief wouldn't need to continue in perpetuity; it could terminate once the Congressional Defendants end their current review of whether to invoke the TRUST Act. If Chairman Neal decides at that point to request the President's returns, then the parties can litigate the request's legality on an

---

[1] The Court could tread even more lightly by limiting its relief to a staffer, like Defendant Grossman. *See* Doc. 37 at 43. Courts' reluctance to enjoin Congress is " less[ened] … when applied to officers or employees of a legislative body, rather than to legislators themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 84-85 (1967); *accord Tenney v. Brandhove*, 341 U.S. 367, 378 (1951); *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1262, 1270 (D.C. Cir. 1973), *rev'd on other grounds*, 421 U.S. 491.

expedited basis; if Chairman Neal tells this Court he will not request the President's returns, then this litigation can end. No matter what, this Court's order could expire on January 3, 2021, when the House's current term ends. The House's General Counsel has repeatedly cited that date as the key deadline for the House's legislative and nonlegislative agendas. *See, e.g.*, Doc. 30 at 3, *Ways & Means*, No. 19-cv-1974; CADC Doc. #1813409, *Mazars*, No. 19-5142.

Alternatively, this Court could still enter limited relief against the New York Defendants.[2] Specifically, it should order the Commissioner to notify the Court and the parties if he receives a TRUST Act request concerning President Trump or any related entity, and to wait at least 14 days before complying with that request. *See* Doc. 22 at 2. As this Court correctly noted, relief against the New York Defendants "would presumably not present … separation of powers concerns," 7/29/19 Tr. 53:2-4, and the New York Defendants do not argue otherwise. Nor do they dispute that this Court can bind them under the All Writs Act even after they are dismissed for lack of personal jurisdiction. *See* Doc. 37 at 42-43. The All Writs Act "extends, under appropriate circumstances, to persons who, though not parties … , are in a position to frustrate … the proper administration of justice, … even those who have not taken any affirmative action." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977). It extends to the New York Defendants here because they are "in a position" to moot the dispute between the President and Congressional Defendants, they are not "far removed" from that dispute, they have no "substantial interest" in disclosing the President's returns before he can be heard, and a simple notice requirement would "require[] minimal effort" from them. *Id.* at 174-75. Indeed, granting relief under the All Writs Act would simply extend the agreement already in place between the President and the New York Defendants. *See* Doc. 29 at 2.

---

[2] After filing his initial emergency motion under the All Writs Act, which focused on the Congressional Defendants, the President clarified that his motion also seeks relief from the New York Defendants. Doc. 17 at 9. Given this timing, the New York Defendants did not get a chance to brief the President's request. They now have. *See* Doc. 39 at 23-25.

The New York Defendants contend that relief under the All Writs Act is unavailable because the President has "'other available remedies.'" Doc. 39 at 4. Citing (inapposite) cases where litigants tried to use the All Writs Act to circumvent other statutes, the New York Defendants contend that the President cannot obtain All Writs Act relief unless he initiates "an action … in a New York court." Doc. 39 at 4 (citing *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999); and *Energy Conversion Devices, Inc. v. Manbeck*, 741 F. Supp. 965, 968 (D.D.C. 1990)).

This argument is misguided. Whether a plaintiff could file "a new civil suit" against the nonparty it seeks to bind under the All Writs Act "is irrelevant." *United States v. Hughes*, 813 F.3d 1007, 1010 (D.C. Cir. 2016). The All Writs Act allows courts to "issue all writs necessary or appropriate in aid of their *respective* jurisdictions," 28 U.S.C. §1651(a) (emphasis added), and relief against the New York Defendants is needed to protect *this Court's* jurisdiction over the dispute between the President and the Congressional Defendants. "'[A] federal court may avail itself of all auxiliary writs as aids in the performance of its duties,'" and "these supplemental powers are not limited to those situations where it is 'necessary' to issue the writ." *N.Y. Tel.*, 434 U.S. at 173. The New York Defendants cite no case where a court refused to enjoin a nonparty under the All Writs Act because the plaintiff could have sued that nonparty directly; such a rule could not be squared with the D.C. Circuit's decision in *Environmental Defense Fund v. EPA*, for example. *See* 485 F.2d 780 (D.C. Cir. 1973) (using the All Writs Act to enjoin a party from litigating the same case in a different court).

