**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DONALD J. TRUMP,

       *Plaintiff*,

  v.

COMMITTEE ON WAYS AND MEANS,
UNITED STATES HOUSE OF
REPRESENTATIVES, *et al.*,

      *Defendants*.

No. 19-cv-2173 (CJN)

<u>**COMMITTEE DEFENDANTS' REPLY**</u>
<u>**IN SUPPORT OF THEIR MOTION TO DISMISS**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.    This Court Lacks Jurisdiction ................................................................................... 2

    A.    The All Writs Act Does Not Provide Jurisdiction .................................................. 2

    B.    Mr. Trump Lacks Standing and This Case Is Not Ripe .......................................... 8

    C.    The Committee Defendants Are Absolutely Immune from Suit .......................... 10

II.   Mr. Trump Has Failed to State a Claim on the Merits .............................................. 16

    A.    Mr. Trump's Claim Under Article I and the House Rules Must Be Dismissed ... 16

    B.    Mr. Trump's First Amendment Claim Must Be Dismissed .................................. 17

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. Obama,*
  753 F.3d 193 (D.C. Cir. 2014) ...................................................................................7

*Aetna Life Ins. Co. of Hartford v. Haworth,*
  300 U.S. 227 (1937) ..................................................................................................16

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..................................................................................................16

*AstraZeneca Pharm. LP v. Burwell,*
  197 F. Supp. 3d 53 (D.D.C. 2016) .............................................................................5

*Belbacha v. Bush,*
  520 F.3d 452 (D.C. Cir. 2008) ...............................................................................5, 7

*Bogan v. Scott-Harris,*
  523 U.S. 44 (1998) ....................................................................................................10

*Brown & Williamson Tobacco Co. v. Williams,*
  62 F.3d 408 (D.C. Cir. 1995) ....................................................................................13

*Calvetti v. Antcliff,*
  346 F. Supp. 2d 92 (D.D.C. 2004) ............................................................................18

*Carlisle v. United States,*
  517 U.S. 416 (1996) ....................................................................................................3

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) .................................................................................................3, 8

*Clark v. Library of Cong.,*
  750 F.2d 89 (D.C. Cir. 1984) ....................................................................................16

*Clinton v. Goldsmith,*
  526 U.S. 529 (1999) ....................................................................................................3

*Cofield v. United States,*
  64 F. Supp. 3d 206 (D.D.C. 2014) ............................................................................16

*Doe v. McMillan,*
  412 U.S. 306 (1973) ..................................................................................................11

*Dombrowski v. Eastland,*
  387 U.S. 82 (1967) ....................................................................................................15

ii

*Eastland v. U.S. Servicemen's Fund*,
 421 U.S. 491 (1975)............................................................................................10, 11

*Ex parte McCardle*,
 74 U.S. (7 Wall.) 506 (1868) ........................................................................................3

*Gravel v. United States*,
 408 U.S. 606 (1976)..........................................................................................13, 14, 15

*Hearst v. Black*,
 87 F.2d 68 (D.C. Cir. 1936).........................................................................................9

*Keener v. Congress*,
 467 F.2d 952 (5th Cir. 1972) ......................................................................................16

*Kilbourn v. Thompson*,
 103 U.S. 168, 203 (1880)......................................................................................11, 15

*Kiyemba v. Obama*,
 561 F.3d 509 (D.C. Cir. 2009) .....................................................................................7

*Lane v. Peña*,
 518 U.S. 187 (1996).....................................................................................................16

*McLean v. United States*,
 566 F.3d 391 (4th Cir. 2009) ......................................................................................16

*Middlebrooks v. Godwin Corp.*,
 722 F. Supp. 2d 82 (D.D.C. 2010)..............................................................................18

*MINPECO, S.A. v. Conticommodity Servs., Inc.*,
 844 F.2d 856 (D.C. Cir. 1988) ....................................................................................13

*Pennsylvania Bureau of Correction v. U.S. Marshals Service*,
 474 U.S. 34 (1985).........................................................................................................5

*Powell v. McCormack*,
 395 U.S. 486 (1969).....................................................................................................15

*Rangel v. Boehner*,
 785 F.3d 19 (D.C. Cir. 2015)...........................................................................10, 11, 14, 15

*Rockefeller v. Bingaman*,
 234 F. App'x 852 (10th Cir. 2007) .............................................................................16

*Senate Permanent Subcomm. on Investigations v. Ferrer*,
 856 F.3d 1080 (D.C. Cir. 2017)...........................................................................9, 11, 12, 13

*Shuler v. United States,*
    531 F.3d 930 (D.C. Cir. 2008)....................................................................................16

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998)..............................................................................................3, 4

*Swan v. Clinton,*
    100 F.3d 973 (D.C. Cir. 1996)................................................................................15

