```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3    Donald J. Trump,              ) Civil Action
                                    ) No. 19-CV-2173
 4                   Plaintiff,     )
                                    ) MOTION HEARING
 5    vs.                           )
                                    ) Washington, DC
 6    Committee on Ways and Means,  ) November 18, 2019
      et al.,                       ) Time:  2:00 p.m.
 7                                  )
                     Defendants.    )
 8    _____

 9                TRANSCRIPT OF MOTION HEARING
                          HELD BEFORE
10          THE HONORABLE JUDGE CARL J. NICHOLS
                  UNITED STATES DISTRICT JUDGE
11    _____

12                   A P P E A R A N C E S

13    For the Plaintiff: William S. CONSOVOY
                          Cameron Norris
14                        Jordan Call
                          CONSOVOY McCARTHY, PLLC
15                        1600 Wilson Blvd.
                          Suite 700
16                        Arlington, VA 22209
                          (703) 243-9423
17                        Email: Will@consovoymccarthy.com

18

      For Defendant:      Josephine T. Morse
19                        Megan Barbero
                          Todd Barry Tatelman
20                        Will Havemann
                          Adam Grogg
21                        U.S. HOUSE OF REPRESENTATIVES
                          Office of General Counsel
22                        219 Cannon House Office Building
                          Washington, DC 20515
23                        (202) 225-9700
                          Email: Jodie.morse@mail.house.gov
24                        Email: Megan.barbero@mail.house.gov
                          Email: Todd.tatelman@mail.house.gov
25
```

```
 1      Court Reporter:      Janice E. Dickman, RMR, CRR, CRC
                             Official Court Reporter
 2                           United States Courthouse, Room 6523
                             333 Constitution Avenue, NW
 3                           Washington, DC  20001
                             202-354-3267
 4
                                   *   *   *
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURTROOM DEPUTY:  Your Honor, this is civil

2     action 19-2173, Donald J. Trump versus Committee on Ways and

3     Means, United States of America House of Representatives,

4     et al.

5          Will the parties please come forward to this lectern,

6     identify yourselves for the record, please.

7          MR. CONSOVOY:  Good afternoon, Your Honor.  May it

8     please the Court, Will Consovoy on behalf of President Trump.

9     Along with me today are Cameron Norris and Jordan Call.

10          THE COURT:  Mr. Consovoy.

11          MS. MORSE:  Josephine Morse on behalf of the

12    Committee on Ways and Means, Chairman Neal and Andrew Grossman.

13          With the Court's indulgence, I wanted to offer

14    Mr. Letter's apologies that he was not able to be here this

15    afternoon.  We wanted me to convey to you that he was in the

16    D.C. Circuit this morning and had a long-standing engagement

17    out of town.

18          THE COURT:  Not a problem.

19          MS. MORSE:  One more preliminary, if you don't mind.

20    Megan Barbero, sitting right here, will be handling any

21    questions about the immunity, sovereign immunity or Speech and

22    Debate, and I'll be handling the rest of the argument.

23          THE COURT:  Okay.  That sounds fine.  Thank you, Miss

24    Morse.

25          MS. MORSE:  Thank you.

1          THE COURT:  Perhaps I'll call you back up, Ms. Morse.

2     Because, obviously, the parties have filed a lot of papers and

3     the congressional defendants asked for this hearing, which I

4     was happy to do, but I thought I'd start with you, perhaps just

5     to pose the question, if there are any additional arguments you

6     would like to make or expound upon from your papers or

7     otherwise, things you'd like to tell me about why I should not

8     grant some form of emergency relief to the plaintiff.

9          MS. MORSE:  Thank you very much, Your Honor.

10          We're in a very different procedural place in this

11     litigation than we were last July when we were first in front

12     of you on Mr. Trump's emergency All Writs application, because

13     the Committee has now filed its motion to dismiss and that

14     motion is fully briefed.

15          The motion should be granted and the emergency

16     application should be denied for the same reason; the Court

17     does not have subject matter jurisdiction over this case.  As

18     Mr. Trump admits, he has not been injured by a hypothetical

19     future request by the Committee and there is no Article III

20     case or controversy.

21          As to the Court's question of what additionally we

22     might like to address, I would like to dwell on the All Writs

23     Act a little bit more, if that would be okay.

24          By its term, the Act permits issuance of writs in

25     narrow circumstances in aid of court's jurisdiction.  But as

1        the Supreme Court cases and the other authorities we've cited

2        make clear, it does not enlarge a court's jurisdiction and

3        certainly cannot override the Constitution's Article III case

4        or controversy requirements, or Article I speech or debate

5        absolute immunity.

6                Quoting from *United States v. Denedo*, a 2009 Supreme

7        Court case, as the text of the All Writs Act recognizes, a

8        court's power to enter any form of relief, extraordinary or

