APPEAL,TYPE–E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:19–cv–02173–CJN</u>

| | |
|---|---|
| TRUMP v. COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES et al | Date Filed: 07/23/2019 |
| Assigned to: Judge Carl J. Nichols | Jury Demand: None |
| Cause: 28:2201 Declaratory Judgment | Nature of Suit: 890 Other Statutory Actions |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

| | | |
|---|---|---|
| **DONALD J. TRUMP** | represented by | **Patrick Neilson Strawbridge**<br>CONSOVOY MCCARTHY PLLC<br>Ten Post Office Square<br>8th Floor South PMB #706<br>Boston, MA 02109<br>(617) 227–0548<br>Fax: (617) 227–0548<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **William S. Consovoy**<br>CONSOVOY MCCARTHY PLLC<br>1600 Wilson Blvd<br>Suite 700<br>Arlington, VA 22209<br>703–423–9423<br>Email: <u>will@consovoymccarthy.com</u><br>*ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES** | represented by | **Douglas N. Letter**<br>U.S. HOUSE OF REPRESENTATIVES<br>Office of General Counsel<br>219 Cannon House Office Building<br>Washington, DC 20515<br>(202) 225–9700<br>Email: <u>douglas.letter@mail.house.gov</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Brooks McKinly Hanner**<br>OFFICE OF GENERAL COUNSEL FOR U.S. HOUSE OF REPRESENTATIVES<br>219 Cannon House Office Building<br>Washington, DC 20515 |

(202) 225–9700
Email: brooks.hanner@mail.house.gov
*ATTORNEY TO BE NOTICED*

**Josephine T. Morse**
U.S. HOUSE OF REPRESENTATIVES
Office of General Counsel
219 Cannon House Office Building
Washington, DC 20515
(202) 225–9700
Email: jodie.morse@mail.house.gov
*ATTORNEY TO BE NOTICED*

**Megan Barbero**
U.S. HOUSE OF REPRESENTATIVES
Office of General Counsel
219 Canon House Office Building
Washington, DC 20515
(202) 225–9700
Email: megan.barbero@mail.house.gov
*ATTORNEY TO BE NOTICED*

**Todd Barry Tatelman**
U.S. HOUSE OF REPRESENTATIVES
Office of General Counsel
219 Cannon House Office Building
Washington, DC 20515
(202) 225–9700
Fax: (202) 226–1360
Email: todd.tatelman@mail.house.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **LETITIA JAMES**<br>*in her official capacity as Attorney*<br>*General of New York State* | represented by | **Andrew Stuart Amer**<br>OFFICE OF THE NEW YORK<br>ATTORNEY GENERAL<br>28 Liberty Street<br>New York, NY 10005<br>(212) 416–6127<br>Email: andrew.amer@ag.ny.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **MICHAEL R. SCHMIDT**<br>*in his official capacity as Commissioner*<br>*of the New York State Department of*<br>*Taxation and Finance* | represented by | **Andrew Stuart Amer**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

represented by

**RICHARD NEAL**
*in his official capacity as Chairman of the*
*House Ways and Means Committee*

**Douglas N. Letter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ANDREW GROSSMAN**
*in his official capacity as Chief Tax*
*Counsel of the House Ways and Means*
*Committee*

represented by **Douglas N. Letter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/23/2019 | 1 | | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0090–6272047) filed by DONALD J. TRUMP. (Attachments: # 1 Civil Cover Sheet, # 2 Summons to House Committee on Ways and Means, # 3 Summons to N.Y.S. Attorney General, # 4 Summons to N.Y.S. Tax Commissioner)(Consovoy, William) (Entered: 07/23/2019) |
| 07/23/2019 | 2 | | NOTICE OF RELATED CASE by DONALD J. TRUMP. Case related to Case No. 19–cv–1974. (Consovoy, William) (Entered: 07/23/2019) |
| 07/23/2019 | | | Case Assigned to Judge Trevor N. McFadden. (zeg) (Entered: 07/23/2019) |
| 07/23/2019 | 3 | | SUMMONS (3) Issued Electronically as to COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, LETITIA JAMES, MICHAEL R. SCHMIDT. (Attachment: # 1 Notice to Counsel/Party)(zeg) (Entered: 07/23/2019) |
| 07/23/2019 | 4 | | STANDING ORDER Establishing Procedures for Cases Before Judge Trevor N. McFadden. The parties are hereby ORDERED to read and comply with the directives in the attached standing order. Signed by Judge Trevor N. McFadden on 07/23/2019. (lctnm1) (Entered: 07/23/2019) |
| 07/24/2019 | 5 | | NOTICE of Appearance by Douglas N. Letter on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Letter, Douglas) (Entered: 07/24/2019) |
| 07/24/2019 | 6 | | Emergency MOTION for Writ by DONALD J. TRUMP (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Consovoy, William) (Entered: 07/24/2019) |
| 07/24/2019 | | | Minute Entry for proceedings held before Judge Trevor N. McFadden: Telephone Scheduling Conference held on 7/24/2019. The Committee on Ways and Means' Opposition to Plaintiff's Motion due by noon on 7/25/2019. All parties are invited to file briefs on whether this case properly is designated as related to 19–cv–01974 under LCvR 40.5 by noon on 7/25/2019. Motion Hearing set for 7/25/2019 at 3:00 PM in Courtroom 2 before Judge Trevor N. McFadden. (Court Reporter: Scott Wallace) (lctnm2) (Entered: 07/24/2019) |
| 07/24/2019 | | | MINUTE ORDER. For the reasons set forth during the July 24, 2019 telephone conference call, it is hereby ordered that the parties shall appear for a motion hearing on the Plaintiff's 6 Emergency Application for Relief before Judge Trevor N. McFadden at 3 PM in Courtroom 2 on July 25, 2019. The Committee |

| | | |
|---|---|---|
| | | on Ways and Means shall file its written opposition, if any, to the Plaintiff's motion before noon on July 25, 2019. The parties are also invited to submit briefs to the Court on whether this case properly is designated as related to No. 19–cv–01974 (Comm. on Ways & Means v. U.S. Dep't of Treasury) under Local Rule 40.5 by noon on July 25, 2019. Signed by Judge Trevor N. McFadden on 7/24/2019. (lctnm2) (Entered: 07/24/2019) |
| 07/25/2019 | 7 | NOTICE of Appearance by Andrew Stuart Amer on behalf of LETITIA JAMES, MICHAEL R. SCHMIDT (Amer, Andrew) (Entered: 07/25/2019) |
| 07/25/2019 | 8 | NOTICE of Appearance by Todd Barry Tatelman on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Tatelman, Todd) (Entered: 07/25/2019) |
| 07/25/2019 | 9 | NOTICE of Appearance by Megan Barbero on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Barbero, Megan) (Entered: 07/25/2019) |
| 07/25/2019 | 10 | NOTICE of Appearance by Josephine T. Morse on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Morse, Josephine) (Entered: 07/25/2019) |
| 07/25/2019 | 11 | NOTICE of Appearance by Brooks McKinly Hanner on behalf of COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES (Hanner, Brooks) (Entered: 07/25/2019) |
| 07/25/2019 | 12 | RESPONSE re 2 Notice of Related Case filed by LETITIA JAMES, MICHAEL R. SCHMIDT. (Attachments: # 1 Exhibit Exh. A – TRUST Act)(Amer, Andrew) (Entered: 07/25/2019) |
| 07/25/2019 | 13 | REPLY re 2 Notice of Related Case filed by DONALD J. TRUMP. (Consovoy, William) (Entered: 07/25/2019) |
| 07/25/2019 | 14 | RESPONSE re 6 Emergency MOTION for Writ filed by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES. (Letter, Douglas) (Entered: 07/25/2019) |
| 07/25/2019 | | Minute Entry for proceedings held before Judge Trevor N. McFadden: Case called for a Motion Hearing, but not held. Status Conference held on 7/25/2019. Order forthcoming. (Court Reporter: Sara Wick.) (hmc) (Entered: 07/25/2019) |
| 07/25/2019 | 15 | MEMORANDUM AND ORDER transferring this case to the Calendar and Case Management Committee for random reassignment. See attached document for details. Signed by Judge Trevor N. McFadden on 7/25/2019. (lctnm1) (Main Document 15 replaced on 7/26/2019) (hmc). (Entered: 07/25/2019) |
| 07/26/2019 | 16 | Case randomly reassigned to Judge Carl J. Nichols. Judge Trevor N. McFadden is no longer assigned to the case. (rj) (Entered: 07/26/2019) |
| 07/28/2019 | | MINUTE ORDER. It is hereby ORDERED that the Parties shall appear for a hearing on Plaintiff's 6 Emergency Application for Relief Under the All Writs Act on July 29, 2019, at 4 PM in Courtroom 19. It is further ORDERED that Plaintiff shall file its Reply, if any, to Defendant Committee on Ways and Means, United States House of Representatives's Response by 10 AM on July 29, 2019. Signed by Judge Carl J. Nichols on July 28, 2019. (lccjn1) (Entered: 07/28/2019) |