While this Court has now concluded that it currently lacks personal jurisdiction over the New York Defendants, "[p]ersonal jurisdiction is not required to bind non-parties under the All Writs Act." *United States v. Teamsters*, 776 F. Supp. 144, 150 (S.D.N.Y. 1991), *aff'd*, 954 F.2d 801 (2d Cir. 1992); *accord NAACP, Jefferson Cty. Branch v. Brock*, 619 F. Supp. 846, 852 (D.D.C. 1985); *Envtl. Def. Fund*, 485 F.2d at 784 n.2. Even if personal jurisdiction mattered, this Court recognized that it could have personal jurisdiction over the New York Defendants, depending on how "future events" unfold. *See*

Doc. 44 at 12, 19. Because this Court "'may eventually have jurisdiction'" over the New York Defendants, the All Writs Act gives the Court "'incidental equitable jurisdiction … to impose a temporary restraint in order to preserve the status quo'" until Chairman Neal makes a request. *Astrazeneca*, 197 F. Supp. 3d at 56 (quoting *Wagner*, 836 F.2d at 571).

The New York Defendants also insist that the President cannot get All Writs Act relief unless his probability of winning on the merits is "'indisputably clear.'" Doc. 39 at 24-25 (citing *Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001) (Rehnquist, C.J., in chambers)). Again, this argument is misguided. The New York Defendants mistakenly cite cases where litigants "sought 'stays' pending appeal or certiorari of Acts of Congress." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1101 n.13 (11th Cir. 2004). There are "no other cases involving injunctions under the All Writs Act where this requirement, concerning the 'indisputably clear' nature of the right, is applied." *Id.* Here, the President is not "seeking 'an injunction against the enforcement of a … state statute.'" Mot. 18. He is seeking notice and a window for judicial review that allows him to challenge the legality of a single congressional request. "The requirements for a traditional injunction"—including that the movant "must 'state a claim'" on the merits—"do not apply" to this kind of All Writs Act relief, which merely seeks to protect the "integrity" of an "ongoing proceeding." *Klay*, 376 F.3d at 1100; *accord Lawrence ex rel. Lawrence v. Chater*, 516 U.S. 163, 168 (1996) (explaining that the Court has "long[]" granted relief under the All Writs Act "without determining the merits of the case").

The Congressional Defendants, having conceded that the President satisfies the traditional requirements under the All Writs Act, insist that their jurisdictional arguments are reasons to deny him that relief. Mot. 23-24. Not so. It doesn't matter if the President's claim is not currently ripe or his injury is not sufficiently imminent. Mot. 9-11, 14-15. This case will be justiciable when Chairman Neal decides to request the President's returns from New York. In the interim, the All Writs Act "fill[s] the interstices of federal judicial power" and "gives the court authority to impose a temporary restraint in

order to preserve the status quo pending ripening of the claim." *Penn. Bur. of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 41 (1985); *Wagner*, 836 F.2d at 571. Nor does it matter if the Congressional Defendants' "ongoing deliberations concerning whether to use the TRUST Act" are protected by legislative immunity. Mot. 42. The President is not challenging those deliberations; he challenges Chairman Neal's ultimate *request* for his state tax returns. *See* Am. Compl. 24. As the President has explained and this Court has recognized, Chairman Neal's request will not be shielded by legislative immunity unless it has a "legitimate legislative purpose." *See* Doc. 17 at 8-12. Because that question will be "'substantial,'" the All Writs Act empowers this Court to "act to preserve its jurisdiction" to answer it. *Belbacha v. Bush*, 520 F.3d 452, 455-56 (D.C. Cir. 2008).

Because the President is entitled to relief under the All Writs Act, the Congressional Defendants' motion to dismiss is premature. Their arguments are not responsive to the President's request under the All Writs Act. And the President's request must be resolved *before* the Congressional Defendants' motion to dismiss. If the Court dismisses the President's case before it grants him relief under the All Writs Act, then the President will be right back in the untenable "now-is-too-early, later-is-too-late" bind that required him to file his emergency application in the first place. *Clark Cty.*, 522 F.3d at 441. Because "dismissal of the [President's] complaint could leave [him] with no remedy but to refile [his] lawsuit" and would risk causing him "irreparable injury," this Court should "direct that the complaint be held in abeyance … until one of several events occurs"—namely, notice from the Congressional Defendants that Chairman Neal will request the President's state returns or a representation from the Congressional Defendants that no such request will be made. *NTEU v. King*, 961 F.2d 240, 245 (D.C. Cir. 1992); *see also, e.g.*, Minute Order, *Astrazeneca*, No. 16-cv-1336 (D.D.C. July 14, 2016) (after granting All Writs Act relief, holding the case and requiring the defendant to provide periodic "update[s] on the status of its review").

## II.        The rest of the motion to dismiss is unpersuasive.

Apart from their "too soon" arguments, the Congressional Defendants make various other objections to the President's standing and right to relief. None is persuasive. The President's injury will be fairly traceable to Chairman Neal's request. This Court can remedy that injury in several ways, all consistent with the separation of powers. The President has a claim against the Congressional Defendants based on the unconstitutionality of the TRUST Act, and Grossman is a proper defendant for both claims. Finally, the Congressional Defendants' assertion that Chairman Neal could have a legitimate legislative purpose for requesting the President's state tax returns in the future is not a basis for dismissing the President's complaint now.