*Telecommc'ns Research & Action Ctr. v. FCC,*
    750 F.2d 70 (D.C. Cir. 1984).....................................................................................4

*Trump v. Mazars USA, LLP,*
    940 F.3d 710 (D.C. Cir. 2019)......................................................................11, 12, 17

*United States v. Ausby,*
    No. 72-cr-67, 2019 WL 2870232 (D.D.C. July 3, 2019).............................................4

*United States v. Brewster,*
    408 U.S. 501 (1972)...............................................................................................14

*United States v. City of New York,*
    972 F.2d 464 (2d Cir. 1992).......................................................................................4

*United States v. Denedo,*
    556 U.S. 904 (2009)............................................................................................3, 4

*United States v. Helstoski,*
    442 U.S. 477 (1979)...............................................................................................12

*Wagner v. Taylor,*
    836 F.2d 566 (D.C. Cir. 1987)...................................................................................5

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990)..................................................................................................8

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008).....................................................................................................7

**Federal Statute**

28 U.S.C. § 1651............................................................................................................3, 6

**State Statute**

Tax Returns Released Under Specific Terms Act (TRUST Act),
    NY Tax Law § 697 (2019)....................................................................................9, 14

**Federal Rules of Civil Procedure**

iv

Rule 12 ......................................................................................................................................14

## INTRODUCTION

Mr. Trump asks this Court to grant extraordinary and unprecedented relief against a Committee of the U.S. House of Representatives, its Chairman, and a Committee staffer in a case that this Court has no jurisdiction to hear.  Mr. Trump concedes in the first sentence of his brief that this case is not now justiciable.  There is no case or controversy because Mr. Trump has no injury—the Committee has not made a request under New York's TRUST Act for Mr. Trump's tax returns and the New York defendants have not responded to any such hypothetical request. That should be the end of the matter.  But Mr. Trump instead makes an astounding request:  that this Court enjoin the Committee Defendants by imposing a notice requirement on their decisionmaking process and halting the Committee from taking action to obtain information in pursuit of legislative ends.  Undersigned counsel is not aware of any court ever issuing such an order against a Congressional committee or Member of Congress.

In an attempt to obtain this prohibited relief, Mr. Trump invokes the All Writs Act.  The Act is not the panacea that Mr. Trump envisions, and his arguments disregard the text of the statute and the case law interpreting it.  The Act does not, as Mr. Trump would have it, authorize this Court to act in a case where it does not now and will never have jurisdiction.  Nor does the Act permit courts to issue the type of relief that Mr. Trump seeks—an affirmative injunction of indeterminate duration that would disrupt legislative activity by otherwise absolutely immune Congressional defendants.

If this Court were to accept Mr. Trump's invitation to grant relief against the Committee Defendants in an admittedly nonjusticiable case, there would be nothing to stop any putative plaintiff from seeking relief under the All Writs Act to obtain notice of and a prohibition on any future Congressional act that the plaintiff speculates might cause harm on a short time-frame. Under Mr. Trump's theory, an individual could enjoin a Congressional committee from issuing a

subpoena to a third party if the individual believed the subject of the subpoena might promptly comply. Such a result would constitute a sweeping interference by the Judiciary with a coordinate branch of government and should not be countenanced. The All Writs Act—a Congressional statute—cannot be interpreted to override Article III's case-or-controversy requirement or Congress's Article I legislative authority and Speech or Debate immunity.

At bottom, Mr. Trump's complaint is directed to the now dismissed New York defendants, not the Committee Defendants. As this Court noted in dismissing the New York defendants, among other options for relief, Mr. Trump could "sue either New York Defendant in another forum (presumably in New York)." Mem. Op. at 2 (Nov. 11, 2019), ECF No. 44. That Mr. Trump has not chosen to pursue that path does not mean he is entitled to unprecedented relief against the House.

This Court should deny Mr. Trump's request for extraordinary relief and grant the Committee Defendants' motion to dismiss.

## ARGUMENT

### I.    This Court Lacks Jurisdiction

#### A.    The All Writs Act Does Not Provide Jurisdiction

Mr. Trump concedes that this case is not currently justiciable.[1] Undeterred by the lack of a case or controversy, Mr. Trump asks this Court to exercise jurisdiction on the theory that the case might at some unspecified time become justiciable, and he invites the Court in the meantime to enjoin a Committee of Congress in the exercise of its legislative power. The Court lacks authority to grant that extraordinary request.

---

[1] Pl.'s Mem. of Points & Authorities in Opp'n to the Cong. Defs.' Mot. to Dismiss (Opp'n) at 1 (Nov. 12, 2019), ECF No. 46.

**1.** "Without jurisdiction the court cannot proceed at all in any cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* The requirement "that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (quotation marks and alteration omitted).