9        otherwise, is contingent on that court's subject matter

10       jurisdiction over the case or controversy.  And as we've

11       explained and as Mr. Trump has now conceded, with the lack of

12       any injury there is no subject matter jurisdiction here.  There

13       is no Article III case or controversy.  The claim is not ripe

14       credentially or constitutionally and, of course, we have our

15       immunity arguments that Ms. Barbero can go into in greater

16       depth.

17                THE COURT:  Do you agree that President Trump would

18       have standing -- I think your answer is no, but I would like to

19       know why, why would President Trump not have standing in the

20       event that a request is made by Chairman Neal to the New York

21       folks, to the commissioner, and on the assumption that the

22       claims don't become moot because the records are produced

23       immediately -- but would Mr. Trump have standing at that point

24       and would the case be ripe?

25                MS. MORSE:  We think that causation and

1    redressability would still be problems, even if the case ripens

2    and there is an injury.  So as to -- if I may address each of

3    those?

4                THE COURT:  Please.

5                MS. MORSE:  As to traceability, you know, New York,

6    which is a sovereign state, is a break in the chain of

7    causation here.

8                THE COURT:  So assuming that Chairman Neal certified,

9    made the certifications required by the TRUST Act, what is it

10   that the commissioner could do consistent with the TRUST Act,

11   other than just produce the records to the committee?

12               MS. MORSE:  You know, when Mr. Amer was in front of

13   you in the previous hearing, he described this as a process,

14   and there are preconditions to that process.

15               THE COURT:  Sure, some of which are to make the

16   certification.  And my hypothetical is:  Assume the chairman

17   includes the certification required by the TRUST Act.  Assuming

18   that happens, what, other than producing the records, can the

19   commissioner do?

20               MS. MORSE:  I mean, that would be more of a question

21   for New York.

22               THE COURT:  But your argument here is that there's a

23   break in the causal chain.  And you have to have a position on

24   whether that would be okay under New York law for the

25   commissioner to decline to produce the records.

1          MS. MORSE:  On the text of the Act, it doesn't -- it

2     says, you know, there is a -- it says the record shall be

3     produced, but that is embedded within other language about

4     preconditions for the records to be produced; the redaction

5     requirement, the certification.  And I understand what you're

6     saying, but, you know, I'm taking Mr. Amer at his word that

7     there's a process in place and that there is -- you know, the

8     certification is part of that process.

9          THE COURT:  Okay.  What about redressability?

10         MS. MORSE:  So as to redressability, there are, sort

11    of, two prongs to that and one of them relates to Speech and

12    Debate, but the other one is just the, sort of, separation of

13    powers issues that would arise from the Court enjoining a

14    coordinate branch of government.

15         THE COURT:  If I were to conclude that the

16    congressional defendants did not have Speech or Debate clause

17    immunity because of the nature of the request and the manner in

18    which it was justified, is there additional reason why I could

19    not enjoin the production of the records to the congressional

20    defendants, assuming that that hadn't happened already and

21    assuming, again, that I concluded that there isn't Speech or

22    Debate clause immunity?

23         MS. MORSE:  Yes, Your Honor.  There are still grave

24    separation of powers at play, apart from Speech or Debate

25    immunity.  And you can see that in what the court has said in

1    *Ferrer*, where they didn't just rely on Speech or Debate

2    immunity, or *Hearst*, or some of the other cases that we've

3    cited here.  This would be an unprecedented injunction, you

4    know, that would place, you know -- you're positing a world

5    where we're post request, so I --

6              THE COURT:  Yes.

7              MS. MORSE:  -- you know, that would, I guess, place

8    some sort of injunction on what the committee could do with the

9    documents or that it couldn't receive the documents that would

10   be -- I know you posited away Speech or Debate immunity, but it

11   would still be an interference with the -- with the branch of

12   government's, you know, investigative and legislative

13   processes, assuming a request is ever made, which it hasn't

14   been here because we are in a pre-request posture with no

15   injury.

16             THE COURT:  Right.  Yes.  I'm really just trying to

17   probe whether, if we're in a world post-request and, therefore,

18   hypothetically again, post-conclusion by me that there isn't

19   Speech or Debate clause immunity, whether there really are

20   separation of powers concerns with the Court saying, hey,

21   you've acted in a manner that I have concluded is outside

22   Speech or Debate clause immunity, hypothetically, because I

23   conclude there's no legitimate legislative purpose, if I were

24   to reach those conclusions -- which I think are embedded in a

25   decision about Speech or Debate clause immunity -- what

1    additional separation of powers argument is there against an

2    injunction against a request that by definition hasn't