| 07/28/2019 | | | Set/Reset Deadlines/Hearings: Reply to 6 due by 10:00 AM on 7/29/2019. Motion Hearing re 6 set for 7/29/2019 at 4:00 PM in Courtroom 19 before Judge Carl J. Nichols. (zcdw) (Entered: 07/28/2019) |
|---|---|---|---|
| 07/29/2019 | 17 | | REPLY to opposition to motion re 6 Emergency MOTION for Writ filed by DONALD J. TRUMP. (Consovoy, William) (Entered: 07/29/2019) |
| 07/29/2019 | 18 | | WAIVER OF SERVICE by DONALD J. TRUMP. COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES waiver sent on 7/28/2019, answer due 9/26/2019. (Consovoy, William) (Entered: 07/29/2019) |
| 07/29/2019 | 19 | | WAIVER OF SERVICE by DONALD J. TRUMP. LETITIA JAMES waiver sent on 7/28/2019, answer due 9/26/2019. (Consovoy, William) (Entered: 07/29/2019) |
| 07/29/2019 | 20 | | WAIVER OF SERVICE by DONALD J. TRUMP. MICHAEL R. SCHMIDT waiver sent on 7/28/2019, answer due 9/26/2019. (Consovoy, William) (Entered: 07/29/2019) |
| 07/29/2019 | 21 | | RESPONSE re 6 Emergency MOTION for Writ filed by LETITIA JAMES, MICHAEL R. SCHMIDT. (Amer, Andrew) (Entered: 07/29/2019) |
| 07/29/2019 | | | Minute Entry for proceedings held before Judge Carl J. Nichols: Evidentiary Hearing held on 7/29/2019 re 6 Emergency Motion for Writ. Motion heard and taken under advisement. (Court Reporter: Janice Dickman) (zcdw) (Entered: 07/29/2019) |
| 07/29/2019 | | | MINUTE ORDER. For the reasons stated at today's hearing on Plaintiff's 6 Emergency Application for Relief Under the All Writs Act, it is hereby ORDERED that the Parties shall meet and confer and file, by no later than 6 PM on July 30, 2019, a Joint Status Report setting forth any agreement they have reached––or in the event they are unable to reach agreement, their respective positions––regarding how this case should proceed. Signed by Judge Carl J. Nichols on July 29, 2019. (lccjn1) (Entered: 07/29/2019) |
| 07/30/2019 | 22 | | Joint STATUS REPORT by DONALD J. TRUMP. (Consovoy, William) (Entered: 07/30/2019) |
| 07/31/2019 | | | NOTICE of Hearing: Telephone Conference set for 7/31/2019 at 2:30 PM in Courtroom 19 before Judge Carl J. Nichols. (zcdw) (Entered: 07/31/2019) |
| 07/31/2019 | 23 | | TRANSCRIPT OF PROCEEDINGS before Judge Carl J. Nichols held on July 29, 2019; Page Numbers: 1–61. Date of Issuance:July 31, 2019. Court Reporter: Janice Dickman, Telephone number: 202–354–3267, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made |

| | | |
|---|---|---|
| | | available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 8/21/2019. Redacted Transcript Deadline set for 8/31/2019. Release of Transcript Restriction set for 10/29/2019.(Dickman, Janice) (Entered: 07/31/2019) |
| 07/31/2019 | | Minute Entry for proceedings held before Judge Carl J. Nichols: Telephone Conference held on 7/31/2019. Court order to follow. (Court Reporter: Bryan Wayne) (zcdw) (Entered: 07/31/2019) |
| 07/31/2019 | 24 | TRANSCRIPT OF 7/31/19 TELEPHONE CONFERENCE before Judge Carl J. Nichols held on July 31, 2019; Page Numbers: 1–18. Date of Issuance: 7/31/19. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting Transcript Order Form at www.dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats may be purchased from the court reporter.**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. Redaction Request due 8/21/2019. Redacted Transcript Deadline set for 8/31/2019. Release of Transcript Restriction set for 10/29/2019.(Wayne, Bryan) (Entered: 07/31/2019) |
| 08/01/2019 | 25 | ORDER. Signed by Judge Carl J. Nichols on August 1, 2019. (lccjn1) (Entered: 08/01/2019) |
| 08/02/2019 | | Set/Reset Deadlines/Hearings: New York Defendants Motion To Dismiss For Lack Of Personal Jurisdiction And/or Improper Venue due by 8/9/2019. Plaintiff Opposition To The New York Defendants' Motion To Dismiss due by 8/19/2019. New York Defendants Reply In Support Of Their Motion To Dismiss due by 8/23/2019. Motion Hearing set for 8/29/2019 at 02:00 PM in Courtroom 19 before Judge Carl J. Nichols. (mac) (Entered: 08/02/2019) |
| 08/09/2019 | 26 | MOTION to Dismiss *for Improper Venue*, MOTION to Dismiss for Lack of Jurisdiction , MOTION to Transfer Case by LETITIA JAMES, MICHAEL R. SCHMIDT (Attachments: # 1 Memorandum in Support)(Amer, Andrew) (Entered: 08/09/2019) |
| 08/09/2019 | 27 | TRANSCRIPT OF PROCEEDINGS before Judge Trevor N. McFadden, held on 7/25/2019. Page Numbers: 1–35. Date of Issuance: 8/9/19. Court Reporter: Sara Wick, telephone number 202–354–3284. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter. |