### A.        Chairman Neal's request will cause the President's injury.

The Congressional Defendants do not disagree that the President will be injured when New York discloses his confidential tax information to the Committee. But they claim that this injury will not be "fairly traceable" to them because it requires "'independent'" action from the New York Commissioner. Mot. 8-12 (quoting *Mideast Sys. & China Civil Const. Saipan Joint Venture, Inc. v. Hodel*, 792 F.2d 1172, 1178 (D.C. Cir. 1986)). The Congressional Defendants rely on the doctrine that Article III standing is lacking when the plaintiff's injury is caused by "'independent action of some third party not before the court.'" *Mideast Sys.*, 792 F.2d at 1178 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976)). That doctrine has no application here.

Notwithstanding the New York Defendants' dismissal from this case for now,[3] the Commissioner's disclosure of the President's state returns would not be "'*independent*'" from Chairman Neal's request. *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997) (quoting *E. Ky. Welfare*, 426 U.S. at 41-42). "It is impossible to maintain," according to then-Judge Scalia, "that there is no standing to sue

---

[3] Again, this Court recognized that the President "may renew his claims against the New York Defendants should future events trigger one or more provisions of the D.C. long-arm statute[.]" Doc. 44 at 3; *see also* Doc. 44 at 19 ("Mr. Trump may press his claims against the New York Defendants in this Court should future events support the exercise of personal jurisdiction over them").

regarding action of a defendant which harms the plaintiff only through the reaction of third persons."

*Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.); *accord Bennett*, 520 U.S. at 169; *Competitive*

*Enter. Inst. v. NHTSA*, 901 F.2d 107, 113-14 (D.C. Cir. 1990); *Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d

694, 705 (D.C. Cir. 1988); *Comm. for Full Employment v. Blumenthal*, 606 F.2d 1062, 1066 (D.C. Cir. 1979).

Such an argument "wrongly equates injury 'fairly traceable' to the defendant with injury as to which

the defendant's actions are the very last step in the chain of causation." *Bennett*, 520 U.S. at 168-69.

Article III is concerned "'not with the length of the chain of causation, but [with] the plausibility of

the links that comprise the chain.'" *Autolog Corp. v. Regan*, 731 F.2d 25, 31 (D.C. Cir. 1984); *accord*

*Competitive Enter.*, 901 F.2d at 113. A plaintiff thus has standing when the defendant's conduct is "'the

primary factor enabling' the third-party action harmful to the plaintiff," *FAIR, Inc. v. Reno*, 93 F.3d

897, 908 (D.C. Cir. 1996), or when the plaintiff's injury is caused by "the predictable effect of

Government action on the decisions of third parties," *Dep't of Commerce v. New York*, 139 S. Ct. 2551,

2566 (2019).

Here, the Commissioner's disclosure of the President's state returns is both "'enabl[ed]'" by

and the "predictable effect" of a request from Chairman Neal. Unlike other provisions of New York

tax law (which use the permissive word "may"), the TRUST Act gives the Commissioner no discretion:

he "shall furnish" the returns to the Committee. *E.g.*, N.Y. Tax Law §697(f-1)(1); *cf., e.g.*, §697(f) ("may

furnish … as he may consider proper" and "may testify"); §697(g) (same). This legal obligation is more

than enough to satisfy Article III. *See Bennett*, 520 U.S. at 169-71 (finding standing because the

defendant's action had "coercive effect" on third parties); *FAIR*, 93 F.3d at 908 (finding standing

where "'the third party's conduct is sufficiently dependent upon the incentives provided by the

defendant's action'"). Though the TRUST Act also requires Chairman Neal to "certif[y]" that the

returns are "related to, and in furtherance of, a legitimate task of the Congress," §697(f-1)(2), the Act

does not require the Chairman to *specify* what that purpose is or give the Commissioner any authority

to *disagree* with the Chairman's assertion. *Cf. In re Sealed Case*, 131 F.3d 208, 215 (D.C. Cir. 1997) (holding that a statute requiring the Attorney General to "certif[y] to the appropriate district court … that there is a substantial Federal interest" did not allow the district court to review the Attorney General's assertion). The New York Defendants agree. *See* 7/29/19 Tr. 42:1-2 (explaining that the Commissioner would review only whether the certification was "absen[t]" or "clearly deficient on its face"). So does this Court. *See* Doc. 44 at 4 ("Assuming the request includes those certifications, the Commissioner must produce the requested returns").