A plaintiff has standing to sue to prevent a "certainly impending" injury before it occurs, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013), but Mr. Trump recognizes that his claimed injury "is not sufficiently imminent" and that the case is not currently justiciable. Opp'n 9. The Court should therefore dismiss this suit. But Mr. Trump asks this Court to enter an injunction against the Committee and to hold this case in abeyance regardless, arguing that the All Writs Act authorizes stopgap relief during the period until the Committee makes any request for Mr. Trump's tax returns. This argument badly misconstrues the Act.

The All Writs Act provides that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act "is a residual source of authority to issue writs that are not otherwise covered by statute." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (quotation marks omitted). But the Act "cannot enlarge a court's jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 535 (1999) (quotation marks omitted); *see also United States v. Denedo*, 556 U.S. 904, 914 (2009) (a court's "authority to issue a writ under the All Writs Act is not a font of jurisdiction"). Instead, the Act authorizes a court to issue residual *relief* in cases over which the court otherwise has jurisdiction.

"The power to issue relief" accorded by the All Writs Act "depends upon, rather than enlarges, a court's jurisdiction." *Denedo*, 556 U.S. at 912.

The All Writs Act therefore does not—and could not—dispense with Article III's case-or-controversy requirement. *See Steel Co.*, 523 U.S. at 94-95 (emphasizing that the requirement is "without exception"). Indeed, the Supreme Court has rejected Mr. Trump's interpretation of the Act, explaining that "a court's power [under the Act] to issue any form of relief—extraordinary or otherwise—is contingent on that court's subject-matter jurisdiction over the case or controversy." *Denedo*, 556 U.S. at 911. The D.C. Circuit has similarly made clear that "[t]he All Writs Act is not an independent grant of jurisdiction to a court; it merely permits a court to issue writs in aid of jurisdiction acquired to grant some other form of relief." *Telecommc'ns Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984). The Second Circuit has noted that the Act cannot "confer on the courts the power to ignore the case or controversy requirement, which is rooted in Article III of the constitution's definition of judicial power." *United States v. City of New York*, 972 F.2d 464, 470 (2d Cir. 1992). And another judge of this Court recently rejected a petition under the All Writs Act because the petitioner "has neither established that he suffers an injury in fact, nor that any such injury would be redressed by issuance of the writ." *United States v. Ausby*, No. 72-cr-67, 2019 WL 2870232, at *7 (D.D.C. July 3, 2019).

Mr. Trump does not attempt to distinguish these precedents, nor does he explain how the All Writs Act—a statute—could overcome the Constitution's limits on the exercise of federal judicial power. Instead, Mr. Trump quotes various decisions out of context to suggest that relief under the All Writs Act may be available whenever a litigant would prefer to preserve the status

quo—or even alter it in his favor—while a potential lawsuit ripens.  None of Mr. Trump's cases supports his position.

In *Pennsylvania Bureau of Correction v. U.S. Marshals Service*, 474 U.S. 34 (1985), the Supreme Court characterized the All Writs Act as providing for relief not otherwise provided by statute—but the Court never suggested that the Act could create jurisdiction that was otherwise absent, and in any event the Court concluded that relief under the Act was unavailable in that case.  *Id.* at 41, 43.  In *Wagner v. Taylor*, 836 F.2d 566 (D.C. Cir. 1987), the D.C. Circuit held that a district court had discretion to award temporary "relief" to a Title VII plaintiff under the All Writs Act while the plaintiff satisfied an administrative exhaustion requirement—but the district court's jurisdiction over the plaintiff's claim in that case was "incidental to [its] jurisdiction to review final agency action."  *Id.* at 570-71.  In *Belbacha v. Bush*, 520 F.3d 452, 455 (D.C. Cir. 2008), the D.C. Circuit noted that courts may, in cases presenting "substantial" jurisdictional questions, award relief pursuant to the All Writs Act to preserve the status quo while they determine whether they have jurisdiction—but this case presents no such substantial question given that Mr. Trump concedes that this Court does not now have jurisdiction.  Finally, in *AstraZeneca Pharm. LP v. Burwell*, 197 F. Supp. 3d 53 (D.D.C. 2016), another judge of this Court ordered interstitial relief under the All Writs Act while an administrative process concluded—but the court asserted jurisdiction over the case only in the face of a claim by the plaintiffs that they faced a sufficiently "imminent" injury giving rise to an Article III controversy, *id.* at 55, whereas Mr. Trump here acknowledges that his "injury is not sufficiently imminent," Opp'n 9.

None of these cases holds that the All Writs Act confers a court with jurisdiction that is clearly lacking.  Nor do any of these cases suggest that the All Writs Act permits a court to award relief in violation of Article III.