3    satisfied the Speech or Debate clause immunity?

4          MS. MORSE:  I still think the Court would need to

5    tread very carefully in interfering and, you know, enjoining a

6    coordinate branch of government, notwithstanding -- and it's

7    hard to hypothesize, you know, the grounds on which you would

8    have found that there were no Speech or Debate immunity, from

9    where I stand now.

10          THE COURT:  Yes.  Right.  Understood.

11          Let me ask you this question, which is -- I get all

12    of the arguments quite well.  Just with respect to the

13    congressional defendants' current position, I take it that you

14    would not even be willing to agree to notify the Court and

15    Mr. Trump of a request -- again, so I'm assuming a world in

16    which you are not prevented from making a request or even

17    required to give advance notice of such a request.  So imagine

18    a world where you're allowed to make the request, you make the

19    request and you are -- would you be willing to provide

20    contemporaneous notice to the Court and Mr. Trump, and to defer

21    the receipt of any records for some short period of time to

22    litigate at that time whether the request is lawful?

23          MS. MORSE:  Can I just take one moment to confer?

24          THE COURT:  Please.

25          MS. MORSE:  Thank you.

1          (Pause.)

2          MS. MORSE:  Thank you.  I just wanted to make sure we

3     are being precise.

4          THE COURT:  Of course.

5          MS. MORSE:  So if a request is made, we can notify

6     the Court at that time.  But that is all that we're in a

7     position to be able to do.

8          THE COURT:  And is that -- just to make sure I

9     understand, would you be willing to undertake that commitment

10    even if, hypothetically, I granted your motion to dismiss?

11    Maybe I need to make it even more precise.  Would you be

12    willing to make that commitment of notification not just to the

13    Court, but to Mr. Trump?

14         MS. MORSE:  Sorry.  Excuse me.  Could I confer again?

15         THE COURT:  Please.

16         (Pause.)

17         MS. MORSE:  As to this new question, we would need to

18    get back to you, Your Honor, which we could do by the end of

19    the day, because I understand that we're on a short fuse.

20         THE COURT:  We are.  Okay.  That would be terrific.

21    If you could perhaps submit a very short supplemental filing

22    that just states the Congressional defendants' positions on,

23    one, whether the notice of a request to New York would be

24    provided not just to the Court, but also to Mr. Trump; and,

25    two, whether that notice would be provided even if the Court

1    granted your pending motion to dismiss.

2              MS. MORSE:  Yes, Your Honor.

3              (Off-the-record discussion between defense counsel.)

4              MS. MORSE:  Clarification.  Is the first part of the

5    question also if the motion to dismiss is granted?  Or just in

6    general, if the Court still has jurisdiction and still has the

7    case, would we be --

8              THE COURT:  That's a fair question.  So, I guess we

9    should just take it in chunks.  So assuming that the Court has

10   not granted the motion to dismiss, I take it you are committing

11   today that if a request is made, you will provide notice to the

12   Court.  And I think once notice is provided to the Court, it

13   is, in effect, provided to Mr. Trump.

14             So, I guess my question really is:  If the motion to

15   dismiss is granted, would you commit now that you would provide

16   notice of any request in the future to both the Court and to

17   Mr. Trump?  Or, frankly, what are your positions about whether

18   you would provide any notice in a world after the Court,

19   hypothetically, grants your motion to dismiss?

20             MS. MORSE:  Understood.  And that we can get back to

21   you by the end of the day.

22             THE COURT:  Understood.  Thank you.

23             So, Ms. Barbero, I'm always happy to hear from you,

24   but I think I pretty well understand the Speech or Debate

25   clause immunity arguments.  I don't know if there's anything

1    you would like to add to what either has been argued before or

2    what's in your papers.  So please feel free to, if you'd like,

3    but I know the issue pretty well, I think.

4         MS. BARBERO:  Thank you, Your Honor.  I won't belabor

5    the issues.  We appreciate you hearing from us.  What we wanted

6    to emphasize is what is in our papers, which is that the

7    question for the Court at the Speech or Debate immunity stage,

8    in terms of whether the immunity applies, is looking at whether

9    the conduct is legislative or nonlegislative conduct.  That's

10   in *Rangel*.  And the question there, as we know from *Rangel* and

11   *Bogan* and the other cases we cited, is the nature of the act

12   itself, and that is a different question.

13        Mr. Consovoy's papers, I think, collapse in many

14   respects, that threshold immunity question with the question of

15   the merits of the validity of the subpoena or request, in terms

16   of whether there's a valid legislative purpose.  But that

17   question, as in *Mazars*, arise in a proper case where either the

18   congressional defendants have chosen not to assert Speech or

19   Debate immunity or a third-party is sued.

20        THE COURT:  So what is your view of the language then

21   in *Eastland* and *McSurely* about whether the investigation or the

22   investigative activity related to a subject on which

23   legislation could be had?  Why was that language even necessary