| | | |
|---|---|---|
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 8/30/2019. Redacted Transcript Deadline set for 9/9/2019. Release of Transcript Restriction set for 11/7/2019.(Wick, Sara) (Entered: 08/09/2019) |
| 08/12/2019 | | Set/Reset Deadlines/Hearings: Motion Hearing set for 9:30 AM on 8/29/2019 in Courtroom 19 before Judge Carl J. Nichols. Please note the change in start time. (zcdw) (Entered: 08/12/2019) |
| 08/14/2019 | 28 | STIPULATION by DONALD J. TRUMP. (Consovoy, William) (Entered: 08/14/2019) |
| 08/14/2019 | 29 | ORDER Adopting Proposed Briefing Schedule. Signed by Judge Carl J. Nichols on August 14, 2019. (lccjn1) (Entered: 08/14/2019) |
| 08/15/2019 | | Set/Reset Deadlines/Hearings: Plaintiff Amended Complaint due by 8/19/2019. New York Defendants Motion To Dismiss For Lack Of Personal Jurisdiction And/Or Improper Venue due by 8/29/2019. Plaintiff Opposition To The New York Defendants' Motion To Dismiss due by 9/9/2019. New York Defendants Reply In Support Of Their Motion To Dismiss due by 9/13/2019. Motion Hearing set for 9/18/2019 at 10:00 AM in Courtroom 19 before Judge Carl J. Nichols. (mac) (Entered: 08/15/2019) |
| 08/19/2019 | 30 | AMENDED COMPLAINT against All Defendants filed by DONALD J. TRUMP.(Consovoy, William) (Entered: 08/19/2019) |
| 08/19/2019 | 31 | REQUEST FOR SUMMONS TO ISSUE filed by DONALD J. TRUMP. (Attachments: # 1 Summons)(Consovoy, William) (Entered: 08/19/2019) |
| 08/21/2019 | 32 | SUMMONS (2) Issued Electronically as to ANDREW GROSSMAN, RICHARD NEAL. (jf) (Entered: 08/21/2019) |
| 08/27/2019 | 33 | WAIVER OF SERVICE by DONALD J. TRUMP. RICHARD NEAL waiver sent on 8/21/2019, answer due 10/20/2019. (Consovoy, William) (Entered: 08/27/2019) |
| 08/27/2019 | 34 | WAIVER OF SERVICE by DONALD J. TRUMP. ANDREW GROSSMAN waiver sent on 8/21/2019, answer due 10/20/2019. (Consovoy, William) (Entered: 08/27/2019) |
| 08/27/2019 | 35 | STIPULATION by DONALD J. TRUMP. (Consovoy, William) (Entered: 08/27/2019) |
| 08/27/2019 | | MINUTE ORDER. Upon consideration of the 35 Joint Stipulation of Plaintiff and Congressional Defendants, it is hereby ORDERED that Defendant Committee on Ways and Means, U.S. House of Representatives shall file its Answer or otherwise respond to Plaintiff's 30 Amended Complaint on or before October 21, 2019. Signed by Judge Carl J. Nichols on August 27, 2019. (lccjn1) (Entered: 08/27/2019) |

| 08/29/2019 | 36 | | MOTION to Dismiss for Lack of Jurisdiction , MOTION to Dismiss *for Improper Venue*, MOTION to Transfer Case by LETITIA JAMES, MICHAEL R. SCHMIDT (Attachments: # 1 Memorandum in Support)(Amer, Andrew) (Entered: 08/29/2019) |
|---|---|---|---|
| 09/09/2019 | 37 | | Memorandum in opposition to re 36 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss *for Improper Venue* MOTION to Transfer Case filed by DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Consovoy, William) (Entered: 09/09/2019) |
| 09/10/2019 | 38 | | Unopposed MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Patrick Strawbridge, :Firm– Consovoy McCarthy PLLC, :Address– 1600 Wilson Blvd., Ste. 700, Arlington, VA 22209. Phone No. – 617–227–0548. Filing fee $ 100, receipt number 0090–6369632. Fee Status: Fee Paid. by DONALD J. TRUMP (Attachments: # 1 Affidavit, # 2 Text of Proposed Order)(Consovoy, William) (Entered: 09/10/2019) |
| 09/11/2019 | | | MINUTE ORDER. The Court having considered Plaintiff's 38 Motion For Admission *Pro Hac Vice* of Patrick Strawbridge, and it appearing to the Court that the attorney referenced therein meets the requirements for *pro hac vice* admission under Local Civil Rule 83.2(d), it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that Patrick Strawbridge, Consovoy McCarthy PLLC, Ten Post Office Square, 8th Floor South PMB #706, Boston, Massachusetts 02109 is ADMITTED to practice before the Court *pro hac vice*. Signed by Judge Carl J. Nichols on September 11, 2019. (lccjn1) (Entered: 09/11/2019) |
| 09/13/2019 | 39 | | REPLY to opposition to motion re 36 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss *for Improper Venue* MOTION to Transfer Case filed by LETITIA JAMES, MICHAEL R. SCHMIDT. (Amer, Andrew) (Entered: 09/13/2019) |
| 09/18/2019 | | | Minute Entry for proceedings held before Judge Carl J. Nichols: Motion Hearing held on 9/18/2019 re 36 Motion to Dismiss for Lack of Jurisdiction; Motion to Dismiss for Improper Venue; Motion to Transfer Case. Motions heard and taken under advisement. (Court Reporter: Nancy Meyer) (zcdw) (Entered: 09/18/2019) |
| 09/19/2019 | 40 | | TRANSCRIPT OF PROCEEDINGS before the Honorable Carl J. Nichols held on 09/18/2019; Page Numbers: 1–83. Date of Issuance: 09/18/2019. Court Reporter: Nancy J. Meyer, Telephone Number: (202) 354–3118, Tape Number: N/A. Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 10/10/2019. Redacted Transcript Deadline set for 10/20/2019. Release of |

| | | |
|---|---|---|
| | | Transcript Restriction set for 12/18/2019.(Meyer, Nancy) (Entered: 09/19/2019) |
| 09/25/2019 | 41 | SUPPLEMENTAL MEMORANDUM to re 36 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss *for Improper Venue* MOTION to Transfer Case *by letter* filed by LETITIA JAMES, MICHAEL R. SCHMIDT. (Amer, Andrew) (Entered: 09/25/2019) |
| 09/30/2019 | | NOTICE OF ERROR re 41 Supplemental Memorandum; emailed to andrew.amer@ag.ny.gov, cc'd 13 associated attorneys –– The PDF file you docketed contained errors: 1. DO NOT REFILE – Counsel should review LCvR 5.1 (a) CORRESPONDENCE WITH THE COURT (zjf, ) (Entered: 09/30/2019) |
| 10/21/2019 | 42 | MOTION to Dismiss , MOTION to Dismiss for Lack of Jurisdiction by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, ANDREW GROSSMAN, RICHARD NEAL (Attachments: # 1 Text of Proposed Order)(Letter, Douglas) (Entered: 10/21/2019) |
| 10/29/2019 | 43 | MOTION for Extension of Time to File Response/Reply as to 42 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction by DONALD J. TRUMP (Attachments: # 1 Text of Proposed Order)(Consovoy, William) (Entered: 10/29/2019) |
| 10/29/2019 | | MINUTE ORDER. Upon consideration of Plaintiff's 43 Motion for Extension of Time to Respond to Congressional Defendants' Motion to Dismiss, it is hereby ORDERED that the Motion is GRANTED. It is further ORDERED that Plaintiff shall file his response to the Congressional Defendants' 42 Motion to Dismiss on or before November 18, 2019, and that the Congressional Defendants shall file their reply on or before December 9, 2019. Signed by Judge Carl J. Nichols on October 29, 2019. (lccjn1) (Entered: 10/29/2019) |
| 10/29/2019 | | Set/Reset Deadlines/Hearings: Response to 42 due by 11/18/2019. Reply due by 12/9/2019. (zcdw) (Entered: 10/31/2019) |
| 11/11/2019 | 44 | MEMORANDUM OPINION. Signed by Judge Carl J. Nichols on November 11, 2019. (lccjn1) (Entered: 11/11/2019) |
| 11/11/2019 | 45 | ORDER. Signed by Judge Carl J. Nichols on November 11, 2019. (lccjn1) (Entered: 11/11/2019) |
| 11/11/2019 | | Set/Reset Deadlines/Hearings: Plaintiff and Congressional Defendants joint status report due by 11/13/2019. (zcdw) (Entered: 11/12/2019) |
| 11/12/2019 | 46 | Memorandum in opposition to re 42 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction filed by DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order, # 2 Declaration)(Consovoy, William) (Entered: 11/12/2019) |
| 11/13/2019 | 47 | Joint STATUS REPORT by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, ANDREW GROSSMAN, RICHARD NEAL. (Letter, Douglas) (Entered: 11/13/2019) |
| 11/14/2019 | | MINUTE ORDER. Upon consideration of the Parties' 47 Joint Status Report, it is hereby ORDERED that, no later than November 15, 2019, at 10:00 AM, the Congressional Defendants shall file a response to Mr. Trump's 46 most recent filing seeking emergency relief under the All Writs Act. It is further ORDERED that a hearing on Mr. Trump's 6 Emergency Application for Relief Under the All |