While it is theoretically possible that Chairman Neal might somehow forget to certify his request or that the Commissioner would violate his duties under the TRUST Act, "[n]othing … requires a party seeking to invoke federal jurisdiction to negate … speculative and hypothetical possibilities … to demonstrate the likely effectiveness of judicial relief." *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 78 (1978). In fact, as the President explains in his complaint, the TRUST Act was designed so that its preconditions are *already* satisfied by the Committee's existing effort to obtain the President's federal tax returns. *See* Am. Compl. ¶¶71, 3, 57, 69, 51, 53. Accordingly, "it is not difficult to conclude that [the President] ha[s] met [his] burden—which is relatively modest at this stage of the litigation—of alleging that [his] injury is 'fairly traceable' to [the Congressional Defendants' conduct]." *Bennett*, 520 U.S. at 170-71.

**B.     The Court can redress the President's injury.**

The Congressional Defendants also challenge redressability, arguing that the separation of powers prevents this Court from granting any relief against them. Mot. 13-14. They cite cases that prohibit courts, *after* Congress has received documents, from "'ordering a congressional committee to return, destroy, or refrain from publishing [them].'" Mot. 13-14 (quoting *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1086 (D.C. Cir. 2017); citing *Hearst v. Black*, 87 F.2d 68, 71 (D.C. Cir. 1936)). If the Congressional Defendants are right that this case will become "moot" once they

receive the President's state tax returns, *Ferrer*, 856 F.3d at 1086, that only highlights why the President needs relief under the All Writs Act. In any event, their argument does not defeat the President's standing.

The Congressional Defendants' own cases explain why. Courts can grant relief against a congressional committee when it lacks a "legitimate legislative purpose[]," since Congress's "investigative activities 'must be related to, and in furtherance of, a legitimate task of the Congress.'" *Id.* at 1087 (quoting *Watkins v. United States*, 354 U.S. 178, 187 (1957)). Certainly *before* a committee receives the materials in dispute, courts can "address[] … the merits" of the committee's request and provide a "remedy" if the committee lacks a legitimate legislative purpose. *Id.* at 1088-89; *see also Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995) ("[T]he judiciary cannot avoid determining what are the outer limits of legitimate legislative process."); *McSurely v. McClellan*, 553 F.2d 1277, 1285 (D.C. Cir. 1976) (en banc) ("[T]he [Supreme] Court has repeatedly insisted that the Speech or Debate Clause is subject to 'finite limits,' refusing to stretch its protective umbrella 'beyond the legislative sphere' to conduct not 'essential to legislating.'").[4]

If courts were truly powerless to award relief in these circumstances, then the D.C. Circuit had no power to issue a decision in *Mazars*. But of course it did. As the Committee recently stated in the companion case over the President's federal tax returns, "*Mazars* confirms … that the issues raised by this case—the validity of Congressional … requests for information under Article I—lie squarely within the federal courts' authority to decide." Doc. 66 at 8, *Ways & Means*, No. 19-cv-1974. And as the D.C. Circuit explained in *Mazars*, cases where "the target" of a congressional request "question[s]

---

[4] Courts can also grant interim relief, like the All Writs Act relief that the President seeks here, to ensure that they can review the legality of a congressional request. In *Eastland*, for example, the D.C. Circuit twice enjoined a congressional subpoena to a third-party custodian. 488 F.2d at 1254-57. The Supreme Court never reviewed those grants of interim relief; it agreed that the D.C. Circuit was right to ensure that "compliance" by the third-party custodian did not "frustrate [the] judicial inquiry" into "whether a legitimate legislative purpose is present." 421 U.S. at 501.

the committee's legislative purpose" and "ask[s] a court to invalidate it" are "familiar." 940 F.3d at 747.

Of course, if the President prevails in this litigation and this Court must enter final relief, the Court will want to avoid remedies that "involve 'needless friction' with a coordinate branch." *Eastland*, 488 F.2d at 1259. But it will have several ways to do so, when and if the time comes. Most obviously, the New York Defendants, as the custodians of the President's tax returns, "could be restrained" from "produc[ing]" them. *Hearst*, 87 F.2d at 71; *accord Eastland*, 488 F.2d at 1256; *United States v. AT&T Co.*, 567 F.2d 121, 129-30 (D.C. Cir. 1977). This Court could also direct relief against the "agents of the committee"—*i.e.*, staffers like Grossman. *Hearst*, 87 F.2d at 71; *accord Eastland*, 488 F.2d at 1256, 1270; *Dombrowski*, 387 U.S. at 84-85. Or the Court could withhold injunctive relief and issue a declaration alone. A "'request for declaratory relief may be considered independently of whether other forms of relief are appropriate,'" it is available even "against a Member of the Congress," and "[i]t is not doubted" that the Congressional Defendants would adhere to a declaration from this Court. *Eastland*, 488 F.2d at 1270-71 (quoting *Powell v. McCormack*, 395 U.S. 486, 517 (1969)). Because the Court will have these and other options available if the President ultimately wins this case, the Congressional Defendants' not-yet-realized separation-of-powers concerns do not defeat the President's standing.