**2.**  Even under Mr. Trump's understanding of the All Writs Act, relief would be unavailable here.  Mr. Trump maintains that the All Writs Act provides this Court with jurisdiction to issue temporary injunctive relief against the Committee in advance of a potential request for Mr. Trump's New York tax returns.  Opp'n 9-10.  But the Committee may never make such a request, and its decision whether to do so is entirely discretionary.  Under Mr. Trump's theory, the All Writs Act would give this Court jurisdiction to enjoin the Committee in anticipation of a request that it might never make.  A statute that authorizes courts to award "intersti[tial]" relief, as Mr. Trump characterizes it, Opp'n 9, cannot authorize this Court indefinitely to enjoin the Committee through at least the end of the current Congress.

Mr. Trump also asserts that the All Writs Act is designed to "preserve the status quo" pending the ripening of a justiciable case or controversy.  Opp'n 6.  But the relief he seeks—an affirmative injunction imposing an indefinite notice requirement on a Congressional committee and preventing the Committee from acting during the notice period—would do much more than preserve the status quo.  Mr. Trump's requested relief would affirmatively obligate a Congressional committee to provide advance notice of how it intends to exercise its investigative and legislative authority under Article I, and would impose this obligation in the absence of any such requirement in the TRUST Act or in the House Rules.  That is not the status quo.

Finally, Mr. Trump recognizes that the All Writs Act allows courts to award relief only "in aid of" their jurisdiction—a limitation spelled out in the statutory text.  28 U.S.C. § 1651(a).  But, as explained in more detail below, this Court will never have jurisdiction over Mr. Trump's

claim.  The Committee's decisionmaking about whether to gather information for its work is plainly covered by the Constitution's Speech or Debate Clause, which shields from judicial scrutiny legislative acts, including information requests by Congressional committees and the deliberative process preceding such requests.  Because the Committee Defendants are absolutely immune from suit for the conduct alleged here, this Court will lack jurisdiction over this case even if it ripens into a case or controversy.  This Court cannot grant temporary relief "in aid of" any future jurisdiction and can do nothing other than grant the motion to dismiss.

**3.**  Even if the All Writs Act had some role to play in this case, Mr. Trump would not be entitled to the preliminary relief he seeks.  The D.C. Circuit has explained that parties may in appropriate circumstances obtain preliminary relief "pursuant to the All Writs Act," but only "if [the] party satisfies the criteria for issuing a preliminary injunction."  *Belbacha*, 520 F.3d at 457. And the D.C. Circuit has rejected the suggestion that parties may obtain preliminary All Writs Act relief "regardless of their ability to make a showing on the four factors for granting preliminary relief."  *Kiyemba v. Obama*, 561 F.3d 509, 513 n.3 (D.C. Cir. 2009).  Mr. Trump therefore must satisfy the requirements for a preliminary injunction in order to obtain his requested relief, which he has failed to do.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  A party seeking a preliminary injunction must establish (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest."  *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quotation marks omitted).  For the reasons discussed below and in the motion to dismiss, Mr. Trump

cannot satisfy the requirements for a preliminary injunction because his claims against the

Committee Defendants will not succeed on the merits.  And Mr. Trump has not even attempted

to argue that the equities and public interest favor an injunction, which may explain why he

styles his request as a bid for relief under the All Writs Act rather than a more typical motion for

a preliminary injunction.  Even if the Court construed the All Writs Act to apply here, Mr.

Trump's claim to preliminary relief would fail.

### B.      Mr. Trump Lacks Standing and This Case Is Not Ripe

Mr. Trump does not have Article III standing because he has disavowed any cognizable

injury caused by the Committee and cannot establish traceability and redressability.  Mr. Trump

concedes that this case is not now justiciable.  That is sufficient to grant the motion to dismiss.

**1.**  Mr. Trump concedes that he is suffering no current harm and that he will never be

injured by any *Committee request* for his state tax information.  Rather, Mr. Trump asserts that

he "will be injured *when New York discloses* his confidential tax information to the Committee."

Opp'n 11 (emphasis added).[2]  This asserted injury is entirely speculative:  Mr. Trump does not—

and cannot—claim that any hypothetical future harm from a release of his returns by New York

is "certainly impending."  *Clapper*, 568 U.S. at 401; *see also Whitmore v. Arkansas*, 495 U.S.

149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of

Art[icle] III.").

Mr. Trump's response on causation fares no better. Although he maintains that Article

III's traceability requirement is met because the release of the returns by New York "would not

be *independent*" of any future request by the Committee, Opp'n 11 (quotation marks omitted),

this is belied by the language of the TRUST Act.  The statute contains key preconditions to New

---

[2] *See also* Mem. of Law in Supp. of Comm. Defs.' Mot. to Dismiss (Mot.) at 8-11; Hr'g
Tr. at 45 (Sept. 18, 2019).