24   if all you cared about was the nature of the act itself, which

25   in *Eastland*, if it I recall correctly, was a subpoena?  And if

1    all that mattered was that there was a subpoena, why would you

2    even care?  Why would the Supreme Court even mention whether

3    the subpoena related to a subject on which legislation could be

4    had?

5              MS. BARBERO:  A few responses, Your Honor.  That --

6    one is that *Eastland*, of course, should be interpreted in light

7    of the later D.C. Circuit and Supreme Court precedent on this

8    question, which make very clear that the threshold question,

9    the Supreme Court in *Bogan* says that the question that is

10   logic -- the logical precursor to the merits question is the

11   nature of the act.

12             And I do want to emphasize that *Eastland* should be

13   understood in the context of those later binding decisions.

14   But to the point of *Eastland* itself, it is true that the court

15   there engages in the immunity question in terms of determining

16   whether the congressional defendants have Speech or Debate

17   immunity.  That case, by the time it made its way up to the

18   Supreme Court, had been pending, I think, for about five years.

19   The Court makes a note of that in emphasizing that expeditious

20   resolution would be appropriate.  And the Court does go on to

21   discuss the validity, this merits question about the subpoena

22   at issue there.

23             But I do think that's best understood in the

24   procedural context of that case.  And in *Eastland*, unlike this

25   case, originally the defendants included the bank to which the

1    subpoena had been issued, as well as an individual

2    congressional defendant.  And at the time, the D.C. Circuit had

3    some question about whether relief could be granted against

4    that individual.  We now know that's not the law.

5         But, there were some jurisdictional questions at play

6    in that case that are not present here in this case.  But, we

7    also know from the cases that the question of the merits of the

8    validity of the subpoena can be litigated against a proper

9    defendant.  And if there is no such defendant, the fact that

10   there might be an unremedied harm is part of the design of the

11   Speech or Debate clause.  We know from *Brewster* that that was

12   part of the framer's understanding of how the clause would

13   operate.

14        THE COURT:  Thank you.

15        Mr. Consovoy.

16        MR. CONSOVOY:  Thank you, Your Honor.  With your

17   instructions from the beginning, I won't repeat arguments that

18   are in our papers.  And, of course, at the Court's disposal to

19   answer any questions you might have.

20        If I could start with the relief issues the Court

21   raised with my friends.  We, of course, have said notice we

22   think is an appropriate way to handle this issue, so long as

23   there isn't a situation where notice and semination and receipt

24   by Congress are instantaneous, at which point notice would not

25   be sufficient to solve the mootness problem that we think the

1   All Writs Act is designed.

2          So to the extent Your Honor is contemplating notice

3   as the primary vessel for All Writs Act relief, we would hope

4   the Court would also consider that concern, if it determined

5   relief were appropriate and fashioned a remedy.

6          THE COURT:  As you know from prior hearings, I am

7   concerned about the claims ripening, potentially, and becoming

8   moot before any court, including this Court, can pass on their

9   legitimacy, the claims legitimacy.  So it is an issue that I am

10  certainly thinking about.

11         On the question of Speech or Debate clause immunity,

12  can you respond to counsel for the congressional defendants'

13  argument that *Eastland* is best understood, in light of later

14  binding cases, to really require or permit only an analysis of

15  whether the nature of the act itself is legislative or whether

16  there is some other requirement in order to invoke Speech or

17  Debate clause immunity?

18         MR. CONSOVOY:  Absolutely.  I think that -- and we

19  discussed this at length at the prior hearing, is the debate is

20  mostly about what it means for it to be legislative.  We read

21  *Eastland* and those cases, as we argued in our papers, to say

22  that a subpoena issued by Congress that is not in aid of

23  legislation, or not within the legitimate object of Congress,

24  is not legislative in and of itself.  That is the other side of

25  the equal sign; if you win a case in which there is no

1    legitimate legislative purpose, it equals it was not

2    legislative and you do not have an immunity.

3         And there are other later cases; I don't see any of

4    them altering that framework.  The *Ferrer* case, which the

5    Committee relies on extensively, is a 2017 case from Judge

6    Tatel, who also wrote the *Mazars* decision.  And the Court says:

7    To be clear, we take no position on whether courts are

8    powerless to enjoin individual members, or the committees of

9    which they are a part, from disseminating investigative

10   materials whose contents have no relationship to legitimate

11   legislative functions, or whose distribution would violate law,

12   citing *Watkins*, which is, as I'm sure Your Honor knows, is a

13   case in the *Eastland* line.

14        So I read that case as fully consistent with what

15   *Eastland* did.  Moreover, it is up to the D.C. Circuit to

16   overturn its own cases.  And as Your Honor noted at the earlier