| | | |
|---|---|---|
| | | Writs Act is set for November 18, 2019, at 2:00 PM in Courtroom 19. Signed by Judge Carl J. Nichols on November 14, 2019. (lccjn1) (Entered: 11/14/2019) |
| 11/14/2019 | | Set/Reset Deadlines/Hearings: Motion Hearing re 46 set for 11/18/2019 at 2:00 PM in Courtroom 19 before Judge Carl J. Nichols. (zcdw) (Entered: 11/16/2019) |
| 11/15/2019 | 48 | REPLY to opposition to motion re 42 MOTION to Dismiss MOTION to Dismiss for Lack of Jurisdiction filed by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, ANDREW GROSSMAN, RICHARD NEAL. (Letter, Douglas) (Entered: 11/15/2019) |
| 11/18/2019 | | Minute Entry for proceedings held before Judge Carl J. Nichols: Motion Hearing held on 11/18/2019 re 6 Emergency Motion For Writ filed by DONALD J. TRUMP. The Court Will Take This Under Advisement. (Court Reporter JANICE DICKMAN.) (mac) (Entered: 11/18/2019) |
| 11/18/2019 | 49 | NOTICE by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, ANDREW GROSSMAN, RICHARD NEAL (Letter, Douglas) (Entered: 11/18/2019) |
| 11/18/2019 | 50 | TRANSCRIPT OF PROCEEDINGS before Judge Carl J. Nichols held on November 18, 2019; Page Numbers: 1–30. Date of Issuance:November 18, 2019. Court Reporter: Janice Dickman, Telephone number: 202–354–3267, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 12/9/2019. Redacted Transcript Deadline set for 12/19/2019. Release of Transcript Restriction set for 2/16/2020.(Dickman, Janice) (Entered: 11/18/2019) |
| 11/18/2019 | 51 | MEMORANDUM OPINION. Signed by Judge Carl J. Nichols on November 18, 2019. (lccjn1) (Entered: 11/18/2019) |
| 11/18/2019 | 52 | ORDER. Signed by Judge Carl J. Nichols on November 18, 2019. (lccjn1) (Entered: 11/18/2019) |
| 12/17/2019 | 53 | NOTICE OF INTERLOCUTORY APPEAL as to 51 Memorandum & Opinion, 52 Order on Motion for Writ by COMMITTEE ON WAYS AND MEANS, UNITED STATES HOUSE OF REPRESENTATIVES, ANDREW GROSSMAN, RICHARD NEAL. Fee Status: No Fee Paid. Parties have been notified. (Letter, Douglas) (Entered: 12/17/2019) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DONALD J. TRUMP,

        *Plaintiff*,

    v.

COMMITTEE ON WAYS AND MEANS,
UNITED STATES HOUSE OF
REPRESENTATIVES, *et al.*,

        *Defendants*.

Case No. 19-cv-2173 (CJN)

## **NOTICE OF APPEAL**

PLEASE TAKE NOTICE that Defendants the Committee on Ways and Means of the

United States House of Representatives; Richard Neal, in his official capacity as Chairman of the

House Ways and Means Committee; and Andrew Grossman, in his official capacity as Chief Tax

Counsel of the House Ways and Means Committee, hereby appeal to the United States Court of

Appeals for the District of Columbia Circuit from this Court's November 18, 2019 Order, ECF

No. 52, as well as its November 18, 2019 Memorandum Opinion, ECF No. 51.

        Respectfully submitted,

        */s/ Douglas N. Letter*
        Douglas N. Letter (DC Bar No. 253492)
          *General Counsel*
        Todd B. Tatelman (VA Bar No. 66008)
          *Deputy General Counsel*
        Megan Barbero (MA Bar No. 668854)
          *Associate General Counsel*
        Josephine Morse (DC Bar No. 1531317)
          *Associate General Counsel*

        OFFICE OF GENERAL COUNSEL
        U.S. HOUSE OF REPRESENTATIVES
        219 Cannon House Office Building

Washington, D.C. 20515
Telephone: (202) 225-9700
douglas.letter@mail.house.gov

*Counsel for the Committee Defendants*

December 17, 2019

DONALD J. TRUMP,

      *Plaintiff*,

    v.

COMMITTEE ON WAYS AND MEANS,
UNITED STATES HOUSE OF
REPRESENTATIVES, et al.,

      *Defendants*.

Civil Action No. 1:19-cv-02173 (CJN)

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is

**ORDERED** Mr. Trump's Emergency Application for Relief Under the All Writs Act,

Dkt. 6, is **GRANTED**.

It is further **ORDERED** that

(1)     if Chairman Neal makes a request under the TRUST Act for information relating to Mr. Trump's New York state tax returns, the Congressional Defendants shall provide the Court and Mr. Trump with contemporaneous notice of that request; and

(2)     the Congressional Defendants shall not receive any records requested by Chairman Neal for a period of fourteen (14) days, during which time the Court can decide whether Chairman Neal's request is lawful.

It is so **ORDERED**.

DATE:  November 18, 2019

CARL J. NICHOLS
United States District Judge

DONALD J. TRUMP,

      *Plaintiff*,

    v.

COMMITTEE ON WAYS AND MEANS,
UNITED STATES HOUSE OF
REPRESENTATIVES, et al.,

      *Defendants*.

Civil Action No. 1:19-cv-02173 (CJN)

## **MEMORANDUM OPINION**

This case is, in many respects, extraordinary. In the typical case, a congressional

subpoena includes a return date of a week or more for the recipient to respond. *See, e.g.*, *Trump*

*v. Mazars USA, LLP*, 940 F.3d 710, 717 (D.C. Cir. 2019) (return date of fourteen days); Opp'n

of Intervenor-Defs. to Pls.' Mot. for a Prelim. Inj. at 9–10, *Trump v. Deutsche Bank AG*, No. 19

Civ. 3826 (S.D.N.Y. May 10, 2019), ECF No. 51 (return date of twenty-one days). The fact that

a subpoena has been, or will be, served is often made public,[1] and subpoena recipients often have

legal obligations to disclose to third parties that their records might be produced. As a result, the

recipient of a congressional subpoena, as well as any party that might have an interest in the

records, usually has both notice of the demand and some time to challenge the subpoena before

the records are produced. *See, e.g.*, *Mazars*, 940 F.3d at 717–18; *Trump v. Deutsche Bank AG*,

No. 19 Civ. 3826, 2019 WL 2204898 (S.D.N.Y. May 22, 2019) (order denying request to

---

[1] *E.g.*, Andrew Desiderio, *Cummings Moves to Subpoena Trump Financial Records*, Politico
(Apr. 12, 2019 4:53 PM), https://www.politico.com/story/2019/04/12/cummings-subpoena-
trump-financial-records-1273464.

prevent enforcement of, and compliance with, a congressional subpoena).