### C.    The President can raise the unconstitutionality of the TRUST Act in a claim against the Congressional Defendants.

The Congressional Defendants next argue that the President cannot challenge the constitutionality of the TRUST Act by bringing a claim against them because *Congress* did not enact the TRUST Act—the New York Legislature did. *See* Mot. 28-30. True, the Congressional Defendants did not enact the TRUST Act; but they are trying to *use* it to obtain the President's state tax returns. Because the TRUST Act allows the Congressional Defendants to injure the President, and because declaring the Act unconstitutional would prevent that injury, the President can challenge the TRUST Act in a suit against the Congressional Defendants.

15

If the TRUST Act is unconstitutional (facially or as applied to President Trump), then the Congressional Defendants cannot obtain the President's returns from New York. *See* Am. Compl. ¶63; Doc. 37 at 40-41. "New York law," this Court recently explained, "generally requires that state tax returns be held confidentially and permits their disclosure in only certain enumerated exceptions." Doc. 44 at 3. The TRUST Act was passed to create a new "exception" to this general rule, and if this Court deems the Act unconstitutional and unenforceable, New York law would again forbid the disclosure of the President's returns to the Committee. *Id.*; *see* S5072 Sponsor Memo., bit.ly/2k50IQB (advocating for the TRUST Act because "New York law provides no legal mechanism for the state to cooperate with a Congressional committee."). In other words, the Congressional Defendants plan to use the TRUST Act to cause the President an injury, and declaring the Act unconstitutional will stop that injury from occurring. That is a justiciable claim for relief.

It is not unusual for federal courts to adjudicate the constitutionality of statutes in cases like this one—*i.e.*, cases where the government that passed the statute is not a party. Congress anticipated that there would be federal cases "to which a State or any agency, officer, or employee thereof is not a party" and "where the constitutionality of a[] statute of that State" is challenged—which is why it authorized (but did not require) States to intervene in such cases. 28 U.S.C. §2403(b). Indeed, some of the most significant cases where statutes were held unconstitutional were disputes between wholly private parties.[5] Whenever a statute is "relied upon by one or the other of [the] parties" and is "in

---

[5] *See, e.g., Martin v. Hunter's Lessee*, 14 U.S. 304 (1816) (private plaintiff used a state statute to eject a private defendant from his land; defendant successfully argued that the statute was invalid under the Supremacy Clause); *Gibbons v. Ogden*, 22 U.S. 1 (1824) (private plaintiff used a state statute that gave him an exclusive navigation license against a competitor; competitor successfully argued that the statute was invalid under the Supremacy Clause); *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) (private company used a federal statute to bring common-law claims against another company in bankruptcy court; defendant successfully argued that the statute violated Article III); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995) (private plaintiff used a federal statute to reopen a prior case against a private company; company successfully argued that the statute violated Article III).

conflict with the fundamental law," the Supreme Court has explained, courts have "[t]he right to declare [it] unconstitutional." *Muskrat v. United States*, 219 U.S. 346, 361 (1911). Such is the nature of judicial review.

The New York Defendants, in a letter filed after the hearing on their motion to dismiss, raised a similar argument. They claimed that, once they are dismissed from this case, the President can longer challenge the constitutionality of the TRUST Act because, as nonparties, they technically would not be bound by this Court's decision. *See* Doc. 41. This observation is irrelevant. The New York Defendants cannot disclose the President's state returns unless the *Congressional* Defendants request them, *see* N.Y. Tax Law §697(f-1), and the Congressional Defendants do not argue that they would request the President's state returns if this Court deems the TRUST Act unconstitutional. The President thus doesn't need the New York Defendants to be parties to redress his injury. *See Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) ("[W]e may assume it is substantially likely that … congressional officials would abide by an authoritative interpretation of the [relevant] statute and constitutional provision by the District Court, even though they would not be directly bound by such a determination."); *Voting for Am., Inc. v. Andrade*, 888 F. Supp. 2d 816, 831 (S.D. Tex. 2012) ("[R]edressability will exist if a declaration against a governmental defendant without enforcement power is reasonably likely to cause nonparties with enforcement power to obey the court's order."), *rev'd only on the merits*, 732 F.3d 382 (5th Cir. 2013); *K.P. v. LeBlanc*, 627 F.3d 115, 123-24 (5th Cir. 2010) (similar).

In any event, the New York Defendants notably do not say that they would *ignore* an order from this Court declaring the TRUST Act unconstitutional. This Court can "assume" that they wouldn't. *Franklin*, 505 U.S. at 803. "A district court order" declaring the Act unconstitutional, on its face or as applied to President Trump, "doubtless would significantly affect" the Commissioner's response to Chairman Neal's request. *Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1, 7 (D.C. Cir.