York's processing of any request and release of information that interrupt the causal chain.  *See* NY Tax Law § 697(f-1)(2); Hr'g Tr. at 42 (July 29, 2019) (Counsel for New York: "There is this certification requirement and it needs to be part of the process."); *id.* at 45-46 (only "a request that carries the certification" would "meet[] the criteria of the statute").  The Act also has limiting language providing that "no reports or returns *shall be furnished … unless*" the certification requirement and other preconditions for release are met.  NY Tax Law § 697(f-1)(2) (emphasis added); *see also id.* § 697(f-1)(1) (providing that the Commissioner "shall redact" certain information "prior to furnishing any report or return").  If use of the TRUST Act causes any injury to Mr. Trump, that injury would be traceable to New York.

Mr. Trump's argument on redressability also fails to contend with the serious separation-of-powers concerns raised by the relief he seeks.  It is true, as Mr. Trump argues, but irrelevant to the separation-of-powers analysis, that certain cases cited in our motion to dismiss involved Congressional committees that had already "received documents."  Opp'n 13.  The D.C. Circuit reasoned in *Senate Permanent Subcommittee on Investigations v. Ferrer* that judicial interference with the "committee's use of material in its physical possession would … 'destroy[]' the independence of the Legislature and 'invade[]' the constitutional separation of powers."  856 F.3d 1080, 1086 (D.C. Cir. 2017) (quoting *Hearst v. Black*, 87 F.2d 68, 72 (D.C. Cir. 1936)).  That reasoning applies equally to judicial intrusion into any Committee deliberations over whether to request materials from New York.

**2.**  Mr. Trump's suit is also not ripe.  Opp'n 1 (not disputing that the "claim is not currently ripe").  Mr. Trump makes no effort to argue that his claims satisfy either the jurisdictional or prudential ripeness requirements raised by Committee Defendants.  Mot. 14-15.

Because Mr. Trump's claims are not ripe for resolution, the Court has no jurisdiction over this case.

### C.       The Committee Defendants Are Absolutely Immune from Suit

**1.** Mr. Trump tellingly does not engage with the Committee Defendants' argument on the central question of how Speech or Debate immunity should be applied. *See* Mot. 15-23. The Committee Defendants are absolutely immune from suit because the actions Mr. Trump challenges are legislative in nature. *See* Mot. 19 (discussing complaint's allegations about the Committee's activities). The Committee's deliberation about whether to request information for use in drafting and considering legislation, *see* Am. Compl. ¶ 11, is quintessential legislative activity. Thus, the conduct Mr. Trump challenges—as alleged in his complaint—falls squarely within the scope of the Speech or Debate Clause. This Court therefore lacks jurisdiction and the complaint must be dismissed.

As the D.C. Circuit emphasized in *Rangel v. Boehner*, 785 F.3d 19 (D.C. Cir. 2015)— precedent that Mr. Trump does not address—to determine whether Speech or Debate immunity applies when a Congressional defendant is sued, the Court "look[s] to [plaintiff's] complaint to determine whether he challenges legislative or nonlegislative conduct." *Id.* at 23. If the challenged conduct is "legislative in nature," the Congressional defendant is absolutely immune from suit. *Id.* at 24; *see also Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502-03 (1975). The Supreme Court and the D.C. Circuit have stressed that "the standard for determining whether an act is legislative 'turns on the nature of the act' itself." *Rangel*, 785 F.3d at 24 (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)). The act at issue here—determining whether to seek information for the Committee's work—is plainly legislative in nature.

Mr. Trump instead focuses on whether the Committee Defendants would have a legitimate legislative *purpose* for any request that might be made. *See* Opp'n 14-15. But that

argument confuses the question whether an act is legislative in nature with the question whether an act would be lawful.  As the D.C. Circuit has made clear, "an act does not lose its legislative character simply because a plaintiff alleges that it violated the House Rules, or even the Constitution." *Rangel*, 785 F.3d at 24 (citing *Kilbourn v. Thompson*, 103 U.S. 168, 203 (1880), *Doe v. McMillan*, 412 U.S. 306, 312-13 (1973), and *Eastland*, 421 U.S. at 509-10).  Mr. Trump does not dispute this point, which forecloses his suit.

Mr. Trump erroneously suggests that the D.C. Circuit in *Ferrer* held that "[c]ourts can grant relief against a congressional committee when it lacks a 'legitimate legislative purpose.'" Opp'n 14 (quoting *Ferrer*, 856 F.3d at 1087).  Mr. Trump fails to note that in the paragraph he cites, the D.C. Circuit stated that it was "tak[ing] no position" on that question, which was "not before [the Court]." *Ferrer*, 856 F.3d at 1087.