17   hearing, the D.C. Circuit in *Eastland* issued an injunction

18   against a subpoena against the -- against the Committee,

19   against the individual congressional members, and against chief

20   counsel.  And so -- and that part of the case was not appealed.

21   On final judgment the Supreme Court reversed and disagreed on

22   the merits.  But at no point in the Supreme Court decision did

23   it take issue with the way the D.C. Circuit had processed the

24   case or issued preliminary relief, they just had a difference

25   of opinion on whether there was a legitimate legislative

1    purpose and whether First Amendment arguments could be reached

2    beyond that, issues that are not pertinent at this stage.

3            THE COURT:  Thank you.  So, on the jurisdictional

4    question, what is your best argument for why I have or am

5    imminently going to have jurisdiction sufficient to enter All

6    Writs Act relief in aid of.

7            MR. CONSOVOY:  I can't do much better than Judge Moss

8    did in *AstraZeneca*.  I think he -- the same contingencies were

9    at stake there.  There was some question about whether the

10   agency was even going to issue the order; there was no

11   definitive answer.  The same concerns of a lack of an imminent

12   case arose there.  The case, in fact, in Judge Moss's words,

13   had not ripened yet, which is another way of saying did not

14   have an imminent injury for purposes of Article III.  But the

15   point of the All Writs Act, and this goes back to the first

16   Congress, is to ensure the Court's future jurisdiction is

17   protected.  And the D.C. Circuit said that in the

18   *Telecommunications* case in 1984.  That's the purpose of the All

19   Writs Act to, ensure your future jurisdiction and to issue

20   orders and writs to ensure that it is not defeated by behavior

21   of parties.

22            And so we think there is just an -- this is a --

23   obviously there are differences here from other cases.  We're

24   dealing with coordinate branches of government, of course.  But

25   in respect to the All Writs Act, this is, I think, the scenario

1    that is envisioned to protect against, that the case is not

2    defeated.

3              THE COURT:  This is another question that goes to

4    issues of relief and claims.  But, I obviously granted the

5    New York defendant's motion to dismiss for lack of personal

6    jurisdiction, you obviously have that opinion.  Is it still

7    President Trump's intent not to pursue claims against them in

8    New York or in any other court?

9              MR. CONSOVOY:  That is our present intent.  We have

10   pursued the litigation here.  We, of course, today, we're at

11   the end, we need -- relief is needed imminently to protect this

12   case.  We do think we have a proper case against the committee

13   here.  While we stand behind our claims against the New York --

14   against New York, I will say, in all candor, we think when this

15   case does mature, that our strongest claim will be the lack of

16   legitimate legislative purpose.  We think that is a claim that

17   won't require discovery.

18             We like our First Amendment claim, we're standing

19   behind it, of course, but I'm trying to be as candid to the

20   Court as I can be to explain why we've made the choices that

21   we've made here.  Facial challenges or an as-applied challenge

22   that has aspects of facial relief are difficult and uncertain.

23   We think we have the chairman on record in ways here that won't

24   require discovery and will allow for us to prevail in -- under

25   the framework set forth in the D.C. Circuit's *Mazars* opinion,

1      which says you can look to contemporaneous statements.  And so

2      on behalf of my client, we believe that our strongest case is

3      against the committee, who is found here, and we want to pursue

4      relief against them.

5             THE COURT:  And as a corollary to that, that you

6      don't think that you have a claim under the TRUST Act, that

7      New York has to inquire about whether there's actually a

8      legitimate legislative purpose?

9             MR. CONSOVOY:  As I read the statute, it's a

10     certification requirement.  They do not.  And that's how I

11     understand New York to understand their own statute.  And

12     certainly, I think to your earlier question about whether

13     there's contingencies here, as we've explained under Article

14     III, you don't have to be the last step in the causal chain to

15     be liable under Article III for an injury under *Lujan*.  And

16     here, I think we've plausibly alleged, which under *Iqbal* is all

17     that is required, that if a request is made, it will be

18     granted.  And I don't think I've heard an argument from my

19     friends to the contrary.

20            THE COURT:  Thank you.

21            Counsel for the congressional defendants, I'll let

22     you guys decide who wants to rebut.  Happy to hear from either

23     or both of you.

24            MS. BARBERO:  If you would indulge us and hear from

25     both of us, that would be wonderful.

1      THE COURT:  Be happy to.

2      MS. BARBERO:  Thank you, Your Honor.  I have only two

3  quick points.  On *Ferrer*, which is the 2017 D.C. Circuit

4  opinion, Mr. Consovoy cites the discussion in the opinion where

5  the Court is taking no position about whether disseminating --

6  that is, publishing -- investigative materials whose contents

7  have no relationship to legislative functions, or whose

8  distribution would arguably violate the law might be

9  permissible.