Not so here. The Tax Returns Released Under Specific Terms Act ("TRUST Act"), N.Y. Tax Law § 697(f-1), (f-2) (2019) (codifying the TRUST Act), amends New York's tax laws to authorize the chairperson of one of three congressional committees, including Defendant Chairman Richard Neal of the House Committee on Ways and Means ("Committee"), to request the New York state tax returns of the President of the United States, among other elected officials. *Id.* § 697(f-1). The TRUST Act does not require a committee chairperson like Chairman Neal to provide notice to a covered official that a request has been made for the official's New York tax returns, nor does the TRUST Act require New York's Tax Commissioner to provide notice that he has received such a request. *See generally id.* § 697(f-1), (f-2). Moreover, neither the TRUST Act nor any House or Committee rule requires that such a request include a future return date. *See generally id.* § 697(f-1), (f-2); July 29, 2019 Hr'g Tr., Dkt. 23, at 13–14. As a result, Chairman Neal could request, and the Commissioner could immediately produce to the Committee, the New York tax returns of the sitting President of the United States without having provided prior notice to the President.

To date, Chairman Neal has not made such a request. On July 23, 2019, however, citing concerns that Chairman Neal might soon attempt to employ the TRUST Act to procure his New York returns, Donald J. Trump filed this action. *See generally* Compl., Dkt. 1. Mr. Trump also filed an Emergency Application for Relief Under the All Writs Act ("Emergency Application"). Dkt. 6; *see also* 28 U.S.C. § 1651 (2018) (permitting courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions"). Mr. Trump's Emergency Application argues that, without emergency relief, his state tax records could be requested and produced to the Committee without prior notice to him, thereby preventing any court from addressing the

2

legality of the request. Mem. of P. & A. in Supp. of Pl.'s Emergency Appl. ("Emergency Appl."), Dkt. 6-1, at 1. He thus seeks an order that would permit the Parties to litigate the legality of a request for his state returns, if and when such a request is made, before his claims become moot. Emergency Appl. at 1; Reply in Supp. of Pl.'s Emergency Appl. ("Pl.'s Reply"), Dkt. 17, at 1, 8–10; Pl.'s Mem. of P. & A. in Opp'n to Congressional Defs.' Mot. to Dismiss ("Pl.'s Opp'n to Defs.' Mot."), Dkt. 46, at 1–2. The Congressional Defendants have agreed that they would provide Mr. Trump and the Court with contemporaneous notice of a request, Nov. 18, 2019 Hr'g Tr., Dkt. 50, at 10; Notice (Nov. 18, 2019), Dkt. 49, but will not agree to defer receipt of Mr. Trump's records for any period of time. *See* Defs.' Opp'n to Pl.'s Mot. for Emergency Appl. ("Defs.' Opp'n to Emergency Appl."), Dkt. 14, at 1–2; Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Mot."), Dkt. 42, at 1–3; Defs.' Reply in Supp. of Mot. ("Defs.' Reply"), Dkt. 48, at 1–2.

For the reasons that follow, the Court will enter very limited relief under the All Writs Act. The Court will not prevent the Congressional Defendants from making a request under the TRUST Act, nor will it require the Congressional Defendants to provide advance notice of their intent to make a request (the relief Mr. Trump currently seeks). Instead, the Court will require the Congressional Defendants to provide the Court and Mr. Trump with contemporaneous notice of any request made by Chairman Neal, a commitment they recently made. *See* Nov. 18, 2019 Hr'g Tr. at 10; Notice (Nov. 18, 2019). In addition, the Court will order that the Congressional Defendants not receive the requested records for a period of fourteen days, during which time the Court can decide whether the request is lawful. In the Court's view, such limited relief will place this matter in roughly the same procedural posture as the typical subpoena case, while

3

treading as lightly as possible on the separation of powers and Speech or Debate Clause concerns raised by the Committee Defendants.

## I.     Background

As the Court has previously recognized, Mem. Op. (Nov. 11, 2019), Dkt. 44, at 3, New York law generally requires that state tax returns be held confidentially and permits their disclosure in only certain enumerated exceptions. *See, e.g.*, Tax § 697(e) (secrecy requirement); *id.* § 697(f) (permitting disclosure to cooperate with certain U.S. and state proceedings). The TRUST Act adds another exception. It authorizes the chairpersons of the Committee on Ways and Means of the U.S. House of Representatives, the Committee on Finance of the U.S. Senate, and the Joint Committee on Taxation to request from the Commissioner of the New York State Department of Taxation and Finance "any current or prior year [state tax] reports or returns" of "the president of the United States, vice-president of the United States, member of the United States Congress representing New York state" or other public official enumerated in the statute. *Id.* § 697(f-1). Such a request must "certif[y] in writing": (1) that the requested tax "reports or returns have been requested related to, and in furtherance of, a legitimate task of the Congress"; (2) that the requesting committee has "made a written request to the United States secretary of the treasury for related federal returns or return information, pursuant to 26 U.S.C. [§] 6103(f)"; and (3) that any inspection or submission to another committee or to the full U.S. House of Representatives or Senate be done "in a manner consistent with federal law." *Id.* § 697(f-2). Assuming the request includes those certifications, the Commissioner must produce the requested returns with redactions for "any copy of a federal return (or portion thereof) attached to, or any information on a federal return that is reflected on, such report or return." *Id.* § 697(f-1).

4

The TRUST Act does not require a committee chairperson like Chairman Neal to provide notice to a covered official that a request has been made for that official's New York tax returns, nor does the TRUST Act require the Commissioner to provide the official with notice that he has received such a request. *See generally id.* § 697(f-1), (f-2). Moreover, nothing in the TRUST Act, the Rules of the House, or the Rules of the Committee requires either that the House pass a resolution authorizing a request to be made by Chairman Neal under the TRUST Act or that the Committee vote to authorize such a request. *See generally id.* § 697(f-1), (f-2); July 29, 2019 Hr'g Tr. at 13–14. In fact, according to the Congressional Defendants, Chairman Neal does not need any authorization from the Committee to make a TRUST Act request, nor does he need to make the request when Congress is in session. July 29, 2019 Hr'g Tr. at 13–14. And nothing in the TRUST Act, the Rules of the House, or the Rules of the Committee requires that any time pass between request and production. The Parties therefore agree that Chairman Neal could pose a TRUST Act request to the Commissioner, and the Commissioner could respond immediately to such a request, without Mr. Trump having prior notice that his New York tax returns will be produced to the Committee. *E.g.*, *id.* at 14, 41.

Although Chairman Neal originally stated that he was unlikely to make a request for Mr. Trump's state tax returns, Am. Compl., Dkt. 30, ¶ 65, by July 22, 2019, various media outlets reported increasing pressure on Chairman Neal to do so. *See id.* ¶¶ 6, 66–72. The next day, Mr. Trump filed this action. *See generally* Compl. Mr. Trump claims that a request under the TRUST Act would violate Article I of the U.S. Constitution and the Rules of the House because the request for his New York state tax returns would lack a legitimate legislative purpose. Am. Compl. ¶¶ 73–76. And he claims that the TRUST Act itself violates the First Amendment, as would the production of any tax records pursuant to it. *Id.* ¶¶ 77–81.

5

Mr. Trump also filed his Emergency Application, which asked the Court to "preserve the status quo" because his claims could become ripe and then moot almost instantaneously without notice to him or the Court, thereby depriving the Court of jurisdiction. Emergency Appl. at 5–6. Mr. Trump proposed alternative forms of relief, including an order preventing the Committee from "requesting or receiving [Mr. Trump's] state tax returns from New York," *id.* at 6; an order requiring the Committee "to notify the Court if [Chairman Neal] intends to request [Mr. Trump's] state tax returns from New York," *id.*; an order preventing the Commissioner or New York Attorney General from producing his tax returns, Pl.'s Reply at 9; or "what amounts to a declaration requiring the Committee to provide the requested notice and opportunity to litigate," *id.*

The Committee originally opposed the entry of any relief on a single ground: that it enjoys absolutely immune from Mr. Trump's claims. *See generally* Defs.' Opp'n to Emergency Appl. As the Committee put it, its "decision whether to avail itself of a newly enacted provision of the New York tax code is a legislative act absolutely immune from challenge." *Id.* at 1. The Committee conceded at that time that Mr. Trump had otherwise satisfied the requirements for relief under the All Writs Act. July 29, 2019 Hr'g Tr. at 17.