2005). "That is enough to satisfy redressability. 'A significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered' will suffice for standing." *Id.* (quoting *Utah v. Evans*, 536 U.S. 452, 464 (2002)). A plaintiff "need not show that a favorable decision will relieve his every injury." *Larson v. Valente*, 456 U.S. 228, 243 n. 15 (1982).

### D.     Grossman is a proper defendant.

The Congressional Defendants contend that this Court should dismiss Grossman as a defendant. Mot. 12-13. With no explanation and citing nothing, they assert that the President has misdescribed Grossman's duties. Mot. 13 n.6. They also note that the TRUST Act allows requests by the Committee's Chairman, not staff like Grossman. Mot. 13. These arguments are unpersuasive.

The President's complaint alleges that "Grossman advises the Committee and the Chairman on tax issues," "was hired to be the 'point person' on the Committee's quest to obtain the President's tax returns," and "is responsible for drafting, approving, sending, and reviewing any request for the President's state tax returns." Am. Compl. ¶15. These allegations must be accepted as true, and they are certainly plausible. News reports have identified Grossman as the "point person" for helping Chairman Neal obtain the President's federal tax returns. Mot. 13 n.6 (citing Davison, *House Democrats Hire Counsel for Fight to Get Trump's Tax Returns*, Bloomberg (Dec. 7, 2018), bloom.bg/34JlN4N). The Committee's quest to obtain the President's federal tax returns, the President's complaint explains, is what will drive them to request his state tax returns. Am. Compl. ¶¶65-70. And the Committee must be careful to ensure that its stated purpose for requesting the President's state returns does not contradict the "case" it has constructed for requesting his federal returns. ¶65. It is plausible to conclude that the lawyer in charge of the federal effort will be heavily involved in the state effort as well.

But even accepting the Congressional Defendants' unsubstantiated assertion that "Grossman is not responsible for the hypothetical actions Mr. Trump attributes to him," Mot. 13 n.6, the

Congressional Defendants cannot deny that *someone* on the Committee's staff would be "responsible for drafting, approving, sending, and reviewing" a request for the President's state tax returns, Am. Compl. ¶15. This Court should construe the President's request for "[a]ll other … relief" that he is entitled to, Am. Compl. 25, to "encompass relief against subordinate branch officials not named as parties." *Swan v. Clinton*, 100 F.3d 973, 979-80 & n.3 (D.C. Cir. 1996). "[I]t would elevate form over substance in a case of this dimension not to treat [the President's] complaint as if it also sought injunctive or declaratory relief against these individuals in their official capacity." *Id.* at 980; *accord Made in the USA Found. v. United States*, 242 F.3d 1300, 1311 n.25 (11th Cir. 2001). Indeed, courts are particularly "liberal in granting the right of amendment to … plaintiffs for [the] purpose" of adding "individual members of [committee] staff" to the case, since it reduces friction with Congress and helps the court craft appropriate relief. *Eastland*, 488 F.2d at 1270.

Committee staffers like Grossman can be held liable for their role in requesting the President's state tax returns without a legitimate legislative purpose. For more than a century, the Supreme Court has recognized that "legislative employees who participated in the unconstitutional activity are responsible for their acts." *Powell*, 395 U.S. at 504 (citing *Kilbourn v. Thompson*, 103 U.S. 168 (1880)). This is true even when "House employees are acting pursuant to express orders of the House," and even when "the relief sought relates to actions taken … solely within the House." *Id.* While staffers cannot be liable for "services that would be immune legislative conduct if performed by the [Congressman] himself," they can be liable for "conduct that [is] not entitled to Speech or Debate Clause protection"—like an informational request that lacks a legitimate legislative purpose. *Gravel v. United States*, 408 U.S. 606, 620-25 (1972). Thus, committee counsel who help Congress make illegal requests are proper defendants in cases like this one. *See, e.g., Eastland*, 488 F.2d at 1270 (holding that "the actions of individual members of the [committee] staff," including "committee counsel," could

make them liable for an unconstitutional congressional subpoena); *Dombrowski*, 387 U.S. at 84-85 (reinstating the plaintiff's claim against committee counsel).