**2.**  The question whether a Congressional request for information has a "valid legislative purpose" can arise when a Congressional committee seeks the aid of the judiciary in enforcing a subpoena.  An example is the *Mazars* case.  *See* Opp'n 14; *see generally Trump v. Mazars USA, LLP*, 940 F.3d 710, 721-23 (D.C. Cir. 2019).  Mr. Trump suggests that the House Committee on Oversight and Reform in *Mazars* "would have raised" legislative immunity "if it thought it could." Opp'n 1.  But *Mazars* has no bearing on the Speech or Debate analysis because the Oversight Committee opted not to invoke Speech or Debate immunity and instead affirmatively intervened in that case to defend the validity of its subpoena, which the D.C. Circuit then held was valid and enforceable.

Mr. Trump misstates both the facts of the *Mazars* litigation and the relevance of that case to the Speech or Debate analysis.  As counsel for Plaintiff knows,[3] the Oversight Committee

---

[3] Mr. Trump is represented by the same counsel here and in *Mazars*.

elected to participate as a party in the *Mazars* litigation with the consent of Mr. Trump and the
other plaintiffs.  As the Oversight Committee explained, it sought to intervene "to defend its
significant interest in the validity and enforcement of its subpoena to Mazars."  Consent Mot. to
Intervene at 2, *Trump v. Comm. on Oversight & Reform*, 380 F. Supp. 3d 76 (D.D.C. 2019) (No.
19-1136), ECF No. 12.  Counsel for plaintiffs in *Mazars* agreed to voluntarily dismiss the
original Committee defendants (the then-Chairman and a staffer) and to litigate the validity of
the subpoena against the intervenor Committee.  That the Oversight Committee *intervened* in a
suit to defend the validity of its subpoena and chose not to assert Speech or Debate immunity has
no bearing on whether the Oversight Committee could have "raised legislative immunity as a
defense."  Opp'n 1 (emphasis omitted).

Mr. Trump's assertion that the decision to intervene in *Mazars* is relevant to the
Committee Defendants' Speech or Debate immunity here cannot be squared with the D.C.
Circuit's decision in *Ferrer*.  There, the D.C. Circuit held that Speech or Debate immunity barred
the Court from ordering a Senate subcommittee to return or destroy subpoenaed documents, even
where the subcommittee had filed suit to enforce the subpoena.  *See Ferrer*, 856 F.3d at 1085-87.
The D.C. Circuit rejected the argument that by "seeking to enlist the judiciary's assistance in
enforcing its subpoena," the Senate subcommittee had "necessarily accepted an implicit
restriction on the Speech or Debate Clause."  *Id.* at 1087 (explaining that "waiver of
congressman's Speech or Debate Clause immunity, assuming such waiver is possible, would
require '[a]n explicit and unequivocal renunciation'" (quoting *United States v. Helstoski*, 442
U.S. 477, 490-91 (1979))).  *Ferrer* establishes that a Congressional entity can file suit to enforce
a subpoena and then invoke Speech or Debate immunity at a later stage of the case to protect its

legislative activity with respect to the subpoenaed documents.  *Ferrer* forecloses Mr. Trump's argument.

Mr. Trump also makes no effort to grapple with the Committee Defendants' discussion of *Brown & Williamson Tobacco Co. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995).  *See* Mot. 22-23. The D.C. Circuit in *Brown & Williamson* applied the same Speech or Debate analysis detailed in the Committee Defendants' motion: it examined the *nature* of the activity—use of documents for legislative business—to determine whether that conduct was legislative.  62 F.3d at 417, 421-22; *see also Ferrer*, 856 F.3d at 1086.  *Brown & Williamson* recognized that Speech or Debate immunity should not apply if Members of Congress themselves carried out an illegal arrest or stole documents, but its reasoning was that "[s]uch acts" are not "essential to legislating."  62 F.3d at 421 (quoting *Gravel v. United States*, 408 U.S. 606, 621 (1976)).  Mr. Trump's complaint challenges only legislative conduct covered by the Speech or Debate Clause.

If instead of suing the Committee Defendants, Mr. Trump filed suit against a third-party to enjoin compliance with any future request the Committee might make, the Committee could choose to intervene in that suit to protect its interest in enforcement of the request—and not assert its Speech or Debate immunity.  Alternatively, the Committee could decide not to intervene and to allow the third-party litigation run its course.  In either case, the court could ask whether the request had a valid legislative purpose and was enforceable.  But that would be a case like *Mazars*, and unlike this one, where Speech or Debate immunity is not at issue.