10      The point there, though, is that the nature of the

11  act at issue here, where the chair, if a request is made, would

12  be seeking information and certifying to New York that it was a

13  request in furtherance of a legislative task of the Congress,

14  is a core legislative act, unlike, as we know from a host of

15  cases, potentially publishing information or other, sort of,

16  outward facing things a committee or staff might do in terms of

17  press releases or other things that would not be covered.  So

18  that doesn't answer the question at issue here.

19      THE COURT:  So your position -- and I asked

20  Mr. Letter this in the first hearing -- is that Chairman Neal

21  could request the records for the express purpose of producing

22  them to the public, disseminating them outside of Congress.

23  And whereas the dissemination might not be an act for which

24  Chairman Neal would be immune, even though that's his stated

25  purpose of posing the request, he would still have immunity, if

1   that were the only reason for the request, to New York.

2          MS. BARBERO:  Yes.  And we know that is true because

3   of the way the D.C. Circuit and the Supreme Court has described

4   the test for whether the immunity, the Speech or Debate clause

5   immunity applies to the Congress.  And the question is not --

6   is the -- is the nature of that act.

7          So, if the chairman made a request as part of the

8   information-gathering function, whether it's a subpoena or

9   request under the Act -- and, again, the difficult hypothetical

10  doesn't arise on the facts here because the chair would have to

11  certify that the request was for a legislative task of the

12  Congress.

13         THE COURT:  Right.  But what if I said I think it's a

14  legislative task of this Congress to produce these records to

15  the public, and New York says, well, he certified that that's

16  the legislative task here, we don't get to second guess what's

17  in the congressional certification.  And so we know -- again,

18  this is all hypothetical, the Court is not suggesting this

19  would happen -- but your view is that any investigative act,

20  whether it's a subpoena or request for information under the

21  TRUST Act or otherwise, entitles congressional defendants to

22  immunity, regardless of the purpose of the request or the act?

23  And, in fact, it would be inappropriate for a court even to

24  inquire into the purpose behind that investigative act?

25         MS. BARBERO:  If I may make a few responses, Your

1      Honor.  I do want to address the hypothetical, but also, as you

2      pointed out, Your Honor, that is not the facts of this case,

3      including because the allegations in the complaint -- and we're

4      at a motion to dismiss here -- and in paragraph 11 of the

5      complaint it's stated and alleged that the request, if one were

6      made, would be to -- for use -- for information for use in

7      hearings and consideration of legislation.  So we don't have to

8      grapple with the difficult hypothetical in this case.

9              In addition, even if a request or a subpoena is not

10     valid, that does not mean that Speech or Debate immunity is

11     pierced.  It may mean that there's a different case where that

12     question could arise.  And if, for example, the Committee

13     wanted to seek enforcement of its request, it might be

14     determined later that the request is not valid.

15             THE COURT:  I understand that you're placing great

16     weight on the different procedural postures in which these

17     matters can arise.  I get that.  But I still think it's the

18     case that as long as we're in a world where Speech or Debate

19     clause immunity applies -- it could be this action, it could be

20     somebody brings a damages claim against Congress -- frankly,

21     any time that Congress hasn't, in your view, decided itself to

22     put the question to the courts such an immunity applies,

23     whether the investigative activity can be linked to a

24     legitimate legislative purpose or a subject on which

25     legislation can be had is an irrelevancy?

1          MS. BARBERO:  Your Honor, Congress is entitled to a

2    presumption of regularity.  I do want to stress that.  But

3    also, I think your question is perhaps best answered by the

4    second point that I wanted to make.

5          THE COURT:  Please.

6          MS. BARBERO:  Which is, the passage in *Rangel*, and

7    this is at page 24 of the decision in *Rangel* where the D.C.

8    Circuit points out that the contention there was that the

9    conduct could not be legislative because it was illegal.  And

10   what the Court made very clear is that that is an argument that

11   is made in almost every Speech or Debate immunity case and it's

12   been rejected time and time again.

13          And the Court then walks through the Supreme Court

14   precedent that explains, as we know from *Kilbourn* and *Doe v*

15   *McMillan*, that even if the allegation is -- that the request or

16   the subpoena would violate the House rules, even if the

17   allegation, as in *Doe*, is that the use of information in a

18   report would violate the First Amendment rights of parents

19   whose children's information was being published, that that is

20   not sufficient to pierce the immunity when the conduct -- in

21   those cases we had subpoenas being issued or reports being

22   prepared or legislation being considered -- when that conduct

23   is legislative, that is the end of the inquiry for the Court,

24   as we made clear in our papers.

25          THE COURT:  Thank you.