Following briefing and oral argument on the Emergency Application, the Court ordered the Parties to meet and confer in light of the Court's stated goals of (1) "ensuring that Mr. Trump's claims do not become moot before they can be litigated"; (2) "treading as lightly as possible, if at all, on separation of powers and Speech or Debate Clause concerns"; and (3) "adjudicating . . . this dispute only when it is actually ripe and has a fuller record than presently exists." *Id.* at 53–54; *see* Min. Order (July 29, 2019).

The Parties were unable to reach agreement and instead filed alternative proposals for how the case should proceed. The Committee declined to commit to provide any advance notice to the Court of its intent to make a request for Mr. Trump's New York tax returns, *see* Joint Status Report (July 30, 2019), Dkt. 22, at 3–4. The New York Defendants, for their part, proposed that the Commissioner would not respond to any request for Mr. Trump's tax returns while the Court considered and ruled on their forthcoming motion to dismiss for lack of personal jurisdiction and improper venue. Joint Status Report (July 30, 2019) at 4–6. The Court largely adopted this proposal and, on August 1, 2019, ordered that (1) the New York Defendants could move to dismiss the Complaint for lack of personal jurisdiction over them and for improper venue on an expedited basis; (2) "during the pendency of the New York Defendants' Motion and for a period of one week from the Court's decision . . . , the New York Defendants shall not deliver to the Committee any information concerning Mr. Trump that may be requested by Chairman Neal under the TRUST Act"; and (3) the New York Defendants shall notify the Court if Chairman Neal made a request during that same one-week time period. Order (Aug. 1, 2019), Dkt. 25, at 3–4.

On November 11, 2019, the Court granted the New York Defendants' Motion to Dismiss. Order (Nov. 11, 2019), Dkt. 45. The Court also ordered Mr. Trump and the Congressional Defendants to meet and confer and submit a joint status report regarding "how they would propose to proceed on the Emergency Application . . . which remains pending before the Court." *Id.* Mr. Trump proposes that the Court grant the Emergency Application by either "order[ing] one or more of the Congressional Defendants to notify Plaintiff and the Court at least 14 days before Chairman Neal makes a TRUST Act request concerning [Mr.] Trump or any related entity" or "order[ing] one or more of the New York Defendants to notify Plaintiff and the Court

7

when the Commissioner receives a TRUST Act request concerning [Mr.] Trump or any related entity, and to wait at least 14 days before complying with that request." Joint Status Report (Nov. 13, 2019), Dkt. 47, at 1. The Congressional Defendants continue to oppose any requirement that they provide advance notice of a TRUST Act request.

On November 18, 2019, at the Committee's request, *see id.* at 2, the Court held another hearing on Mr. Trump's Emergency Application. During the hearing and in a submission following the hearing, the Congressional Defendants have agreed to provide Mr. Trump and the Court with contemporaneous notice of a TRUST Act request. *See* Nov. 18, 2019 Hr'g Tr. at 10; Notice (Nov. 18, 2019). But they continue to oppose having to provide advance notice of a request and also oppose deferring for any period of time their receipt of requested records.

## II.     Analysis

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act thus grants a court the power to issue relief that will "preserve the status quo pending ripening of [a] claim for judicial review" if the court "may eventually have jurisdiction of the substantive claim." *Wagner v. Taylor*, 836 F.2d 566, 571 (D.C. Cir. 1987) (footnote omitted). As a result, courts have held that All Writs Act relief may be appropriate when a claim is not yet ripe for judicial review but may both ripen and become moot almost instantaneously, thereby depriving the court of jurisdiction to decide the claim. *AstraZeneca Pharms. LP v. Burwell*, 197 F. Supp. 3d 53, 56 (D.D.C. 2016) (entering All Writs Act relief to prevent claims from becoming ripe and then almost immediately moot); *see also FTC v. Dean Foods Co.*, 384 U.S. 597, 604 (1966) ("[D]ecisions of this Court have recognized a limited

judicial power to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action . . . ." (internal quotation marks omitted)).

Mr. Trump contends that this is such a case. According to Mr. Trump, his claims will ripen if and when Chairman Neal issues a written request to the Commissioner, but they will quickly become moot if the Commissioner produces his state tax returns without advance notice and time for Mr. Trump to litigate his claims. Emergency Appl. at 5–6.

The Congressional Defendants do not disagree that Mr. Trump's claims could both ripen and then become moot almost instantaneously, thereby preventing Mr. Trump from having any court pass on them. July 29, 2019 Hr'g Tr. at 17; *see* Defs.' Opp'n to Emergency Appl. at 9–10. The Congressional Defendants also do not disagree that, as a general matter, the All Writs Act permits relief that would prevent an event from divesting the court of jurisdiction. *See id.*; Mot. at 23–25; Defs.' Reply at 3–4, 6–7. Instead, the Congressional Defendants argue that the Court has no jurisdiction to protect because (1) the Speech or Debate Clause grants the Committee absolute immunity from this suit and (2) Mr. Trump lacks Article III standing. *See generally* Mot.; Defs.' Reply.

### A. Speech or Debate Clause Immunity

The Speech or Debate Clause provides, "The Senators and Representatives . . . for any Speech or Debate in either House . . . shall not be questioned in any other place." U.S. Const. art. I, § 6, cl. 1. Its purpose "is to protect the individual legislator, not simply for his own sake, but to preserve the independence and thereby the integrity of the legislative process." *United States v. Brewster*, 408 U.S. 501, 524 (1972). It also prevents distractions from litigation that would divert Members' "time, energy, and attention from their legislative tasks." *Eastland v.*

9

*U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975). Where it applies, the Speech or Debate Clause provides absolute immunity from civil suit. *Id.* at 502–03.

Speech or Debate Clause immunity is not without limits. "It protects only those congressional acts properly thought to fall within the legislative function—those 'generally done in a session of the House by one of its Members in relation to the business before it.'" *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995) (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881)). The congressional act "must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972). The Speech or Debate Clause thus does not "stretch its protective umbrella 'beyond the legislative sphere' to conduct not 'essential to legislating,'" *McSurely v. McClellan*, 553 F.2d 1277, 1285 (D.C. Cir. 1976) (en banc) (quoting *id.* at 621).

The Congressional Defendants argue that they are absolutely immune from this suit because gathering information has long been held to be a legislative act. *See* Mot. at 17; Defs.' Reply at 10. According to the Congressional Defendants, "courts time and again have held that Congress's efforts to gather information, such as committee investigations and hearings, are legislative acts immune from challenge under the Clause, as are [c]ongressional subpoenas and less formal information requests." Mot. at 17 (footnote omitted). And because the gathering of information is a legislative act, the Congressional Defendants argue, they have Speech or Debate Clause immunity regardless of whether there is a legitimate legislative purpose animating their investigation. *Id.* at 19–20. Put differently, the Congressional Defendants contend that they

10

have Speech or Debate Clause immunity for a TRUST Act request even if it is made for a wholly non-legislative purpose, such as to publish the tax returns publicly. *See McSurely*, 553 F.2d at 1285–86 (dissemination of materials outside of legislative channels is a nonlegislative act).