Even if the President had no claim against Grossman, the President can keep Grossman in this litigation as a nominal defendant to ensure the President can secure effective relief. "Cases arise in the Federal courts in which nominal … [defendants] are joined" because, to obtain relief, "the plaintiff is by some positive rule of law compelled to use … another." *Walden v. Skinner*, 101 U.S. 577, 589 (1879); *see Administracion de Compensacion por Accidentes de Automoviles v. INVESCO Real Estate Fund II, LP*, 847 F. Supp. 2d 323, 327 n.3 (D.P.R. 2012) (explaining that nominal parties are "'joined in the lawsuit to avoid procedural defects'"). Here, for example, the Congressional Defendants contend that "separation-of-powers" principles prevent this Court from granting equitable relief against the Committee. Mot. 13-14. The President disagrees. *Supra* II.B. But even if the Congressional Defendants were correct about this, the Court could avoid this separation-of-powers concern by granting relief against Grossman alone. *See Stamler v. Willis*, 415 F.2d 1365, 1368-69 (7th Cir. 1969) (authorizing "the joinder of agents of the Committee for the sole purpose of making effective relief possible in this declaratory and injunctive action"). Because Grossman would be a nominal defendant who is sued only "to afford complete relief," it would not matter whether he is also "accused of violation of the [law]." *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192-93 (4th Cir. 2002); *accord SEC v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998).

### E.      Chairman Neal's request will lack a legitimate legislative purpose.

Lastly, the Congressional Defendants contend that Count I of the complaint fails to state a claim because, in their view, there are legitimate legislative purposes that, "depending on the circumstances," could support a request for the President's state tax returns. *See* Mot. 25-28. The Court, of course, should not adjudicate this argument until it grants the President relief under the All Writs Act and Chairman Neal actually requests the President's state returns (and states what his

purpose is). Until then, this argument is not a basis to dismiss the President's complaint because he has plausibly alleged that the Chairman's request will lack a legitimate legislative purpose. *See* Am. Compl. ¶¶8, 75-76, 2-5, 29-35, 65-70.

When and if the time comes to litigate whether the Congressional Defendants have a legitimate legislative purpose for requesting the President's state returns, the President will almost certainly prevail. The Congressional Defendants admit that the Committee has no "jurisdiction over New York taxes or tax forms." Mot. 27. While the Committee has jurisdiction over "federal tax issues," Mot. 27, a targeted subpoena for the President's tax returns would not be pertinent to general tax legislation; it could only be pertinent to "an investigation into *presidential*" tax legislation. *Mazars*, 940 F.3d at 733. Even then, the Committee would have to prove that legislation was its "'*actual* purpose'" and not a "'retroactive rationalization'"—which would be nearly impossible given what has been "'stated publicly'" and the fact that, if Congress were truly interested in federal tax legislation, it would request the President's *federal* tax returns. *Id.* at 726. Tying a request for the President's state returns to the Committee's pending request for his federal returns would not help, as that request was itself an illegal attempt to expose his private tax information. Am. Compl. ¶¶28-35. Tying the request to the "House's impeachment inquiry" wouldn't help either, Mot. 27, as the Committee has no jurisdiction over impeachment and the President's state tax returns have nothing to do with the pending inquiry.

In short, the President has many meritorious objections to a request for his state tax returns. This Court should grant him relief under the All Writs Act so he can raise them—and the Congressional Defendants can respond to them—at the appropriate time.

## CONCLUSION

The Congressional Defendants end their motion by calling the President's lawsuit "as brazen as it is extreme," stressing that the D.C. Circuit "long ago" cautioned the judiciary against interfering

with legislative independence. Mot. 30. But even longer ago, "in language which time has not dimmed," the Supreme Court stressed an even stronger imperative:

> "Especially is it competent and proper for this court to consider whether its (the legislature's) proceedings are in conformity with the Constitution and laws, because, living under a written constitution, no branch or department of the government is supreme; and it is the province and duty of the judicial department to determine in cases regularly brought before them, whether the powers of any branch of the government … have been exercised in conformity to the Constitution; and if they have not, to treat their acts as null and void."

*Powell*, 395 U.S. at 506 (quoting *Kilbourn*, 103 U.S. at 199). What is "brazen" and "extreme" about this case is not the President's request for an opportunity to have his day in court. It is the Congressional Defendants' insistence that they can steamroll a sitting President and unilaterally obtain his confidential tax information without giving him any notice or opportunity to be heard. In cases like this one, where the "separation-of-powers concerns" that accompany interbranch disputes "linger in the air," *Mazars*, 940 F.3d at 726, "each branch should take cognizance of an implicit constitutional mandate to seek optimal accommodation through a realistic evaluation of the needs of the conflicting branches in the particular fact situation." *AT&T*, 567 F.2d at 127. Only the President's proposal does that.

For all these reasons, this Court should grant the President's motion for relief under the All Writs Act and hold the Congressional Defendants' motion to dismiss in abeyance until Chairman Neal notifies the Court that he will request the President's state tax returns or the Congressional Defendants represent to the Court that no such request will be made.