Nothing about the nature of the relief Mr. Trump now seeks changes the outcome.  *See Brown & Williamson*, 62 F.3d at 418 (explaining that, if the activity is "part of the legislative process," that is "'the end of the matter' [for] … the courts" (quoting *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 861 (D.C. Cir. 1988)).  The Speech or Debate Clause

provides absolute immunity from suit, which does not yield merely because the requested relief is described as a "modest" notice requirement or a declaration. *See* Opp'n 6, 15. Nor does it matter for Speech or Debate purposes whether Mr. Trump is ultimately injured. As the Committee has explained and as Mr. Trump does not dispute, the immunity granted by the Clause may require that possible injuries be left unredressed, "but that was the conscious choice of the Framers." *United States v. Brewster*, 408 U.S. 501, 516 (1972).

**3.** Mr. Grossman enjoys the same absolute immunity as the Committee. As Mr. Trump appears to recognize, the law is clear that Congressional staff are protected by the Clause for acts "that would be immune legislative conduct" if performed by Members. Opp'n 19 (quoting *Gravel*, 408 U.S. at 622). Mr. Trump alleges that Mr. Grossman is "responsible for drafting, approving, sending, and reviewing any request for the President's state tax returns," Am. Compl. ¶ 15,[4] which "the Committee will use … to draft and consider legislation," *id.* ¶ 11. These alleged acts are "legislative in nature," *Rangel*, 785 F.3d at 24, and entirely immune from challenge. *See* Mot. 19-20. Indeed, Mr. Trump's argument as to Mr. Grossman cannot be reconciled with *Rangel*, which held that "the Supreme Court has extended the Speech or Debate Clause to aides from all walks of legislative life, including committee staffers," whose "conduct was legislative" in nature. *Rangel*, 785 F.3d at 25 (citing cases).

---

[4] As the Committee Defendants have explained, Mr. Trump's allegation about Mr. Grossman's duties is false. *See* Mot. 13 n.6. Because the Court may "consider evidence outside the pleadings to evaluate Article III standing," Opp'n 5, it should do so here to dismiss Mr. Grossman for the additional reason that Mr. Trump has absolutely no claim to any injury from him. Mr. Trump's complaint also fails to state a claim against Mr. Grossman under Federal Rule of Civil Procedure 12(b)(6); the responsibilities Mr. Trump attributes to Mr. Grossman conflict with the text of the TRUST Act, which permits only the "chairperson" of each of Congress' three tax committees to submit a request to the Commissioner. *See* NY Tax Law § 697(f-1)(1). Mr. Trump has no response to that statutory text.

Mr. Trump cites *Dombrowski v. Eastland*, 387 U.S. 82 (1967), for the proposition that the Court nonetheless can "limit[] its relief to a staffer." Opp'n 6 n.1, 15. This misrepresents the law. As the Supreme Court subsequently explained in *Gravel v. United States*, 408 U.S. at 618, *Dombrowski* "d[id] not hold that persons other than Members of Congress are beyond the protection of the Clause when they perform or aid in the performance of legislative acts." *Dombrowski* held only that the Congressional staff member had "engaged in illegal conduct that was not entitled to Speech or Debate Clause protection." *Gravel*, 408 U.S. at 620 (explaining the same as to *Powell v. McCormack*, 395 U.S. 486 (1969), and *Kilbourn*, which Mr. Trump also cites, Opp'n 19).

Mr. Trump cites *Swan v. Clinton*, 100 F.3d 973, 979-80 & n.3 (D.C. Cir. 1996), for the proposition that his claims against the Committee should be construed to "encompass relief against subordinate branch officials" such as Mr. Grossman. Opp'n 19. But *Swan*, which involved a claim against the President himself, is inapposite. Because the D.C. Circuit recognized that ordering the President "to perform particular executive acts" would "risk[] a violation of the constitutional separation of powers," the court avoided that concern by construing the complaint to seek "injunctive relief against subordinate officials" who were clearly susceptible to such relief. *Id.* at 987 (alteration and quotation marks omitted). Here, by contrast, the Supreme Court has made clear that Congressional staff are protected by the Speech of Debate Clause for acts to which immunity would attach if performed by Members. *See Gravel*, 408 U.S. at 622.

**4.** Mr. Trump's claim against the Committee Defendants is also barred by sovereign immunity, under which "[t]he United States is protected from unconsented suit." *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). "[S]overeign immunity extends to the United

States Congress when it is sued as a branch of government." *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009) (citing *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972)); *see, e.g.*, *Cofield v. United States*, 64 F. Supp. 3d 206, 213-14 (D.D.C. 2014) (same); *Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) (sovereign immunity foreclosed "claims against the House of Representatives and Senate as institutions, and Representative Pearce and Senator Bingaman as individuals acting in their official capacities" (quotation marks omitted)).