```
 1              MS. BARBERO:  I'll turn it over to Ms. Morse.

 2              THE COURT:  Thank you.

 3              MS. MORSE:  I won't belabor this, but two quick

 4      points.

 5              THE COURT:  Of course.

 6              MS. MORSE:  First, I recognize Your Honor's

 7      continuing concern about the mootness, ripeness, or

 8      too-early-too-late problem here.  You know, and I did want to

 9      stress that, you know, the Committee is not the actor that

10      would moot this dispute, that's been conceded by Mr. Trump.

11      And I do think some of this mootness/ripeness problem is a

12      result of the litigation choices that he has made and

13      reaffirmed for you that he's not currently planning on suing in

14      New York, which would not present many of the same issues that

15      are in play here.  There would not be the immunity, there would

16      not be the separation of powers concerns and, you know, there

17      would be different questions arising about, you know, standing

18      in Article III subject matter jurisdiction questions.

19              THE COURT:  New York would probably argue that the

20      case was even more remote there because they don't act until

21      the request has been made, and a request hasn't been made.

22              MS. MORSE:  Perhaps.  I'm not taking a position on

23      their argument.

24              THE COURT:  Of course.

25              MS. MORSE:  But if I could just dwell a little bit
```

1  about *AstraZeneca*, because I'm glad that that was raised.

2  *AstraZeneca* is a very different case than we have here, because

3  the drug -- as you know it was about a generic drug that was

4  about to come market and there was an ongoing agency proceeding

5  that would have ended up in Judge Moss's court.  The plaintiff

6  said that it was suffering imminent harm and the FDA did say

7  that it was near a conclusion of its proceeding.

8         So, you know, here we have no harm.  We have a

9  concession by Mr. Trump that he's not being harmed and that his

10  claim is not ripe.  I think that is, you know, exponentially

11  different than what is going on in this case.  There's no --

12  there was no immunity in *AstraZeneca*, and certainly there were

13  none of the separation of powers issues in play here.  And I

14  would urge you -- you know, at no point in *AstraZeneca* did

15  Judge Moss say that he did not have an Article III case or

16  controversy, but, nonetheless, was going to go ahead and enter

17  All Writs Act relief.  That was not part of the calculus there.

18  And in none of Mr. Trump's cases has the Court said that they

19  have no Article III case or controversy but gone on to issue

20  All Writs Act relief.

21         Whereas, if you, you know, contrast that with some of

22  the cases that we've cited in our brief, even going back to

23  *Trac*, the D.C. Circuit is very clear, jurisdiction is the first

24  thing that it looks at.  The *City of New York* case in the

25  Second Circuit dealing with taxpayer standing, the first thing

1   they look at is case or controversy, whether there's an Article

2   III case or controversy.  And then Judge Howell's very recent

3   opinion on the writ of *coram nobis* in the *Ausby* case, the same

4   thing, she said the parties there had agreed that a writ should

5   issue and yet because there was no Article III case or

6   controversy, no injury in fact, no redressability, she did not

7   feel empowered to do so because the Court did not have

8   jurisdiction.

9           THE COURT:  Thank you.

10          Mr. Consovoy, it looks like you want to say --

11          MR. CONSOVOY:  Very briefly, on the last point about

12  there's no case where there's no Article III, I would point the

13  Court to the case we cite, the *Telecommunications Act versus*

14  *FCC*, from the D.C. Circuit.  That was a matter that was pending

15  before the FCC on a motion to issue a ruling that had not been

16  forthcoming.  There was clearly no Article III jurisdiction in

17  the D.C. Circuit.  There wasn't even final agency action.  The

18  court issued the writ to protect its future jurisdiction.

19          I won't belabor anymore on Speech or Debate.  I think

20  the Court knows our position.

21          On whether we have an imminent injury, I did want to

22  raise one last thing that I don't think has been discussed yet.