It may be that judicial inquiry into legislative purpose is out of bounds when suit is brought against Congress or others entitled to Speech or Debate Clause immunity for actions that are thought to be within the core of the legislative function, such as voting, *Hutchinson v. Proxmire*, 443 U.S. 111, 133 (1979), preparing committee reports, *id.*, conducting hearings, *Doe v. McMillan*, 412 U.S. 306, 311 (1973), or disciplining members, *Rangel v. Boehner*, 785 F.3d 19, 23–24 (D.C. Cir. 2015). But in the context of investigations, and in particular cases involving congressional efforts to gather information, the Supreme Court and D.C. Circuit have made clear that Speech or Debate Clause immunity is available only when those efforts are undertaken for a legitimate legislative purpose, that is, to gather information "concerning a subject 'on which legislation could be had.'" *McSurely*, 553 F.2d at 1284–85 (quoting *Eastland*, 421 U.S. at 506).

In *Eastland v. U.S. Servicemen's Fund*, for example, the Supreme Court considered a civil suit challenging a subpoena issued by the Senate Subcommittee on Internal Security. 421 U.S. at 494–96. The Chairman of the Subcommittee, nine other Senators, and the chief counsel to the Subcommittee were named as defendants and argued that they were entitled to absolute immunity under the Speech or Debate Clause because the committee subpoena was a legislative act. *See id.* at 494–97. The Supreme Court recognized that, while broad, Congress's power to investigate is not unlimited because "Congress is not invested with a '"general" power to inquire into private affairs.'" *Id.* at 504 n.15 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 173 (1927)). As a result, the Court held that even in the Speech or Debate Clause context, "[t]he

question to be resolved is whether the actions of the [defendants] fall within the 'sphere of legitimate legislative activity.' If they do, the [defendants] 'shall not be questioned in any other Place' about those activities since the prohibitions of the Speech or Debate Clause are absolute." *Id.* at 501 (footnote and citations omitted). The answer to that question turned, in part, on whether "*the investigation upon which the Subcommittee had embarked concerned a subject on which 'legislation could be had.'*" *Id.* at 506 (emphasis added) (quoting *McGrain*, 273 U.S. at 177); *see also id.* at 504 n.15 ("subject of any inquiry *always must be one 'on which legislation could be had*'" (emphasis added) (quoting *McGrain*, 273 U.S. at 173); *see also id.* ("[T]he inquiry was intended to inform Congress in an area *where legislation may be had* . . . ." (emphasis added)); *id.* at 508 (subpoena was "intended to gather information *about a subject on which legislation may be had*" (emphasis added)). The Court held that the investigation and subpoena concerned a subject on which legislation could be had, and also held that it was appropriate for the district court to have reached that question, *id.* at 506–07—inquiries that would have been altogether unnecessary, and indeed inappropriate, if the Supreme Court thought the only relevant inquiry was whether issuing a subpoena was a legislative act.

In *McSurely v. McClellan*, the en banc D.C. Circuit reached a similar result. There, plaintiffs sued various congresspeople and staff claiming that their constitutional rights were violated during a congressional investigation, and the congressional defendants argued that they were absolutely immune under the Speech or Debate Clause. 553 F.2d at 1280–82. The court read *Eastland* to recognize Speech or Debate Clause immunity in the context of an investigation *if* the investigation "concern[ed] a subject 'on which "legislation could be had,"'" *id.* at 1284–85 (quoting *Eastland*, 421 U.S. at 506), and therefore analyzed whether the investigation before it concerned such a subject. Although the Court concluded that "*[i]n the broad*, the investigative

activity here concerned matters 'on which legislation could be had,'" *id.* at 1287 (emphasis added) (quoting *Eastland*, 421 U.S. at 506), it also held that certain specific acts associated with the investigation were *outside* Speech or Debate Clause immunity because they did *not* pertain to a subject on which legislation could be had, *see, e.g.*, *id.* at 1296 (highlighting that, while *Eastland* "notes the legislative nature of investigation, it reiterates that the subject must be one on which 'legislation could be had'"). Again, this inquiry into legislative purpose would have been unnecessary, and indeed inappropriate, if the Court thought that the only relevant inquiry was whether the "nature of the act itself," Nov. 18, 2019 Hr'g Tr. at 12, was legislative.

At various times in this case the Congressional Defendants have placed heavy reliance on *Rangel v. Boehner*, 785 F.3d 19 (D.C. Cir. 2015). According to the Congressional Defendants, *Rangel* "ma[d]e quite clear that [the judicial inquiry is] the *type* of act, it[ is] *not looking into purpose*." July 29, 2019 Hr'g Tr. at 47 (emphasis added). But *Rangel* is wholly inapposite; it involved one member's attempt to challenge through a civil action his censure in a congressional disciplinary proceeding—an internal House matter that, as the D.C. Circuit put it, "the Constitution places within the jurisdiction of [the] House," *Rangel*, 785 F.3d at 23 (quoting *Gravel*, 408 U.S. at 625). *Rangel* could not, of course, impliedly overrule *McSurely*, to say nothing of the Supreme Court's decision in *Eastland*.

Representative Rangel's challenge was also to the *motives* behind his censure. *Id.* at 24. But an inquiry into legislative purpose is not the same as an inquiry into motive. Indeed, in *Eastland,* the Supreme Court made clear that when analyzing whether an investigative act has a legitimate legislative purpose, a court does *not* "look to the motives that prompted [a congressional act]." *Eastland*, 421 U.S. at 508 (citation omitted); *see also Mazars*, 940 F.3d at 724 ("[T]he Supreme Court has made plain that 'in determining the legitimacy of a congressional

act,' courts may 'not look to the motives alleged to have prompted it.'" (quoting *id.*)).  Instead, a court should stay within "the narrow confines of determining that a committee's inquiry may fairly be deemed within its province."  *Eastland*, 421 U.S. at 506 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 378 (1951)).

For these reasons, under *Eastland* and *McSurely*, whether the Congressional Defendants will have Speech or Debate Clause immunity for a TRUST Act request turns on the legislative purpose (or purposes) behind such a request, that is, whether the "investigative activity . . . concern[s] matters 'on which "legislation could be had."'"  *McSurely*, 553 F.2d at 1287 (quoting *Eastland*, 421 U.S. at 506).[2]  But no TRUST Act request has been made for Mr. Trump's state tax returns.  And because the Congressional Defendants obviously have not attempted to justify a request that has not yet been made—indeed, as the Congressional Defendants admit, "[t]he Court cannot draw any conclusions as to the Committee's purpose before the Committee does anything," Defs.' Reply at 16—the Court is unable to conclude, one way or the other, whether the Congressional Defendants would be entitled to Speech or Debate Clause immunity.

## B.    Article III Standing

The Congressional Defendants originally opposed the Emergency Application only on the basis of Speech or Debate Clause immunity, July 29, 2019 Hr'g Tr. at 16 (acknowledging that their "only argument in opposing the requested relief is that the Committee has absolute immunity from the suit under the Speech or Debate Clause."), but more recently have also

---

[2] In *Brown & Williamson Tobacco Corp. v. Williams*, congressmen claimed Speech or Debate Clause immunity in moving to quash a subpoena seeking to compel the production of documents that a committee had received in connection with an investigation into the effects of tobacco products.  62 F.3d at 412.  In assessing the claim of immunity, the Court of Appeals looked both to whether the circumstances by which the documents came to be in the committee's possession "can be thought to fall outside of 'legislative acts'" *and* whether those circumstances "can be thought to fall outside . . . *the legitimate legislative sphere*."  *Id.* at 421 (emphasis added).

argued that Mr. Trump lacks Article III standing. Apparently conceding that Mr. Trump would suffer an injury in fact if his New York state tax returns are produced to the Committee, the Congressional Defendants argue that such an injury would not be traceable to them because it requires a third party, the Commissioner, to take steps under the TRUST Act. Mot. at 11–13. They also contend that such an injury would not be judicially redressable because the relief Mr. Trump seeks is barred by Speech or Debate Clause immunity. *Id.* at 13–14. And they argue that Mr. Trump has failed to allege a ripe, cognizable injury because the "purported injury depends on multiple levels of speculation." *Id.* at 14; *see also id.* at 8–11, 14–15.