Dated: November 12, 2019

Respectfully submitted,

  *s/ William S. Consovoy*

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

William S. Consovoy (D.C. Bar #493423)
Thomas R. McCarthy (D.C. Bar #489651)
Cameron T. Norris
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
tom@consovoymccarthy.com
cam@consovoymccarthy.com

*Counsel for President Donald J. Trump*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD J. TRUMP, | |
| Plaintiff, | |
| v. | Case No. 1:19-cv-2173-CJN |
| COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES; RICHARD NEAL, in his official capacity as Chairman of the House Ways and Means Committee; ANDREW GROSSMAN, in his official capacity as Chief Tax Counsel of the House Ways and Means Committee; LETITIA JAMES, in her official capacity as Attorney General of New York State; and MICHAEL R. SCHMIDT, in his official capacity as Commissioner of the New York State Department of Taxation and Finance, | |
| Defendants. | |

## [PROPOSED] ORDER HOLDING IN ABEYANCE THE
## CONGRESSIONAL DEFENDANTS' MOTION TO DISMISS

In light of its order granting Plaintiff's emergency application for relief under the All Writs Act, the Court **HOLDS IN ABEYANCE** the Congressional Defendants' motion to dismiss (Doc. 42) until further notice.

_____         _____
Date                                                        **CARL J. NICHOLS**
                                                                   United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD J. TRUMP,<br><br>                               Plaintiff,<br><br>v.<br><br>COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES; RICHARD NEAL, in his official capacity as Chairman of the House Ways and Means Committee; ANDREW GROSSMAN, in his official capacity as Chief Tax Counsel of the House Ways and Means Committee; LETITIA JAMES, in her official capacity as Attorney General of New York State; and MICHAEL R. SCHMIDT, in his official capacity as Commissioner of the New York State Department of Taxation and Finance,<br><br>                               Defendants. | Case No. 1:19-cv-2173-CJN |

## DECLARATION OF WILLIAM S. CONSOVOY

1.      I am an attorney at the law firm Consovoy McCarthy PLLC and counsel for Plaintiff Donald J. Trump.

2.      I am over the age of eighteen and under no mental disability or impairment. I have personal knowledge of the following facts and, if called as a witness, would competently testify to them.

3.      Exhibit A to this declaration is a true and accurate copy of an email I received on July 24, 2019 from Douglas Letter, counsel for the Congressional Defendants.

Per 28 U.S.C. §1746, I declare under penalty of perjury that the above is true and correct to the best of my knowledge.

Executed on November 12, 2019.

_/s/ William S. Consovoy_

# Exhibit A



Cameron Norris <cam@consovoymccarthy.com>

---

## Trump v. Ways and Means Committee

**Letter, Douglas** <Douglas.Letter@mail.house.gov>                    Wed, Jul 24, 2019 at 2:44 PM
To: William Consovoy <will@consovoymccarthy.com>, "Tatelman, Todd" <Todd.Tatelman@mail.house.gov>, "Hanner, Brooks" <Brooks.Hanner@mail.house.gov>, "Barbero, Megan" <Megan.Barbero@mail.house.gov>, "Morse, Jodie" <Jodie.Morse@mail.house.gov>
Cc: Tom McCarthy <tom@consovoymccarthy.com>, Cameron Norris <cam@consovoymccarthy.com>, Patrick Strawbridge <patrick@consovoymccarthy.com>

Will

Thank you for reaching out to us on this matter.  We consulted with the Ways & Means Committee.  We understand that you have suggested that the Committee could agree to notify your client before making any request under the New York state law.  The Committee cannot agree to such notification.  We also understand that you alternatively proposed that the Committee would pledge not to make any request under the New York law at least for some set period.  The Committee also cannot agree to that condition.

We nevertheless are happy to work with you on a proposed litigation schedule.

If you do seek emergency relief, please notify us as soon as possible.  In your filing, please report to the court that the Committee opposes any injunctive relief against the Committee, which has absolute immunity from suits like this one under the Supreme Court's application of the Speech or Debate Clause in the Constitution.  We shortly plan to file a motion to dismiss the Committee as a defendant on that ground.

*Douglas N. Letter*

*General Counsel*

*Office of General Counsel*

*U.S. House of Representatives*

*219 Cannon House Office Building*

*Washington, DC  20515*

*Douglas.Letter@mail.house.gov*

*(202) 225-9700*

**From:** William Consovoy <will@consovoymccarthy.com>
**Sent:** Wednesday, July 24, 2019 8:41 AM
**To:** Letter, Douglas <Douglas.Letter@mail.house.gov>; Tatelman, Todd <Todd.Tatelman@mail.house.gov>
**Cc:** Tom McCarthy <tom@consovoymccarthy.com>; Cameron Norris <cam@consovoymccarthy.com>; Patrick Strawbridge <patrick@consovoymccarthy.com>
**Subject:** Re: Trump v. Ways and Means Committee

Todd,

[Quoted text hidden]
[Quoted text hidden]