A plaintiff seeking to sue the federal government must identify a waiver of sovereign immunity that is "unequivocally expressed in statutory text." *Lane v. Peña*, 518 U.S. 187, 192 (1996) (waiver "will not be implied"). Yet Mr. Trump has pointed to no such waiver, and there is none. *See, e.g.*, *Clark v. Library of Cong.*, 750 F.2d 89, 103-04 (D.C. Cir. 1984) (holding that monetary claims against the Librarian of Congress in his official capacity were barred by sovereign immunity).

## II.      Mr. Trump Has Failed to State a Claim on the Merits

### A.      Mr. Trump's Claim Under Article I and the House Rules Must Be Dismissed

In opposing dismissal of his claim that any hypothetical TRUST Act request by the Committee would lack a valid legislative purpose, Opp'n 20-21, Mr. Trump necessarily asks this Court to fashion an "an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241 (1937). Mr. Trump does not explain how this Court could determine whether he has alleged "factual content" sufficient to allow the Court "to draw the reasonable inference" that the Committee Defendants are "liable" now for making a non-existent request for an unspecified purpose. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court cannot draw any conclusions as to the Committee's purpose before the Committee does anything.

Even now, Mr. Trump's complaint undercuts his argument that "[w]hen and if the time comes to litigate" over an actual request, "the President will almost certainly prevail." Opp'n 21. Mr. Trump has alleged that "the Committee will use the [President's tax] returns to draft and consider legislation." Am. Compl. ¶ 11. The Committee's use of his tax returns to consider legislation is highly probative of a valid legislative purpose, even assuming the inquiry governing the validity of Congressional subpoenas would apply to an information request authorized by a state law. *See Mazars*, 940 F.3d at 732 (question is whether investigation "was one on which legislation could be had" (quotation marks omitted)). The Committee Defendants highlighted Mr. Trump's concession about the Committee's legislative purpose, *see* Mot. 7, 19, 26, but he does not address it. Likewise, Mr. Trump fails even to mention the House Rules he claims the Committee Defendants are violating and offers no response to the Committee Defendants' demonstration that a hypothetical request could fall within the Committee's legislative jurisdiction. *See* Mot. 26-28; *cf.* Am. Compl. ¶ 75 (asserting that "*any* request under the TRUST Act would be … [for a] wholly impermissible goal" (emphasis added)). Count I must be dismissed.

## B.     Mr. Trump's First Amendment Claim Must Be Dismissed

The First Amendment claim that Mr. Trump describes in opposing the Committee Defendants' motion to dismiss differs substantially from the one in his complaint. Mr. Trump alleged in Count II that the TRUST Act violates the First Amendment because it "was enacted" by the New York legislature "to retaliate against the President because of his policy positions, his political beliefs, and his protected speech." Am. Compl. ¶ 80; *see id.* ¶¶ 78-79; *see also id.* ¶ 9 (alleging that the Act "violates the First Amendment" because "the *New York Legislature enacted it* to discriminate and retaliate against President Trump for his speech and politics" (emphasis added)).

Now that the New York Defendants have been dismissed, Mr. Trump attempts to preserve his claim by refashioning it against the Committee Defendants and arguing that *they* will violate his First Amendment rights if they ever determine to request his tax returns under the TRUST Act. *See* Opp'n 15-18. But a "plaintiff may not amend [his] complaint by the briefs in opposition to a motion to dismiss." *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010); *see, e.g.*, *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 107 (D.D.C. 2004) ("It is clear that the plaintiffs are now, through their pleadings, attempting to amend their complaint to properly allege a claim of conversion. This tactic is clearly impermissible." (collecting cases)).

Mr. Trump's First Amendment claim lies, if at all, against the New York Defendants alone, as the Committee Defendants *and* the New York Defendants have explained, *see* Mot. 28-30; New York Defs.' Ltr. (Sept. 25, 2019), ECF No. 41, and as Mr. Trump's complaint confirms. Mr. Trump has made no effort to respond to the Committee Defendants' arguments and cannot use his opposition brief to amend his complaint. Count II must be dismissed.

## CONCLUSION

The Committee Defendants respectfully request that this Court grant their motion to dismiss.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter (DC Bar No. 253492)
    *General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
    *Deputy General Counsel*
Megan Barbero (MA Bar No. 668854)
    *Associate General Counsel*
Josephine Morse (D.C. Bar No. 1531317)
    *Associate General Counsel*
Adam A. Grogg (D.C. Bar No. 1552438)
    *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL[*]
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
douglas.letter@mail.house.gov

*Counsel for the Committee Defendants*

November 15, 2019

---

[*] The Office of General Counsel wishes to acknowledge the assistance of law clerks Christine Coogle and Lily Hsu, students at The George Washington University Law School, and Nate King, a student at The Catholic University of America, Columbus School of Law, in preparing this brief.