23  I take it from the committee's arguments today and its

24  papers -- although I would welcome further clarification --

25  that a request is not forthcoming in that.  They have said this

1   is under review, and it has been under review since July.  It

2   would be deeply troubling, I think the President -- and I do

3   think the fact that this is President versus Congress matters,

4   in both directions -- if the Court were to reject our

5   request -- we think it should be granted, of course -- and

6   tomorrow papers -- the records were requested from New York, if

7   there is an imminent request coming, we can let go of this All

8   Writs Act litigation all together and move directly to a TRO.

9   If there is not, then I do think we are exactly where we should

10  be for an All Writs Act.

11          Just like *AstraZeneca*, there was no guarantee it was

12  forthcoming.  Judge Moss asked for periodic updates as to when

13  it might be forthcoming.  It may have never come at all.  There

14  was no Article III case or controversy.  He said he did not

15  have pre-enforcement review authority yet, it had not ripened.

16          And so I think, you know, we obviously -- our deep

17  concern is we just want our day in court for the President.

18  Obviously, he has his own state tax returns.  They have made a

19  decision with New York and the House to circumvent that because

20  he could then have resisted and we would have had a case that

21  even the House believes is a case.  And so I do think it would

22  be nice to have some clarification on whether a request is

23  forthcoming and we could move directly to a TRO.

24          THE COURT:  Thank you, Mr. Consovoy.

25          Ms. Morse, what, if anything, are you authorized to

1      tell me about whether a request is imminent?

2              MS. MORSE:  Only that I can say that the committee is

3      in the same position that it was in in its papers and its

4      deliberations are ongoing.

5              THE COURT:  Okay.  Thank you.  I appreciate it.  I

6      appreciate the parties arguments.  I am going to take the

7      matter under advisement.  I'm obviously well aware of the

8      timing concerns here, and the fact that the seven-day clock --

9      you can have a seat, if you like, thanks -- and that the

10     seven-day clock has been running and, I guess, expires today.

11     I'm not intending to take a long time before I enter an order.

12             I appreciate the commitment that I heard today from

13     the congressional defendants, that they would give notice to

14     the Court, at a minimum, while the case is still pending, of

15     the transmission of a request.  And, obviously, I've asked you

16     to consider whether you would also notify the Court and

17     Mr. Trump of a request in the event that I dismiss the case.

18     So I'll look for that filing.  If there's any way to get it in

19     by 5 or so, I would appreciate it.  I understand that it

20     requires some conferring.  But otherwise, I will endeavor to

21     get something out very quickly.  I clearly understand the

22     parties' respective positions, this is our third hearing in

23     this matter and I get it.  I just need to get something out.

24             So I appreciate your time, appreciate the willingness

25     to file the reply in support of motion to dismiss on Friday,

1    and the parties getting together for this hearing.  So with

2    that, I'm sure you'll be hearing from me either this evening

3    or, I suppose, tomorrow morning.

4                              *   *   *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                CERTIFICATE OF OFFICIAL COURT REPORTER

3

4        I, JANICE DICKMAN, do hereby certify that the above and

5    foregoing constitutes a true and accurate transcript of my

6    stenographic notes and is a full, true and complete transcript

7    of the proceedings to the best of my ability.

8                        Dated this 18th day of November 2019

9

10

11                        _____

12                        Janice E. Dickman, CRR, CMR, CCR
                          Official Court Reporter
13                        Room 6523
                          333 Constitution Avenue, N.W.
14                        Washington, D.C.  20001

15

16

17

18

19

20

21

22

23

24

25