### 1.     Causation and Redressability

The Congressional Defendants argue that any future harm to Mr. Trump would not be fairly traceable to their conduct because it would stem from the disclosure of his state tax records by the Commissioner. *Id.* at 11–12. Because the Commissioner is a third party, the Congressional Defendants argue, Mr. Trump has not demonstrated that their actions—rather than the Commissioner's—will necessarily cause his alleged harm. *Id.* As the Congressional Defendants put it, the TRUST Act contains "key preconditions to New York's processing of any request and release of information that interrupt the causal chain." Defs.' Reply at 8–9.

The Court disagrees. It is correct that Mr. Trump must allege that the Commissioner's "choices have been or will be made in such manner as to produce causation." Mot. at 11 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)). But Mr. Trump meets that burden here. He claims, correctly in the Court's view, that a request by Chairman Neal will contain a certification that includes the categories of information listed in the TRUST Act. *See* Pl.'s Opp'n to Defs.' Mot. at 13. Once such a request has been made, the Commissioner has no discretion to decide whether or not to respond to it, and the only additional step he must take is to

15

redact federal tax information from the returns. Tax § 697(f-1) ("[T]he commissioner *shall* furnish such committee . . . ." (emphasis added)).[3] This statutory mandate, and the lack of independent decision-making by the Commissioner, is sufficient to satisfy this Circuit's substantial-evidence requirement for third-party causation. *See Arpaio v. Obama*, 797 F.3d 11, 20 (D.C. Cir. 2015) ("We have required 'substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and the likelihood of redress.").

As to redressability, the Congressional Defendants argue that "Mr. Trump's claimed harm is not judicially redressable" because, under Speech or Debate Clause immunity, courts cannot order "Congress to take, or refrain from taking, specific actions in its legislative proceedings." Mot. at 13–14. But as discussed above, *see supra* Section II.A, until the Congressional Defendants attempt to justify a request made under the TRUST Act, the Court cannot assess whether they enjoy Speech or Debate Clause immunity. If the Congressional Defendants are unable to justify their request, they would not have immunity, and the Court could redress Mr. Trump's harm. *See, e.g.*, *Brown & Williamson*, 62 F.3d at 416 ("[T]he privilege only bars civil suits when the action complained of falls within the legislative sphere.").

## 2. Injury

The Congressional Defendants also argue that because Mr. Trump's alleged injury requires a "multistep chain of speculation," the injury is not "'certainly impending' as required for Article III standing." Mot. at 10 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409

---

[3] This is unlike other provisions of New York's Tax Law, which give the Commissioner discretion to respond to similar requests. *E.g.*, Tax § 697(f) ("[T]he commissioner . . . *may* furnish to the commissioner of internal revenue . . . returns filed under this article . . . as he may consider proper . . . where a written request therefor has been made . . . ." (emphasis added)).

(2013)).  They point to the news stories cited in the Amended Complaint reporting Chairman Neal's and the Committee's review of the TRUST Act is ongoing, *id.* at 9–10, and argue that Mr. Trump can allege only that this "review *could* end," that "Chairman Neal *could* decide to request the President's state returns," and that "New York *could* respond to the request nearly instantaneously." *Id.* at 10 (quoting Am. Compl. ¶ 7).  For similar reasons, the Congressional Defendants argue that Mr. Trump's claims are not ripe.  *Id.* at 14–15.

Where (as here) a plaintiff seeks prospective relief, "[a]n allegation of future injury may suffice" if either "the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper*, 568 U.S. at 409, 414 n.5)).  The Congressional Defendants ignore the "substantial risk" side of this standard.  In *New York Republican State Committee v. SEC*, 927 F.3d 499 (D.C. Cir. 2019), the Court of Appeals explained that "the proper way to analyze an increased-risk-of-harm claim is to consider the ultimate alleged harm . . . as the concrete and particularized injury and then to determine whether the increased risk of such harm makes injury to an individual citizen sufficiently 'imminent' for standing purposes."  *Id.* at 504 (quoting *Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017)).  Establishing standing in this manner does not require a showing of "literal certainty," but it also cannot be based upon a "highly attenuated chain of possibilities."  *Id.*

The Congressional Defendants' argument is not without some force, but in the Court's view, there is a sufficiently substantial risk that future harm could occur to warrant limited relief under the All Writs Act.  Because a written request has already been made to the Secretary of Treasury for Mr. Trump's federal tax returns, *Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of the Treasury*, No. 19-cv-01974, 2019 WL 4094563, at *1

(D.D.C. Aug. 29, 2019), there are no other preconditions to Chairman Neal's making a request to the Commissioner; he need only make the two additional TRUST Act certifications, both of which are wholly within his control, *see* Tax § 697(f-2) (request must certify that it is "related to, and in furtherance of, a legitimate task of Congress" and that information will be shared with another committee or part of Congress "in a manner consistent with federal law"). The risk of future harm to Mr. Trump thus requires just a single step by a single actor, Chairman Neal, who is a party to this litigation.[4]

Just as important, the All Writs Act permits the entry of limited relief where (as here) a claim may *not* yet be ripe for judicial review, but the claim may both ripen and become moot almost instantaneously. *See supra* at pp. 8–9. That is the concern here, and the fact that Mr. Trump's claims are not yet ripe is the very reason he seeks relief under the All Writs Act in the first place, and the very reason the Court believes such relief is warranted. After all, absent such relief, Chairman Neal could procure the state tax returns of the sitting President of the United States without any prior notice to the President, or to the Court, that would allow an adjudication of the request's legality before the dispute become moot. In similar circumstances, courts have granted All Writs Act relief. *See, e.g.*, *AstraZeneca*, 197 F. Supp. 3d at 58–60; *see also Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 75–76, 80–81 (D.C. Cir. 1984).

### III.    Conclusion

In this highly unusual case, the Court believes it is appropriate to fashion limited relief under the All Writs Act that will prevent Mr. Trump's claims from becoming ripe and then moot almost instantaneously without notice to him or the Court. Cognizant of the separation of

---

[4] According to the Congressional Defendants, Chairman Neal does not need his Committee's authorization to make a request under the TRUST Act, nor does he need to make the request when Congress is in session. *See* July 29, 2019 Hr'g Tr. at 13–14.

powers and Speech or Debate Clause concerns raised by the Congressional Defendants, the Court will not prevent the Congressional Defendants from making a request under the TRUST Act, nor will it require the Congressional Defendants to provide advance notice of their intent to do so. The Court recognizes the Congressional Defendants' recent commitment, *see* Nov. 18, 2019 Hr'g Tr. at 10; Notice (Nov. 18, 2019), and will require them to provide the Court and Mr. Trump with contemporaneous notice of any request made by Chairman Neal. But because contemporaneous notice alone would not protect Mr. Trump's claims from potentially becoming moot, the Court will also order that the Congressional Defendants not receive the requested records for a period of fourteen days, during which time the Court can decide whether the request is lawful. In the Court's view, this relief ensures that Mr. Trump has an opportunity to press his claims before they become moot while treading as lightly as possible on the Congressional Defendants' interests.

An order will accompany this opinion.

DATE: November 18, 2019

CARL J. NICHOLS
United States District Judge